# Exhibit 60

Transcript of Option Agreement　　　　　　　　　　　https://skat.dk/display.aspx?oid=1782022&vid=0

skat.dk

# Option Agreement

| | |
|---|---|
| Date of publication | Sep 26, 2008 10:32 a.m. |
| Date for of judgment / order / decision / control signal | Sep 23, 2008 09:15 a.m. |
| SKM-number | SKM2008.759.SR Authority Tax Council |
| Case Number | 08-138438 |
| Document type | Binding answer |
| Main topics | Tax |
| Main topics | Shares and other securities as well as intangible property rights |
| Keywords | Options agreement, share divestment |
| Summary | An option agreement contained both a right of purchase and a right of sale regarding the shares in an operating company.<br><br>The Tax Council confirms that in the specific case, it cannot be considered that the option agreements would be exercised and there is nothing in the information provided to indicate that the option agreements should in fact be sales agreements. Thus, it must be considered that there was a real possibility that the option agreements will not be exercised.<br><br>The transfer of the shares can therefore only be considered to have taken place at the time when the right was exercised. |
| Authorization | J.nr. 08-0066 |

| Transcript of Option Agreement | https://skat.dk/display.aspx?oid=1782022&vid=0 |
|---|---|
| Reference(s)       Capital Gains Taxation Act | |
| Reference       Circular from the Tax Administration 2008-3 S.G.2.5 | |

In the review below, some of the actual information will be omitted.

**Question**

Can SKAT confirm that A ApS 'conclusion of an option agreement with B A/S will not trigger capitalization taxation of A ApS already at the conclusion of the option agreement, but at the earliest at the time of the exercise of the option agreement (closing)?

**Answer:**
Yes.

**A description of the actual conditions**

A ApS is owned by the person C. A ApS owns 85% of the share capital in AA ApS, while the last 15% is owned by C.

AA ApS is part of a larger chain of stores, which through trade agreements and co-ownership of D A.m.b.a. sells the same product range.

A negotiation process has been made, the purpose of which has been to investigate the possibilities of establishing a new ownership structure for the entire chain by merging the current stores into a joint capital company owned by one or more investors and part of the store owners.

This has now led to negotiations being entered into between the future NewCo A/S and the individual companies/companies in the chain regarding the purchase of the individual stores.

A ApS has been offered an option agreement, which creates the possibility of a possible later transfer of AA ApS. It is this option agreement that is the subject of the present request for a binding answer, cf. further below.

The option agreement includes several supplementary agreements, including a store agreement and an employment contract for a store manager.

The agreements are in draft form, but it is not expected that there will be significant changes in the attached agreements. However, it must be said that the employment contract also mentions a store manager.

Please note that the individual draft agreements contain a specification of how certain words/designations are to be understood in the specific agreement.

*The option Agreement*

A ApS has been offered an option agreement, which will create the possibility of a possible later transfer of AA ApS to NewCo A/S.

The option agreement contains a right for NewCo A/S to buy AA ApS (the right to buy) and also gives the right to A ApS to demand that NewCo A/S must buy AA ApS (the right to sell). The right to buy and sell must be exercised no later than 03.18.2008 with subsequent transfer at an unknown future time.

The right of purchase and sale lapses if neither of the parties has given notice regarding the exercise of the right of purchase or the right to sell no later than 03.18.2008.

The following conditions have been agreed for A ApS 'exercise of the sales right:

1) That AA ApS has not gone into suspension of payments or taken into bankruptcy proceedings before 28.03.2008.

2) That AA ApS has been operated in accordance with good business practice and good practice before signing the agreement, and that AA ApS has not materially breached its obligations in accordance with the clause of the agreement. 6.1.

3) That AA ApS at the general meeting of B as a member has voted for the transfer of the assets in B to NewCo A/S.

Transcript of Option Agreement                                                                 https://skat.dk/display.aspx?oid=1782022&vid=0

If the right of purchase or right of sale is exercised by one of the parties, the parties are obliged to enter into and sign the store agreement.

