# Exhibit 70

# Limited tax liability - dividend - correct income recipient - dividend tax - liability

| | |
|---|---|
| Date of release | 11 Jun 2015 11:44 |
| Date of judgment / ruling / decision / control signal | 13 Mar 2015 11:02 |
| SKM number | SKM2015.397.ØLR |
| Authority | Eastern High Court |
| Case number | Section 23, B-2896-13 |
| Document type | Dom |
| Overall topics | treasure |
| Topics Topics | Corporate taxation |
| Keywords | Withholding, withholding tax, negligence, right of establishment |
| Summary | The High Court found that it had not been established that the plaintiff (an ApS) had in fact distributed dividends to its parent company in Luxembourg. The dividend did not appear in the parent company's annual accounts. The High Court ruled that the plaintiff distributed the dividend to another party than the parent company, and the plaintiff was therefore not exempt from withholding dividend tax, cf. the withholding tax act, section 65, subsection. 4, cf. section 2, subsection 1, letter c. The plaintiff was also responsible for payment of the withholding tax, cf. the withholding tax act, section 69, subsection. 1.

In the alternative, the Ministry of Taxation had argued that the plaintiff's parent company was not the beneficial owner of the dividend ("beneficial owner"), but rather a flow-through company, and that the plaintiff was therefore not exempt from withholding tax, but the High Court did not to take a stand on. |
| Reference (s) | The Corporation Tax Act § 2, para. 1, letter c
The Withholding Tax Act § 65
The Withholding Tax Act § 69, para. 1 |
| Reference | The Legal Guide 2015-1 CD8.10.5 |
| Reference | The Legal Guide 2015-1 CD2.2.1 |
| Editorial notes | The case has been appealed to the Supreme Court |

**Parties**

H1 Holding ApS
(lawyer Bente Møll Pedersen)

against

Ministry of Taxation
(chamber lawyer v / lawyer Søren Horsbøl Jensen)

**Judged by the district judges**

Steen Mejer, Gunst Andersen and Sune Dalgaard-Nielsen (kst.)

**Background to the case and the allegations of the parties**

This case, which was brought before the City Court on 27 February 2013, was by the City Court's order of 16 September 2013 referred to consideration by the Eastern High Court pursuant to the Administration of Justice Act § 226, paragraph. 1. The case concerns the review of the National Tax Tribunal's ruling of 29 November 2012, whereby the plaintiff, H1 Holding ApS, was deemed to be liable to withholding dividend tax on dividends in the form of five claims, which were distributed on 8 June 2005.

*The plaintiff, H1 Holding ApS*, has filed a claim that the defendant, the Ministry of Taxation, must acknowledge that H1 Holding ApS is not obliged to withhold dividend tax of DKK 17,604,962, corresponding to 28% of dividends of DKK 62,874,867, which the June 8, 2006 was distributed from H1 Holding ApS to H1 Investments SARL, Luxembourg, and that the plaintiff is not liable for payment of the amount not included.

*The defendant, the Ministry of Taxation*, has claimed acquittal.

**Case presentation**

On 29 November 2012, the National Tax Tribunal issued the following ruling:

"...

**The decision of the National Tax Court**

Income year 2006

SKAT has considered the Company liable to withhold dividend tax on dividends of DKK 62,874,867 [paid] paid to its parent company in Luxembourg, calculated at DKK 17,604,962.

The National Tax Court confirms the decision.

...

Case information

The Danish company H1 Holding ApS, which was founded in 1999 by H1 Finance Ltd. on the Cayman Islands (H1 Finance Ltd.), is part of a larger group ultimately owned by IH and a trust located on Guernsey. The group is ....

H1 Holding ApS owns all the shares in H1.2 LLC, Delaware (the head office), which has ownership interests in an office building, ... 1, in Mexico (the branch). In addition, the company owns 98.84% of the ownership interests in H1.1.

Until 6 July 2005, the Danish company was directly owned by H1 Finance Ltd., which in turn was owned by another company, H1 Investments Inc., Cayman Islands.

From 6 July 2005, a company in Luxembourg, H1 Investments SARL, established in 1999, was inserted between the company in Denmark and the companies in the Cayman Islands (the lower of which was dissolved on 30 June 2006, and the upper liquidated with end of 2009). H1 Investments SARL¨s acquisition of the Danish company took place through a loan from H1 Investments Inc. of € 24,905,000 (upon issuance of Promissory Note). The structure then looks like this:

| | | |
|---|---|---|
| | IH et al. | |
| | I | |
| | H1 Investments Inc. | |
| | I | |
| | H1 Finance Ltd. | |

| | | |
|---|---|---|
| | I | |
| | H1 Investments SARL | |
| | I | |
| -------------- | H1 Holding ApS | -------------- |
| I | | I |
| H1.1 | | H1.2 |
| | | I |
| | | H1.2.1 et al. |

About H1 Investments SARL is stated that the company's purpose is to be a holding company for companies in Luxembourg or foreign companies and participate in other forms of investments etc.

Regarding the background for H1 Investments SARL"s acquisition of the Danish company, it is stated that IH-Gruppen has several companies in Luxembourg, which is the center for management and administration of IH-Gruppen's companies outside Canada and with investments in Mexico, UK, United States, Israel and elsewhere. The transfer of the Danish company to H1 Investments SARL was therefore logically and commercially justified for the group.

H1 Investments SARL is governed by its articles of association by one or more directors and does not have a board of directors. The IH Group has chosen to centralize all overheads in Luxembourg, including expenses for premises and staff, in a sister company to H1 Investments SARL, G1 SARL. The group's total costs for administration in Luxembourg amount to approx. 165,000 euros annually. The group has not seen any benefit in refactoring and allocating the costs to the group companies. H1 Investments SARL therefore does not have employees on the payroll or premises in Luxembourg. In 2006, H1 Holding ApS had 2 employees on the payroll, including NK, who was also one of 3 CEOs of H1 Investments SARL.

In the years 1999-2002, H1 Holding ApS had acquired the two subsidiaries, H1.2 LLC, Delaware, and H1.1 via loans from H1 Finance Ltd. and H1 Investments Inc., which also financed the operations of the subsidiaries. The loan financing was taken over by H1 Investments SARL in 2004, which according to the Danish company was due to the fact that it was inefficient to manage a number of loans in Copenhagen when the rest of the holding, financing and treasury functions were handled in offices in Luxembourg.

In 2006, H1 Investments SARL received a dividend from H1 Holding ApS totaling DKK 62,874,867. The dividend distribution was approved on 8 June 2006 in connection with the company's general meeting for 2005. The dividend is not a cash distribution, but consists of receivables from H1 Investments Inc. . in the form of 5 promissory notes, issued from March 31, 2005 to July 31, 2005, totaling $ 10,848,724.

About the background for the issuance of the 5 promissory notes with H1 Investments Inc. as debtor, the representative stated that the American and German investors in the ... 1 building in the years 2002-2005 had been offered cash-flow guarantees to make them pay the full price for their investments in the building, as if the building already generated a 9% return, although it was clear that such a return would not be achievable until the building was fully let and free rental periods expired. Thus,

if the cash return did not amount to 9%, H1.2 LLC (the branch) was obliged to make guarantee payments ("top-up" amounts). At the same time, investors undertook to repay these "top-up" amounts, but only in the event that in the future they currently received returns in excess of 9%, which could occur, if there was full rental. As the ... 1 building did not generate profits and as H1.2 LLC (the branch) had no other sources of income, the "top-up" amount was paid by H1.2 LLC's ultimate shareholders "H1 Investments from non-Mexican sources ". With one exception, payments were made directly to US and German investors.

The creation of the 5 promissory notes, and related transactions, was intended to create performance benefits in relation to the branch's accounting ("accounting presentation benefits") in the form of increasing the assets side of the accounts. None of the dispositions involved cash transfers.

The performance benefits consisted of placing some receivables in H1.2 LLC's branch in Mexico that could offset the debt incurred in the branch as a result of H1 Investments Inc.'s payments of "Top Up" amounts, as the branch, cf. above, was obliged to pay to the investors in the ... 1 project.

According to the representative, the 5 promissory notes were distributed from H1.2 LLC's branch to H1.2 LLC's head office, which then redistributed the receivables to H1 Holding ApS, which in turn redistributed these to H1 Investments SARL. This took place at the general meeting on 8 June 2006, cf., however, below.

The Group's Canadian lawyer, lawyer UJ, has in an unsigned or dated note explained:

"...

As already explained by the Group attorney in the document attached as Appendix 2 to SKAT´s presentation of the case, the only money sent to the investors in 2005 was transferred directly from H1 Investments to the US and German investors. The transactions explained by SKAT in detail in their Appendix 3 were mainly funding transactions which did not involve cash but were by letters of direction designed to achieve certain accounting presentation objectives by increasing the equity of H1.2 LLC to allow a netting of its reimbursement obligation to H1 Investments for the Top-Up Payments which it was already recording as a liability against an equivalent receivable from H1 Investments which would be recorded as an asset. Each time that H1.2 LLC´s Mexican branch booked a liability for Top-Up Payments starting in April 2004, therefore, the branch equity was increased by a directed transfer which started with H1 Investments, and the branch recorded a retransfer to H1 Investments as an advance under a Line of Credit Agreement dated April 29, 2004, a copy of which is attached as Appendix a. purpose of showing the advances under the Line of Credit Agreement was to reflect the potential recovery of the Top-Up Payments from the investors in the future, which if ever received by H1 Investmemts from the investors would then have been repaid to H1.2 LLC Mexicans Mexican Branch under the Line of Credit Agreement. Significantly, section 3 of the Line of Credit Agreement provided that the obligation of H1 Investments to repay the advances to H1.2 LLC´s Mexican branch was limited in recourse to the recovery of any amounts by H1 Investments from the investors.

... "

Subsequently, it became clear that the H1.2 LLC branch in Mexico would be taxed on the receivables in question, which more than offset the performance benefits obtained by placing the receivables in the branch. Therefore, the H1.2 LLC branch transferred the receivables received to the branch's head office.

In a capital reduction in H1.2 LLC on 31 December 2005, the 5 promissory notes totaling $ 10,848,724 were distributed from the head office to H1 Holding ApS with effect from 31 May 2006, from which they were further distributed to H1 Investments SARL at the general meeting. on June 8, 2006. Minutes from the general meeting state:

"...

It is proposed to declare a dividend of USD 10,848,724 to the parent company. It is hereby accepted that the assignment of a series of promissory notes on 31 May 2006 is in satisfaction of the dividend payment to the parent company and no further action is required. It is proposed to carry the balance profit forward to next year.

... "

From an e-mail of 20 February 2007 from UJ to SD it appears about the distribution from H1.2 LLC to H1 Holding ApS that

"...

The documents for the assignment to H1 Holding ApS were actually completed in December 2005, even though they were effective on May 31, 2005.

... "

The distribution, which resulted in an actual decrease in H1 Holding ApS"s equity, did not initially appear in H1 Investments SARL"s annual report for 2006. Following SKAT's request on 18 February 2009, the annual report was corrected and new accounts for 2006 were March 19, 2009 submitted to the Business and Companies Register in Luxembourg, just as on March 23, 2009 a tax return was submitted and corrected accounts to the tax authorities in Luxembourg. On that occasion, H1 Investments SARL was subject to capital tax for 2007 with € 37,950.

According to the representative, this is an obvious error when the distribution and the intra-group receivable did not initially appear in the annual report. It should be noted that companies in Luxembourg are not normally subject to auditing requirements, and a closer examination revealed the error. The error was partly due to the fact that there were no cash transfers to the bank account, just as there were many complicated transactions in 2006. However, the distribution was registered in H1 Investments SARL"s books at the time of the distribution. Reference is hereby made to the Record Book Index for ... Entities and Related Transactions January - December 2006. The index contains the following, as the registrations in question here include section XVIII, registrations 84-86:

| | |
|---|---|
| IN. | Fourth Quarter 2005 Gurantee Payments - January 30, 2006 (registrations 1-7), |
| II. | Advance to G2 Trust - February 27, 2006 (registrations 8- 12), |
| III. | Interest Payment under the H1.2 Loan Agreement March 3, 2006 (registrations 13-14), |
| IV. | First Quarter 2006 Gurantee Payments - April 25, 2006 (registrations 15-22), |
| V. | Advance to G2 Trust - April 28, 2006 (registrations 23-25), |
| WE. | Interest Payment under the H1.2 Loan and Advance to G2 Trust - July 26/31, 2006 (registrations 26-31), |
| WE YOU. | Second Quarter 2006 Guarantee Payments and Advance to G2 Trust - July 28/31, 2006 (registrations 32-42), |
| VIII. | Advance to H1.1 - October 25, 2006 (registrations 43-45), |
| IX. | Interest Payment under the H1.2 Loan and Advance to H1.1 - October 11 / November 6, 2006 (registrations 46-51), |
| X. | Third Quarter 2005 Gurantee Payments - October 30, 2006 (registrations 52-57) |
| XI. | Advance to G2 Trust - November 13/21/22, 2006 (registrations 58-63), |

| XII. | Advance to G2 Trust - December 1, 2006 (registrations 64-65), |
|------|---------------------------------------------------------------|
| XIII. | Interest Payment under the H1.2 Loan and Advance to G2 Trust - December 5-6, 2006 (registrations 66-71), |
| XIV. | Advance to G2 Trust - December 13, 2006 (registrations 72-77), |
| XV. | Advance to H1.1 - December 29, 2006 (registrations 78-81), |
| XVI. | Conosisa Note (registration 82), |
| XVII. | G1 Company: Amentdment of March 3, 2005 Loan Agreement (Registration 83), |
| XVIII. | Payment of Dividend by H1 Holding ApS (registrations 84-86), and |
| XIX. | ... Memorandum (Registration 87, dated January 30, 2007). |

During the audit of the accounts for H1 Investments SARL, it was also established that the accounts had not, by mistake, taken into account a transfer of H1 Investments SARL's debt to H1 Investments Inc. at the end of 2006. of 24,905,000 €, which, cf. above, arose from the acquisition of H1 Holding ApS, to the group company G3 Ltd., Guernsey, which was then corrected, with which it possibly set-off access was no longer present. As documentation for the transfer, reference is made to the promissory note of 31 December 2006, which states the following:

"...

For value received, the undersigned hereby agrees to pay on demand to G3 Limited, the sum of Twenty-four Million, Nine Hundred and Five Thousand, Euros (€ 24,905,000), such principal sum to bear interest at the rate of 6 month EURXBOR plus 2% from July 7, 2005, calculated and payable annually.

... "

At the end of 2006, H1 Investments SARL"s main creditor had changed from being H1 Investments Inc. to G3 Ltd., Guernsey, and at the end of 2008 from G3 Ltd., Guernsey, to H1.2 Investments LLC, Caymann Islands.

At the end of 2009, H1 Investments SARL"s receivables from H1 Investments Inc., including the Promissory Notes in question, were taken over by H1.2 Investments LLC, which had taken place in connection with the liquidation of H1 Investments Inc.

Both G3 Ltd. as H1.2 LLC was at the time in question ultimately owned by IH.

