# Exhibit 5

**tvc.**
ADVOKATFIRMA
BILAG 1

**SKAT**

The Proper Pacific LLC 401K Plan
31W 21ST Street apt 2n
New York
NY 10010
USA

Særlig kontrol 3

Kratbjerg 236

3480 Fredensborg
Denmark

www.skat.dk

6. april 2018

Ref. Captia nr: 16-1673052

TIN: 47-1865044

## Afgørelse – Tilbagekaldelse af tidligere afgørelser om refusion af udbytteskatter

SKAT har tidligere ved udbetalinger af udbytteskatter truffet afgørelse om refusion af udbytteskatter til The Proper Pacific LLC 401K Plan (herefter The Proper). Udbetalingerne vedrører følgende anmodninger om refusion af udbytteskatter, som SKAT har modtaget fra Goal Taxback Limited på vegne af The Proper:

| Anmodning af | 20. april 2015 | 2.738.198 kr. |
| Anmodning af | 21. april 2015 | 17.451.427 kr. |
| Anmodning af | 27. april 2015 | 8.488.604 kr. |
| Anmodning af | 15. maj 2015 | 357.659 kr. |
| I alt | | 29.035.888 kr. |

SKATs tidligere afgørelser om refusion af udbytteskatter på i alt 29.035.888 kr. til The Proper tilbagekaldes, idet The Proper ikke har været berettiget til at modtage beløbene.

Det er SKATs vurdering:
- At The Proper ikke ejer eller har ejet de aktier, som fremgår af anmodningerne.
- At udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået The Proper.

Det er endvidere SKATs vurdering, at The Proper ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for anmodningerne om refusion af udbytteskat.

Ved vurderingen har SKAT lagt vægt på, at The Proper ikke har fremlagt dokumentation for, at The Proper har ejet aktierne. The Proper har heller ikke fremlagt dokumentation for, at pensionskassen har modtaget udbytte af aktierne. Sagens oplysninger giver ikke grundlag for sådanne betydelige investeringer i danske aktier.

1

Confidential Pursuant to Protective Order

SKAT har lagt vægt på:
- At The Proper er en nystiftet pensionskasse.
- At The Proper kun har en enkelt deltager med de deraf begrænsede indskudsbeløb.
- At The Proper ikke har indsendt Form 5500 i USA, hvorfor det må lægges til grund, at The Proper formue var under 250.000 USD ultimo de relevante indkomstår.
- At SØIK ikke på baggrund af den indtil videre gennemførte efterforskning kan bekræfte, at The Proper har besiddet danske aktier eller har modtaget aktieudbytte som følge af besiddelse af danske aktier.

Det er på baggrund af de nu foreliggende oplysninger SKATs vurdering, at The Proper ikke har haft økonomiske muligheder for at eje aktier i et sådant omfang, som angivet i The Proper's ansøgninger om refusion af dansk udbytteskat. Dette fremgår eksempelvis ved,

- At The Proper under 3 måneder efter stiftelsen havde investeret for 217.346.550 kr. i aktien CHR. Hansen Holding A/S.

- At The Proper den 19. marts 2015 var ejer af aktier i Novo Nordisk A/S til en værdi på i alt 2.268.425.470 kr.

The Proper har derfor ikke dokumenteret, at The Proper opfylder betingelserne for at få refunderet indeholdte udbytteskatter af danske aktier, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

The Propers repræsentant, Advokatfirmaet TVC har ikke med deres indsigelser til SKATs forslag af 24. marts 2017 fremkommet med oplysninger eller dokumentation for, at The Proper har ejet aktierne og modtaget aktieudbytterne ifølge anmodningerne.

SKATs afgørelser om at refundere udbytteskat til The Proper hviler dermed på et urigtigt grundlag. SKAT tilbagekalder derfor de tidligere afgørelser om refusion af udbytteskatter.

SKAT opkræver ikke ved denne afgørelse den uberettigede udbetalte refusion af udbytteskat. Dette er en ændring i forhold til SKATs tidligere forslag til afgørelse af 24. marts 2017 til The Proper. Kammeradvokaten vil på vegne af SKAT fremsende påkravsskrivelse, hvori SKAT rejser krav om tilbagebetaling og erstatning over for The Proper.

For yderligere begrundelse henvises til nedenstående sagsfremstilling.

Der skal henvises til bilag 101-1-1 til 101-8-6 der tidligere er fremsendt, samt bilag 101-A-1 til 101-A-5 vedlagt denne afgørelse.

2

# Sagsfremstilling og begrundelse

## Indholdsfortegnelse

1.    Faktiske forhold ....................................................................................................................... 4

1.1.    Beskrivelse af sagen ............................................................................................................. 4

1.2.    Baggrund for genoptagelsen ................................................................................................. 4

1.3.    Beskrivelse af pensionskassen ............................................................................................. 4

1.4.    Refunderet udbytteskat ......................................................................................................... 5

1.5.    Beregning af investeringerne ............................................................................................... 6

1.6.    Oplysninger fra IRS i USA ................................................................................................... 6

1.7.    Oplysninger fra SØIK .......................................................................................................... 7

2.    Retsregler ................................................................................................................................. 8

2.1.    Lovbekendtgørelser .............................................................................................................. 8

2.2.    Dobbeltbeskatningsoverenskomst ........................................................................................ 8

2.3.    Retspraksis ............................................................................................................................ 8

3.    SKATs bemærkninger ............................................................................................................. 9

3.1.    Lovgrundlaget ....................................................................................................................... 9

3.2.    Genoptagelse ......................................................................................................................... 9

3.3.    Kapitalgrundlaget for pensionskassens investeringer ........................................................ 10

3.4.    Pensionskasse ...................................................................................................................... 11

4.    SKATs foreløbige afgørelse ................................................................................................. 11

5.    Pensionskassens bemærkninger til SKATs forslag .............................................................. 12

6.    SKATs bemærkninger ........................................................................................................... 15

7.    SKATs endelige afgørelse .................................................................................................... 16

Klagevejledning ............................................................................................................................ 17

Love og regler .............................................................................................................................. 18

3

# 1. Faktiske forhold

## 1.1.  Beskrivelse af sagen

Goal Taxback Limited har på vegne af The Proper, i perioden 20. april 2015 til 15. maj 2015, sendt anmodninger til SKAT om at få refunderet indeholdte udbytteskatter af danske aktier for i alt 29.035.888 kr.

SKAT har på dette grundlag udbetalt de anmodede beløb til The Proper via Goal Taxback Limited's bankkonto 34015159 i NatWest Bank.

## 1.2.  Baggrund for genoptagelsen

SKAT har den 25. maj 2016 givet afslag på The Proper's anmodning af 24. august 2015 om refusion af indeholdt udbytteskat. Under sagsbehandlingen har SKAT anmodet The Proper om yderligere dokumentation. The Proper har imidlertid ikke reageret på SKATs henvendelser. SKATs afgørelse af 25. maj 2016 ses ikke påklaget.

Det skal bemærkes, at SKAT har modtaget SKATs afgørelse af 25. maj 2016 retur. SKATs forslag af 11. februar 2016 ses dog ikke modtaget retur.

Da The Proper ikke besvarede SKATs henvendelser, har SKAT via Kompetent Myndighed indhentet yderligere selvangivelses- og registreringsoplysninger fra IRS i USA. Af oplysningerne fremgår det:

- At The Proper er en nystiftet pensionskasse[1].
- At The Proper ikke har indsendt FORM 5500 (selvangivelser), hvorved The Proper overfor IRS har tilkendegivet, at deres aktiver ultimo 2014 og 2015 er under 250.000 $[2].
- At det årlige indskud er begrænset til mellem 12.500 $ og 53.000 $ alt efter indskyders alder[3].

