# Exhibit 99_T

[Translation]

[logo]
DANISH TAX AGENCY

Michelle Investments Pension Plan
40 West 57th Street 20th Floor
New York
NY 10019
USA

Special control
Kratbjerg 236
3480 Fredensborg
Denmark
www.skat.dk
7 February 2019
Captia no. 18-0219374
TIN: 45-5252601

Dear Sirs

## Decision – Cancellation of previous decisions on dividend tax refunds

The Danish Tax Agency (formerly SKAT) previously decided to refund dividend tax to Michelle Investments Pension Plan ("MIPP") on the basis of refund claims submitted by Acupay System LLC, MIPP's agent.

The Danish Tax Agency has decided to cancel the previous decisions on dividend tax refunds totalling DKK 73,796,103 as MIPP was not entitled to receive such refunds.

The cancellation applies to the following decisions:

| | | |
|---|---|---:|
| Claim of 2 September 2012 | DKK | 4,812,750 |
| Claim of December 2012 | DKK | 1,674,000 |
| Claim of 17 December 2012 | DKK | 798,660 |
| Claim of 19 March 2013 | DKK | 4,833,675 |
| Claim of 19 April 2013 | DKK | 3,346,650 |
| Claim of 16 May 2013 | DKK | 22,758,300 |
| Claim of 29 August 2013 | DKK | 2,004,750 |
| Claim of 10 December 2013 | DKK | 1,285,998 |
| Claim of 6 January 2014 | DKK | 1,854,090 |
| Claim of 20 March 2014 | DKK | 3,030,287 |
| Claim of 17 April 2014 | DKK | 25,601,612 |
| Claim of 27 May 2014 | DKK | 672,566 |
| Claim of 19 August 2014 | DKK | 1,122,765 |
| Total | DKK | 73,796,103 |

In the Danish Tax Agency's opinion, MIPP does not own and did not own the shares mentioned in the claim forms, and MIPP did not receive dividends on the shares mentioned in the claim forms.

The Danish Tax Agency is also of the opinion that MIPP did not have the capital required to make the investments in the Danish shares forming the basis of the claims for dividend tax refunds mentioned above.

According to the Dividend Credit Advices submitted, MIPP supposedly invested a considerable amount in shares in Danish companies and received dividends on those shares. The information made available in this case in no way substantiates that such investments were made.

The Danish Tax Agency has given weight to the fact:

- That MIPP is a newly established pension plan.
- That MIPP has one participant only, which means that the contributions are limited.
- That MIPP did not submit any FORM 5500 in the USA, and therefore it must be taken as a fact that MIPP's assets amounted to less than USD 250,000 at the end of the relevant income years.

On the basis of the information now available, the Danish Tax Agency is of the opinion that MIPP's financial situation did not allow it to own shares on the scale stated in MIPP's claims for Danish dividend tax refunds. This may be illustrated by the following examples:

- On 8 August 2012, i.e. 3 months after its establishment, MIPP stated that it had invested DKK 325,500,000 in TDC A/S shares.
- On 20 March 2013, i.e. 10 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and H Lundbeck A/S shares worth a total amount of DKK 2,991,372,500.
- On 20 March 2014, i.e. 22 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and Carlsberg A/S shares worth a total amount of DKK 3,033,031,664.

Consequently, MIPP does not fulfil the conditions for refunds of dividend tax withheld on Danish shares, see article 10 of the double taxation convention between Denmark and the USA.

The Danish Tax Agency therefore made the dividend tax refunds to MIPP on an incorrect basis, and the Danish Tax Agency therefore cancels the previous decisions on dividend tax refunds.

On behalf of the Danish Tax Agency, Kammeradvokaten (the legal advisor to the Danish government) will raise a claim for repayment and damages against MIPP.