If the right to buy or sell has been exercised by one of the parties, there will be a "closing" of the option agreement on 04.02.2008 - or another date that the parties may agree.

After a "closing" of the option agreement has taken place, NewCo A/S must conduct an extraordinary general meeting of AA ApS and a new management must be elected for the company and the changes must be notified to the Danish Commerce and Companies Agency.

Pursuant to the option agreement, there are no restrictions on A ApS 'management shareholder rights regarding the shares prior to a possible transfer of the shares to NewCo A/S (closing).

As a natural consequence of the conclusion of the option agreement, there will be restrictions on the right to dispose of the shares. A ApS cannot perform mortgages, sell, transfer voting rights, etc. from the time they enter into the option agreement.

The price for choosing to exercise the right of purchase resp. the right of sale is stipulated and detailed in the agreement. The utilization price is calculated on the basis of the accounts per. 09.31.2007 If the option agreement is exercised, the share transfer must take place at a future time not yet agreed, which is why an agreement has been made on post-adjustment of the price for the exercise of purchase or the right of sale.

*The store agreement*

If NewCo A/S and/or A ApS choose to exercise the option agreement, the parties are obliged to sign the store agreement.

According to the agreement, A ApS *will transfer the shares* in AA ApS per. 10.01.2007 subject to the terms detailed in the agreement.

The wording "with legal effect" does not move the time of the agreement, but is an expression that the buyer acquires the right to earnings in AA ApS after 09.30.2007, which is why no sub-period accounts must be prepared.

The purchase price is paid to the seller in the form of shares in NewCo A/S. Payment must be made at the time of closing the agreement.

The closing of this agreement is similar to the option agreement.

**Questioner's possible opinion according to request and comments regarding case presentation**

Shares are considered transferred when there is a final and binding agreement on the divestment. These are the same factors that apply when assessing whether the conclusion of a right of purchase and/or a right of sale can be equated with a purchase/sale.

Entering into a right of purchase and/or a right of sale is not in itself considered to be a sale of the shares, as buying and selling rights are characterized by the fact that there is a right, but not an obligation to buy or sell.

According to the basic principles in Section 4 of the State Tax Act, income, including the sale of assets, must be included in the income statement when a final and unconditional right to it is acquired. Central to the tax realization criterion is the time of cessation of ownership.

However, in exceptional cases, practice has recognized that ownership can be considered transferred if an agreement with opposing buying and selling rights has such content that the seller and buyer are in fact posed as if the ownership has been transferred and there is no real uncertainty as to those open conditions for the formal transfer of ownership will be met.

In this case, the proposed option agreement will not change the fact that A ApS continues - and in every respect - to own the ownership and operational risk of AA ApS, and that ownership and operational risk only transfer if - and when - one of the parties exercises its right to demand that the shares in AA ApS be transferred.

A ApS and thus AA ApS will not be subject to any restrictions in its financial and administrative powers in relation to store operations.

As a result, there is already no basis for qualifying the option agreement with a store agreement as a sales agreement, where the ownership already passes to NewCo A/S at the time of entering into the option agreement.

In addition, it has in no way been said that the option agreement will lead to a later transfer of the shares in AA ApS.

As stated in the agreements, it is expected that NewCo A/S enters into agreements with a number of other owners of stores regarding the direct purchase of the company as well as an agreement with D A.m.b.A. on the purchase of all assets therein.

Transcript of Option Agreement                                   https://skat.dk/display.aspx?oid=1782022&vid=0

In relation to AA ApS, it is uncertain whether NewCo A/S will exercise the (close) option agreement.

It is possible that alternative options may arise for NewCo A/S in the area where AA ApS 'store is located, which will make it less attractive for NewCo A/S to exercise the option agreement. It can e.g. be the opportunity to establish itself at a different and better business address in the area.