The complaint is accompanied by statements, according to the representative from the group lawyer UJ. This and the other information in the case appear in more detail about the 5 promissory notes in question, which are distributed as follows:

| 1. | $ 1,597,808, issued April 30, 2005 |
|----|-------------------------------------|
| 2. | $ 2,787,287, issued July 31, 2005 |

| 3. | $ 1,883,648, issued July 28, 2005 |
|---|---|
| 4. | $ 2,000,000, issued March 31, 2005 |
| 5. | $ 2,579,980, issued April 5, 2005 |

Promissory note of $ 1,597,808, issued April 30, 2005

On April 28, 2005, H1 Investments Inc. transferred $ 1,597,808 directly to US investors in the ... 1 building. The payment is made on behalf of H1.2 LLC (the branch), which was obliged to make "Top Up payments" to the investors. This implies that H1.2 LLC (the branch) has a debt to H1 Investments Inc. on a corresponding amount.

The H1.2 LLC branch enters into an agreement (Line of Credit Agreement) with H1 Investments Inc. to transfer amounts ("advances") to H1 Investments Inc. as payment of "Top-Up" amounts. against re-payment under certain conditions.

To reflect the accounting items "a number of documents are signed: On April 28, 2005, H1 Investments Inc. transfers a receivable of $ 1,597,808 via H1 Investments SARL to H1 Holding ApS as a loan. The receivable from H1 Investments Inc. is transferred From H1.2 LLC (head office), the receivable is transferred to H1.2 LLC (the branch) by capital increase, from which the receivable is transferred back to H1 Investments Inc. The latter transfer is detailed in a letter from the representative. stated:

> "...
>
> the branch booked the transfer to H1 Investments Inc. as an advance under the Line of Credit Agreement of August 29, 2004. This created an asset in the books that could offset the USD 1,597,808 recorded as a liability to H1 Investments Inc., corresponding to Top Up amounts, which H1 Investments Inc. had paid on behalf of H1.2 LLC (the branch).
>
> ... "

From information from the representative, cf. her letter of 19 October 2011 together with information from the group's lawyer UJ etc., it appears that the next day, 29 April 2005, the capital increase in the branch is reversed - due to tax conditions in Mexico. At the same time, the rights under the Line of Credit Agreement are transferred to the head office. As the head office is not a party to this agreement, H1 Investments Inc. transfers an amount of $ 1,597,808 to the head office upon the issuance of a promissory note dated April 30, 2005 (receivable from H1 Investments Inc.). At the same time, H1 Investments Inc.'s liabilities to the branch under the Line of Credit Agreement for a corresponding amount lapse.

Thereafter, H1.2 LLC (the head office) distributes the promissory note in question to H1 Holding ApS, which at the general meeting on 8 June 2006, distributes the note to H1 Investments SARL. The distribution to H1 Holding ApS will take place formally on 31 May 2006.

On 31 December 2004, funds from H1 Holding ApS (dividend received from H1.2 LLC) totaling DKK 204,423,038 had been transferred to H1 Investments Inc. as a loan, and H1 Holding ApS booked a receivable from H1 Investments Inc. in this connection.

H1 Holding ApS's debt of $ 1,597,808 to H1 Investments SARL is redeemed by transfer to H1 Investments SARL of a share of this receivable from H1 Investments Inc. H1 Investments SARL''s simultaneous debt of $ 1,597,808 to H1 Investments Inc. is not stated fulfilled.

The net result is then, i.a. that H1 Investments SARL has a claim on H1 Investments Inc. of $ 1,597,808 in accordance with the promissory note issued on April 30, 2005. H1 Investments SARL's debt to H1 Investments Inc. on the same amount has not been repaid, while H1 Holding ApS''s debt to H1 Investments SARL has been repaid by transfer of share of original claim on H1 Investments Inc. (DKK 204,423,038), which is then reduced by a corresponding amount.

Promissory Notes of $ 2,787,287 and $ 1,883,648 of July 31 and July 28, 2005, respectively

On July 28, 2005, H1 Holding ApS transfers a share of $ 4,670,936 of its receivables acquired on January 31, 2004 from H1 Investments Inc. of originally DKK 204,423,038, cf. above, to H1.2 LLC (head office) by capital increase.

From information from the representative, cf. her letter of 19 October 2011 together with information from the group's lawyer UJ etc., it appears that in the bookkeeping transfer of the $ 4,670,936 $ 2,787,287 to H1.2 LLC (the branch) by capital increase, where the amount is returned to H1 Investments Inc., according to the representative as

"...

an advance payment to H1 Investments Inc. pursuant to the Line of Credit of 29 April 2004.

... "

Thus, H1.2 LLC (the branch) gets an asset in the books that can offset the $ 2,787,287 recorded as debt to H1 Investments Inc.

The next day, July 29, 2005, due to tax issues in Mexico, the capital increase is returned to the branch. At the same time, the rights under the Line of Credit Agreement are transferred to the head office. As the head office is not a party to this agreement, H1 Investments Inc. transfers an amount of $ 2,787,287 to the head office by a promissory note of July 31, 2005 (receivable from H1 Investments Inc.). At the same time, H1 Investments Inc.'s liabilities to the branch under the Line of Credit Agreement in the same amount lapse.

For the remaining amount of $ 1,883,648 ($ 4,670,936 - $ 2,787,287), H1 Investments Inc. issues a promissory note of July 28, 2005 (receivable from H1 Investments Inc.) to H1.2 LLC (Headquarters). According to the representative

"...

to confirm the balance still owed by H1 Investments Inc. to H1.2 LLC (Headquarters).

... "

Subsequently, the relevant promissory notes, totaling $ 4,670,936, will be distributed to H1 Holding ApS, which will distribute the notes to H1 Investments SARL on June 8, 2006.

The net result is then, i.a. that H1 Investments SARL has a claim on H1 Investments Inc. of $ 4,670,936 according to the promissory notes issued. H1 Holding ApS´ original claim on H1 Investments Inc. (DKK 204,423,038) has been reduced by a corresponding amount.

Promissory Notes of $ 2,000,000 and $ 2,579,980 dated March 31 and April 5, 2005, respectively

March 3, 2005 transferred from H1 Investments Inc. via H1 Investments SARL $ 4,688,046 to H1 Holding ApS as a loan. H1 Holding ApS transfers the proceeds to H1.2 LLC (the head office) in the event of a capital increase, as the proceeds are transferred to H1.2 LLC (the branch) in the event of a capital increase.

Information from the representative, cf. her letter of 19 October 2011 together with information from the group's lawyer UJ, etc., states that on, 31 March 2005, the capital increase will be reversed due to tax conditions in Mexico. At the same time, for $ 1,628,852, the rights under the Line of Credit Agreement are transferred to the head office, and for $ 371,147, receivables from a related entity. On the same day, a $ 2,000,000 promissory note is issued by H1 Investments Inc. to H1.2 LLC (the head office) to verify the head office's receivable from H1 Investments Inc.

On April 5, 2005, the capital increase is reversed by an additional $ 2,579,980. At the same time, receivables are transferred to VAT (vat). H1.2 LLC (the head office) first transfers the receivables to H1 Investments Inc., whereby the head office receives a claim on H1 Investments Inc. on the same amount. This is done by issuing the promissory note of April 5, 2005 at $ 2,579,980.

Thereafter, the issued promissory notes are distributed to H1 Holding, which redistributes these to H1 Investments SARL.

H1 Holding ApS's debt of $ 4,688,046 to H1 Investments SARL is redeemed by transfer to H1 Investments SARL of a share of the receivable from H1 Investments Inc. of originally DKK 204,423,038, cf. above.

The net result is then, i.a. that H1 Investments SARL has a claim on H1 Investments Inc. for a total of $ 4,579,980 according to the promissory notes issued. H1 Investments SARL's debt to H1 Investments Inc. on the same amount has not been repaid, while H1 Holding ApS´'s debt to H1 Investments SARL has been repaid by transfer of share of original claim on H1 Investments Inc. (DKK 204,423,038), which is then reduced by a corresponding amount.

SKAT has deemed H1 Holding ApS liable to withhold dividend tax, cf. the Corporation Tax Act, section 2, subsection. 1, letter c, cf. section 65 of the Withholding Tax Act, in 2005 with DKK 17,604,962 (28% of DKK 62,874,867), and the company was considered liable for the payment of the non-withheld dividend tax.

Pursuant to section 2, subsection 1, letter c, 1st sentence, companies domiciled abroad are, in principle, taxable in Denmark on dividends received from sources in this country. However, this does not apply to dividends received by a company that owns at least 20% (in 2006) for a continuous period of at least 1 year, within which period the dividend date must be, cf. the current and second paragraphs of the current provision. As an exception to the above-mentioned point of departure, it follows from the same provision, cf. reduce withholding tax.

It is undisputed that the dividend derives from H1 Holding ApS, and that the dividend is thus "received from sources in this country". Furthermore, the dividend is paid upwards in the group, where - according to SKAT's information - there are no Danish companies, which is why it can be assumed that the dividend is received by a company domiciled abroad. It is thus SKAT's opinion that the conditions for a limited tax liability of the dividend to be imposed as a starting point are present.

Pursuant to section 65, subsection 1, companies that are taxable under the Corporation Tax Act must, as a starting point, include dividend tax in connection with any decision or decision on the payment or crediting of dividends. The tax liability pursuant to section 2, subsection 1, letter c, is finally fulfilled by the withholding tax on dividend tax made in accordance with section 65 of the Withholding Tax Act, cf. section 2, subsection 1 of the Corporation Tax Act. 2, 2. pkt.

H1 Investments Inc. is the actual recipient of / correct income recipient in relation to the dividend.

It is hereby referred to that the background for the transfer of H1 Holding ApS to H1 Investments SARL, which only owns shares in this company, is uncertain.

From the consolidated summaries presented, it cannot be unequivocally established, as claimed by the representative, that the transfer took place as part of an international restructuring. The group overviews, which are not dated, illustrate that the group has 4 Luxembourg companies, some of which have subsidiaries, as well as loans to group companies. The bank documents submitted for the period 2003-2006 also show that there are only a few entries per year that have the character of minor expenses for the administration of H1 Investments SARL for, for example, fees, etc. In addition, it appears that there have been no cash flows through H1 Investments SARL. group creditors in the Cayman Islands and Guernsey and the group debtors in Denmark and Mexico, neither in the form of loans, interest or interest payments.

None of the loan amounts, neither principal, interest or installments, have been transferred via H1 Investments SARL's bank account. It must therefore be assumed that the financing, installments and interest are made directly between the group companies in the Cayman Islands / Guernsey and the debtors. In order to hedge the cash flows around the loan transactions and dividends, SKAT has requested a bank statement for H1 Investments Inc. for the financial years 2003-2006, stating what the individual transactions relate to and who the counterparty is. H1 Holding ApS has not submitted these documents, as these are claimed not to be relevant to the case.

In addition, the distribution of the 5 promissory notes did not appear in H1 Investments SARL"s original annual report for 2006, but the annual report has simply been amended in continuation of SKAT's inquiries about the case.

Although the amended annual report may have triggered a - in relation to the dividend tax of DKK 17,604,962 - insignificant tax payment in Luxembourg, this does not document that the dividend was actually received by H1 Investments SARL. There is no basis for - in the absence of reliable documentation that the annual report corresponds to the actual amount transactions that have taken place - to use the later submitted, adjusted annual report for H1 Investments SARL. This applies not least because the company has not documented how the mentioned transactions have been handled in H1 Investments Inc.'s annual report, etc.

The company has not proved that the fact that the dividend is not included in H1 Investments SARL"s accounts is due to an error. In a letter dated 1 July 2010 to SKAT, the company stated that

"...

there were no errors in the financial statements relating to H1 Investments SARL's liabilities to H1 Investments,

... "

which is contradicted in the mail of 26 August 2010, where it is stated that there was a typing error in the annual report for 2006.

The company has stated in the complaint that

"...

The distribution of Promissory Notes was correctly registered in H1 Investments SARL''s books at the time of distribution.

... "

In support of this, a Record Book Index has been submitted regarding "H1.1, ... 1, Funding of Entities and Related Transactions" for the calendar year 2006. This shows, among other things, that the general meeting resolution of H1 Holding ApS on 8 June 2006 is listed as Registration No. 84, that Registration No. 85 is a statement of the dividend payment on July 17, 2006, and that Registration No. 86 is a transfer of promissory notes from the Company to H1 Investments SARL on May 31, 2006. Record Book Index ′et shows the registrations in chronological order. Thus, for example, registrations Nos. 1-7 on 30 January 2006, registrations Nos. 8-12 on 27 February 2006 and registrations Nos. 13-14 on 3 March and so on. Therefore, it would also be expected to find the general meeting resolution of the company on June 8, 2006, and the other two registrations relating to the distribution inserted between registrations Nos. 23-25, relating to 28 April 2006 and registrations Nos. 26-31, relating to 25-31 July 2006. However, all registrations relating to the distribution have been inserted last in the index, as records no. 84-86, and thus breaks with as the only records with the chronology in the Record Book Index. The presented Record Book Index thus does not support that the distribution was correctly registered in H1 Investments SARL''s books at the time of distribution as stated by the company. On the contrary, on the basis of the Record Book Index, it must be assumed that the documentation regarding the distribution has been added subsequently, just as the distribution has only been added subsequently in the annual report for H1 Investments SARL.

As it is undisputed that the company has made a distribution of the 5 promissory notes, which has led to a decrease in the company's equity, and as the distribution is actually seen to have been conducted completely outside H1 Investments SARL, it must be assumed that the distribution in the place is transferred directly to H1 Investments SARL''s shareholder H1 Investments Inc. Since the distribution consisted of promissory notes, where H1 Investments Inc. was a debtor, the finding that the promissory notes are not owned by anyone other than H1 Investments Inc. already implies that H1 Investments Inc. has been enriched.

The company has provided a number of explanations for the creation of the 5 promissory notes, of which the explanation set out in appendix 24 to the company's letter of complaint is the most detailed. Throughout the process, however, the company has acknowledged that the transactions that led to the creation of the promissory notes were not due to actual transfers of funds between the companies involved. repayments, interest payments or accruals or any kind of actually detectable transfers.

With the transactions made, it is in fact a question of money being withdrawn from H1 Holding ApS, which according to its annual reports for 2004, 2005 and 2006 had equity of just over DKK 71 million, respectively. DKK 84 million. DKK and 19 mill. Thus, it is actually H1 Holding ApS that has financed the payment of "Top-Up" amounts to the American and German investors. The described transactions therefore in fact entail a transfer of funds from H1 Holding ApS to H1 Investments Inc.

It must then be assumed that the distribution took place outside H1 Investments SARL and has enriched H1 Investments Inc. direct. Da H1 Investments Inc. is located in the Cayman Islands, which has neither entered into a double taxation agreement with Denmark nor is covered by the Parent / Subsidiary Directive, the exceptions to the principle of limited tax liability of the dividend do not apply, and dividend tax should therefore have been included.

It is SKAT's opinion that in the circumstances described - including as a result of the dividend only subsequently following SKAT's inquiries - being booked in H1 Investments SARL, it must be the company's proof that the subsequent bookkeeping covers an actual reality. However, the company has not provided any documentation in the form of original documents and / or accounting material regarding the consequences of the transactions for H1 Investments Inc., which can prove that the subsequent posting of the dividend is not merely an attempt to avoid the consequences of the transactions made in the form of withholding tax in this country.