På baggrund af oplysningerne fra IRS genoptager SKAT The Proper's tidligere anmodninger om refusion af udbytteskatter, hvor The Proper har fået refunderet indeholdte udbytteskatter af danske aktier.

## 1.3.  Beskrivelse af pensionskassen

The Proper er registreret som en pensionskasse i USA[4].

The Proper er stiftet i september 2014[5].

---

[1] Bilag 101-1-1 til 101-1-2
[2] Bilag 101-2-1 til 101-2-13 og bilag 101-3-1 til 101-3-2
[3] Bilag 101-4-1 til 101-4-9
[4] Bilag 101-1-1 til 101-1-2
[5] Bilag 101-1-1 til 101-1-2

4

                                                    SKAT_MDL_001_046752

## 1.4.    Refunderet udbytteskat

Med henvisning til dobbeltbeskatningsoverenskomsten mellem Danmark og USA har Goal Taxback Limited som agent, på vegne af The Proper anmodet om og fået refunderet den indeholdte udbytteskat vedrørende følgende aktier[6]:

| SKATs bundt nr. | Dato for anmodningen | Aktie | Antal | Ex-dato | Udbytte i alt DKK | Refunderet udbytteskat DKK |
|---|---|---|---|---|---|---|
| 35015 | 20-04-2015 | CHR. Hansen Holding A/S | 839.500 | 28-11-2014 | 3.164.915 | 854.527 |
| 35015 | 20-04-2015 | Coloplast A/S - B | 930.208 | 05-12-2014 | 6.976.560 | 1.883.671 |
| 35215 | 21-04-2015 | A.P. Møller Mærsk A/S A | 7.879 | 31-03-2015 | 15.529.509 | 4.192.967 |
| 35215 | 21-04-2015 | A.P. Møller Mærsk A/S B | 8.083 | 31-03-2015 | 15.931.593 | 4.301.530 |
| 35215 | 21-04-2015 | Novo Nordisk A/S B | 6.634.763 | 20-03-2015 | 33.173.815 | 8.956.930 |
| 39015 | 27-04-2015 | Novozymes A/S B | 683.931 | 26-02-2015 | 2.051.793 | 553.984 |
| 39015 | 27-04-2015 | Vestas Wind Systems A/S | 377.809 | 31-03-2015 | 1.473.455 | 397.832 |
| 39015 | 27-04-2015 | TDC A/S | 3.293.727 | 06-03-2015 | 3.293.727 | 889.306 |
| 39015 | 27-04-2015 | Gn Store Nord A/S | 622.804 | 20-03-2015 | 560.523 | 151.341 |
| 39015 | 27-04-2015 | Tryg A/S | 34.813 | 26-03-2015 | 1.009.577 | 272.585 |
| 39015 | 27-04-2015 | Pandora A/S | 400.364 | 19-03-2015 | 3.603.276 | 972.884 |
| 39015 | 27-04-2015 | FL Smidth & CO A/S | 81.037 | 27-03-2015 | 729.333 | 196.919 |
| 39015 | 27-04-2015 | DSV A/S | 692.422 | 13-03-2015 | 1.107.875 | 299.126 |
| 39015 | 27-04-2015 | Carlsberg A/S - B | 180.313 | 27-03-2015 | 1.622.817 | 438.160 |
| 39015 | 27-04-2015 | Danske Bank A/S | 2.906.712 | 19-03-2015 | 15.986.916 | 4.316.467 |
| 40115 | 15-05-2015 | Coloplast A/S - B | 294.370 | 07-05-2015 | 1.324.665 | 357.659 |
| I alt | | | | | 107.540.349 | 29.035.888 |

Anmodningerne var vedlagt følgende bilag[7]:
1. Blanket 06.003 ENG – Claim to Relief from Danish Dividend Tax.
2. Credit Advices.
3. FORM 6166 from Internal Revenue Service (IRS) – Certificate of resident in USA (udstedt af de amerikanske skattemyndigheder).
4. Power of Attorney to Goal Taxback Limited.

Ad 1. I blanket 06.003 erklæres det, at The Proper er den retmæssige ejer af aktierne og er omfattet af dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

Ad. 2. Ifølge Credit Advices udarbejdet af custodian Old Park Lane Capital PLC eller Telesto Markets LLP har The Proper modtaget nettoudbytte af aktierne.

Ad 3. Af det modtagne Certificate of Residence (FORM 6166) udstedt af Department of the Treasury, US, fremgår følgende:

*"I certify that, **to the best of our knowledge**, the above-named entity is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the U.S. Internal Revenue Code, which is exempt from U.S. taxation under section 501(a), and is a resident of the United States of America for purposes of U.S. taxation."*

---

[6] Bilag 101-5-1 til 101-8-6
[7] Bilag 101-5-1 til 101-8-6

5

## 1.5.   Beregning af investeringerne

Med udgangspunkt i at The Proper skal eje aktierne dagen før ex-datoen, er anskaffelsessummerne for The Proper's køb af de aktier, som fremgår af anmodningerne[8], beregnet på baggrund af lukkekursen på sidste børsdag før ex-datoen[9]:

| SKATs bundt nr. | Aktie | Kursdato | Antal | Kurs | Beregnet anskaffelsessum DKK |
|---|---|---|---|---|---|
| 35015 | CHR. Hansen Holding A/S | 27-11-2014 | 839.500 | 258,90 | **217.346.550** |
| 35015 | Coloplast A/S - B | 04-12-2014 | 930.208 | 527,00 | 490.219.616 |
| 39015 | Novozymes A/S B | 25-02-2015 | 683.931 | 322,50 | 220.567.748 |
| 39015 | TDC A/S | 05-03-2015 | 3.293.727 | 54,00 | 177.861.258 |
| 39015 | DSV A/S | 12-03-2015 | 692.422 | 219,20 | 151.778.875 |
| 39015 | Pandora A/S | 18-03-2015 | 400.364 | 614,50 | 246.023.678 |
| 39015 | Danske Bank A/S | 18-03-2015 | 2.906.712 | 175,30 | 509.546.614 |
| 35215 | Novo Nordisk A/S B | 19-03-2015 | 6.634.763 | 341,90 | **2.268.425.470** |
| 39015 | Gn Store Nord A/S | 19-03-2015 | 622.804 | 154,20 | 96.036.377 |
| 39015 | Tryg A/S | 25-03-2015 | 34.813 | 868,50 | 30.235.091 |
| 39015 | FL Smidth & CO A/S | 26-03-2015 | 81.037 | 314,00 | 25.445.618 |
| 39015 | Carlsberg A/S - B | 26-03-2015 | 180.313 | 571,50 | 103.048.880 |
| 35215 | A.P. Møller Mærsk A/S A | 30-03-2015 | 7.879 | 15.810,00 | 124.566.990 |
| 35215 | A.P. Møller Mærsk A/S B | 30-03-2015 | 8.083 | 16.410,00 | 132.642.030 |
| 39015 | Vestas Wind Systems A/S | 30-03-2015 | 377.809 | 290,20 | 109.640.164 |
| 40115 | Coloplast A/S - B | 06-05-2015 | 294.370 | 510,00 | 150.128.700 |

## 1.6.   Oplysninger fra IRS i USA

SKAT har via Kompetent Myndighed i Danmark og USA modtaget oplysninger fra skattemyndigheden IRS i USA.

IRS har i brev dateret den 4. december 2015 oplyst[10]:
- At The Proper blev stiftet i september 2014.
- At The Proper's adresse er den samme, som The Proper har oplyst til SKAT.