Moreover, it should be noted that the Danish Tax Agency is of the opinion that this case is one out of a large group of international cases concerning fraud against the Danish state which the Danish Tax Agency has reported to the State Prosecutor for Serious Economic and International Crime. The Danish Tax Agency has reported the cases as fraud under section 279 of the Danish Criminal Code (fraudulent claims for dividend tax refunds) since the pension plans having submitted the claims do not own and did not own the shares mentioned in the claim forms, and the pension plans did not receive dividends on the shares mentioned in the claim forms.

More reasons are provided in the statement of facts below.

Reference is made to the appendices which accompanied the Danish Tax Agency's preliminary decision dated 13 April 2018.

## Statement of facts and reasoning

### Contents

1. The facts .................................................................................................................. 4
1.1 Description of the case .............................................................................................. 4
1.2 Dividend tax refunded ............................................................................................... 4
1.3 Calculation of investments ........................................................................................ 5
1.4 Registration of Danish shares ................................................................................... 6
1.5 Information from the IRS in the USA ....................................................................... 6
2. Statutory law ……....................................................................................................... 7
2.1 Consolidated acts ...................................................................................................... 7
2.2 Double taxation convention ...................................................................................... 8
3. The Danish Tax Agency's comments ....................................................................... 8
3.1 Statutory basis/legal basis ......................................................................................... 8
3.2 Ownership of shares and receipt of dividends .......................................................... 8
3.2.1 The custody account ................................................................................................. 8
3.2.2 The capital base of the pension plan's investments .................................................. 9
3.2.3 Dividends and dividend tax withheld ........................................................................ 9
3.3 Cancellation of previous decisions ........................................................................... 10
4. The Danish Tax Agency's preliminary decision dated 13 April 2018 ...................... 10
5. The pension plan's comments on the Danish Tax Agency's preliminary decision .... 11
6. The Danish Tax Agency's final decision ………........................................................ 11
Guidance on how to appeal ……………….................................................................... 11
Statutory basis ……………………………...................................................................... 12

## 1. The facts

### 1.1 Description of the case

MIPP is registered as a pension plan in the USA[1] and was established in May 2012[2].

In the period from September 2012 to 19 August 2014, Acupay System LLC submitted claims to the Danish Tax Agency on behalf of MIPP for the refund of dividend tax withheld on Danish shares, totalling DKK 73,796,103.

On that basis, the Danish Tax Agency refunded dividend tax to MIPP via Acupay System LLC's bank account no. 0022 1819 0790 5700 with DEXIA BANQUE INTERNATIONALE A LUXEMBOURG.

In connection with the control of previous dividend tax refunds, the Danish Tax Agency has obtained information via Competent Authority from the US tax authorities, Department of the Treasury, the Internal Revenue Service (the "IRS"). According to the information:

- MIPP is a newly established pension plan.
- The annual contributions to the pension plan are limited to USD 12,500-53,000 per participant, depending on the participant's age.
- MIPP did not submit any FORM 5500, thus indicating to the IRS that its assets at the end of 2012, 2013 and 2014 amounted to less than USD 250,000.

After sending its preliminary decision on 13 April 2018, the Danish Tax Agency agreed to extend the time-limit for objections on several occasions, most recently on 31 January 2019.

### 1.2 Dividend tax refunded

With reference to the double taxation convention between Denmark and the USA, the agent Acupay System LLC claimed and received on behalf of MIPP dividend tax refunds in respect of the following shares[3]:

| SKAT bundle no. | Date of claim | Share | Number | Ex date | Total dividends DKK | Dividend tax refunded DKK |
|---|---|---|---|---|---|---|
| 64812 | 2 September 2012 | TDC A/S | 7,750,000 | 9 August 2012 | 17,825,000 | 4,812,750 |
| 1613 | December 2012 | Coloplast A/S – B | 310,000 | 12 December 2012 | 6,200,000 | 1,674,000 |
| 85412 | 17 December 2012 | CHR. Hansen Holding A/S | 1,020,000 | 28 November 2012 | 2,958,000 | 798,660 |
| 17313 | 19 March 2013 | Novozymes A/S B | 2,100,000 | 1 March 2013 | 4,620,000 | 1,247,400 |
| 17313 | 19 March 2013 | TDC A/S | 5,775,000 | 8 March 2013 | 13,282,500 | 3,586,275 |
| 27513 | 19 April 2013 | H Lundbeck A/S | 1,325,000 | 21 March 2013 | 2,650,000 | 715,500 |
| 27513 | 19 April 2013 | FL Smidth & CO A/S | 355,000 | 8 April 2013 | 3,195,000 | 862,650 |
| 27513 | 19 April 2013 | DSV A/S | 1,400,000 | 22 March 2013 | 1,750,000 | 472,500 |
| 27513 | 19 April 2013 | Carlsberg A/S – B | 800,000 | 22 March 2013 | 4,800,000 | 1,296,000 |
| 33513 | 16 May 2013 | A.P. Moller Maersk A/S A | 6,000 | 12 April 2013 | 7,200,000 | 1,944,000 |
| 33513 | 16 May 2013 | A.P. Moller Maersk A/S B | 14,800 | 12 April 2013 | 17,760,000 | 4,795,200 |
| 33513 | 16 May 2013 | Tryg A/S | 205,000 | 19 April 2013 | 5,330,000 | 1,439,100 |
| 33513 | 16 May 2013 | Novo Nordisk A/S B | 3,000,000 | 21 March 2013 | 54,000,000 | 14,580,000 |

---

[1] Appendices 210-2-1 to 210-2-2
[2] Appendices 210-2-1 to 210-2-2
[3] Appendices 210-A-1 to 210-A-79 and 210-B-1 to 210-B-3

| | | | | | | |
|---|---|---|---|---|---|---|
| 65013 | 29 August 2013 | TDC A/S | 4,950,000 | 8 August 2013 | 7,425,000 | 2,004,750 |
| 90613 | 10 December 2013 | CHR. Hansen Holding A/S | 760,856 | 27 November 2013 | 4,762,958 | 1,285,998 |
| 5514 | 6 January 2014 | Coloplast A/S – B | 981,000 | 6 December 2013 | 6,867,000 | 1,854,090 |
| 28114 | 20 March 2014 | Novozymes A/S B | 882,030 | 27 February 2014 | 2,205,075 | 595,370 |
| 28114 | 20 March 2014 | TDC A/S | 4,099,188 | 7 March 2014 | 9,018,213 | 2,434,917 |
| 30214 | 17 April 2014 | A.P. Moller Maersk A/S A | 10,967 | 1 April 2014 | 15,353,800 | 4,145,526 |
| 30214 | 17 April 2014 | A.P. Moller Maersk A/S B | 8,797 | 1 April 2014 | 12,315,800 | 3,325,266 |
| 30214 | 17 April 2014 | Tryg A/S | 102,847 | 4 April 2014 | 2,776,869 | 749,754 |
| 30214 | 17 April 2014 | Pandora A/S | 453,837 | 20 March 2014 | 2,949,940 | 796,483 |
| 30214 | 17 April 2014 | Carlsberg A/S – B | 547,149 | 21 March 2014 | 4,377,192 | 1,181,841 |
| 30214 | 17 April 2014 | Danske Bank A/S | 3,374,310 | 19 March 2014 | 6,748,620 | 1,822,127 |
| 30214 | 17 April 2014 | Novo Nordisk A/S B | 11,177,461 | 21 March 2014 | 50,298,574 | 13,580,615 |
| 45514 | 27 May 2014 | Coloplast A/S – B | 622,747 | 9 May 2014 | 2,490,988 | 672,566 |
| 68414 | 19 August 2014 | TDC A/S | 2,772,261 | 8 August 2014 | 4,158,391 | 1,122,765 |
| Total | | | | | 273,318,920 | 73,796,103 |

The claims were accompanied by the following appendices[4]:

1. Form 06.003 ENG – Claim to Relief from Danish Dividend Tax.
2. Dividend Credit Advices – prepared by Solo Capital Partners LLP, MIPP's custodian.
3. IRS FORM 6166 – Certification of US Tax Residency (issued by the US tax authorities).
4. Special Power of Attorney to Acupay System LLC.