It can also be included as a negative factor for NewCo A/S if, during the option period, you reach the conclusion that you do not want C as a store manager in AA ApS. As NewCo A/S cannot acquire the shares in AA ApS without C having a contract as store manager, this may affect NewCo A/S 'decision to exercise the option agreement.

In the recent period, AA ApS has not had such good sales, and the company's turnover has not been able to follow the trend in turnover that the other stores currently have. For this reason, the company's shares are also valued lower than other stores. If it is possible for AA ApS to reverse this trend in revenue and thus profit, it may further influence NewCo A/S 'decision to exercise the option agreement.

From A ApS 'and thus C's point of view, it will also be associated with uncertainty as to whether it will be attractive to exercise the option agreement.

First, the price of the shares in AA ApS is set lower than for other stores. If AA ApS realizes a significant increase in turnover in the current period, this may affect C's decision regarding the exercise of the option agreement. The option agreement provides for the possibility of an adjustment of the price of the shares, but since an adjustment must be calculated on the basis of the future total turnover in the chain in the period from 10.01.2007 - 09.30.2008, a real increase in the value of the shares cannot be assumed to take full effect. through why the offered sale price for the shares in AA ApS must be considered too low in relation to the real value of the shares.

Secondly, it is important to note that there is a significant difference in the amount at which the shares are valued, depending on which of the parties makes the decision to exercise the option agreement. A ApS will alone in "basic price" achieve approx. 3 million DKK less for its shares if it is A ApS that decides to dividend the option agreement. When the option agreement also entails that post-adjustment is calculated on the basis of not only the earnings in AA ApS, but the future total turnover in the chain in the period from 10.01.2007 - 09.30.2008, it is currently uncertain whether A ApS will be able to achieve a sufficiently attractive price for AA ApS.

Furthermore, in exercising the option agreement, C will have to give up his independence and undertake to take over as store manager and at the same time submit to a non-compete clause with a duration of 5 years after closing, where he is obliged not to personally -either directly or indirectly - to run or have a financial interest in any company engaged in competing activities. Violation of the provisions regarding the non-compete clause is sanctioned with a fine of DKK 100,000, which accrues every month until the violation is brought to an end.

C will assess these perspectives based on the circumstances at the time when the opportunity arises to exercise the option, and not least on the basis of the experience with employment in the new NewCo A/S, as the other previous shareholders/company owners in the various stores will have. The outcome of this assessment cannot be predicted at this time.

Taking into account the conditions described above, there is overall no basis for considering the option agreement as a sales agreement, which is why we are of the opinion that our inquiry must be answered with a "yes".

*Additional Information*
The questioner's representative has additionally stated that the option was exercised by NewCo A/S on ... 2008.

The exercise price was approx. 25 million DKK.

Any post-adjustment of the utilization price will be calculated on the basis of the result on 30.09.2008 for the entire chain. A ApS will have any subsequent adjustment paid out no later than 4 months after the receipt of a comprehensive account for the period 10.01.2007 - 09.30.2008.

The enquirer's representative has informed that at this time it is not possible to calculate any subsequent adjustment. It was agreed between the parties that a post-adjustment could amount to a maximum of approx. 6 million DKK.

The option agreement was entered into in February 2008 and March 2008, after which NewCo A/S could exercise the option in the period from 10-15. April 2008, and A ApS could exercise the option from 16-21. April 2008 at a lower price. The choice of the short utilization periods was due to the desire for quick certainty as to whether utilization took place.

Transcript of Option Agreement                                                    https://skat.dk/display.aspx?oid=1782022&vid=0

NewCo A/S 'offer price for all the companies involved was submitted on the condition that NewCo A/S took over the earnings from 30 September 2007, which is common practice in connection with the acquisition of companies. Earnings in the companies were positive, which naturally gave a higher offer price than if a Closing balance were to be traded, i.e., where A ApS was "entitled" to the profit for the period until NewCo A/S 'takeover. In connection with the transfer of shares, this is - as mentioned - a completely usual practice. As shares are transferred, NewCo A/S naturally takes over the company's balance sheet per the acquisition date, this also includes the part of the result that relates to the time before the transfer. In some situations, a seller will reserve the right to this result, but this will only have an impact on the price of the shares.