Taxation must not be waived pursuant to the Danish-Luxembourg double taxation agreement.

The double taxation agreement of 17 November 1980 between Denmark and Luxembourg, cf. Executive Order no. 95 of 23 September 1982, stipulates that dividends paid from a company domiciled in Denmark to a recipient domiciled in Luxembourg may not be subject to withholding tax in Denmark, exceeding 5% of the gross amount of the dividend if the recipient is the "rightful owner of the dividend" and directly owns at least 25% of the capital of the company paying the dividend, in accordance with Article 10 (2). 2.

It is SKAT's opinion that the conditions for waiving or easing the taxation of dividends in Denmark according to the Danish-Luxembourg double taxation agreement are not present.

This already follows from SKAT's view that H1 Investments SARL is not in fact the recipient of / is the correct income recipient of the dividend, cf. above.

Even if H1 Investments SARL is considered to have actually received the dividend / be the rightful recipient of the dividend, it is SKAT's opinion that H1 Investments SARL cannot be considered the "rightful owner" of the dividend.

According to the wording of the double taxation agreement, it is thus a condition for the cut-off of Denmark's right to tax dividends as a source state that the Luxembourg recipient of the dividend is its "rightful owner".

The term "beneficial owner" has been used in the OECD Model Convention and its comments since the revision of the Model Convention in 1977.

The comments on the term "beneficial owner" contained in the comments have been gradually clarified, but there is no basis for claiming that there have been material changes in relation to what is meant by the term, which is also taken into account by Winther- Sørensen and Bundgaard, SR-SKAT 2007, p. 398.

In the comments on the Model Convention, the question of the understanding of the term "rightful owner" is now dealt with in particular in paragraphs 12, 12.1 and 12.2 of Article 10.

The comments state that a double taxation agreement does not in itself cut off / limit source state taxation, unless the rightful owner is domiciled in a state with which the source state has entered into an agreement. Crucial to determining the "rightful owner" is, according to the comments, whether the formal recipient of the dividend merely acts as a "conduit" for another person who actually receives the income in question. Thus, when the actual powers of the formal beneficiary (the intermediate company) to decide on the amount to be disposed of are very narrow or non-existent, access to the double taxation agreement can be cut off.

The same view of law has been put forward by Klaus Vogel in "Klaus Vogel on Double Taxation Conventions", 3rd ed., P. 563, point 10 in fine, where i.a. the following is stated:

> "...
>
> even a one hundred percent interest in a subsidiary does not necessarily preclude the latter´s "beneficial ownership" in the assets held by it. There would have to be other indications of the fact that subsidiary management is not in a position to make decisions different from the will of the controlling shareholder. If it were so, the subsidiary power would be no more than formal and the subsidiary would, therefore, not qualify as a "beneficial owner" within the meaning of Arts. 10 to 12 MC.
>
> ... "

The real powers of the formal beneficiary to dispose of the amount are thus also of crucial importance here for the qualification as "rightful owner", as the formal beneficiary will not be considered a "rightful owner" if he can not make dispositions in relation to the income in question. , which deviates from the will of an underlying owner.

The comments refer to the report "Double Taxation Conventions and the Use of Conduit Companies" prepared by the Committee on Fiscal Affairs, in which a number of examples are given of the issues that the use of "conduit companies" creates. The report mentions the issue of "Direct Conduits" in paragraph 4, which is based on a situation where a company in a Contracting State has been established exclusively as an intermediary (in State A) between the payer (in State B) and the beneficiary ( in a third State) so that the beneficiary can benefit from the double taxation agreement between States A and B when no agreement has been concluded between B and the third State providing the same benefits. The report mentions the possibility of preventing unintentional tax evasion without special rules. It is stated here (paragraph 14.b. of the report) that the Model Convention in Articles 10- 12 requires the recipient of dividends, interest and royalties to be the "beneficial owner" (at that time the comments did not explicitly mention "conduit companies"). The following is stated:

"...

Thus, the limitation is not available when, economically, it would benefit a person not entitled to it who interposed the conduit company as an intermediary between himself and the payer of the income [...] Thus a conduit company can normally not be regarded as the beneficial owner if, though the formal owner of certain assets, it has very narrow powers which render it a mere fiduciary or administrator acting on account of the interested parties (most likely the shareholders of the conduit company.

... "

It is the second part of this conclusion that is reproduced in the comments to the model agreement.

SKAT denies that there should be grounds for assuming that the terms "rightful owner" and "rightful income recipient" should be understood the same. "Rightful owner" is a contractual term to which the comments to the model agreement serve as an interpretative contribution. Right income recipient, on the other hand, is a concept developed in Danish case law that must be interpreted on the basis of this practice. There is no reason to believe that the term "rightful owner" should be limited to having only the same content as the term "rightful income recipient", on the contrary, the comments on the model agreement show that "rightful owner" is not limited to having the same content as the term "right income recipient".

On the basis of the above, H1 Investments SARL cannot be considered to have had any actual disposal and financial benefit of the distributed claims on H1 Investments Inc.

Furthermore, H1 Investments SARL in Luxembourg - if it is considered the right income recipient - has functioned as a pure flow-through company, which is emphasized by the fact that the company only has intra-group debt and receivables, as well as the shares in H1 Holding ApS. The financing of H1 Investments SARL ̈s activities has taken place directly by group companies in Guernsey and the Cayman Islands and a large part of the financing of the Mexican subsidiaries has taken place before the company took over its financing. Thus, there is no actual lending activity in H1 Investments SARL, just as there are no bank transfers via the company. The financing is therefore presumed to have been made directly from the group companies in the Cayman Islands and Guernsey to the companies in Mexico, just as installments and interest must be paid directly to the companies on the Cayman Islands and Guernsey outside of H1 Investments SARL in Luxembourg. H1 Investments SARL has no employees and therefore does not have the necessary competencies to carry out this financing activity. It is stated that the administration is handled by a sister company to H1 Investments SARL. However, this company has modest costs and it is not probable that this company will actually engage in financing activities. It is noted that the company has not complied with SKAT's request to submit bank statement statements from H1 Investments Inc. that the administration is handled by a sister company to H1 Investments SARL. However, this company has modest costs and it is not probable that this company will actually engage in financing activities. It is noted that the company has not complied with SKAT's request to submit bank statement statements from H1 Investments Inc. that the administration is handled by a sister company to H1 Investments SARL. However, this company has modest costs and it is not probable that this company will actually engage in financing activities. It is noted that the company has not complied with SKAT's request to submit bank statement statements from H1 Investments Inc.

The company has stated that the purpose of the transfer of H1 Holding ApS to H1 Investments SARL took place as part of a global restructuring to make H1 Holding ApS a pure holding company and to bring together all the financing activities in Luxembourg. However, only H1 Holding ApS has been transferred to H1 Investments SARL as part of this global restructuring, which is why there is no commercial purpose for the injection of H1 Investments SARL, which is not seen to have any other purpose than to seek to avoid Danish withholding tax (or obtain other tax benefits).

Even if it is assumed that the subsequent posting of the dividend at H1 Investments SARL actually covers a correction of an error, it must be stated that no explanation has been given as to why significant amounts were to be distributed to H1 Investments SARL from the company, so that the transactions - which according to the company itself were pure paper transactions, which were solely intended to create manufacturing advantages in relation to the accounts in H1.2 LLC's branch in Mexico - should in fact have significant financial consequences for the company and H1 Investments SARL. It must therefore be assumed that at no time has it been the intention that H1 Investments SARL should retain any amount received from the company, whereby it is noted that the distributed promissory notes were also fully matched (if they are assumed to have been "

Against this background, H1 Investments SARL in Luxembourg is considered to act as a flow-through entity for H1 Investments Inc., which is a resident of the Cayman Islands, and H1 Investments SARL is therefore not entitled to obtain the benefits arising from the double taxation agreement.

SKAT can not agree with the representative's view that the company does not have narrow powers because the ultimate owner of the group is part of the management of the company. Based on the documents that SKAT has been presented with, the management of the various companies is the same and consists of e.g. IH and NJ. IH does not participate in the management of the company, but a power of attorney is given to NJ, who acts as the signatory on all transactions. In any case, the personnel composition of the management says nothing about the company's real powers over the amount distributed.

As regards the answers relied on by the company from the Minister of Taxation to the Folketing's Tax Committee, which were submitted in connection with the processing of L99, cf. the letter of complaint, pages 14-15, it is noted that they all relate to the original proposal for the wording of the Corporation Tax Act . 1, letter c, according to which withholding tax on dividends should always be waived if the recipient of the dividend was domiciled in the EU or a DBO country. However, after the submission of the above answers, the wording of the provision was changed so that it was clarified that withholding tax should only be waived if under EU law (the Parent / Subsidiary Directive) or a DBO is obliged to waive or reduce withholding tax . None of these answers is therefore relevant to the interpretation of the Corporation Tax Act, section 2, subsection. 1, letter c,

It is still SKAT's opinion that the dividend for the reasons mentioned above can not be considered to have actually benefited H1 Investments SARL, so that this company can not be considered a "rightful owner" in relation to the dividend, which must instead be considered flowed. on to H1 Investments Inc. on the Cayman Islands. For that reason alone, the company's reference to the ruling in <u>SKM2010.268.LSR</u> is not relevant, whereby it is otherwise noted that the ruling has been brought before the courts.

It is SKAT's opinion that in the present case there is an abuse of the double taxation agreement between Denmark and Luxembourg. In SKAT's view, the refusal to allow the group to benefit from the benefits of the double taxation agreement is thus not contrary to the agreement's overall purpose of avoiding double taxation. Reference is made to point 9.4 in the comments on Article 1, which states:

> "...
>
> Whichever of the two views is taken, there is agreement that states are not obligated to grant benefits under a double taxation agreement by participating in events that involve abuse of the provisions of the agreement.
>
> ... "

If SKAT agreed to allow the Luxembourg company to be covered by the double taxation agreement with Luxembourg and thus to be covered by the exemption in section 2 (1) of the Danish Corporation Tax Act. 1 (c), on the other hand, there would be an allocation of an unfair purpose.

SKAT thus does not consider the dividend payment to be reduced or waived pursuant to the nature of the double taxation agreement. 10.

Taxation shall not be waived pursuant to the Parent / Subsidiary Directive 90/4351 / EEC.

It is SKAT's opinion that the conditions for being able to apply the parent / subsidiary's benefits are not present.

This already follows from the fact that H1 Investments SARL is not actually considered to be the recipient of / is the correct income recipient of the dividend.

Even if H1 Investments SARL is considered to be the actual recipient of the right income recipient in relation to the dividend, the conditions for being able to apply the parent / subsidiary's benefits are not considered to be present.

Article 1 (1) of the Directive 2 in conjunction with the double taxation agreement art. 10 as well as the case law of the European Court of Justice on the concept of abuse implies that it is a condition for being able to apply the benefits of the directive that H1 Investments SARL in Luxembourg can be considered to be "the rightful owner" of the dividend from H1 Holding ApS. This condition is not met.

It would thus be contrary to the purpose of the Parent-Subsidiary Directive to allow the Group to obtain the benefits of the Directive.

It follows from Article 5 of the Parent-Subsidiary Directive that the profits which a subsidiary distributes to its parent company are exempt from withholding tax. The starting point is thus that withholding tax can not be levied on dividend distributions to companies domiciled in another Member State when the parent company meets the capital requirement and the ownership time requirement in the Directive. However, this starting point may be deviated from. It is thus stated in Article 1 (1) of the Directive. 2, that the Directive does not preclude the application of national provisions or conventions which are necessary to prevent fraud and abuse.

The use of the term "rightful owner" in the double taxation treaties serves precisely to combat fraud or abuse within the meaning of Art. 1 piece. 2. The directive thus does not preclude the imposition of withholding tax when the rightful owner is not covered by a double taxation agreement with Denmark.

The Corporation Tax Act, section 2, subsection 1, letter c, implies, according to its clear wording, that Denmark must not waive withholding tax, unless there is an actual obligation to do so under the Parent / Subsidiary Directive. To the extent that EU law does not preclude withholding of withholding tax, thus, withholding tax must be withheld.

In addition, the case law of the European Court of Justice shows that there is nothing to prevent companies established in another Member State from invoking EU law - including the harmonized rules that follow from e.g. Parent-Subsidiary Directive - when it can be assumed that the establishment of a holding company in another Member State

> "...
>
> aims to avoid withholding tax on payments to non-European enterprises if such a construction serves no commercial purpose,
>
> ... "

cf. the Commission's interpretation of "Purely artificial arrangements" in the Commission Communication on the Application of Measures to Combat Abuse in Direct Taxation - in the EU and in Relations with Third Countries (Com (2007) 785). Reference is made to Cadbury Schweppes (Case C-196/04), Halifax (Case C255 / 02) and Part Service (Case C-425/06). This shows, among other things, that the assessment of whether there is such an abuse that the benefits that follow from the rules can nevertheless not be asserted includes whether the main purpose of the transactions made is to obtain tax or duty benefits, and whether in relation to this there are purely artificial events.

SKAT is therefore of the opinion that EU law can not to a greater extent than the double taxation agreements based on the Model Convention be considered to prevent Denmark from implementing a withholding tax on dividends on the basis that the rightful owners of the amounts in question are resident outside EU.

SKAT is aware of the National Tax Tribunal's ruling of 3 March 2010, published as SKM2010.268.LSR does not agree with the decision, which has been brought before the courts. The decision also contains other circumstances than the present case.

SKAT's decision does not infringe the freedoms of the EC Treaty.

The company has argued that the implementation of withholding tax should be contrary to the EU's freedoms.

In relation to the EU's freedoms - which presumably refers to the current provision in TEF Article 43 on the right of establishment - it is noted that in SKAT's view there is no basis for claiming that the general provisions of the Treaty should cut a withholding tax in further extent than what follows from the Parent / Subsidiary Directive. It is true that the term "rightful owner" is not used in the payment of dividends from Danish companies to Danish holding companies, but in these cases a further payment of the dividend to a company in a tax haven can also be withholding tax in this country. The two situations are therefore not comparable.

SKAT's decision is not in conflict with the anti-discrimination provision in the nature of the double taxation agreement. 24.

It has been argued that the implementation of withholding tax should be contrary to the anti-discrimination provision of Article 24 of the Double Taxation Convention.

In SKAT's view, Article 24 of the Double Taxation Agreement does not preclude the right to tax. The term "rightful owner" is only relevant in the source state, as the term is used precisely to determine when the source state can impose withholding tax.

The fact that the concept of the Danish tax authorities has not been used in relation to the taxation of Danish companies receiving dividends from companies domiciled abroad is therefore simply a consequence of the concept not being relevant at all to the question of whether taxation takes place in the recipient country of domicile.

Liability.

The company has further argued that the company is not liable for the withheld dividend tax pursuant to section 69 of the Withholding Tax Act.

In the company's view, the situation has not been so clear that it can be assumed that the company has shown negligence by failing to include dividend tax.