IRS har på et møde med SKAT, Kompetent Myndighed, ultimo februar 2016 oplyst:
- At FORM 6166 (Certification of U.S. Tax Residency) udstedes af IRS på foranledning af, at pensionskassen indsender FORM 8802 (Application for United States Residency Certification). Oplysningerne i FORM 8802 afgives under ansvar, og efterprøves ikke af IRS ved udstedelsen af FORM 6166.

IRS har i brev af 13. juni 2016 vedlagt Instructions for Form 5500-EZ hvoraf det bl.a. fremgår:[11]
- At *"Who Does Not Have To File Form 5500-EZ*
  *You do not have to file Form 5500-EZ for the 2015 plan year for a one-participant plan if the total of the plan's assets and the assets of all other one-participant plans maintained by the employer at the end of the 2015 plan year does not exceed $250,000, unless 2015 is the*

---

[8] Bilag 101-5-1 til 101-8-6
[9] Kursen fremgår af Nasdaqs hjemmeside: http://www.nasdaqomxnordic.com
[10] Bilag 101-1-1 til 101-1-2
[11] Bilag 101-2-1 til 101-2-13

6

> *final plan year of the plan. For more information on final plan years, see Final Return later."*

Det er på baggrund af oplysningerne fra IRS SKATs vurdering, at der er tale om en "One-Participant (owners and Their Spouses) Retirement Plan".

IRS har i brev af 13. december 2016 oplyst[12]:
- At IRS ikke er i besiddelse af selvangivelser (FORM 5500) for The Proper, da der ikke er indsendt selvangivelser for 2014 eller 2015.

IRS har i forbindelse med generelle spørgsmål om pensionsplaner og indskud herpå fremsendt links til IRS-hjemmeside vedrørende "Topics for Retirement Plans"[13]. Af hjemmesiden fremgår blandt andet følgende:
- At en One-Participant 401(k) plan dækker en virksomhedsejer uden nogen ansatte ud over personen og eventuelt dennes nærtstående.
- At det årlige indskud er begrænset til mellem 12.500$ og 53.000$ alt efter indskyders alder (over eller under 50 år).

## 1.7.    Oplysninger fra SØIK
SKAT har den 28. august 2017 anmodet Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) om:

1. At be- eller afkræfte, at pensionskassen har modtaget de omhandlede udbytter.

2. At oplyse, om der i det beslaglagte materiale forefindes depotudskrifter fra pengeinstitutter, hvoraf depotbeholdninger tilhørende pensionskassen fremgår.

SØIK har i brev af 23. november 2017 delvist imødekommet SKATs anmodning. Der fremgår bl.a. følgende[14]:

*"SØIK kan i besvarelse af SKATs henvendelser oplyse, at der som altovervejende hovedregel ikke udleveres oplysninger fra en verserende strafferetlig forfølgning til parter udenfor straffesagen. Der er senere nedenfor givet en begrundelse derfor i relation til den konkrete anmodning om udlevering af oplysninger fra den verserende strafferetlige efterforskning.*
*SØIK finder imidlertid henset til sagens helt ekstraordinære karakter og SKATs helt særlige behov for at modtage oplysninger til brug for den verserende skattesag, at kunne oplyse følgende uden skadevirkning for efterforskningen:*

*Ad. 1.*

*SØIK kan ikke på baggrund af den indtil videre gennemførte efterforskning bekræfte, at de i ovennævnte e-mails anførte amerikanske pensionsplaner skulle have modtaget aktieudbytte som følge af besiddelse af danske aktier.*

---

[12] Bilag 101-3-1 til 101-3-2
[13] Bilag 101-4-1 til 101-4-9
[14] Bilag 101-A-1 til 101-A-5

Confidential Pursuant to Protective Order                                                                   SKAT_MDL_001_046755

*Ad. 2.*

*SØIK kan ikke på baggrund af den indtil videre gennemførte efterforskning bekræfte, at de i ovennævnte e-mails anførte pensionsplaner har besiddet danske aktier. Der er heller ikke ved henvendelse til VP-Securities A/S modtaget oplysninger om ejerskab af aktier, der på det foreliggende grundlag kan bekræfte de omhandlede pensionsplaner skulle have besiddet danske aktier".*

## 2. Retsregler

### 2.1. Lovbekendtgørelser
Selskabsskatteloven – lovbekendtgørelse nr. 1082 af 14. november 2012 og nr. 680 af 20. maj 2015:
- § 2, stk. 1, litra c og stk. 3, 2. pkt.

Ligningsloven – lovbekendtgørelse nr. 405 af 22. april 2013 med senere ændringer:
- § 16 A, stk. 1.

Kildeskatteloven – lovbekendtgørelse nr. 1403 af 7. december 2010 med senere ændringer:
- §§ 65, stk. 1 og 69 B, stk. 1.

Forældelsesloven – lov nr. 522 af 6. juni 2007 med senere ændringer:
- § 2, stk. 1 og § 3, stk. 1 og 2.

### 2.2. Dobbeltbeskatningsoverenskomst
BKI nr. 13 af 14/4 2000 af overenskomst af 19/8 1999 mellem Danmark og USA til undgåelse af dobbeltbeskatning og forhindring af skatteunddragelse for så vidt angår indkomstskatter. Som ændret ved BKI nr. 1 af 18/2 2008 af protokol af 2/5 2006:
- Artiklerne 10 og 22.

### 2.3. Retspraksis
SKM 2010.266 SR. Skatterådets bindende svar af 26. januar 2010.
Ved udlån af aktier, finder Skatterådet, at långiver fortsat skattemæssigt anses for ejer af aktierne, hvorfor udbyttet skal beskattes efter de regler, der gælder for långiver, herunder efter en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat, hvor långiver er hjemmehørende.

Udbytte på udlånte aktier skal derfor beskattes hos långiver.

8

Confidential Pursuant to Protective Order                                                                                      SKAT_MDL_001_046756

## 3. SKATs bemærkninger

### 3.1. Lovgrundlaget

Selskabsskatteloven og kildeskatteloven
Et udenlandsk selskab, der modtager udbytte fra et dansk selskab, er begrænset skattepligtig til Danmark efter selskabsskattelovens § 2, stk. 1, litra c.

Et udenlandsk selskab, der er begrænset skattepligtig til Danmark, skulle i 2014 og 2015 betale 27 % i skat af udbytte, jf. selskabsskattelovens § 2, stk. 3, og det danske udbetalende selskab indeholder således 27 %. Det fremgår af kildeskattelovens § 65.

Dobbeltbeskatningsoverenskomsten
I henhold til artikel 10, stk. 2, litra b), i dobbeltbeskatningsoverenskomsten mellem Danmark og USA kan Danmark beskatte udbytte, der udbetales fra et selskab hjemmehørende i Danmark til en person, der er hjemmehørende i USA, med 15 % af bruttobeløbet.

Danmark kan dog ikke beskatte udbytte udbetalt til et selskab, der er hjemmehørende i USA, hvis den retmæssige ejer er en pensionskasse, som omtalt i artikel 22, stykke 2, litra e, jf. dobbeltbeskatningsoverenskomstens artikel 10, stk. 3, litra c.

En pensionskasse efter artikel 22, stk. 2, litra e, er en juridisk person, hvad enten den er fritaget for beskatning eller ikke, der er organiseret efter lovgivningen i en kontraherende stat med det formål at yde pension eller lignende ydelser efter en fastsat ordning til arbejdstagere, herunder selvstændige erhvervsdrivende, forudsat at mere end 50 pct. af denne persons begunstigede, medlemmer eller deltagere er fysiske personer, som er hjemmehørende i en af de kontraherende stater.