Re 1. It is stated in form 06.003 that MIPP is the beneficial owner of the shares and is covered by the double taxation convention between Denmark and the USA.

Re 2. According to the Dividend Credit Advices prepared by the custodian Solo Capital Partners LLP, MIPP received net dividends on the shares.

### 1.3 Calculation of investments

MIPP must own the shares on the day when the distribution of dividends is adopted by the general meeting (day before the ex date), and the amounts paid for MIPP's purchase of shares as mentioned in the claim forms[5] are therefore calculated on the basis of the closing prices on the last trading day before the ex date[6]:

| SKAT bundle no. | Share | Date of quoted price | Number | Price DKK | Calculated acquisition price DKK |
|---|---|---|---|---|---|
| 64812 | TDC A/S | 8 August 2012 | 7,750,000 | 42.00 | 325,500,000 |
| 85412 | CHR. Hansen Holding A/S | 27 November 2012 | 1,020,000 | 188.00 | 191,760,000 |
| 1613 | Coloplast A/S – B | 11 December 2012 | 310,000 | 1,390.00 | 430,900,000 |
| 17313 | Novozymes A/S B | 28 February 2013 | 2,100,000 | 199.10 | 418,110,000 |
| 17313 | TDC A/S | 7 March 2013 | 5,775,000 | 45.97 | 265,476,750 |
| 27513 | H Lundbeck A/S | 20 March 2013 | 1,325,000 | 103.30 | 136,872,500 |
| 33513 | Novo Nordisk A/S B | 20 March 2013 | 3,000,000 | 951.50 | 2,854,500,000 |
| 27513 | DSV A/S | 21 March 2013 | 1,400,000 | 143.60 | 201,040,000 |
| 27513 | Carlsberg A/S – B | 21 March 2013 | 800,000 | 576.00 | 460,800,000 |

---

[4] Appendices 210-A-1 to 210-A-79 and 210-B-1 to 210-B-3
[5] Appendices 210-A-1 to 210-A-79 and 210-B-1 to 210-B-3
[6] Prices can be seen on Nasdaq's website: http://www.nasdaqomxnordic.com

| 27513 | FL Smidth & CO A/S | 5 April 2013 | 355,000 | 347.10 | 123,220,500 |
|---|---|---|---|---|---|
| 33513 | A.P. Moller Maersk A/S A | 11 April 2013 | 6,000 | 42,120.00 | 252,720,000 |
| 33513 | A.P. Moller Maersk A/S B | 11 April 2013 | 14,800 | 45,760.00 | 677,248,000 |
| 33513 | Tryg A/S | 18 April 2013 | 205,000 | 480.90 | 98,584,500 |
| 65013 | TDC A/S | 7 August 2013 | 4,950,000 | 47.18 | 233,541,000 |
| 90613 | CHR. Hansen Holding A/S | 26 November 2013 | 760,856 | 204.00 | 155,214,606 |
| 5514 | Coloplast A/S – B | 5 December 2013 | 981,000 | 358.30 | 351,492,300 |
| 28114 | Novozymes A/S B | 26 February 2014 | 882,030 | 254.00 | 224,035,620 |
| 28114 | TDC A/S | 6 March 2014 | 4,099,188 | 52.65 | 215,822,234 |
| 30214 | Danske Bank A/S | 18 March 2014 | 3,374,310 | 145.70 | 491,636,967 |
| 30214 | Pandora A/S | 19 March 2014 | 453,837 | 356.00 | 161,565,945 |
| 30214 | Carlsberg A/S – B | 20 March 2014 | 547,149 | 522.00 | 285,611,778 |
| 30214 | Novo Nordisk A/S B | 20 March 2014 | 11,177,461 | 245.80 | 2,747,419,886 |
| 30214 | A.P. Moller Maersk A/S A | 31 March 2014 | 10,967 | 62,500.00 | 685,437,500 |
| 30214 | A.P. Moller Maersk A/S B | 31 March 2014 | 8,797 | 65,000.00 | 571,805,000 |
| 30214 | Tryg A/S | 3 April 2014 | 102,847 | 551.50 | 56,720,121 |
| 42514 | Coloplast A/S – B | 8 May 2014 | 622,747 | 468.10 | 291,507,871 |
| 68414 | TDC A/S | 7 August 2014 | 2,772,261 | 51.35 | 142,355,585 |