Since a possible agreement regarding the purchase of AA ApS - i.e., if one of the parties exercised its option - would also involve a sale of the shares within the income year 2007/08, the terms of the agreement in this agreement would have to be in accordance with the other transfer agreements. This was thus an integral part of the agreed price in the event of an exercise.

Choice of this method also influences the calculation of the adjustment. When the adjustment is calculated on the basis of the total earnings, it would be wrong if individual businesses were only included with a sub-period, and a sub-period that is not known in advance. If some businesses participated with only a portion of the year's income, this would result in a minor adjustment to all the other previous business owners. In order to ensure equal treatment of all previous owners of the businesses, it has been most appropriate to draft the agreement in this way.

Regarding the decision to exercise the option, the respondent's representative explained that it was NewCo A/S that exercised its call option - probably because the company found that the price was correct and because the company would not run the risk that A ApS would not exercise its call option at the lower price.

In addition, the enquirer's representative has informed that other factors which have led NewCo A/S to choose to exercise the option are not known to either C or the enquirer's representative. The questioner's representative only represents C and the companies he owns and has no connection to NewCo A/S.

The questioner's representative has also informed that it is highly doubtful whether A ApS would have exercised its put option if NewCo A/S had not exercised its call option.

There was a relatively large difference between the two exercise prices, so there is a real risk that the parties each found that the price of the shares had meanwhile settled on either side of the exercise prices, i.e., somewhere between them, in which case none of the parties would exercise the option.

A request for a binding answer mentions a number of factors that could have had an impact at the time, and have now had an impact on whether the right of purchase/right of sale was exercised.

The purchase price was paid in April 2008 - the same day as AA ApS was sold. A ApS has thus not had access to the purchase price during the option period, and no loan or equivalent has been granted from NewCo A/S. Similarly, during the option period, NewCo A/S had no control over the shares in AA ApS or the company's assets, just as no agreements or the like have been made regarding the company's operations.

**SKAT's recommendation and justification**
Entering into an agreement on a right of purchase or sale is not the same as entering into an agreement on the sale, and according to the general rules of tax legislation, capital gains tax must only take place when a final agreement on sale has been entered into.

In certain cases, however, the terms of an option agreement are such that the conclusion of an option agreement is in fact the conclusion of a sales agreement if, in the present circumstances, it is considered unlikely that the right of purchase would not be exercised.

In this case, it is not a given that the option agreements will be exercised, cf. the arguments put forward by the questioner as well as supplementary information, and there is nothing in the information provided that indicates that the option agreements should in fact be sales agreements. According to the information provided. it must therefore be considered that there was a real possibility that the option agreements would not be exercised.

The transfer of shares in accordance with concluded purchase and sale rights can therefore only be considered to have taken place at the time when the right is exercised, i.e. the time at which a final and binding utilization agreement has been entered into.

It is not clear whether the option agreement is motivated by a possible desire to exercise the rule in the Capital Gains Taxation Act, Section 9, Subsection 1, according to which a company's sale of shares is tax-free when the ownership period has been 3 years or more.

Transcript of Option Agreement                                                                 https://skat.dk/display.aspx?oid=1782022&vid=0

However, this fact alone cannot mean that the share transfers can be considered to have taken place before the time when the option agreements are exercised.

It is therefore set that the question is answered with a yes.

*Please note*
In this answer, no decision has been taken on the question regarding possible taxation of the option agreements in accordance with the rules in the Capital Gains Act on financial contracts.

**The Tax Council's decision and justification**
The Tax Council agrees with the recommendation and the justification.

**The answer is binding for the tax authorities in the following period**
For 5 years, starts from the receipt of the answer, cf. SFL § 25, para. 1.