The company has referred to the High Court judgment reproduced in <u>SKM2002.470.ØLR</u>, which concerned a taxpayer who made strings for musical instruments for a company that the taxpayer was considered to be in an employment relationship to, which is why the company was obliged to include A-tax and labor market contributions. The High Court found that the criteria included in the assessment of the existence of an employment relationship did not lead to an unambiguous result, and found on this basis that the relationship had not been so clear that it could be assumed that the company had shown negligence by failing to include A-tax and labor market contributions. The judgment is, if the premises therein are to be interpreted in such a way that there must be some clarity about the state of the law in order to be able to impose liability for lack of withholding, clearly contrary to the unambiguous wording of section 69 of the Withholding Tax Act, according to which it is the duty of the person liable to withhold to prove that no negligence has been shown. It is clear that doubts about the state of the law can not in themselves be dissuasive, as the withholding party always has the opportunity to have these doubts clarified in advance.

It also follows from established practice from the Supreme Court that it is relevant whether the person liable for withholding has had "knowledge of the circumstances that justify the duty of withholding", cf. <u>SKM2003.555.HR</u> and <u>SKM2008.613.HR</u> .

In addition, the circumstances in the present case are not comparable to the circumstances in the above-mentioned High Court judgment. In the present case, there is no distinction between two tax law concepts such as employee and trader. On the other hand, it is a matter of compliance with a protection rule, which must place special demands on due diligence. Thus, a company can not evade liability for the non-payment of dividend tax simply because the company had tried to organize the dispositions so that the company could precisely avoid dividend tax.

By trying to secure benefits to which neither the parent / subsidiary directive nor the Danish-Luxembourg double taxation scheme seeks access, it has embarked on a risk that the company has not clarified or sought to clarify.

The company may not have been in uncertainty as to the facts. The Supreme Court's practice places crucial emphasis on the detainee's knowledge of the circumstances that imply that withholding should have taken place.

The company's view that the company was unclear about the legal situation must therefore be rejected, already because the person (s) who organized the event, necessarily had full knowledge of the purpose, etc., and the person (s) who had control of the company, has therefore been in possession of all relevant information.

It is therefore SKAT's overall view that the company is liable for the payment of dividend tax.

The company's claim and arguments

The company's representative has in principle filed a claim that the company's withholding obligation regarding dividends to the parent company be abolished, cf. the Corporation Tax Act, section 2, subsection. 1, letter c, cf. section 65 of the Withholding Tax Act. In the alternative, a claim has been made that the company has not shown negligence, cf. section 69 of the Withholding Tax Act.

In support of the principal claim, it has generally been argued that H1 Investments SARL is the correct income recipient in relation to the dividend in question. Furthermore, it has been argued that H1 Investments SARL is the "rightful owner" of the dividend, and that H1 Investments SARL is not subject to limited tax liability to Denmark of the dividend in question, cf. the Corporation Tax Act, section 2, subsection 1 letter c in conjunction with Article 10 of the double taxation agreement between Denmark and Luxembourg, as well as the Parent / Subsidiary Directive, Article 1, para. 2 and Article 5.

In support of the subsidiary claim, it has been argued that the company has not shown negligence, which is why the company is not responsible for payment of the missing amount, cf. withholding tax act § 69, para. 1.

Distribution of dividends.

At the heart of the matter, at its annual general meeting on June 8, 2006, the company decided to distribute a dividend of DKK 62,874,867 (equivalent to $ 10,848,724). The distribution did not take place by distributing a cash amount, but instead by distributing 5 receivables (promissory notes) on H1 Investments Inc. The distribution has not actually been further channeled from H1 Investments SARL. In connection with the liquidation of H1 Investments Inc. At the end of 2009, H1 Investments Inc.'s obligations under the 5 promissory notes were taken over by H1.2 LLC.

Reference is made to the background for the issuance of the 5 promissory notes with H1 Investments Inc. as debtor, and then it is stated that SKAT, in interpreting the fact, overlooks that H1.2 LLC (the branch) did not have liquidity from the investments in the ... 1 building or from any other source to be able to pay to H1 Investments Inc .'si 2005. If ... the 1-building had had sufficient funds itself, there would have been no need for cash flow guarantee payments (top-up payments) to the investors. If this had been the case, investors would have received 9% in cash dividends on their investments directly.

Next, reference is made to statements by the group's lawyer UJ.

According to the representative, the 5 promissory notes were distributed from H1.2 LLC's branch to H1.2 LLC's head office, which then redistributed the receivables to H1 Holding ApS, which in turn re-distributed these to H1 Investments SARL. This happened at the general meeting on June 8, 2006.

In the event of an obvious error, the distribution did not initially appear in H1 Investments SARL''s accounts for 2006, cf. above. However, the distribution had been correctly registered in the Record Book Index for H1.1, ... 1 Funding of Entities and Related Transactions January - December 2006. This documentation was part of H1 Investments SARL''s accounting material in 2006, and the error was committed in the preparation of the accounts, does not imply that the distributed receivables that have been carried out at a lawfully held general meeting can be disregarded.

In supplementary submissions to the complaint, SKAT's comments regarding the Record Book Index are disputed as completely undocumented. The documentation in the Record Book Index was finally completed in March 2007.

E-mail correspondence between SD (Tax manager) and lawyer UJ on 20/21 has been submitted as documentation. February 2007 regarding work in connection with a tax audit for H1 Holding ApS. This is stated in the inquiry of 20 February 2007 from UJ to SD as follows:

"...

The usual summary of any changes in the loan accounts relating to Mexico for 2006 has been completed, but I dont believe that any of the fundings or repayments made in 2006 would have any impact on the accounts of H1 Holding ApS. After the extensive amount of work required with H1 Holding ApS as a result of the Danish tax audit and related events, I believe we were at the point last June when the 2005 accounts were being finalized whereby H1 Holding ApS was going to declare and pay a dividend to its shareholder, H1 Investments SARL, in the amount of DKK 62,874,867, and this dividend was going to be satisfied by the assignment of certain US dollar receivables which were being distributed to H1 Holding ApS from H1.2 LLC. The intention was that after this distribution in June of 2006, the balance sheet of H1 Holding ApS would be essentially fixed and that there would not be any material loans receivable or payable thereafter which generate interest income or expense, and H1 Holding ApS would act as a pure holding company for the shares of the two subsidiaries. The documents for the assignment to H1 Holding ApS were actually completed in December 2005, even though they were effective on May 31 2005.

What is not clear to me, however, is the state of the documentation with respect to the declaration of the dividend by H1 Holding ApS (which I presume took place at the annual meeting) and of the documentation for the assignment of the US dollar receivables from H1 Holding ApS to H1 Investments SARL in satisfaction of the dividend payment. Could you please let me know whether or not you have copies of those documents or whether we should ensure that signed copies are provided to you by NJ. I have not conducted a complete review of our files, but it appears that we were not provided with copies either.

Apart from this one open item, I believe that there would be no other transactions with other members of the group in which H1 Holding ApS participated during 2006. We are currently engaged in a process, specifically with the Luxembourg companies in the chain, H1 Investments SARL and F1 SARL,

or ensuring that all of the loan accounts reconcile between the various group companies and that all of the debt-equity capitalizations are working the way in which they were intended. I was hoping, therefore, that you could forward to me your schedules of any loans payable or receivable to or by H1 Holding ApS as at December 31, 2005 when the last financials were finalized, in the currency in which the loans are denominated, so that we can make sure that we take into account the Danish company records as well in this exercise.

... "

The Assignment document dated 31 May 2006 states that H1 Holding ApS transfers all its rights to the notes in question to H1 Investments SARL. The document is co-signed on behalf of H1 Investments Inc., by NJ, which as the debtor according to the issued promissory notes acknowledges the transfer.

Furthermore, a Statement of 17 June 2011 prepared by NK (together with NJ CEO of H1 Investments SARL) has been submitted, of which i.a. it appears that

"...

The final version of the 2006 Flow of Funds Memorandum was received by me on January 30, 2007 by mail from R1 LLP.

... "

Reference is made to the Memorandum of 31 January 2007 from UJ to him, in which it is stated about the distribution in question:

"...

Persuant to a resolution dated December 31, 2005, H1.2 LLC Head Office reduced its capital by the amount of USD 10,484,724,43 effective May 31, 2006, which reduction was satisfied on May 31, 2006 by the assignment of receivables from H1 Investments in that amount to H1 Holding ApS.

... "

The Statement of 17 June 2006 further states that "the actual 2006 Group Record Book" was received at his office "on or about March 8, 2007". No changes were then made to the book.

Finally, it should be noted that the distribution of the dividend was reported to SKAT as early as July 2006.

H1 Investments SARL

H1 Investments SARL is a limited liability company incorporated on 28 October 1999 in accordance with Luxembourg law. The purpose of the company is to be a holding company for companies in Luxembourg or foreign companies and to participate in other forms of investment, buying and selling, financing, administration and development of the portfolio.

IH Gruppen has several companies gathered in Luxembourg (according to the representative, 9 companies have been established in Luxembourg since 1999), and Luxembourg is thus the center for management and administration of IH Gruppen's companies outside Canada and with investments in Mexico, UK, United States, Israel and other places. H1 Investments SARL was solely one of the owner and financing companies in Luxembourg with interests in Mexico.

SKAT seems to presuppose that financing can only take place in the form of transfers of cash. However, H1 Investments SARL had from time to time had significant funds at its disposal, either by transfer or instructions to transfer funds. The company therefore does not agree that it can be established that H1 Investments SARL did not have funds available for lending or other financing activity and does not agree that the financing took place via the group company in the Cayman Islands and Guernsey.

The fact that no bank transfers have been made via H1 Investments SARL does not mean that the financing has taken place directly via companies in the Cayman Islands and Guernsey.

H1 Investments SARL is managed by one or more directors and does not have a board of directors. The chief shareholder IH has to a very large extent participated in the decisions of the Executive Board. IH Gruppen has chosen to centralize all general costs Luxembourg, including expenses for premises and employees in a sister company to H1 Investments SARL, G1 Holding SARL, which also has a ... project in Mexico, and the group saw no benefit in refactoring and distributing these costs at other group companies including H1 Investments SARL. Management, administration, accounting, bookkeeping and other functions for H1 Investments SARL are thus handled by the employees of G1 Holding on an equal footing with this company's handling of interests for other group companies in

Luxembourg. Against this background, H1 Investments SARL does not have employees on the payroll or premises in Luxembourg. In the main, the interests of Mr. NK (Management) and mrs. IS, who is in charge of the administration, as well as by Mr. NJ, who is the director of the group and who travels frequently to Luxembourg from Amsterdam. The group's total costs for administration in Luxembourg amount to approx. € 165,000 annually. For administrative reasons, the company has not collected the expenses from the sister companies. The company does not agree that the amount for administration is modest as claimed by SKAT. The group's total costs for administration in Luxembourg amount to approx. € 165,000 annually. For administrative reasons, the company has not collected the expenses from the sister companies. The company does not agree that the amount for administration is modest as claimed by SKAT. The group's total costs for administration in Luxembourg amount to approx. € 165,000 annually. For administrative reasons, the company has not collected the expenses from the sister companies. The company does not agree that the amount for administration is modest as claimed by SKAT.

It is disputed that H1 Investments SARL can not be considered to have had any actual disposal and financial benefit from the distributed claims on H1 Investments Inc., thus the equity has increased. Furthermore, it is disputed that H1 Investments SARL was not actually authorized to dispose of dividends distributed from H1 Holding ApS in 2006, thus the mere fact that the shareholder is a member of the company's Executive Board shows that it is not correct that H1 Investments SARL has had narrow or non-existent powers to dispose of the capital in H1 Investments SARL, including to dispose of dividends received.

Right income recipient.

It is a clear starting point in Danish tax law that dividends are taxed on the taxable person who, in civil law terms, owns the shares in the dividend-distributing company. If the right recipient of the dividend is to be regarded as someone other than the owner of the shares, this requires, in practice, a very special justification.

There is a valid agreement entered into on the transfer of the shares in H1 Holding ApS, and the transfer of shares is noted in the company's shareholder register (owner's register). It must be assumed as undisputed that the shares are owned in civil law by H1 Investments SARL, which has the usual ownership powers. H1 Investments Inc. has no ownership rights to the shares. H1 Investments SARL is then also entitled to receive dividends distributed at the company's general meetings. It is also H1 Investments SARL that has actually received the dividend, and the dividend must also be taxed at H1 Investments SARL as the right income recipient for the dividend.

The fact that there was initially a manifest error in H1 Investments SARL's annual report, which has subsequently been corrected, does not change the fact that H1 Investments SARL is the civil owner of the shares and does not provide a basis for to assume that H1 Investments Inc. should be the right shareholder and thus the right income recipient for the dividend. The corrected annual report for 2006 for H1 Investments SARL, from which the dividend appears, has been used by the authorities in Luxembourg and it must also be used by the authorities in Denmark. There is no question that the audited annual report "possibly" triggered a small tax payment in Luxembourg.

There are no special reasons why H1 Investments SARL, which is the sole owner of the shares in H1 Holding ApS, should not be the rightful income recipient under Danish law.

It is disputed by SKAT that there was a question of actual funding from H1 Holding ApS to H1 Investments Inc. It is further disputed that H1.2 LLC should have financed "TopUp" amounts. H1.2 LLC had, cf. above, no liquidity for this. These claims have not in any way been substantiated or probable by SKAT, which has also not proved that H1 Investments Inc. should be the owner of the shares, and thus direct the income recipient to the dividend.

Rightful owner of the dividend - limited tax liability.

Internal Danish law.

SKAT has not previously practiced declaring limited tax liability pursuant to section 2 (1) of the Corporation Tax Act. 1 (c) when distributing dividends to companies covered by the Directive or a double taxation agreement. It is thus a matter of tightening up a fixed administrative practice.

The Corporation Tax Act, section 2, subsection Paragraph 1 (c) was introduced at the same time as the introduction of withholding tax by Act No 370 of 13 November 1968, which took effect on 1 January 1970. By Act No 1026 of 23 December 1998, the limited tax liability on dividends in parent ⁄ subsidiary relationships abolished with effect from the income year 1999. The comments on the law

state that the change will make it more attractive for foreign parent companies to place subsidiaries in Denmark. It also appears that the bill is based on a principle that the income of a company that is part of a group should only be taxed in the company and not elsewhere.

After 2 years, the limited dividend tax was reintroduced by Act No. 282 of 25 April 2001 in cases where taxation was not to be waived or reduced under the Parent / Subsidiary Directive or under a double taxation agreement. The comments show that the previous rules opened up for the establishment of Danish holding companies with parent companies in tax havens, whereby the distribution from other subsidiaries in the EU can be channeled to tax havens via Denmark.

Reference is made to the Minister of Taxation's answer to question no. 16 of 8 December 2000 - Appendix 22 to L99, the Minister's answer to questions no. 2 and 3 of 20 November 2000 - Appendix 24 to L9, the Minister's answer to question no. 15 of 7 December 2000 - Appendix 25 to L99, the Minister's reply to the Folketing's Tax Committee from 27 November 2006 concerning the conclusion of a protocol amending the double taxation agreement between Denmark and the USA (Act no. 1574 of 20 December 2006) and the Minister's original answer to question 86 to L213 of 22 May 2007.