Forældelsesloven
Det fremgår af forældelseslovens § 2, stk. 1, at forældelsen regnes tidligst fra det tidspunkt, hvor fordringshaveren kunne kræve at få fordringen opfyldt, medmindre andet følger af andre regler.

Tilbagesøgning af allerede udbetalte beløb er som udgangspunkt omfattet af den tre årige forældelse, jævnfør forældelseslovens § 3, stk. 1.

Den tre årige forældelse suspenderes, hvis fordringshaveren ikke havde kendskab til fordringen eller skyldneren. I så fald regnes forældelsen først fra den dag, hvor fordringshaveren fik eller burde have fået kendskab hertil, jævnfør forældelseslovens § 3, stk. 2.

### 3.2. Genoptagelse

SKAT genoptager The Proper's tidligere anmodninger om refusion af udbytteskatter, idet SKAT har modtaget oplysninger om The Proper fra IRS i USA.

Genopkrævning af udbetalte beløb er som udgangspunkt omfattet af den tre årige forældelse, jf. forældelseslovens § 3, stk. 1. Forældelsen regnes tidligst fra det tidspunkt, hvor fordringshaveren (SKAT) kunne kræve at få fordringen opfyldt, jf. forældelseslovens § 2, stk. 1.

SKATs krav forælder derfor tidligst 3 år efter udbetaling af det tilbagesøgte beløb til The Proper.

9

    SKAT_MDL_001_046757

Den tre årige forældelse suspenderes, hvis fordringshaveren (SKAT) ikke havde kendskab til fordringen eller skyldneren. I så fald regnes forældelsen først fra den dag, hvor fordringshaveren (SKAT) fik eller burde have fået kendskab hertil, jf. forældelseslovens § 3, stk. 2.

Den 4. december 2015 har SKAT fået kendskab til, at der er tale om en nystiftet pensionskasse.

Den 13. juni 2016 har SKAT fået kendskab til, at "401K" pensionskasser kun har en enkelt deltager – med de deraf begrænsede indskudsbeløb (mellem 12.500 $ og 53.000 $ pr. år alt efter indskyders alder), og at pensionskasser ikke skal indsende selvangivelser, hvis pensionskassernes aktiver er under 250.000 $.

Den 13. december 2016 har SKAT fået kendskab til, at The Proper ikke har indsendt selvangivelse for 2014 og 2015. Da The Proper ikke har indsendt FORM 5500 (selvangivelser), har de overfor IRS tilkendegivet, at deres aktiver ultimo 2014 og 2015 er under 250.000 $.

SKAT får ifølge ovenstående tidligst kendskab til fordringen den 13. juni 2016, hvor SKAT både har oplysningerne om, at der er tale om en nystiftet pensionskasse og at "401K" pensionskasser kun har en enkelt deltager – med de deraf begrænsede indskudsbeløb. SKATs krav forælder derfor tidligst den 13. juni 2019.

## 3.3.    Kapitalgrundlaget for pensionskassens investeringer
The Proper blev stiftet i september 2014[15].

Ifølge oplysningerne fra myndighederne i USA er der tale om en pensionskasse, hvor der kun er en deltager, som årligt max. kan indbetale 12.500/53.000 $[16] (ca. 85.375/361.990 kr.)[17].

Da The Proper ikke har indsendt FORM 5500 (selvangivelser) for hverken 2014 og 2015, har The Proper overfor IRS tilkendegivet, at deres aktiver ultimo 2014 og 2015 er under 250.000 $[18] (1.530.350 kr./1.707.500 kr.)[19].

The Proper har fra stiftelsen i september 2014 og frem til maj 2015 ifølge de indsendte Credit Advices fået udbytter for i alt 107.540.349 kr.[20] Beløbet ses ud fra ovenstående oplysninger om pensionskassens aktiver ikke at være tilgået pensionskassen. Heraf udgør de tilbagesøgte og refunderede udbytteskatter i alt 29.035.888 kr.[21]

SKAT har ud fra de modtagne Credit Advices beregnet, at samtlige af The Proper's investeringer i danske aktier[22] ligger langt over The Proper's kapitalgrundlag. Det fremgår bl.a.:

- At The Proper under 3 måneder efter stiftelsen havde investeret for 217.346.550 kr. i aktien CHR. Hansen Holding A/S.

---

[15] Bilag 101-1-1 til 101-1-2
[16] Bilag 101-4-1 til 101-4-9
[17] Kurs ultimo 2015 (683,00), jf. www.nationalbanken.dk.
[18] Bilag 101-2-1 til 101-2-13 og bilag 101-3-1 til 101-3-2
[19] Kurs ultimo 2014 (612,14) og 2015 (683,00), jf. www.nationalbanken.dk.
[20] Afsnit 1.4
[21] Afsnit 1.4
[22] Afsnit 1.5

10

Confidential Pursuant to Protective Order

- At The Proper den 19. marts 2015 var ejer af aktier i Novo Nordisk A/S til en værdi på i alt 2.268.425.470 kr.

På det grundlag er det SKATs vurdering, at The Proper, som en nystiftet pensionskasse der maximalt om året kunne indskyde 53.000 $ (361.990 kr.) og med et kapitalgrundlag på under 250.000 $ ultimo 2014 og 2015 (1.530.350 kr./1.707.500 kr.), ikke havde den fornødne kapital til at foretage de investeringer, der ligger til grund for The Proper's anmodninger.

Det skal bemærkes, at såfremt der skulle være tale om lånte aktier, kan The Proper ikke tilbagesøge indeholdt udbyttekat på disse, jf. SKM 2010.266 SR.

## 3.4.  Pensionskasse

De amerikanske skattemyndigheder (IRS) har oplyst, at der ikke ved udstedelsen af Certificate of Residence (FORM 6166) foretages efterprøvelse af de afgivne oplysninger i Application for United States Residency Certification (FORM 8802).

Certificate of Residence (FORM 6166) kan derfor ikke alene dokumentere, at The Proper er en pensionskasse, som har mulighed for at tilbagesøge den fulde udbytteskat efter dobbeltbeskatnings-overenskomsten mellem Danmark og USA, artikel 22, stk. 2, litra e.

## 4.  SKATs foreløbige afgørelse

SKAT foreslår, at The Proper tilbagebetaler den refunderede udbytteskat på i alt 29.035.888 kr., idet det fremgår af de modtagede oplysninger fra IRS:

- At The Proper ikke har haft kapitalgrundlag til at købe/eje de aktier, som fremgår af anmodningerne.
- At udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået The Proper.
- At de refunderede udbytteskatter ikke er tilgået The Proper.

Det er SKATs opfattelse, at The Proper som nystiftet pensionskasse – med en enkelt deltager med de deraf begrænsede indskudsbeløb – og at pensionskassens aktiver ultimo 2014 og 2015 udgjorde under 250.000 $, ikke har haft den fornødne kapital til at foretage de investeringer, der ligger til grund for anmodningerne.

The Proper kan derfor ikke være retmæssig ejer af de aktier, som de har fået refunderet indeholdt udbytteskat af.

SKAT har derfor refunderet de nævnte udbytteskatter til The Proper på et urigtig/forkert grundlag.

The Proper opfylder således ikke betingelserne for at få refunderet indeholdt udbytteskat af danske aktier, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

SKAT genopkræver derfor de tidligere refunderede udbytteskatter efter kildeskattelovens § 69B, stk. 1, jf. dobbeltbeskatningsoverenskomstens artikel 10.