## 1.4   Registration of Danish shares

All shares in Danish listed companies are registered with VP Securities, the Danish securities centre.

The registration is linked to a custody account with a Danish bank opened in the shareholder's name. The custody account contains the account holder's shareholdings, which may include shares in various Danish listed companies. A custody account and its shareholdings may be held by one or more shareholders (an omnibus account).

A search in information provided by VP Securities has shown no custody account with a Danish bank registered to MIPP or Solo Capital Partners LLP, its custodian.

## 1.5   Information from the IRS in the USA

Via Competent Authority in Denmark and the USA, the Danish Tax Agency has received information from the IRS in the USA.

The IRS enclosed Instructions for FORM 5500-EZ with its letter dated 13 June 2016. The instructions include the following text[7]:

- "*Who Does Not Have To File FORM 5500-EZ*
  *You do not have to file FORM 5500-EZ for the 2015 plan year for a one-participant plan if the total of the plan's assets and the assets of all other one-participant plans maintained by the employer at the end of the 2015 plan year does not exceed $250,000, unless 2015 is the final plan year of the plan. For more information on final plan years, see Final Return later.*"

---

[7] Appendices 210-1-1 to 210-1-13

In a letter dated 7 June 2017, the IRS stated[8]:

- That MIPP was established in May 2012.
- That the IRS is not in possession of FORM 5500 for MIPP as no FORM 5500 was submitted for 2012, 2013 or 2014.

On the basis of the information provided by the IRS, the Danish Tax Agency finds that the plan involved is a "*One-Participant (Owners and Their Spouses) Retirement Plan*".

As regards general information about pension plans and contributions, the IRS has forwarded links to its website concerning "Topics for Retirement Plans"[9]. The following information is included on the website:

- That a One-Participant 401(k) plan covers a business owner without any employees apart from the person himself and any related parties.
- That the annual contributions are limited to USD 12,500-53,000, depending on the participant's age (over or under 50 years).

On the basis of the information provided by the IRS, the Danish Tax Agency has taken as facts:

- That, if a pension plan does not submit any FORM 5500, it is indicated that the pension plan is a One-Participant Retirement Plan with assets not exceeding USD 250,000.
- That, if a tax-free pension plan operates a business (Unrelated Business Income), it must pay income tax and a Form 990-T must be submitted to the IRS.
- That, if a tax-free pension plan generates debt-financed income (Debt-financed Income), tax must be paid on the basis of such income, and a Form 990-T must be submitted to the IRS.
- That, if a pension plan distributes funds, such distribution must be reported to the IRS by means of a Form 1099, stating the amount distributed and the recipient. The person having received the funds is liable to pay income tax and must file a tax return in that respect.

The IRS also stated that, when answering the Danish Tax Agency's inquiry on 7 June 2017, the IRS investigated whether MIPP had filed any kind of tax return/report. That was not the case. Thus, MIPP had not submitted any FORM 5500, Form 990-T or Form 1099.

## 2.  Statutory law

### 2.1  Consolidated acts

The Danish Companies Act (*selskabsloven*) – Consolidated Acts no. 1082 of 14 November 2012 and no. 680 of 20 May 2015:

- Section 2(1)(c) and (3), second sentence

The Danish Tax Assessment Act (*ligningsloven*) – Consolidated Acts no. 1017 of 28 October 2011 as amended and no. 405 of 22 April 2013 as amended:

---

[8] Appendices 210-2-1 to 210-2-2
[9] Appendices 210-3-1 to 210-3-16

- Section 16A(1)

The Danish Withholding Tax Act (*kildeskatteloven*) – Consolidated Act no. 1403 of 7 December 2010 as amended:

- Sections 65(1) and 69B(1)

### 2.2    Double taxation convention

Executive Order (International) no. 13 dated 14 April 2000 ratifying the convention dated 19 August 1999 between Denmark and the USA for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income as amended by Executive Order (International) no. 1 dated 18 February 2008 ratifying the protocol dated 2 May 2006:

- Articles 10 and 22.