As far as can be seen, although there has been limited tax liability on dividends for a very long number of years only interrupted by approx. 2 years, only one example of SKAT having considered a Danish company liable to withhold dividend tax on dividends paid to the parent company in the EU with reference to the fact that the parent company is not considered the rightful owner of the dividend. Reference is made to the National Tax Court's ruling in <u>SKM2010.268.LSR</u> .

The interpretation claimed by SKAT differs quite markedly from the answers that the Minister of Taxation has given to the Folketing and quite markedly in relation to his previous practice of the provision, where obviously no limited tax liability has been established in cases such as the present. Despite the fact that SKAT has for many years been fully aware of the issue, SKAT has not previously established limited tax liability in cases such as the present. When the distribution was made in 2006, there were no examples of duly registered foreign companies being disregarded, and cf. on this basis, it has also been claimed on that basis that the company has not shown negligence, and therefore the company is not responsible for the missing amount, cf. the withholding tax act, section 69, subsection. 1.

The double taxation agreement between Denmark and Luxembourg.

The double taxation agreement of 17 November 1980 between Denmark and Luxembourg, Article 10, corresponds to Article 10 of the OECD Model Convention of 1977. There is no definition of the term "rightful owner" in either the Denmark-Luxembourg Agreement or the Model Agreement.

The comments on the model agreement to which SKAT refers are the comments that were inserted in the revision of the comments in 2003. These comments do not correspond to the previous 1977 comments. Nor is it the case, as SKAT states, that the comments have been gradually clarified. This is a change from previous versions.

In the OECD's comments on the 1977 model agreement, p. 12, the following appears:

> "...
>
> According to para. For the purposes of paragraph 2, the withholding tax shall not apply in cases where an intermediary, such as an agent or a specially designated person, is deposited between the payee and the payer, unless the beneficial owner is a resident of the other Contracting State. States wishing to make this clearer are free to do so during bilateral negotiations.
>
> ... "

H1 Investments SARL is not an agent or a specially appointed person deposited between the payee and the payer, and therefore H1 Investments SARL is also the rightful owner of the dividend after the 1977 comments. The new comments that SKAT has referred to are an expression of a change compared to the previous versions and not just a clarification. Furthermore, the new comments on the model agreement represent a change in relation to the version of the model agreement that was in force at the conclusion of the double taxation agreement between Denmark and Luxembourg, and they can therefore not be used as a basis for interpreting the double taxation agreement between Denmark and Luxembourg.

As new in the version of the comments referred to by SKAT, pkt. 12, it now appears after the revision in 2003 that the term "rightful owner" is not used in a narrow, technical sense, but must be seen in context and in the light of the agreement's intention and purpose, including avoiding double taxation and preventing tax evasion and avoidance. This is elaborated in pkt. 12.1, where further changes have taken place. It is pronounced as new in the comments:

"...

It would also be inconsistent with the intent and purpose of the agreement for the source State to grant relief or exemption in cases where a resident of a Contracting State acts other than as an agent or intermediary. "conduit" for another person who actually receives that income. For these reasons, the report "Double Taxation Conventions and the Use of Conduit Companies" prepared by the Committee on Fiscal Affairs concludes that a "flow-through company" cannot normally be considered the "rightful owner" if, although it is the formal owner, actually have very narrow powers, which in re-lation to the income in question make it a "nullity" or administrator,

... "

As is clear from the new amended comments, it is a necessary requirement to state throughput unit that another person actually receives that income. This means that the dividend must be further channeled to the underlying owners in order for a flow-through company to be established. This is also supported by the comments to pkt. 22, which deals with cases where a foreign holding company fails to pay its profits in the form of dividends to the underlying owners. In the comments section. 22 it is further recommended to agree on special exceptions in the event that the "rightful owner" of divi-dends from the source State is a company of another Contracting State owned by shareholders domi-ciled outside that State,

In the report of the Committee on Fiscal Affairs 1986, it is also a precondition that the amount is passed on to the person who is claimed to be the "beneficial owner" of the income.

Thus, according to both the comments and the report from the Committee on Fiscal Affairs, it is cru-cial that the dividend amounts are passed on to the underlying owners, so that the dividends must have benefited the rightful owner. Reference is made to the Ministry of Taxation's decision in SKM2008.728.DEP , which is a comment from the Ministry of Taxation to FSR. In answer to a question about the meaning of the term "flow-through company" in relation to the new rules on tax exemption for grants, the Ministry stated the following:

"...

The Ministry of Taxation has difficulty in seeing how in the above-mentioned example it can be demonstrated that the Cayman Island company is a flow-through company, as - in contrast to the ex-ample mentioned in appendix 26 to L 213 - no cash flow is actually carried through the Cayman Island company .

... "

Furthermore, reference is made to the National Tax Court's ruling of 3 March 2010 ( SKM2010.268.LSR ).

In the present case, H1 Investments SARL has not channeled the dividends received in the form of the five promissory notes to the ultimate shareholders. Thus, at no time since the shares in H1 Holding ApS were transferred to H1 Investments SARL, dividends have been distributed to the underlying owners, and already on this basis, H1 Investments SARL is not a flow-through company or a conduit company. There is no basis for SKAT's assumptions and assumptions that a set - off has taken place and that H1 Investments SARL's debt to H1 Investments Inc. has been reduced with promissory notes, or that H1 Investments Inc has received funding from H1 Holding ApS. This is also not supported by the companies' accounts or the relevant legal documents. Even if a set-off had been made, this does not imply that that H1 Investments SARL is a flow-through company. If set-off had been made, the div-idend and the set-off would only have benefited H1 Investments SARL by reducing H1 Investments SARL's own debt, and there would have been no flow of dividends through H1 Investments SARL.

Supplementary submissions to the complaint refer to the "discussion draft" issued by the OECD's Committee on Fiscal Affairs on 29 April 2011 regarding "Clarification of the Meaning of Beneficial Owner" in the OECD's Model Tax Convention ".

According to the representative, situations such as those in the case under the proposal are not cov-ered by the beneficial owner concept, and in that case SKAT should instead apply abuse rules and not the beneficial owner concept.

It has been pointed out that the mere appearance of this "Discussion Paper" emphasizes that the ex-tended comments from the OECD from 2003, on which SKAT bases its case, cannot be given weight.

Powers over the dividend.

The decision in the case must be based on the fact that H1 Investments SARL has received the dividend in civil law and that H1 Investments SARL has not channeled the dividend in question to its parent company or its shareholders, but instead included the dividend in the company's equity. Already against this background, H1 Investments SARL can not in relation to the dividend be considered a flow-through company, and H1 Investments SARL must be considered a "rightful owner" of the dividend. As a result, the restriction applies to Article 10 (1) of the Double Taxation Convention. 2, according to which Denmark as a source country can only tax 5% of the dividend. As the taxation of the dividend must then be reduced in accordance with the double agreement, it follows from the Corporation Tax Act, section 2, subsection. 1, letter c, that the dividend is not covered by the limited tax liability.

Right income recipient.

The concept of "beneficial owner" has not been used in internal Danish law and in the preparatory work for the relevant provisions of the Corporation Tax Act, and it is therefore also the assumption in the literature that a Danish court will apply the principle of correct income recipient used in case law to be " beneficial owner ". Reference is made to Jacob Bundgaard and Niels Winther Sørensen in SR Skat 2007/395: "Rightful owner in international group financing" and Aage Michelsen in International Tax Law, 3rd edition, 2003, page 426.

Thus, in his answer of 6 November 2006 to question S 474, the Minister of Taxation stated that the principle of the right income recipient must be used to determine who "receives" the interest, and that the term "right income recipient" must be considered to be very similar to the term "beneficial owner" used in the double taxation agreements.

SKAT has also stated in its assessment of the present case that the arguments for considering H1 Investments SARL to be the rightful recipient of the dividend and the arguments for the "legal owner" of the dividend partly coincide quite in accordance with the Minister of Taxation's above answer and the assumption in the literature .

Abuse of the double taxation agreement.

There are very specific abuse regulations in the agreements of a number of countries to counteract, among other things, the use of throughput companies. There is no such abuse provision in the agreement between Denmark and Luxembourg. The various provisions and procedures are discussed in the comments to Article 1 of the QECD's model agreement, p. 9-20, which discusses various methods, including the "look-through-approach", which means that a dividend-receiving company should not be entitled to collective bargaining benefits if it is owned or controlled by persons not resident in the same state as the company. When states bilaterally need to include such provisions in double taxation treaties so specifically targeted at flow-through companies, it can be solely because

SKAT's views are in fact an expression of SKAT's interpretation of a "look-through" provision corresponding to the proposal in the OECD's comments on Article 1, p. 13. SKAT can not interpret such a look-through provision in the Danish-Luxembourg double taxation agreement, cf. also Jacob Bundgaard and Niels Winther Sørensen in SR Skat 2007/395.

Luxembourg has in pkt. 27.6 to the comments on Article 1 of the OECD Model Convention specifically reserved its position on the abusive provisions and stated the following:

> "...
>
> Luxembourg does not agree with the interpretation in pkt. 9.2, 22.1 and 23 stating that there is generally no conflict between the anti - abuse provisions of the national law of a Contracting State and the provisions of its tax treaties. Without an explicit provision in the agreement, Luxembourg is therefore of the opinion that a state can only apply the provisions of its national anti-abuse legislation in special cases after the reciprocal agreement procedure has been applied.
>
> ... "

It is then argued that the provision on "beneficial owner" can not be used as an abuse provision and that SKAT can not deny collective benefits on this grounds.

In addition, the provisions on dividend taxation in the agreement between Denmark and Luxembourg have not been decisive for the choice of domicile country for the holding company for H1 Holding ApS. Other of the group's Mexican interests are also owned by companies in Luxembourg, where there is a strong infrastructure and a strong financial market. The use of Luxembourg intermediate holding companies generally does not entail any special tax advantages. On the contrary, Luxembourg has rules on dividend tax on dividends to tax havens, according to which 15% dividend tax must be included in Luxembourg.

International practice.

In the cases mentioned by SKAT, dividends have actually been paid to the ultimate shareholders. The facts of the Indofoods case are thus markedly different from those of the present case, where dividends have not been distributed. The facts of the Bank of Scotland case are also far removed from those of the present case. There is no support to be obtained for SKAT in the mentioned judgments.

The most recent international judgment is from the Canadian Court of Appeals in the Prevost case of February 26, 2009. In this case, there was an actual throughput of dividends to the ultimate owners, where the ultimate owners had decided in advance that dividends were to be distributed through the companies, and where the intermediate holding companies had no other activity and physical framework than those that followed from being a pure holding company. In the judgment, the Canadian court did not find support for the intermediary holding company not to be the "beneficial owner" of the dividends.

SKAT's decision in the present case thus goes far beyond what is supported by international case law.

H1 Investments SARL"s activities.

According to the articles of association, H1 Investments SARL"s purpose is to be a holding company for companies in Luxembourg or foreign companies and to participate in other forms of investments as well as financing, including granting loans within the group. The company is thus a pure holding and financing company in the group. For obvious practical reasons, the company does not have an independent office or permanent employees, and the day-to-day administration is instead handled by the sister company's employees. The activity in the company corresponds to the activity carried out by others, including Danish holding companies, and where the tax authorities have in no case challenged these holding companies. There are no practical examples of Danish holding companies being considered by the tax authorities not to be "rightful owners". of dividends from foreign subsidiaries. In addition, as the Minister of Taxation has also confirmed, there have been no previous examples of the Danish tax authorities challenging that a foreign company is the "rightful owner" of dividends from Danish subsidiaries.

Parent / Subsidiary Directive.

There is no requirement in the Parent / Subsidiary Directive that the parent company must be the "beneficial owner" of the dividend received. Therefore, when SKAT has stated that H1 Investments SARL is not the right recipient of income, and that the Parent / Subsidiary Directive can therefore in no circumstances preclude the requirement to withhold dividend tax, this cannot be accepted. The Parent / Subsidiary Directive does not require the parent company to be a "beneficial owner", and as H1 Investments SARL meets the capital requirement and the ownership requirement of the Parent / Subsidiary Directive, H1 Investments SARL has a completely unconditional right to be exempt from withholding tax on dividends. .

Abuse regulations.

It follows from Article 1 (1) of the Parent-Subsidiary Directive. 2, that abuse can only be counteracted if there is a legal basis for this in internal law. Cases of abuse can therefore not be counteracted solely by a reference to Article 1 (1). 2. In Danish law, there are no specific legal provisions on abuse of the directive. On the other hand, case law on the correct recipient of income and considerations of substance may apply, provided that these fall within the scope of Article 1 (1) of the Directive. 2, as interpreted by the European Court of Justice. Reference is hereby made to Jacob Bundgaard and Niels Winther Sørensen's article in SR Skat 2007.508 and the National Tax Court's decision in SKM2010.268.LSR .

SKAT refers to a communication from the Commission of 10 December 2007 on

"...

The application of measures to combat abuses in direct taxation - in the EU and in relation to third countries,

... "

published in Kom (2007) 785. The Communication sets out the Commission's proposal on how far national law can go without infringing the Treaty freedoms. The Commission's communication presupposes the existence of national rules on the fight against abuse, and it is then a question of what content these rules may have without being in breach of EU law. Of the notice, pkt. 4, 4th paragraph, it follows that

"...

such avoidance constructions are best prevented by a, if not uniform, then at least well-coordinated application of measures to combat tax evasion,

... "

i.e. by introducing national rules to combat tax evasion.

According to the representative, Article 1 (1) of the Parent-Subsidiary Directive 2 is not an abuse rule that can be applied by the European Court of Justice, but it is instead an authorization for the Member States to introduce or maintain national abuse rules.

It follows from Danish case law that correct income recipients and considerations of reality can prevent abuse. In the present case, it must be assumed that H1 Investments SARL is the right recipient of income, and the principles of reality will also mean that the dispositions cannot be overridden.

Practice.

Reference is made to the National Tax Court's ruling in <u>SKM2010.268.LSR</u> . In it, the National Tax Court agreed that a company can not be characterized as a flow-through company when the recipient has not re-channeled the received dividend to its parent company. As a result, the dividend was to be reduced in accordance with the double taxation agreement between Denmark and Luxembourg, and the dividend was therefore not covered by the limited tax liability pursuant to section 2 (1) of the Corporation Tax Act. 1 letter c. Furthermore, it has been concluded that there was no internal legal basis for denying the benefits that follow from the Parent-Subsidiary Directive.

Freedoms of the EC Treaty.

This would be a violation of the EC Treaty's freedoms, because taxation implies the application of a more far-reaching abuse rule to a holding company in another Member State than the abuse rules that can be applied to Danish holding companies. SKAT would not have imposed dividend tax if H1 Investments SARL had been a Danish holding company. There is an obvious restriction on a foreign parent company which cannot be justified by overriding reasons in the public interest.

Discrimination provisions of the Double Taxation Convention.

An implementation of the taxation is in breach of the discrimination provision in Article 24 of the Double Taxation Agreement. has employees or has premises. On the contrary, Denmark has for a very long time recognized that similar holding companies were also the rightful owners of dividends. The now set requirement for holding companies in Luxembourg is a more onerous requirement than that which applies to Danish companies, and this is not in accordance with Article 24 of the Double Taxation Agreement.

Negligence - withholding tax Act 69, para. 1.