11

Genopkrævning af udbetalte beløb er som udgangspunkt omfattet af den tre årige forældelse, jf. forældelseslovens § 3, stk. 1. Forældelsen regnes tidligst fra det tidspunkt, hvor fordringshaveren (SKAT) kunne kræve at få fordringen opfyldt, jf. forældelseslovens § 2, stk. 1.

SKATs krav forælder derfor tidligst 3 år efter udbetaling af det tilbagesøgte beløb til The Proper.

Den tre årige forældelse suspenderes, hvis fordringshaveren (SKAT) ikke havde kendskab til fordringen eller skyldneren. I så fald regnes forældelsen først fra den dag, hvor fordringshaveren (SKAT) fik eller burde have fået kendskab hertil, jf. forældelseslovens § 3, stk. 2.

Den 4. december 2015 har SKAT fået kendskab til, at der er tale om en nystiftet pensionskasse.

Den 13. juni 2016 har SKAT fået kendskab til, at "401K" pensionskasser kun har en enkelt deltager -- med de deraf begrænsede indskudsbeløb (mellem 12.500 $ og 53.000 $ pr. indkomstår alt efter indskyders alder), at pensionskasser ikke skal indsende selvangivelser, hvis pensionskassernes aktiver er under 250.000 $.

Den 13. december 2016 har SKAT fået kendskab til, at The Proper ikke har indsendt selvangivelse for 2014 og 2015. Da The Proper ikke har indsendt FORM 5500 (selvangivelser), har de overfor IRS tilkendegivet, at deres aktiver ultimo 2014 og 2015 er under 250.000 $.

SKAT får ifølge ovenstående tidligst kendskab til fordringen den 13. juni 2016, hvor SKAT både har oplysningerne om, at der er tale om en nystiftet pensionskasse og at "401K" pensionskasser kun har en enkelt deltager – med de deraf afgrænsede indskudsbeløb. SKATs krav forælder derfor tidligst den 13. juni 2019.

## 5.  Pensionskassens bemærkninger til SKATs forslag

Advokatfirmaet TVC er på vegne af The Proper i brev af 21. august 2017 fremkommet med følgende bemærkninger til SKATs tidligere forslag af 24. marts 2017:

*"... SKAT har i forslagene til afgørelse lagt vægt på følgende forhold:*

1    *Pensionskasserne har ikke haft kapital til at købe de ejede aktier.*
2    *De udbetalte udbytter er ikke tilgået pensionskasserne.*
3    *Pensionskasserne har ikke selvangivet i USA, hvorfor hver pensionskasses aktiver må være under USD 250.000.*
4    *Pensionskasserne er nystiftede og med kun en deltager hver.*
*Vi vil i det følgende fremkomme med vores bemærkninger til de enkelte punkter i SKATs forslag til afgørelse.*

*1      MANGLENDE KAPITAL*
*Det bestrides, at pensionskasserne ikke har haft økonomiske muligheder for at erhverve de aktier, hvorfra der er udbetalt udbytte, og som efterfølgende er søgt refunderet.*

*I den forbindelse bemærkes, at pensionskasserne på de globale finansmarkeder har utallige muligheder for at opnå finansiering til køb af aktier uden anvendelse af egenkapital. Udover muligheden for at optage klassisk lånefinansiering findes der ligeledes adskillige andre finansielle*

12

Confidential Pursuant to Protective Order

*instrumenter, som kan benyttes til at opnå den nødvendige finansiering for at erhverve økonomisk og juridisk ejerskab over aktierne.*

*For at kunne handle aktier behøver pensionskasserne blot eksempelvis at åbne bankkonti og separate depotkonti til opbevaring af aktierne. Herefter kan pensionskasserne indgå såkaldte Global Master Securities Lending Agreements (GMSLA), der giver pensionskasserne adgang til en værdipapirudlånsfacilitet reguleret af en såkaldt Prime Brooker Agreement eller en Repurchase Agreement Facility.*

*Sådanne aftaler giver pensionskasserne mulighed for at erhverve aktierne uden brug af egenkapital, idet pensionskasserne samtidig med erhvervelsen af de pågældende aktier udlåner aktierne til tredjemand. Den betaling som pensionskasserne modtager for udlånet generer tilstrækkelig likviditet til at betale for aktierne på betalingsdatoen, idet tidsforskellen mellem køb og betaling sædvanligvis udgør to dage for standardtransaktioner.*

*En sådan transaktion indebærer ligeledes, at pensionskasserne stiller depotkontoen (hvor aktierne opbevares) til sikkerhed for långiver. Den eneste rettighed, som långiver imidlertid opnår, er mulighed for fyldestgørelse i aktierne ved låntagers insolvens, eller såfremt låntager ikke er i stand til at afstå aktierne, når betalingen forfalder.*

*I overensstemmelse med Skatterådets afgørelse i SKM 2010.26.SR er det således pensionskasserne, der som udlåner af aktierne til tredjemand tillige er berettiget til at modtage udbyttet i disse tilfælde.*

*Det er således ikke korrekt, at pensionskasserne ikke har kunnet finansiere de pågældende handler.*

## 2   UDBYTTERNE VEDRØRENDE DE AKTIER, DER FREMGÅR AF ANMODNINGERNE, SAMT AT DEN REFUNDEREDE UDBYTTESKAT IKKE ER TILGÅET PENSIONSKASSERNE

*Det bestrides helt overordnet, at pensionskasserne ikke har modtaget de omtvistede udbytter, eller at de refunderede udbytteskatter ikke er tilgået pensionskasserne.*

*SKAT har ikke i forslagene til afgørelse nærmere begrundet dette synspunkt eller dokumenteret, at pensionskasserne ikke har modtaget udbytte eller refusion.*

*Det bemærkes i den forbindelse, at Statsadvokaten for Særlig Økonomisk og International Kriminalitet har beslaglagt en lang række oplysninger hos Solo Capital i London, som bl.a. dokumenterer modtagelsen af udbytterne samt udbytteskatten. Disse oplysninger er imidlertid svært tilgængelige for pensionskasserne, hvorfor det for indeværende ikke har været muligt at fremlægge dokumentation herfor.*

## 3   MANGLENDE SELVANGIVELSE I USA

*Hertil bemærkes, at en pensionskasse ifølge den amerikanske skattelovgivning er undtaget selvangivelsespligt, hvis dens aktiver ikke overstiger grænseværdien på USD 250.0000 på den sidste dag i regnskabsåret.*

13

*Pensionskassernes aktiver kan således godt i løbet af året have oversteget grænsen, når blot aktiverne på sidste regnskabsdag var mindre.*

*Der kan være en lang række konkrete årsager til, at pensionskassernes aktiver var mindre end USD 250.000 på sidste regnskabsdag.*

*For eksempel vil de gennemførte aktietransaktioner typiskvis have været gennemført på dette tidspunkt, (køb og salg gennemført) med den virkning at aktierne ikke længere befandt sig i depoterne.*

*Herudover er der en række omkostninger forbundet med de gennemførte transaktioner, som ligeledes medfører reduktion i pensionskassernes aktiver.*

*Der er ligeledes muligt at foretage udlodninger fra pensionskasserne, med den virkning at aktiverne på regnskabsdagen var mindre end USD 250.000.*

*Endelig bemærkes, at selv om pensionskasserne fejlagtigt måtte have undladt at selvangive i USA, kan en eventuel manglende selvangivelse på ingen måde medføre, at pensionskasserne ikke er retmæssige ejere af de aktier, hvoraf der er søgt om udbytterefusion.*

*Det bemærkes i den forbindelse, at pensionskasserne i USA er gyldigt stiftede og såvel formelt som reelt har retsevne.*