### 3.    The Danish Tax Agency's comments

### 3.1    Statutory basis/legal basis

A US pension plan which is the beneficial owner of Danish shares and which has received dividends on the basis of which dividend tax has been withheld is entitled to have such dividend tax refunded if the pension plan fulfils the conditions set out in article 10 of the double taxation convention between Denmark and the USA, see the first sentence of section 69B of the Withholding Tax Act.

### 3.2    Ownership of shares and receipt of dividends

In the claim forms for the refund of dividend tax, MIPP stated that it owned the shares in question and that it had received dividends on the basis of which dividend tax had been withheld.

In the Danish Tax Agency's opinion, MIPP, as a newly established pension plan with one participant only and therefore limited contributions, did not have the capital required to make the investments in the Danish shares forming the basis of the claims for dividend tax refunds mentioned above.

Therefore, the Danish Tax Agency is of the opinion that MIPP did not own the shares and that MIPP did not receive any dividends on the shares. In its assessment, the Danish Tax Agency has given weight to the following issues:

### 3.2.1    The custody account

All shares in Danish companies are registered with VP Securities, the Danish securities centre. The registration is linked to a custody account with a Danish bank opened in the shareholder's name. A custody account and its shareholdings may be held by one or more shareholders (an omnibus account).

Neither MIPP nor Solo Capital Partners LLP, its custodian, is registered as the owner of a custody account with a Danish bank. Therefore, no information has been made available to the Danish Tax Agency which confirms that MIPP owned the shares in respect of which dividend tax refunds were made.

### 3.2.2   The capital base of the pension plan's investments

MIPP was established in May 2012[10].

According to the information received from the US authorities, the pension plan has one participant only. Therefore, the annual contributions cannot exceed USD 12,500/53,000[11] (approximately DKK 76,501/324,434 in 2014, DKK 67,658/286,873 in 2013 and DKK 67,659/299,932 in 2012)[12].

By not submitting any FORM 5500 for 2012, 2013 and 2014, MIPP indicated to the IRS that, at the end of 2012, 2013 and 2014, its assets amounted to less than USD 250,000[13] (DKK 1,530,350 in 2014, DKK 1,353,175 in 2013 and DKK 1,414,775 in 2012)[14].

On the basis of the Dividend Credit Advices received, the Danish Tax Agency has calculated that all the investments in Danish shares[15] made by MIPP by far exceeded MIPP's capital base. This may be illustrated by the following examples:

- On 8 August 2012, i.e. 3 months after its establishment, MIPP stated that it had invested DKK 325,500,000 in TDC A/S shares.

- On 20 March 2013, i.e. 10 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and H Lundbeck A/S shares worth a total amount of DKK 2,991,372,500.

- On 20 March 2014, i.e. 22 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and Carlsberg A/S shares worth a total amount of DKK 3,033,031,664.

On that basis, the Danish Tax Agency is of the opinion that MIPP, a newly established pension plan for which the annual contributions could not exceed USD 12,500/53,000, depending on the participant's age (over or under 50 years) and with a capital base of less than USD 250,000 at the end of the relevant income years, did not have the capital required to make the investments forming the basis of MIPP's claims.

### 3.2.3   Dividends and dividend tax withheld

According to the Dividend Credit Advices submitted, MIPP received dividends totalling DKK 273,318,920[16] in the period from its establishment in May 2012 to August 2014. The dividend tax refunds claimed and made totalled DKK 73,796,103[17].