It is stated that SKAT, after receiving various material, issued a letter of intent on 9 October 2008, after which SKAT considered H1 Investments SARL to be a flow-through company. SKAT did not initially claim that H1 Investments SARL was not the right income recipient. SKAT received a comprehensive statement and appendices both at meetings and in correspondence. It was not until the end of April 2010 - after SKAT had dealt with the case in the period from autumn 2008 - that SKAT came forward with its view that H1 Investments SARL was not the right recipient of income. This means that SKAT did not initially find that H1 Investments SARL was not the right income recipient.

No greater demands can be made on the complainant's due diligence than on SKAT, and it is argued that the complainant has not acted negligently in accordance with section 69 of the Withholding Tax Act.

For many years, SKAT has been fully aware of the issue of the right income recipient. Despite this, SKAT has not previously established a limited tax liability and withholding tax liability in cases such as the present.

At the time when the distribution was made at the general meeting in 2006, there were no examples of duly registered foreign companies being overruled. There was nothing at the time to indicate that the company should be vigilant in the distribution. Only after SKAT has announced that it wants cases concerning throughput companies tried in the courts, can it be possible to make greater demands on due diligence. At the time of the distribution, the complainant did not have the remotest reason to believe that tax should be included in the dividend. It is also obvious that if one had been aware of SKAT's tightening of practice, one would not have made the dividend distribution.

Regardless of the fact that the courts may later have to change the National Tax Court's decision in the cases now made, the rules do not lead to an unambiguous result. Against this background, the situation has not been so clear that it can be assumed that the complainant has shown negligence by

failing to include withholding tax.

Reference is made to the judgment of the Eastern High Court of 11 September 2002, published in SKM2002.470.ØLR , according to which the High Court in a case concerning liability for non-withheld A-taxes placed decisive emphasis on the fact that in circular no. 129 of 4. The criteria set out in July 1994, which are included in the assessment of the existence of an employment relationship, did not lead to an unambiguous result. On that basis, the High Court did not find that the situation had been so clear that it could be assumed that the plaintiff had shown negligence by failing to include A-tax and labor market contributions.

In the present case, the condition in the Withholding Tax Act, section 69, subsection 1 stating that the complainant must have shown negligence not fulfilled, which is why the decision must be revoked.

*The National Tax Court's remarks and reasoning*

According to the current Corporation Tax Act, section 2, subsection 1, letter c, companies domiciled abroad are, as a rule, subject to limited tax liability on dividends, cf. However, this does not apply to dividends received by a company that owns at least 20% of the share capital (as far as 2006 is concerned) in the dividend-giving company for a continuous period of at least 1 year, within which period the dividend distribution date must be, cf. and 3rd point. It is a condition that the taxation of the dividend must be waived or reduced in accordance with the provisions of Directive 90/435 / EEC on a common taxation system for parent companies and subsidiaries of different Member States or under a double taxation agreement with the State of residence, cf. pkt.

According to the double taxation agreement between Denmark and Luxembourg of 17 November 1980, Article 10, dividends may be taxed in the source state. However, if the recipient is the legal owner of the dividend and is a company that directly owns at least 25% of the capital of the distributing company, the tax imposed may not exceed 5% of the gross amount of the dividend.

Under Directive 90/435 / EEC on a common system of taxation applicable to parent companies and subsidiaries of different Member States, Article 5, dividends distributed by a subsidiary to its parent company are exempt from withholding tax.

The Danish company H1 Holding ApS, which was owned by H1 Investments Inc., Cayman Islands, via H1 Finance Ltd., Cayman Islands, transferred on 31 December 2004 a dividend received from the subsidiary H1.2 LLC totaling DKK 204,423,038. to H1 Investments Inc. as a loan, and the Danish company received a receivable from H1 Investments Inc. in this connection.

On 6 July 2005, H1 Holding ApS was acquired by the Luxembourg company H1 Investments SARL, which was owned via H1 Finance Ltd by H1 Investments Inc. The acquisition was financed by a loan from H1 Investments Inc. at € 24,905,000.

On June 8, 2006, at the general meeting of H1 Holding ApS, it was resolved to distribute dividends to the parent company ("the parent company) in the form of receivables from H1 Investments Inc. (5 promissory notes) totaling $ 10,848,724, which the company had received as dividends from its subsidiary, H1.2 LLC, which had had the receivables transferred from H1 Investments Inc.

On December 31, 2006, H1 Investments was SARL's debt to H1 Investments Inc. transferred to the group company G3 Ltd. Guernsey. In 2008, H1 Investments became SARL"s debt to G3 Ltd. transferred to H1.2 LLC, Cayman Islands. In 2009, H1 Investments became SARL"s claim on H1 Investments Inc. transferred to the same company.

For a portion of those promissory notes ($ 1,597,808 note dated April 30, 2005, $ 2,000,000 note dated March 31, 2005 and $ 2,579,980 note dated April 5, 2005), the transactions which led to the issuance of the notes in question, which includes a prior transfer of receivables from H1 Investments Inc. to H1 Holding ApS via H1 Investments SARL as a loan. The proceeds from the loans have then been transferred to H1.2 LLC through capital increases, where - after several transactions - it has actually been transferred back to H1 Holding ApS as receivables from H1 Investments Inc. and is from here further distributed.

H1 Holding ApS´ loan from H1 Investments SARL has been repaid with a share of the receivable from H1 Investments Inc. (originally at DKK 204,423,038).

For the remainder of the promissory notes in question (note of $ 2,787,287 of 31 July 2005 and note of $ 1,883,648 of 28 July 2005), H1 Holding ApS´s transferred a share of the said receivable to H1 Investments Inc . (originally of DKK 204,423,038) to H1.2 LLC by capital increases and from there - after several transactions - actually returned to H1 Holding ApS as receivables from H1 Investments Inc. and is from here further distributed to H1 Investments SARL.

For the relevant promissory notes, H1 Holding ApS's original receivable from the Group's parent company H1 Investments Inc. in the case of amounts corresponding to these notes after several transactions, including transfers to H1.2 LLC, etc., are in fact transferred to a parent company.

In these circumstances, where there are transfers between related parties, including parties domiciled in countries with which no double taxation agreement has been entered into, it is the responsibility of H1 Holding ApS, as the party with access to the evidence, to prove that the declared dividend is a real transfer (distribution) to H1 Investments SARL.

According to what has been presented, it has not been proven that the transfer of promissory notes from H1 Holding ApS to H1 Investments SARL has been intentional and established legal effects between the parties, so that H1 Investments SARL and not H1 Investments Inc. is the right income recipient of the distribution from H1 Holding ApS. It is hereby emphasized that the distribution in question on 8 June 2006 from H1 Holding ApS did not originally appear in H1 Investments SARL''s annual report, etc., just as it has not been possible to present accounts for H1 Investments Inc., this company bank accounts etc. After this, no decisive emphasis can be placed on the documentation submitted for the transfer to H1 Investments SARL in the form of Record Book Index 2006, various notes, emails, etc., all of which have been prepared internally in the group. Further information has been provided regarding the issuance of the promissory notes in question and the purpose of the issuance of these. In addition, these are exclusively accounting transactions, which is why it has not been possible to track cash flows, etc. The fact that capital tax of € 37,950 has subsequently been paid to Luxembourg cannot lead to a different result.

H1 Investments Inc. is then considered the correct income recipient of the dividend. SKAT's decision is thus confirmed.

... "

It appears from a translation of a transcript of 21 January 2009 from the Registre de Commerce et de Sociétés of Luxembourg concerning H1 Investments SARL that the management consisted of NK, NJ and IH.

It also appears from a complete report from the Danish Business Authority regarding H1 Holding ApS that the Executive Board consisted of NJ and IH.

It is stated before the High Court that H1 Holding ApS had no employees.

By agreement of 6 July 2005, H1 Finance Ltd. transferred the shares in H1 Holding ApS to H1 Investments SARL. The purchase price was set at DKK 29.3 million. €, which was paid at the issuance of two promissory notes of resp. € 24,905,000 and € 4,395,000. The agreement was signed for both parties by NJ.

It appears from a consolidated chart of July 31, 2005 for H1 Investments Inc. Group, at H1 Finance Ltd. was a sister company to H1 Investments SARL and that both were 100% owned by H1 Investments Inc. (Cayman), which was 100% owned by IH. It has been informed before the High Court that H1 Finance Ltd. has not owned H1 Investments SARL. The consolidated diagram of IH Group of 15 December 2008 and the transcript of 21 January 2009 of the Registre de Commerce et de Sociétés of Luxembourg show that H1 Investments SARL was at that time owned by five companies located on Cayman, each with five trusts located on Guernsey each belonging to one of IH's children.

By promissory note of 31 May 2006, H1 Investments Inc. to owe € 8,459,836 to H1 Investments SARL. The document is signed for H1 Investments Inc. of NJ. The High Court has been informed that this promissory note was issued as a replacement for the five promissory notes with a face value in USD distributed from H1.2 LLC to H1 Holding ApS, and that the five promissory notes were canceled.

H1 Holding ApS notified by forms of 8 June 2006 to SKAT that the company had paid a dividend to H1 Investments SARL of DKK 62,874,867.

By e-mail of 18 July 2006, SD, which as tax manager at the company R3 took care of H1 Holding ApS 'interests in Denmark, NJ requested on behalf of H1 Investments SARL to fill in a form on exemption from payment of Danish dividend tax on the dividend and submit it to the Luxembourg tax authorities for stamping. By e-mail dated 2 August 2006, the form was returned by an employee on behalf of NJ with a stamp dated 31 July 2006 from the Luxembourg tax authorities. The form was signed by NK, and it was sent to SKAT with an application for exemption from payment of dividend tax.

By email of January 30, 2007, UJ sent its final version of the "2006 Mexico Funding Memorandum" to, among others, NJ and NK. The memorandum states, among other things, payment of "top-up" amounts from H1 Investments to F1 Finance and G5. Dividends from H1 Holding ApS to H1 Investments SARL were not mentioned.

By letter dated March 7, 2007, R1 LLP sent the IH Group's Record Book "regarding Mexico for 2006 to NJ. The dividend distribution from H1 Holding ApS to H1 Investments SARL was mentioned at this point.

By e-mails of 20 - 21 February 2007, SD wrote with UJ about H1 Holding ApS"s accounts for 2006. The correspondence discussed, among other things, the status of the declaration and the payment of the dividend to H1 Investments SARL.

The NPD, who has been employed as an accountant at R2, has issued a statement dated 17 June 2011, which states, among other things, that he worked with the IH Group's accounts, including the accounts for H1 Investments SARL in the years 2004-2009. He drew on the preparation of the accounts for 2006 primarily on a "Flow of Funds Memorandum" prepared by the group's law firm, R1 LLP, of which the dividend from H1 Holding ApS to H1 Investments SARL did not appear, but he should also have seen in the "Group Record Book ", prepared by the same law firm, the proceeds of which appeared. He corrected the accounts so that the dividends were included as soon as he was made aware of the error, and on 19 March 2009 submitted a corrected accounts to the Luxembourg tax authorities, which was five months after the submission of the first incorrect accounts.

The correction of the accounts is also stated in the minutes of the general meeting of 16 March 2009 for H1 Investments SARL.

It appears from a translation of a document dated 11 October 2010 from the Administration des Contributions Directes that H1 Investments SARL for 2007 has paid wealth tax to Luxembourg with € 37,950.

An inventory prepared for the case states that interest has been charged on the claim on H1 Investments Inc. for the years 2006-2009 with a total of approx. 1.56 million €. The interest income appears from H1 Investments SARL"s annual accounts for 2008 and is also declared taxable to the Luxembourg tax authorities. The accounts were submitted on 29 April 2010 to the Luxembourg company authorities.

### Explanations

Explanations of UJ and NK have been submitted in the High Court.

*UJ* has explained that he has been a lawyer in Toronto, Canada, since 1980. His firm, the law firm R1 LLP, has worked for the IH Group since 1960. He has worked with the group's cases since his employment, and from 1999 he was also involved. in the work with the companies that the group had in Luxembourg and in Denmark.

The group's companies in Luxembourg were serviced by a company belonging to NJ, resident in Amsterdam. Luxembourg is advantageous to settle in because the country has a large number of double taxation agreements with other countries around the world and offers a favorable tax scheme for holding companies.

Since 1993, the IH Group has invested in ... in Mexico. In 1995, investment was put on hold due to the collapse of the Mexican peso. In 1999, it was decided to build a building in Mexico. At that time, Denmark promoted itself with a favorable taxation of holding companies. They arranged with a Danish company called R3, the acquisition of the shares in a Danish company, H1 Holding ApS. He was also involved in the transfer of 6 July 2005, where the shares in H1 Holding ApS were transferred from H1 Finance Ltd. to H1 Investments SARL. At that time, H1 Holding ApS owned the shares in the Mexican companies and was also responsible for financing them. It turned out that the financial statements that R3 kept had to be corrected and it took a long time. There was a lack of coordination between the Luxembourg office and the Danish office. They therefore decided that H1 Holding ApS should no longer be involved in the financing of the Mexico projects, and that all financing should go through Luxembourg. The Danish company was to be transformed into a holding company that only owned shares. The company in Luxembourg was to be the parent company of the Danish company. This should ensure better control of the Danish company. There were also prospects for changed tax rules in Denmark.

The invoice of 11 February 2005 from R3 describes a tax case against the Danish tax authorities, and item 2 describes a distribution of promissory notes from the Mexican company. It was about several different promissory notes. There were no cash payments. It was related to a new investor in Mexico, a German fund called G5. In April 2005, this German investor entered the project.

After the problems with the Danish tax authorities in 2004, they had become very cautious and wanted to make it simpler for the Danish company. It should no longer fund anything. To make that plan go up, approx. 10 mio. USD is paid as dividend.

He can abide by the statement he made on November 20, 2013, in which he has, among other things, accounted for the record book, which has been prepared on completed transactions. It is usually prepared for a whole year. The record book for 2006 was completed in March 2007. The documents described in the record book under items 84 and 85 have not been prepared at his law firm, but it is the document under item 86.

On 20 February 2007, R3 wrote to him about the accounts for H1 Holding ApS, and on the same day the witness wrote back to R3 that for 2006 there should have been no transactions in the company. He also lacked in his system a copy of the dividend distribution. On 21 February 2007, he received from R3 the minutes of the general meeting from H1 Holding ApS and a copy of the dividend distribution. He did not have a copy of the transfer documents regarding promissory notes. A colleague wrote back that the office would look for the documents. The information in the record book under items 84, 85 and 86 is entered in the following week after he received the information in early 2007. The subject of the record book was actually the Mexico project, but the information contained in items 84-86 has no with the project to do. Therefore, they are inserted at the end. It would have been strange to make a record book with only three entries. Items 84-86 were inserted before 7 March 2007. They were not inserted on the basis of the tax authorities' inquiry into the case. It would have taken a lot of extra work to change the order.

He has issued a memorandum of January 30, 2007, dealing with the loans of the Mexican companies. The transfer of the loan to the Danish company is mentioned under pkt. 6.1. The memorandum deals only with Mexico, and therefore the transfer of the loan to H1 Investment SARL is not described. If the Danish tax authorities had not discovered the error in H1 Investment SARL''s accounts, they would have discovered it themselves in the end, as the figures were not correct.