### 4    NYSTIFTEDE PENSIONSKASSER MED ÉN DELTAGER

*Helt overordnet bemærkes, at det forhold, hvorvidt de pågældende pensionskasser er nystiftede eller kun har en enkelt deltager hver, ikke har nogen betydning for, hvorvidt pensionskasserne er berettiget til at modtage udbytterefusion.*

*Såfremt pensionskasserne opfylder betingelserne i dobbeltbeskatningsoverenskomsten mellem Danmark og USA, jf. artikel 22, stk. 2, litra e, jf. artikel 10, stk. 3, litra c, er pensionskasserne efter overenskomsten berettiget til at få refunderet udbytteskatten.*

*Af overenskomsten fremgår, at Danmark og USA selv definerer, hvad der konstituerer en pensionskasse, og at dette, jf. også SKATs eget forslag, forstås som*

> *"En juridisk person, der er organiseret efter lovgivning i en kontraherende stat med det formål at yde pension eller lignende ydelser efter en fastsat ordning til arbejdstagere, herunder selvstændige erhvervsdrivende, forudsat at mere end 50 % af denne persons begunstigede medlemmer er fysiske personer, som er hjemmehørende i en af de kontraherende stater".*

*Da pensionskasserne efter amerikansk ret er gyldigt stiftede og omfattet af overenskomsten, skal Danmark anerkende, at pensionskasserne er berettigede til udbytterefusion. Det bemærkes i den forbindelse, at SKAT tilsyneladende ikke fra de amerikanske myndigheder har fået oplyst, at pensionskasserne ikke er gyldigt stiftede mv., idet SKAT ikke har henvist hertil i forslagene til afgørelse.*

*Det fremgår endvidere af OECD's bemærkninger vedrørende de amerikanske dobbeltbeskatningsaftaler, at samtlige 401 (k)-pensionsplaner med én enkelt deltager antages at*

14

*være omfattet af de amerikanske aftaler, hvilket ligeledes kan dokumenteres i dokumenter fra den amerikanske kongres i forbindelse med afstemningen om ratifikationen af den amerikanske dobbeltbeskatningsoverenskomst.*

● ● ●   ● ● ●

*Det er på denne baggrund vores opfattelse, at ikke er grundlag for at træffe afgørelser i overensstemmelse med SKATs forslag til afgørelse af den 24. marts 2017....."*

## 6. SKATs bemærkninger

Advokatfirmaet TVC har på The Proper's vegne bestridt, at pensionskassen ikke har haft økonomiske muligheder for at erhverve aktierne, hvorfra der er udbetalt udbytte, og hvor der efterfølgende er refunderet udbytteskat. Det anføres, at pensionskassen på de globale finansmarkeder har utallige muligheder for at opnå finansiering til køb af aktier uden anvendelse af egenkapital. Advokatfirmaet har ikke fremlagt dokumentation for, at pensionskassen har opnået finansiering til køb af aktier uden anvendelse af egenkapital.

Advokatfirmaet bestrider endvidere, at pensionskassen ikke har modtaget de omtvistede udbytter, eller at de refunderede udbytteskatter ikke er tilgået pensionskasserne. Advokatfirmaet har ikke fremlagt dokumentation herfor, idet advokatfirmaet oplyser, at Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) har beslaglagt en lang række oplysninger hos Solo Capital i London, hvorfor det ikke har været muligt at fremlægge dokumentation herfor.

SKAT kan konstatere, at der ikke er fremlagt dokumentation for:
- At pensionskassen har erhvervet aktierne – med eller uden anvendelse af egenkapital
- At pensionskassen har modtaget udbytte af aktierne
- At der er indeholdt udbytteskat af aktieudbytterne

SØIK har endvidere oplyst, at SØIK ikke på baggrund af den indtil videre gennemførte efterforskning kan bekræfte, at pensionskassen har besiddet danske aktier eller har modtaget aktieudbytte som følge af besiddelse af danske aktier.

Det kan derfor ikke lægges til grund, at SØIK er i besiddelse af det relevante materiale.

På baggrund heraf finder SKAT fortsat, at The Proper ikke har dokumenteret, at pensionskassen opfyldte betingelserne for at få refunderet indeholdte udbytteskatter af de pågældende aktier.

15

Confidential Pursuant to Protective Order

## 7.  SKATs endelige afgørelse

SKATs tidligere afgørelser om refusion af udbytteskatter på i alt 29.035.888 kr. til The Proper tilbagekaldes, idet The Proper ikke har været berettiget til at modtage beløbene.

Det er SKATs vurdering:
- At The Proper ikke ejer eller har ejet de aktier, som fremgår af anmodningerne.
- At udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået The Proper.

Det er endvidere SKATs vurdering, at The Proper ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for anmodningerne om refusion af udbytteskat.

Ved vurderingen har SKAT lagt vægt på, at The Proper ikke har fremlagt dokumentation for, at The Proper har ejet aktierne. The Proper har heller ikke fremlagt dokumentation for, at pensionskassen har modtaget udbytte af aktierne. Sagens oplysninger giver ikke grundlag for sådanne betydelige investeringer i danske aktier.

SKAT har lagt vægt på:
- At The Proper er en nystiftet pensionskasse.
- At The Proper kun har en enkelt deltager med de deraf begrænsede indskudsbeløb.
- At The Proper ikke har indsendt Form 5500 i USA, hvorfor det må lægges til grund, at The Proper formue var under 250.000 USD ultimo de relevante indkomstår.
- At SØIK ikke på baggrund af den indtil videre gennemførte efterforskning kan bekræfte, at The Proper har besiddet danske aktier eller har modtaget aktieudbytte som følge af besiddelse af danske aktier.

Det er på baggrund af de nu foreliggende oplysninger SKATs vurdering, at The Proper ikke har haft økonomiske muligheder for at eje aktier i et sådant omfang, som angivet i The Proper's ansøgninger om refusion af dansk udbytteskat. Dette fremgår eksempelvis ved,

- At The Proper under 3 måneder efter stiftelsen havde investeret for 217.346.550 kr. i aktien CHR. Hansen Holding A/S.

- At The Proper den 19. marts 2015 var ejer af aktier i Novo Nordisk A/S til en værdi på i alt 2.268.425.470 kr.

The Proper har derfor ikke dokumenteret, at The Proper opfylder betingelserne for at få refunderet indeholdte udbytteskatter af danske aktier, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

The Propers repræsentant, Advokatfirmaet TVC har ikke med deres indsigelser til SKATs forslag af 24. marts 2017 fremkommet med oplysninger eller dokumentation for, at The Proper har ejet aktierne og modtaget aktieudbytterne ifølge anmodningerne.

SKATs afgørelser om at refundere udbytteskat til The Proper hviler dermed på et urigtigt grundlag. SKAT tilbagekalder derfor de tidligere afgørelser om refusion af udbytteskatter.

16

SKAT_MDL_001_046764

SKAT opkræver ikke ved denne afgørelse den uberettigede udbetalte refusion af udbytteskat. Dette er en ændring i forhold til SKATs tidligere forslag til afgørelse af 24. marts 2017 til The Proper. Kammeradvokaten vil på vegne af SKAT fremsende påkravsskrivelse, hvori SKAT rejser krav om tilbagebetaling og erstatning over for The Proper.

## Klagevejledning

### Hvis I vil klage
Så skal I skrive til Skatteankestyrelsen senest tre måneder efter den dag, hvor I har fået denne afgørelse.

Skriv alle de punkter, I vil klage over, og begrund for hvert punkt, hvorfor I mener, afgørelsen er forkert. Vedlæg afgørelsen og sagsfremstillingen. Har I dokumenter, som støtter og underbygger jeres klage, beder vi jer også vedlægge dem. Hvis I ønsker et møde med en sagsbehandler i Skatteankestyrelsen, skal I skrive dit telefonnummer i klagen.