In the Danish Tax Agency's opinion, MIPP did not receive dividends on the shares mentioned in the claim forms since MIPP's capital base is deemed to amount to less than USD 250,000 at the end of the year as MIPP did not submit any FORM 5500 to the IRS. Nor did MIPP report any Unrelated Business Income or Debt-financed Income (Form 990-T) or any distribution of funds (Form 1099) to the IRS.

Consequently, MIPP cannot have received DKK 199,522,817 in net dividends on Danish shares.

---

[10] Appendices 210-2-1 to 210-2-2
[11] Appendices 210-3-1 to 210-3-16
[12] Price at year-end 2014 (612.14) / 2013 (541.27) / 2012 (565.91), see www.nationalbanken.dk
[13] Appendices 210-2-1 to 210-2-2
[14] Price at year-end 2014 (612.14) / 2013 (541.27) / 2012 (565.91), see www.nationalbanken.dk
[15] Section 1.3
[16] Section 1.2
[17] Section 1.2

### 3.3  Cancellation of previous decisions

When submitting the refund claims, MIPP stated that it was the beneficial owner of the shares, see form 06.003, and that it had received dividends and paid dividend tax, see the Dividend Credit Advices prepared by Solo Capital Partners LLP, MIPP's custodian.

The Danish Tax Agency has now established that the pension plan was newly established and therefore only had a limited capital base and that MIPP did not submit any FORM 5500, information about distributions or any other information to the IRS. This means that MIPP did not have the capital base required to make investments in the Danish shares forming the basis of MIPP's claims for dividend tax refunds.

Therefore, the Danish Tax Agency is of the opinion that MIPP cannot have owned the shares, and therefore MIPP did not receive any dividends on the shares.

Against that background, the Danish Tax Agency is of the opinion that MIPP does not fulfil the conditions set out in section 69B of the Withholding Tax Act and article 10 of the double taxation convention between Denmark and the USA. The Danish Tax Agency therefore cancels the decisions.

### 4.  The Danish Tax Agency's preliminary decision dated 13 April 2018

The Danish Tax Agency suggests cancelling the previous decisions on dividend tax refunds totalling DKK 73,796,103 to MIPP as MIPP was not entitled to receive such refunds.

The cancellation applies to the following decisions:

| | | |
|---|---|---:|
| Claim of 2 September 2012 | DKK | 4,812,750 |
| Claim of December 2012 | DKK | 1,674,000 |
| Claim of 17 December 2012 | DKK | 798,660 |
| Claim of 19 March 2013 | DKK | 4,833,675 |
| Claim of 19 April 2013 | DKK | 3,346,650 |
| Claim of 16 May 2013 | DKK | 22,758,300 |
| Claim of 29 August 2013 | DKK | 2,004,750 |
| Claim of 10 December 2013 | DKK | 1,285,998 |
| Claim of 6 January 2014 | DKK | 1,854,090 |
| Claim of 20 March 2014 | DKK | 3,030,287 |
| Claim of 17 April 2014 | DKK | 25,601,612 |
| Claim of 27 May 2014 | DKK | 672,566 |
| Claim of 19 August 2014 | DKK | 1,122,765 |
| Total | DKK | 73,796,103 |

In the Danish Tax Agency's opinion, MIPP does not own and did not own the shares mentioned in the claim forms, and MIPP did not receive dividends on the shares mentioned in the claim forms.

The Danish Tax Agency is also of the opinion that MIPP did not have the capital required to make the investments in the Danish shares forming the basis of the claims for dividend tax refunds mentioned above.

According to the Dividend Credit Advices submitted, MIPP supposedly invested a considerable amount in shares in Danish companies and received dividends on those shares. The information made available in this case in no way substantiates that such investments were made.

The Danish Tax Agency has given weight to the fact:

- That MIPP is a newly established pension plan.
- That MIPP has one participant only, which means that the contributions are limited.
- That MIPP did not submit any FORM 5500 in the USA, and therefore it must be taken as a fact that MIPP's assets amounted to less than USD 250,000 at the end of the relevant income years.