*NK* has explained that he is the CEO of R2, Luxembourg, which he has been since 2004. The company is a service company for foreign holding companies domiciled in Luxembourg. He has been the director of H1 Investment SARL since 2004. In 2006 he was director of approx. 80 companies, and today the number is approx. 50.

He can confirm the correctness of the statement of June 17, 2011 that he has made about H1 Investment SARL. He received by e-mail on 28 July 2006 from R3 the forms to be used to apply for exemption from payment of withholding tax on the dividends. It was a sheet of text on the front and back. Three copies have been sent to the Luxembourg tax authorities, who have stamped the documents. They have sent one of the copies with the tax authority's stamp to the Danish tax authorities. The letter has been sent by registered mail. On August 2, 2006, a secretary sent a copy per. email to R3. It is a completely normal procedure for European companies to fill out the form in question.

If necessary, it was posted daily if there was the necessary documentation. It was not possible to book the dividend from H1 Holding ApS before the minutes of the general meeting were received. He cannot remember whether the minutes were received when the form was completed. There was no contract for distribution. This is due to an oversight that the distribution is not included in the accounts of H1 Investment SARL. The accounts were prepared in late 2007, and by that time he had forgotten all about the dividends. The bookkeeper OD was French-speaking and not good at English. He booked based on the memorandum from R1 LLP on the Mexican business, where the dividend from H1 Holding ApS was not included. The amount was not large, and thus it was not conspicuous that an error had occurred. Accounts are not consolidated in Luxembourg. Therefore, an overall review of the IH Group's accounts was not carried out. The accounts were delayed as always when he, as director, had to approve them. Nor was it a money transfer in the traditional sense, and the accountant wanted legal documentation before the distribution could be posted. The accounts for 2006 were submitted in October 2008. The tax return based on the correct information was submitted in March 2009. It was right after they had registered the correct information in the accounts. In Luxembourg, the submission of accounts is allowed so late and the accounts are not required to be audited. and the bookkeeper would have a legal documentation before the distribution could be posted. The accounts for 2006 were submitted in October 2008. The tax return based on the correct information was submitted in March 2009. It was right after they had registered the correct information in the accounts. In Luxembourg, the submission of accounts is allowed so late and the accounts are not required to be audited. and the bookkeeper would have a legal documentation before the distribution could be posted. The accounts for 2006 were submitted in October 2008. The tax return based on the correct information was submitted in March 2009. It was right after they had registered the correct information in the accounts. In Luxembourg, submission of accounts is allowed so late and the accounts are not required to be audited.

Corrections were also made in the notes to the accounts. A typo was made when entering a piece of information. Then all the accounts were reviewed and the typo was corrected.

The statement for 2004-2007 for G1 SARL shows the total administrative expenses for the IH Group's companies in euros. They do not need to specify the records of the individual companies. There is no requirement for this from the tax authorities in Luxembourg.

H1 Investment SARL has not distributed dividends to the parent company.

**Procedure**

*In* its summary writ of 5 January 2015, the applicant stated, inter alia:

"...

In support of its action, it is generally held that neither H1 Investments SARL nor H1 Investments Inc. are subject to limited tax liability in Denmark of the dividend in question to H1 Investments SARL, cf. the current provision in the Corporation Tax Act, section 2, subsection. 1, letter c, smh. Article 10 of the Double Taxation Agreement between Denmark and Luxembourg and Article 5 of Council Directive 90/435 / EEC on a common system of taxation applicable in the case of parent companies and subsidiaries of different Member States. the connection regarding that H1 Investments SARL is the rightful recipient of the dividend in question, cf. section 4 of the State Tax Act,

It is further submitted that H1 Investments SATL has an unconditional right to waive the dividend tax under Council Directive 90/435 / EEC on a common system of taxation applicable in the case of parent companies and subsidiaries of different Member States.

It is disputed that there is an abuse with regard to the double taxation agreement between Denmark and Luxembourg and the parent / subsidiary directive.

In addition, it is argued that taxation of dividends is contrary to the right of establishment, cf. former Article 43 of the EC Treaty, now Article 49 TFEU.

It is further argued that the Ministry of Taxation's interpretation of the term "rightful owner" has changed, just as the Ministry of Taxation has changed its perception of when a foreign company is entitled to tax exemption under the Parent / Subsidiary Directive. It is argued that there is a retroactive tightening of established administrative practice and that it should have been notified and therefore cannot be applied in the present case.

Finally, it is claimed that H1 Holding ApS is not liable for any withholding tax, cf. the withholding tax act, section 69, subsection. 1, as no negligence has been shown by H1 Holding ApS´.

...

It is argued that the dividend is not covered by the tax liability in section 2 (1) of the Corporation Tax Act. 1, letter c, as the taxation of the dividend must be reduced in accordance with Article 10 of the double taxation agreement between Denmark and Luxembourg and Article 5 of the Parent / Subsidiary Directive.

Right income recipient

In this connection, it is argued that H1 Investments SARL is the rightful recipient of income in relation to the distribution from the plaintiff, cf. section 4 of the State Tax Act.

According to the principle of the rightful recipient of income in section 4 of the State Tax Act, the taxable person who has the legal access to an income basis is also the rightful recipient of the income from it. The distribution of income follows the rules of bond law, cf. Michelsen, Textbook on income tax 15th edition 2013, pp. 659, 660 and 666 and Dam, Right Income Recipient, pp. 327-331 and 335-337. Income must be attributed to the taxable person who has a legal claim on the income. It is a clear starting point in Danish tax law that dividends are in practice taxed on the taxable person who, in civil law terms, owns the shares in the dividend-distributing company.

A legally binding agreement has been entered into on the transfer of the shares in H1 Holding ApS to H1 Investments SARL, which was duly registered in the plaintiff's shareholder register. Externally, H1 Investments SARL also appeared as the owner of the shares. H1 Investments SARL, which has owned the shares in H1 Holding ApS since 6 July 2005, was undoubtedly the civil owner of the shares in the plaintiff at the time of the distribution.

H1 Investments SARL, which owns the shares in the plaintiffs, is a legally established and registered company in Luxembourg, to which it is also liable for tax, and H1 Investments SARL must also be regarded under Danish law as the rightful recipient of income for dividends from the plaintiff.

If the rightful recipient of dividends is to be regarded as someone other than the owner of the shares, this requires, in practice, a very special justification, and such does not exist. The defendant's only reason for not considering H1 Investments SARL as the correct income recipient of the dividend is that

the dividend did not originally appear in H1 Investments SARL's accounts. From the written material it appears that this is due to a human error on the part of the accountant in the preparation of the original accounts. The distribution to H1 Investments SARL appeared in the group's Group Record Book, which was prepared externally and which was sent to H1 Investments SARL in March 2007, long before the defendant began its investigation. The distribution to H1 Investments SARL stated that the certificates submitted to the authorities and immediately when the error in the accounts was discovered, corrected for this and audited accounts submitted to the authorities of Luxembourg, on which the accounts are based. The reality is that H1 Investments SARL was the owner of the shares in civil law, and the reality is that only dividends could be validly distributed to H1 Investments SARL. The reality is further that it is H1 Investments SARL that has received the distributed dividend, and a temporary accounting error in H1 Investments SARL accounts cannot change the reality.

H1 Investments SARL has actually had full control over the distributed claim as well as the financial benefit of the claim, including obtaining a return on the distributed claim in the period from 30 June 2006 to 30 November 2009 of a total of EUR 1,560,392. H1 Investments SARL creditors would be able to seek redress in the receivable, and the receivable has enabled H1 Investments SARL to reduce its debt to a group company by accruing interest with good interest 3 years after receipt of the distribution. The only person who has a legal claim to and has received a financial benefit from the distributed dividend is H1 Investments SARL, and there is no special reason why H1 Investments SARL should not be the right income recipient in relation to the dividend.

When the defendant claims that a party other than the one who owns the shares in civil law must be regarded as the rightful recipient of income for the dividend, it is argued that the defendant has the burden of proof for this, cf. Judgment of the Supreme Court of 4 November 2014 SKM2015.9.HR . The defendant has not even stated in its decision who the rightful recipient of income is. It is only the National Tax Court that finds that H1 Investments Inc. is the rightful recipient of the income, but the defendant has not proved that the distribution took place to H1 Investments Inc. and this company can not be considered to be the rightful recipient of the dividend, cf. section 4 of the State Tax Act.

It is disputed that the distribution took place outside H1 Investments SARL and has enriched H1 Investments Inc. It is disputed that the circumstances surrounding and the purpose of the issuance of the 5 promissory notes point in the direction that H1 Investments Inc. was the right income recipient. It has not been established that the fact that the dividend did not initially appear in an error in H1 Investments' SARL accounts for 2006 resulted in an enrichment of H1 Investments Inc. neither directly nor indirectly.

It is disputed that it was in fact the plaintiff who financed H1 Investments Inc.'s payment of top-up amounts to the American and German investors. There is no evidence to that effect, and it is disputed that funds were provided by the applicant to H1 Investments Inc., which the defendant has not substantiated either.

Beneficial owner

It is further argued that H1 Investments SARL is the beneficial owner or rightful owner of the dividend received within the meaning of the double taxation agreement.

H1 Investments SARL did not have very narrow powers in relation to the dividend received, which makes it a "nullity" or administrator acting on behalf of other parties. On the contrary, H1 Investments SARL was neither contractually nor legally obliged to redistribute the dividend, as is assumed in the OECD's new comments on the model agreement's clause. 12.4, and H1 Investments SARL has not actually distributed the dividend in question either. H1 Investments SARL has had the same powers as any other holding company in other groups and the owner has not exercised control and management beyond what usually occurs in international groups.

In addition, the dividend has not been distributed to H1 Investments Inc. or others.

On the contrary, H1 Investments SARL retained the dividend from 2006 to the end of 2009. The distribution increased H1 Investments SARL's equity and this has not subsequently been reduced by a distribution to H1 Investments Inc. or others. At the end of 2009, the distributed receivable with accrued significant interest was used for the benefit of H1 Investments SARL itself to reduce the company's debt and thus continues to form part of the company's equity. At no time after receipt of the claim has H1 Investments SARL distributed dividends to its parent company. H1 Investments SARL has thus not functioned as a flow-through unit.

H1 Investments SARL is not an agent or a specially appointed person deposited between the payee and the payer, and H1 Investments SARL was not contractually or legally obliged to redistribute the dividend, which has not happened either.

...

Abuse of the double taxation agreement

It is disputed that this is an abuse of the double taxation agreement between Denmark and Luxembourg and the Parent / Subsidiary Directive.

...

Dividend tax must be waived in accordance with the Parent / Subsidiary Directive

I further argue that H1 Investments SARL has an unconditional right to waive the dividend tax under the Parent-Subsidiary Directive (Directive 90/435 / EEC), as amended by Article 1 (1) of Council Directive 2003/123 / EC. 2 and Article 5, which - in contrast to the Interest / Royalties Directive (2003/49 / EC) - does not require the parent company to be the rightful owner of the dividends received.

...

Taxation of dividends is contrary to the right of establishment

It is alleged that the taxation of dividends infringes the freedom of establishment laid down in Article 43 of the former EC Treaty, now Article 49 TFEU. the parent company being deterred from setting up subsidiaries in the Member State which took the measure. It follows from the case law of the European Court of Justice (Cases C170 / 05, C379 / 05 and C284 / 09) that a Member State's different taxation of dividends to resident and non-resident shareholders entails a restriction on - or discriminatory restriction on - the freedom of establishment in the case of objectively comparable situations, different national and contractual measures which do not fully neutralize the different treatment,

Limited tax liability will thus be a manifest restriction which cannot be justified by overriding reasons in the public interest and which is therefore contrary to Article 43 of the EC Treaty, now Article 49 TFEU.

Aggressive change of practice with retroactive effect

It is argued that SKAT's decision is an expression of a tightening of a fixed administrative practice, which should have been notified and therefore cannot be applied in this case. It is argued in this connection that the Ministry of Taxation's interpretation of the term "rightful owner" has changed, just as the Ministry of Taxation has changed its perception of when a foreign company is entitled to tax exemption under the Parent / Subsidiary Directive. Initially, the defendant interpreted the term "rightful owner" in accordance with the principle of rightful income recipient in Danish tax law, but has changed the interpretation so that "rightful owner" and "rightful income recipient" are claimed to be two different terms.

...

Negligence

In the event that the court had to reach the result that withholding tax had been withheld regarding the dividend in question, it is argued that H1 Holding ApS is not liable for the non-withheld dividend tax pursuant to section 69 (1) of the Withholding Tax Act. 1, as no negligence has been shown by the plaintiff. In this connection, it is argued that the issue of negligence must be assessed on the basis of the sources of law available in June 2006 which did not provide grounds for assuming that withholding tax should be withheld.

Given that the applicant's understanding of the relevant legal rules is in line with the statements of the Minister of Taxation in 2001 and 2004, and thus the administrative practice which the tax authorities have continuously followed for more than 30 years, it is alleged that H1 Holding ApS has not shown negligence , but has had full authority to assume that withholding tax should not be included.

The company's understanding of the relevant rules is in line with the administrative practice that the tax authorities have followed uninterruptedly over the years. As far as can be seen, the tax authorities for the first time by decision of 5 May 2009 denied tax exemption of dividends to a parent company in a country where Denmark had entered into a double taxation agreement on the grounds that the parent company was not the beneficial owner of the dividend. It is thus only in 2009 that the defendant does not recognize a holding company validly registered in another country as the rightful owner of a dividend. Furthermore, given that there is no definitive definition of what is meant by the term "beneficial owner", and that there is great uncertainty at both national and international level about how the term "rightful owner" must be interpreted, it is obvious that H1 Holding ApS has not shown negli-

gence. The OECD has also recognized that the concept has been interpreted differently by the courts and tax administrations in the individual countries and has therefore in 2014 been forced to clarify the concept.

The defendant appeared after receiving various material from the plaintiff with a stern letter on 9 October 2008, after which the defendant considered H1 Investments SARL to be a flow-through company. The plaintiff did not claim at the time that H1 Investments SARL was not the rightful recipient of income. The defendant received extensive statements and appendices both at meetings and in writing, but only at the end of April 2010 - after the defendant had considered the case in the period from autumn 2008 - did the defendant come forward with his view that H1 Investments SARL was not the right income recipient. Thus, the defendant did not initially find that H1 Investments SARL was not the right income recipient, but only after a lengthy case processing of more than 1 year - after the defendant had lost the first case in the National Tax Court, the defendant came forward with his view that that H1 Investments SARL was not the right income recipient under Danish law. It is argued that no greater demands can be made on the plaintiff's due diligence than on the defendant's.

Defendant has for many years been fully aware of the issue of rightful owner and rightful recipient of income. Despite this, the defendant has not previously established limited tax liability and withholding tax liability in cases such as the present. At the time the distribution was made, at the general meeting in 2006, there were no examples in Danish practice of disregarding duly registered foreign companies. There was nothing at that time to suggest that the applicant should be vigilant in the distribution. Only after the defendant had announced that they wanted cases concerning throughput companies tried in the courts, can it be possible to make greater demands on the diligence. At the time of the distribution, the complainant did not have the remotest reason to believe that tax should be included in dividends.