Det koster 400 kr. at klage. Hvis I får helt eller delvist ret i jeres klage, får I pengene tilbage.

### Sådan sender I klagen og betaler
I kan sende klagen
- elektronisk via Skatteankestyrelsens klageformular på skatteankestyrelsen.dk, hvor I samtidig bliver bedt om at betale med betalingskort eller Mobile Pay.
- som digital post via borger.dk. eller virk.dk. Betal ved at overføre 400 kr. til kontoen med registreringsnr. 0216 og kontonr. 4069029361, og skriv jeres navn og TIN-nr. i meddelelsesfeltet.
- som brev til Skatteankestyrelsen, Ved Vesterport 6, 4. sal, 1612 København V. Betal ved at overføre 400 kr. til kontoen med registreringsnr. 0216 og kontonr. 4069029361, og skriv jeres navn og TIN-nr. i meddelelsesfeltet.
- Betaling fra udlandet kan ske ved overførsel af beløbet til 0216 (registreringsnummer bank) 4069029361 (kontonummer), IBAN DK 0502164069029361, SWIFT DABADKKK.

### I kan søge om at få betalt jeres rådgiver
Hvis I får en rådgiver til at hjælpe med klagesagen, kan I søge om at få rådgivningen betalt helt eller delvist, hvis sagen er omfattet af reglerne i skatteforvaltningslovens kapitel 19. Der kan læses mere om denne mulighed på skat.dk/omkostningsgodtgørelse.

17

Confidential Pursuant to Protective Order     SKAT_MDL_001_046765

**Love og regler**

De love og afgørelser, der er henvist til, kan findes på skat.dk/love eller skat.dk/afgørelser. Yderligere information/vejledning i at klage kan hentes på skat.dk/klage eller skatteankestyrelsen.dk/english.

Med venlig hilsen

**John Christiansen**
Chefkonsulent

E-mail: john.christiansen@skat.dk
Telefon nr.: (+45) 20 75 83 56

**Katrine Basballe**
Fagkonsulent

E-mail: katrine.basballe@skat.dk
Telefon nr.: (+45) 72 37 02 38

**Lill Drost**
Funktionsleder

E-mail: lill.drost@skat.dk

Kopi af afgørelse samt vedlagte bilag er sendt til TVC Advokatfirma, Havneholmen 25, 9., 1561 København V

18



**STATSADVOKATEN**

SKAT - Indsats
Att. Christian Baden Ekstrand

Dato: 23. november 2017
J.nr.: SØK-76141-00005-17
Sagsbehandler: NVH

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00
FAX 45 15 00 16

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk

**Anmodning om modtagelse af oplysninger**

SKAT har ved e-mail af 28. august 2017 anmodet Statsadvokaten for Særlig Øko-
nomisk og International Kriminalitet (SØIK) om udlevering af oplysninger på føl-
gende måde:

> "SKAT har i forbindelse med sagsbehandlingen af de administrative sager, om tilbagebetaling
> af for meget udbetalt udbytteskat, anmodet          ) Amerikanske 401 K pensionsplaner
> om, at tilbagebetale                    ' i for meget modtaget refusion af udbytteskat.
>
> Den modtagne netto dividende udgør i alt
>
> SKAT har i forbindelse hermed modtaget indsigelse (bilag 2) fra TVC advokater v/Torben
> Bagge, til de af SKAT fremsendte anmodninger.
> I indsigelsen anføres bla. under punkt 2... "Det bemærkes i den forbindelse, at Statsadvokaten
> for Særlig Økonomisk og International Kriminalitet har beslaglagt en række oplysninger hos
> Solo Capital i London, som bl.a. dokumentere modtagelsen af udbytterne samt udbytteskatten.
> Disse oplysninger er imidlertid svært tilgængelige for pensionskasserne, hvorfor det for inde-
> værende ikke har været muligt at fremlægge dokumentation herfor"...
>
> 1.  SKAT skal derfor anmode SØIK om at be- eller afkræfte, at de i bilag 2 nævnte pensi-
>     onskasser har modtaget de omhandlede udbytter.
> 2.  Det ønskes endvidere oplyst, om der i det beslaglagte materiale forefindes depotudskrifter
>     fra pensionsinstitutter hvoraf depotbeholdninger tilhørende de nævnte pensionsplaner
>     fremgår.
>
> Oplysningerne indhentes i henhold til Forvaltningslovens § 28."

SKAT har ved efterfølgende e-mail af 2. november 2017 oplyst følgende:

---

**SKAT Fredensborg**

Bilag nr._____101 -A-01

Confidential Pursuant to Protective Order                                        SKAT_MDL_001_046767

"SKAT har den 10. oktober 2017 fået indsigelse fra TVC vedrørende yderligere    USA pensionsplaner. På baggrund heraf anmodes SØIK om de samme oplysninger vedrørende de resterende    USA pensionsplaner.
Til jeres information er de to indsigelser fra TVC samt dataark (Appendix 1 and 2) for de i alt    USA pensionsplaner vedlagt."

**SØIK kan delvist imødekomme SKAT's anmodning om modtagelse af oplysninger jf. nærmere nedenfor.**

SØIK kan i besvarelse af SKAT's henvendelser oplyse, at der som altovervejende hovedregel ikke udleveres oplysninger fra en verserende strafferetlig forfølgning til parter udenfor straffesagen. Der er senere nedenfor givet en begrundelse derfor i relation til den konkrete anmodning om udlevering af oplysninger fra den verserende strafferetlige efterforskning.

STATSADVOKATEN FOR SÆRLIG ØKONOMISK OG INTERNATIONAL KRIMINALITET

SIDE 2

SØIK finder imidlertid henset til sagens helt ekstraordinære karakter og SKAT's helt særlige behov for at modtage oplysninger til brug for den verserende skattesag, at kunne oplyse følgende uden skadevirkning for efterforskningen:

Ad. 1.

SØIK kan ikke på baggrund af den indtil videre gennemførte efterforskning bekræfte, at de i ovennævnte e-mails anførte amerikanske pensionsplaner skulle have modtaget aktieudbytte som følge af besiddelse af danske aktier.

Ad. 2.

SØIK kan ikke på baggrund af den indtil videre gennemførte efterforskning bekræfte, at de i ovennævnte e-mails anførte pensionsplaner har besiddet danske aktier. Der er heller ikke ved henvendelse til VP-Securities A/S modtaget oplysninger om ejerskab af aktier, der på det foreliggende grundlag kan bekræfte de omhandlede pensionsplaner skulle have besiddet danske akter.

**Begrundelse for delvis afslag på modtagelse af oplysninger**
Det er SØIK's opfattelse, at de udbedte oplysninger er fortrolige oplysninger. Det er desuden SØIK's opfattelse, at en udlevering af de pågældende oplysninger på nuværende tidspunkt vil stride mod afgørende hensyn til den verserende efterforskning vedrørende uberettiget refusion af udbytteskat.

Udgangspunktet for videregivelse af oplysninger mellem myndigheder er, at i det omfang en forvaltningsmyndighed er berettiget til at videregive en oplysning, skal myndigheden på begæring af en anden forvaltningsmyndighed videregive oplysnin-

```
┌─────────────────────────────┐
│                             │
│   SKAT Fredensborg          │
│                             │
│   Bilag nr. ____101 -A-02   │
└─────────────────────────────┘
```

gen, hvis den er af betydning for myndighedens virksomhed eller for en afgørelse, som myndigheden skal træffe, jf. forvaltningslovens § 31, stk. 1. Hvorvidt myndigheden er berettiget til at videregive en oplysning, afhænger af reglerne i forvaltningslovens § 28 og persondataloven samt særlige tavshedspligtregler.