On the basis of the information now available, the Danish Tax Agency is of the opinion that MIPP's financial situation did not allow it to own shares on the scale stated in MIPP's claims for dividend tax refunds. This may be illustrated by the following examples:

- On 8 August 2012, i.e. 3 months after its establishment, MIPP stated that it had invested DKK 325,500,000 in TDC A/S shares.
- On 20 March 2013, i.e. 10 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and H Lundbeck A/S shares worth a total amount of DKK 2,991,372,500.
- On 20 March 2014, i.e. 22 months after its establishment, MIPP stated that it owned Novo Nordisk A/S shares and Carlsberg A/S shares worth a total amount of DKK 3,033,031,664.

Consequently, MIPP does not fulfil the conditions for refunds of dividend tax withheld on Danish shares, see article 10 of the double taxation convention between Denmark and the USA.

The Danish Tax Agency therefore made the dividend tax refunds to MIPP on an incorrect basis, and the Danish Tax Agency therefore suggests cancelling the previous decisions on dividend tax refunds.

## 5.     The pension plan's comments on the Danish Tax Agency's preliminary decision

The Danish Tax Agency has not received any comments from MIPP.

## 6.     The Danish Tax Agency's final decision

Since the Danish Tax Agency has not received any comments from MIPP, the Danish Tax Agency has made a decision which corresponds to its preliminary decision.

**Guidance on how to appeal**

**If you wish to appeal**

You must write to the Tax Appeals Agency no later than three months from the date on which you received this decision.

Please state all the issues of relevance to your appeal and explain for each issue why you believe that the decision is wrong. Please attach the decision and the statement of facts. If you are in possession of any documents supporting your appeal, such documents should also be attached. If you wish to have a meeting with a case officer at the Tax Appeals Agency, please state your telephone number.

The fee for appealing is DKK 400. If the Tax Appeals Agency finds in your favour, in full or in part, the amount will be repaid to you.

**How to submit the appeal and to pay**

You may submit your appeal

- electronically by means of the Tax Appeals Agency's claim form at www.skatteankestyrelsen.dk. At the same time, you will be asked to pay by means of a payment card or Mobile Pay.

- by email at www.borger.dk or www.virk.dk. Pay by transferring DKK 400 to the account with reg. no. 0216 and account no. 4069029361, and state your name and TIN no. in the message field.

- by letter to the Tax Appeals Agency, Ved Vesterport 6, 4th floor, 1612 Copenhagen V, Denmark. Pay by transferring DKK 400 to the account with reg. no. 0216 and account no. 4069029361, and state your name and TIN no. in the message field.

- Payment from abroad may be made by transferring the amount to the account with reg. no. 0216 and account no. 4069029361, IBAN DK 0502164069029361, SWIFT DABADKKK.

**You may apply for payment of your advisor**

If you have an advisor assisting you with the appeal, you may apply for payment, in full or in part, of such assistance if the case falls within the scope of part 19 of the Danish Tax Administration Act (*skatteforvaltningsloven*). Read more about this option at www.skat.dk/omkostningsgodtgørelse.

**Statutory basis**

The statutes and decisions referred to herein are available at www.skat.dk/love or www.skat.dk/afgørelser. Further information/guidance on how to appeal is available at www.skat.dk/klage or www.skatteankestyrelsen.dk/english.

Yours sincerely

[*signed*]

**Katrine Basballe**
**Special Consultant**

Email: katrine.basballe@sktst.dk
Telephone: (+45) 72 37 02 38

[*signed*]

**John Christiansen**
**Chief Consultant**

Email: john.christiansen@sktst.dk
Telephone: (+45) 20 75 83 56

[*signed*]

**Lill Drost**
**Head of Unit**

Email: lill.drost@sktst.dk

A copy has been sent to your representative Jakob Schilder-Knudsen of Lundgrens Advokatpartnerselskab, Tuborg Boulevard 12, 2900 Hellerup, Denmark.