As appears from the repeated answers from the Minister of Taxation, there are no examples of foreign flow-through companies that the Danish tax authorities have not accepted as rightful owners of dividends from Danish companies - the Minister's answer to question 6-L31. It also follows from the Minister's answer that there are very narrow limits for them when the Danish tax authorities can override a duly registered fully taxable company, cf. thus also the Minister of Taxation's answer to question 86-L213 (2006/07).

It is disputed that the circumstances were so clear that it can be assumed that the applicant was negligent in failing to withhold withholding tax. In support of this, reference is made to the judgment of the Eastern High Court of 11 September 2002, published in <u>SKM2002.470.0LR</u> , according to which the High Court in a case concerning liability for non-contained A-taxes placed decisive emphasis on the fact that in circular no. 129 of The criteria set out on 4 June 1994 did not lead to an unambiguous result. On that basis, the High Court did not find that the situation had been so clear that it could be assumed that the plaintiff had shown negligence by failing to include A-tax and labor market contributions. Reference is also made to the judgment of the Supreme Court in U.1977.844 H.

In the circumstances stated above, the condition in the Withholding Tax Act, section 69, subsection 1 that the complainant must have shown negligence has not been fulfilled, which is why the decision must be revoked.

... "

*In its summary pleading of 5 January 2015, the defendant* stated, inter alia, the following:

"...

It is the opinion of the Ministry of Taxation that H1 Holding was obliged to withhold dividend tax, cf. section 65 of the Withholding Tax Act, in connection with the decision on payment of the dividend, as the dividend triggered limited tax liability, cf. 1, letter c, and that the company, by failing to fulfill its obligation to withhold the tax, became immediately liable to the public for payment of the missing amount, cf. the withholding tax act, section 69, subsection. 1.

It is thus - in the first place - the Ministry of Taxation's view that there is no basis for considering H1 Investments SARL to actually be the recipient / correct income recipient of the dividend, and that the conditions for taxation to be waived pursuant to section 2 (1) of the Corporation Tax Act. 1, letter c, is already for that reason not met.

It is - secondly - the Ministry of Taxation's view that H1 Investments SARL cannot be regarded as the beneficial owner of the dividend, and that the conditions for the taxation to be waived pursuant to section 2 (1) of the Corporation Tax Act. 1, letter c, also for that reason is not fulfilled.

...

5.1 The starting point for withholding tax and limited tax liability on dividends

Pursuant to section 65, subsection 1, a company such as H1 Holding must, as a starting point, include dividend tax in connection with any decision or decision on the payment or crediting of dividends.

According to section 65, subsection 4 (former paragraph 5), deviates from the starting point in the case of dividends that a company domiciled abroad receives from a company domiciled in this country when the dividend in question is not covered by the tax liability, cf. the Corporation Tax Act, section 2, subsection 1, letter c, 1. pkt.

Pursuant to section 2, subsection 1, letter c, 1st sentence, companies domiciled abroad are, in principle, taxable in Denmark on dividends received from sources in this country. However, this does not apply to dividends received by a company that owns at least 20% (in 2006) for a continuous period of at least 1 year, within which period the dividend date must be, cf. the current and second paragraphs of the current provision. , provided that the taxation of dividends is to be waived or reduced in accordance with the provisions of Directive 90/435 / EEC on a common taxation system for parent and subsidiary companies (hereinafter the Parent-Subsidiary Directive) or a double taxation agreement with the Faroe Islands, Greenland or the State of residence , cf. 4. pkt.

It follows from the above that unless H1 Investments SARL must be regarded as both the rightful recipient of income and the rightful owner, with regard to the dividend in question, the dividend is taxable pursuant to section 2 (1) of the Danish Corporation Tax Act. 1, letter c, 1st sentence, with the consequence that H1 Holding in accordance with the starting point in the Withholding Tax Act § 65, para. 1, was obliged to withhold dividend tax in connection with the adoption of the dividend.

5.2 H1 Holding is not actually the recipient of / correct income recipient in relation to the dividend

The Ministry of Taxation does not deny that the promissory notes in question, according to H1 Holding ApS´'s annual report for 2005 ... - formally - were distributed as dividends to H1 Investments SARL.

The Ministry of Taxation, on the other hand, denies that H1 Investments SARL was in fact the recipient of / correct income recipient in relation to the dividend. This is because H1 Investments SARL did not recognize the dividend as income. The dividend was thus not recognized as income in the company's original annual report for 2006. It was only recognized as income via an amended annual report after SKAT had taken up the case in 2009, and it must be assumed that the change in the case was solely due to SKAT's request in the case.

In the present circumstances, the distribution must in fact be considered to have been bypassed by H1 Investments SARL to H1 Investments SARL's parent company, H1 Investments Inc.

H1 Holding has not substantiated any commercial justification for the restructuring, according to which H1 Investments INC. Owned H1 Holding via H1 Investments SARL, which did not have funds available to finance the group's activities and there were no cash flows from group companies in the Cayman Islands and Guernsey. H1 Investments SARL to the companies in Denmark and Mexico, neither in the form of loans, interest or installments. All financing thus took place from the companies in the Cayman Islands and Guernsey to the companies in Mexico.

H1 Holding has informed the tax authorities that none of the loan amounts, neither principal, interest or installments, have been transferred via H1 Investments SARL's bank account, and account information that H1 Holding has sent to the Chamber Advocate after the proceedings show that H1 Investments SARL in reality only worked as a flow-through unit for transfers to and from H1 Investments INC ....

In view of this, for the purpose of H1 Investments INC. Issuing the promissory notes in question and the related transactions as well as the refunds ..., H1 Investments INC. promissory notes referred to.

It is also hereby noted that it has the presumption that the reversals of the promissory notes in question, which were allegedly based on Mexican tax matters, were to be made to H1 Investments INC., Which had issued them, and not to that company's subsidiary, H1 Investments. SARL.

In the present circumstances, it must at least be incumbent on H1 Holding to prove that H1 Investments SARL - despite the lack of income recognition in the annual report - was in fact the recipient of / correct income recipient in relation to the dividend in question.

It has the presumption against it that H1 Investments SARL "by mistake" forgot to recognize a dividend of almost DKK 63 million as income. In view of this and the fact that the dividend was only recognized as income in the form of an amended annual report for 2006, after SKAT took up the case in 2009, and that these are transactions between related parties, H1 Holding must bear a stricter burden of proof for , that the lack of revenue recognition was solely due to an error.

H1 Holding has not lifted this burden of proof.

The record book index presented ... regarding "H1.1, ... 1, Funding of Entities and Related Transactions" for the calendar year 2006, thus does not prove that the lack of revenue recognition was due to an error. This is purely internal material, and as described in more detail in the defense ... the index does not support that the dividend - originally - was recorded as an income in H1 Investments SARL's bookkeeping. On the contrary, as described in the given place, it must be assumed that the supply of the dividend was made subsequently.

H1 Holding has not otherwise documented that the dividend - apart from the fact that it was not recognized as income in the annual report - was otherwise originally noted in H1 Investments SARL''s accounting, and that it is solely due to an error that the dividend was not recognized as income in the annual report.

Finally, H1 Holding has also not documented how the transactions in question were booked by H1 Investments INC. According to H1 Holding, the fact that the company should not have prepared an annual report cannot be harmed by the Ministry of Taxation.

H1 Holding has thus not rebutted the presumption that the distribution of the promissory notes in question must be regarded as having been bypassed by H1 Investments SARL to H1 Investments SARL''s parent company, H1 Investments INC.

On the basis of this, it must be assumed that H1 Holding [H1 Investments SARL.red.SKAT] has not in fact been the recipient of / correct income holder in relation to the dividend in question, but that H1 Investments INC. Is the correct income recipient. The consequence of this is, as described under item 0, that H1 Holding was obliged to withhold dividend tax in connection with the decision on payment of the dividend in question.

5.3 Taxation shall not be waived pursuant to the Danish-Luxembourg double taxation agreement

Although H1 Investments SARL is considered to have actually received the dividend / be the correct income recipient of the dividend, there is still no evidence to deviate from the starting point for limited tax liability of the dividend with reference to the Danish-Luxembourg double taxation agreement. This is because H1 Investments SARL cannot be considered a beneficial owner of the dividend.

...

The "Certificate of Contributions Directes" presented by H1 Holding regarding H1 Investments SARL ... cannot be attributed significance. The certificate does not even indicate which country's authorities have completed it. Even in the case of a certificate completed by the Luxembourg authorities, no significance can be attached to the certificate. The assessment of whether there is tax exemption according to the Corporation Tax Act, section 2, subsection 1, letter c, cf. section 65 of the Withholding Tax Act, must of course be made by the Danish tax authorities and courts.

The certificate presented ... has moreover been prepared by the Danish tax authorities as a standard form and therefore naturally has a very standardized character, and there is no indication that the tax authorities in Luxembourg have made a reality assessment of the dividend distribution. Furthermore, the certificate does not state the actual information on which it was completed. Therefore, no significance can be attached to the fact that the certificate states that H1 Investments SARL is "the beneficial owner of the dividends specified on page 1". The mentioned page 1 is not attached and it is therefore not clear in any case which dividends are referred to.

...

5.4 Taxation must not be waived pursuant to the Parent / Subsidiary Directive

Although H1 Investments SARL may be considered to be the actual recipient / correct income recipient in relation to the dividend, the conditions for being able to apply the parent / subsidiary's benefits are still not present.

It is thus stated in Article 1 (1) of the Directive. 2, that the Directive does not preclude the application of national provisions or conventions which are necessary to prevent fraud and abuse.

The use of the term "rightful owner" in the double taxation treaties serves precisely to combat fraud or abuse within the meaning of Art. 1 piece. 2. Article 1 (1) of the Directive 2 in conjunction with the double taxation agreement art. 10 as well as the case law of the European Court of Justice on the concept of abuse implies that it is a condition for being able to apply the benefits of the directive that H1 Investments SARL in Luxembourg can be considered to be the rightful owner of the dividend arising from H1 Holding. This condition is not met, cf. the previous sections.

...

5.5 The limited tax liability does not infringe the freedoms of the EC Treaty

An implementation of withholding tax does not contravene the right to free establishment, cf. TFEU art. 49 (formerly TEF art. 43). There is no basis for assuming that the general provisions of the TFEU should cut withholding tax to a greater extent than what follows from the Parent-Subsidiary Directive.

5.6 There is no aggravating change in practice with retroactive effect

Withholding tax is not an expression of an aggravating change of practice with retroactive effect. H1 Holding has the burden of proving that there should be a change in a fixed administrative practice, and this burden of proof has not been lifted by the company.

5.7 H1 Holding is responsible for non-withholding of dividend tax, cf. the withholding tax act, section 69, subsection. 1

Anyone who fails to fulfill his obligation to withhold tax, or who contains it with too little amount, is directly liable to the public authorities for payment of missing amounts, unless he proves that no negligence has been shown on his part by observation. of the provisions of this Act, cf. the Withholding Tax Act, section 69, subsection 1, and H1 Holding has not proved that the company has not shown negligence.

On the other hand, it must be assumed that H1 Holding did not carry out further investigations in order to clarify whether the conditions for not including withholding tax were met.

Furthermore, H1 Holding may not have been in uncertainty as to the actual circumstances which justified the withholding obligation. In this connection, it should be noted that the person (s) who organized the event in the present case, must have had full knowledge of the purpose, etc., and the person (s) who have had control over the company have therefore been in possession of all relevant information.

... "

The parties have reiterated and elaborated on the views during the procedure.

**The High Court's reasoning and result**

Following the presentation of evidence, it can be assumed that H1 Holding ApS declared a dividend of DKK 62,874,867 to its parent company, H1 Investments SARL, to the Danish and Luxembourg tax authorities and applied for exemption from payment of withholding tax.

On the basis of e-mails, statements and the testimony of UJ, it can be assumed that he, as a lawyer for the IH Group, had instructed R3, who represented H1 Holding ApS''s interests in Denmark, in the distribution and declaration of the yield.

On the basis of IH-Gruppen's record book for 2006, which was prepared by the group's law firm, it can also be assumed that the law firm in preparing it assumed that the dividend was distributed from H1 Holding ApS to H1 Investments SARL, but from the annual accounts for However, in 2006, which H1 Investments SARL submitted to the Luxembourg authorities, the dividend did not appear. On that basis, it is incumbent on H1 Holding ApS to prove that the accounting of the accounts was due to an error and that the dividend was in fact distributed to H1 Investments SARL.

Considering that the tax authorities discovered during an inspection that H1 Investments SARL had not accounted for the dividend in accordance with what H1 Holding ApS had previously informed the authority, and that H1 Holding ApS regarding the question of the actual distribution of the dividend to H1 Investments SARL alone has be able to present documents prepared internally in the group or by related parties, and that the transactions have been solely of an accounting nature, which is not seen to have had any purpose other than a purely tax, and compared with the nature of the dividend in the form of a claim on an associated company in the group structure, the High Court finds that it has not been established that H1 Holding ApS actually distributed the dividend to H1 Investments SARL.

The subsequent documentation that H1 Holding ApS has provided in the form of unaudited accounts for H1 Investments SARL, including a corrected account for 2006, a statement from its own accountant about errors in the preparation of the first annual accounts for 2006, the witness statement from NK, and the circumstance , the fact that capital tax in Luxembourg of € 37,950 has been paid by H1 Investments SARL for 2007 cannot lead to a different result.

The High Court, on the other hand, finds that it must be assumed that the management of H1 Holding ApS distributed the dividend to another party than the parent company H1 Investments SARL. It follows that H1 Holding ApS does not meet the conditions for being exempt from withholding tax on dividends pursuant to section 65 (1) of the Withholding Tax Act. 4 (former subsection 5), cf. the Corporation Tax Act, section 2, subsection 1, letter c.

H1 Holding ApS is distributing dividends that were not exempt from the obligation to withhold divi-
dend tax, responsible for the payment of the missing amount, cf. the withholding tax act, section 69,
subsection. 1, as H1 Holding ApS has not proved that no negligence has been shown in the
distribution.

There is no basis for considering the withholding duty of dividend tax to be contrary to the right to
free establishment, cf. TFEU art. 49 (formerly Art. 43).

According to the above, the High Court has no reason to rule on the other issues raised during the
case concerning the Parent / Subsidiary Directive, the double taxation agreement between Denmark
and Luxembourg or a possible aggravating change in practice with retroactive effect.

The Ministry of Taxation's acquittal claim is therefore upheld.

After the outcome of the case, H1 Holding ApS must pay legal costs to the Ministry of Taxation in the
total amount of DKK 600,000. The amount relates to expenses for legal assistance excl. VAT. In deter-
mining the amount, in addition to the value of the case, the scope and duration of the case have been
taken into account, including that it has been the main hearing over three court days.

**T hi is known for right**

The Ministry of Taxation is dismissed.

In legal costs, H1 Holding ApS must pay DKK 600,000 **\*) DKK 750,000** to the Ministry of Taxation.

The sentence must be paid within 14 days after the delivery of this judgment.

The legal costs bear interest in accordance with section 8 a of the Danish Interest Act.

**\*) Corrected pursuant to the Administration of Justice Act § 221, para. 1, so that the word
"600,000 kr." deleted and replaced with "DKK 750,000." cf. court book of 7 April 2015.**