Efter forvaltningslovens § 31, stk. 2, gælder videregivelsespligten ikke, hvis videregivelsen påfører myndigheden et merarbejde, der væsentligt overstiger den interesse, den anden myndighed har i at modtage oplysningerne.

Det er derudover SØIK's opfattelse, at videregivelsespligten ikke gælder, hvis en udlevering af oplysningerne vil stride mod afgørende hensyn til offentlige interesser. Denne undtagelse fremgår ikke direkte af forvaltningslovens ordlyd, men ses at være forudsat ved lovens tilblivelse.

STATSADVOKATEN FOR SÆRLIG ØKONOMISK OG INTERNATIONAL KRIMINALITET

SIDE 3

Forvaltningslovens kapitel 8, hvori § 31 indgår, blev således udarbejdet med udgangspunkt i bl.a. betænkning nr. 998/1984 om tavshedspligt. Af betænkningens s. 161 fremgår, at udvalget var opmærksom på, at der kan være private eller offentlige interesser, der taler imod en videre udbredelse af særligt følsomme oplysninger med en sådan vægt, at oplysningerne end ikke bør videregives til andre myndigheder, der har et sagligt behov for dem. Udvalgets flertal foreslog på den baggrund, at der i en ny forvaltningslov fastsattes en bestemmelse om at videregivelse af oplysninger mellem offentlige myndigheder *skal* ske og herunder en regel om, at videregivelse *skal afvises*, hvis det vil stride mod afgørende hensyn til private eller offentlige interesser, jf. betænkningens s. 196 (lovudkastets § 6 b).

Det efterfølgende lovforslag (nr. L 4 af 2. oktober 1985) blev som nævnt udarbejdet med udgangspunkt i betænkningen, herunder udvalgets lovudkast. I forhold til reglerne om udveksling af oplysninger mellem myndigheder blev bestemmelsen om, hvornår en myndighed *skal* videregive oplysninger til en anden forvaltningsmyndighed, imidlertid placeret i forvaltningslovens § 31, og bestemmelserne om, hvornår en myndighed *kan* videregive oplysninger til andre forvaltningsmyndigheder, placeret i § 28. Lovforslaget indeholdt ikke bemærkninger, der specifikt vedrører udvalgets forslag om, at en myndighed skulle kunne afvise udlevering på grund af afgørende hensyn til offentlige interesser.

Med lovforslagets vedtagelse fik forvaltningslovens § 28 følgende ordlyd:

"**§ 28.** Oplysninger om enkeltpersoners rent private forhold, herunder oplysninger om race, religion og hudfarve, om politiske, foreningsmæssige, seksuelle og strafbare forhold samt oplysninger om helbredsforhold, væsentlige sociale problemer og misbrug af nydelsesmidler og lignende, må ikke videregives til en anden forvaltningsmyndighed.
    *Stk. 2.* Videregivelse af de i stk. 1 nævnte oplysninger kan dog ske, når
1)   den, oplysningen angår, har givet samtykke,

SKAT Fredensborg

Bilag nr._____101 -A-03

                    SKAT_MDL_001_046769

2) det følger af lov eller bestemmelser fastsat i henhold til lov, at oplysningen skal videregives,

3) videregivelsen sker til varetagelse af private eller offentlige interesser, der klart overstiger hensynet til de interesser, der begrunder hemmeligholdelse, herunder hensynet til den, oplysningen angår, eller

4) videregivelsen er et nødvendigt led i sagens behandling eller er nødvendig for, at en myndighed kan gennemføre tilsyns- eller kontrolopgaver.

*Stk. 3.* Andre fortrolige oplysninger må ud over de i stk. 2 nævnte tilfælde kun videregives til en anden forvaltningsmyndighed, når det må antages, at oplysningen vil være at væsentlig betydning for myndighedens virksomhed eller for en afgørelse, myndigheden skal træffe. "

Af § 28, stk. 2, nr. 3 (den såkaldte værdispringsregel), fremgik det således, at videregivelse af oplysninger om bl.a. strafbare forhold kunne ske til varetagelse af private eller offentlige interesser, der klart oversteg hensynet til de interesser, der begrunder hemmeligholdelse. Med denne bestemmelse fulgte således, at en myndighed skulle afvise at udlevere sådanne oplysninger, hvis de interesser – offentlige eller private – der begrundede hemmeligholdelse, vejede tungere end de interesser, som begrundede anmodningen om udlevering. Af bestemmelsens forarbejder fremgår som eksempel herpå, at den sociale sektor skulle have mulighed for at afveje hensynet til offentlige interesser mod hensynet til, at man gennem videregivelse af rent personlige oplysninger skader muligheden for – generelt – at udføre socialt arbejde, der ofte bygger på et åbent tillidsforhold mellem den person, der skal have bistand, og den person, der skal yde denne bistand. Der henvises til Folketingets Retsudvalgs tillægsbetænkning af 6. december 1985, FT 1985-86, Tillæg B, sp. 233.

Det bemærkes i øvrigt, at videregivelseshjemlen i den dagældende bestemmelse i forvaltningslovens § 28, stk. 2, nr. 4, ifølge bestemmelsens forarbejder alene fandt anvendelse, når det var nødvendigt af hensyn til den *afgivende* myndigheds tilsyns- eller kontrolopgaver.

Reglerne for videregivelse af oplysninger er siden blevet ændret ved vedtagelsen af persondataloven og ved de ændringer af forvaltningslovens § 28, som fulgte af lov nr. 503 af 12. juni 2009. Der er i den forbindelse sket en vis udvidelse af adgangen til at videregive fortrolige oplysninger til andre forvaltningsmyndigheder, men der ses ikke hermed at være tilsigtet en ændring af retstilstanden, hvorefter forvaltningsmyndigheder ikke er forpligtet til at videregive sådanne oplysninger til en anden forvaltningsmyndighed i en situation, hvor dette vil stride mod afgørende hensyn til offentlige interesser, som den afgivende myndighed selv råder over.

Det er således SØIK's opfattelse, at politi og anklagemyndighed (fortsat) kan afslå videregivelse af fortrolige oplysninger, hvis det f.eks. vil stride mod afgørende hensyn til efterforskningen af en straffesag.

STATSADVOKATEN FOR SÆRLIG ØKONOMISK OG INTERNATIONAL KRIMINALITET

SIDE 4

SKAT Fredensborg

Bilag nr. _____101 -A-04_

Da det som anført ovenfor er SØIK's opfattelse, at udlevering af yderligere oplysninger på nuværende tidspunkt vil stride mod afgørende hensyn til efterforskningen, kan SØIK ikke yderligere imødekomme SKAT's anmodning.

SØIK bemærker, at ovennævnte afgørelse vil kunne ændres efter begæring fra SKAT, når de anførte hensyn, der nødvendiggør hemmeligholdelse, ikke måtte foreligge længere.

**Klageadgang**

Min afgørelse kan påklages til Rigsadvokaten. Adressen er Frederiksholms Kanal 16, 1220 København K, rigsadvokaten@ankl.dk.

Fristen for at klage er 4 uger efter modtagelsen af dette brev.

STATSADVOKATEN FOR SÆRLIG ØKONOMISK OG INTERNATIONAL KRIMINALITET

SIDE 6

Med venlig hilsen

Niels Velby Hansen
vicestatsadvokat

SKAT Fredensborg

Bilag nr. _____ 101 -A-05