# Exhibit 95

# AMERICAN INVESTMENT GROUP OF NEW YORK, L.P.

# PENSION PLAN

CONFIDENTIAL

AIG_00000435

**Table of Contents**

| | | |
|---|---|---|
| **Article 1** | | - 1 - |
| **Definitions** | | - 1 - |
| 1.1 | Administrator | - 1 - |
| 1.2 | Adopting Employer | - 1 - |
| 1.3 | Affiliated Employer | - 1 - |
| 1.4 | Age | - 1 - |
| 1.5 | Aggregate Normal Allocation Rate | - 1 - |
| 1.6 | Allocation Period | - 2 - |
| 1.7 | Allocation Rate | - 2 - |
| 1.8 | Anniversary Date | - 2 - |
| 1.9 | Annuity Starting Date | - 2 - |
| 1.10 | Annual Additions | - 2 - |
| 1.11 | Beneficiary | - 2 - |
| 1.12 | Benefiting Participant | - 3 - |
| 1.13 | Break in Service | - 3 - |
| 1.14 | Broadly Available Allocation Rates | - 3 - |
| 1.15 | Broadly Available Separate Plans | - 3 - |
| 1.16 | Code | - 3 - |
| 1.17 | Code §3401 Compensation | - 3 - |
| 1.18 | Code §401(a)(17) Compensation Limit | - 3 - |
| 1.19 | Code §414(s) Compensation | - 4 - |
| 1.20 | Code §415(c)(3) Compensation | - 4 - |
| 1.21 | Committee | - 4 - |
| 1.22 | Compensation | - 5 - |
| 1.23 | Compensation Determination Period | - 5 - |
| 1.24 | Counting of Hours Method | - 5 - |
| 1.25 | Deemed Code §125 Compensation | - 5 - |
| 1.26 | Deemed IRA Contribution | - 5 - |
| 1.27 | Deemed IRA Account | - 5 - |
| 1.28 | Designated Beneficiary | - 5 - |
| 1.29 | Determination Date | - 5 - |
| 1.30 | Disability | - 5 - |
| 1.31 | Distribution Calendar Year | - 6 - |
| 1.32 | Early Retirement Age | - 6 - |
| 1.33 | Earned Income | - 6 - |
| 1.34 | Eligibility Computation Period | - 6 - |
| 1.35 | Eligible Employee | - 6 - |
| 1.36 | Employee | - 6 - |
| 1.37 | Employee Contribution | - 6 - |
| 1.38 | Employer | - 6 - |
| 1.39 | Employment Commencement Date | - 6 - |
| 1.40 | Equivalent Accrual Rate | - 7 - |
| 1.41 | ERISA | - 7 - |
| 1.42 | Excess Annual Additions | - 7 - |
| 1.43 | Fiscal Year | - 7 - |
| 1.44 | Forfeiture | - 7 - |
| 1.45 | Forfeiture Account | - 8 - |
| 1.46 | Form W-2 Compensation | - 8 - |
| 1.47 | Gradually Increasing Age or Service Schedule | - 8 - |
| 1.48 | HCE | - 9 - |
| 1.49 | Highly Compensated Employee | - 9 - |
| 1.50 | Hour of Service | - 9 - |
| 1.51 | Hypothetical Entry Date | - 10 - |
| 1.52 | Immediately Distributable | - 10 - |
| 1.53 | Independent Contractor | - 10 - |
| 1.54 | Key Employee | - 10 - |
| 1.55 | Leased Employee | - 11 - |
| 1.56 | Life Expectancy | - 11 - |
| 1.57 | Limitation Year | - 11 - |
| 1.58 | Maternity or Paternity Leave | - 11 - |
| 1.59 | Minimum Aggregate Allocation Gateway | - 11 - |
| 1.60 | Minimum Allocation Gateway | - 12 - |
| 1.61 | Named Fiduciary | - 12 - |
| 1.62 | NHCE | - 12 - |
| 1.63 | Non-Highly Compensated Employee | - 12 - |
| 1.64 | Non-Key Employee | - 13 - |

CONFIDENTIAL

AIG_00000436

1.65    Normal Accrual Rate ................................................................................ - 13 -
1.66    Normal Form of Distribution ..................................................................... - 13 -
1.67    Normal Retirement Age ............................................................................ - 13 -
1.68    Normal Retirement Date ........................................................................... - 13 -
1.69    Otherwise Excludable Participant ............................................................ - 13 -
1.70    Optional Form of Distribution ................................................................... - 13 -
1.71    Participant ................................................................................................ - 13 -
1.72    Participant's Account ............................................................................... - 13 -
1.73    Participant's Account Balance .................................................................. - 13 -
1.74    Permissive Aggregation Group ................................................................ - 13 -
1.75    Plan .......................................................................................................... - 14 -
1.76    Plan Year ................................................................................................. - 14 -
1.77    Policy ....................................................................................................... - 14 -
1.78    Post-Severance Compensation ............................................................... - 14 -
1.79    Primarily Defined Benefit in Character ..................................................... - 14 -
1.80    QJSA ........................................................................................................ - 14 -
1.81    QPSA ........................................................................................................ - 14 -
1.82    Qualified Joint and Survivor Annuity ....................................................... - 14 -
1.83    Qualified Pre-Retirement Survivor Annuity .............................................. - 14 -
1.84    Reemployment Commencement Date ...................................................... - 15 -
1.85    Regulation ................................................................................................ - 15 -
1.86    Representative Contribution Rate ............................................................ - 15 -
1.87    Required Aggregation Group .................................................................... - 15 -
1.88    Required Beginning Date .......................................................................... - 15 -
1.89    Rollover .................................................................................................... - 15 -
1.90    Rollover Contribution ............................................................................... - 15 -
1.91    Rollover Contribution Account .................................................................. - 16 -
1.92    Rollover Participant .................................................................................. - 16 -
1.93    Safe Harbor Code §415 Compensation ................................................... - 16 -
1.94    Self-Employed Individual .......................................................................... - 16 -
1.95    Service ..................................................................................................... - 16 -
1.96    Sponsoring Employer ............................................................................... - 17 -
1.97    Spousal .................................................................................................... - 17 -
1.98    Spouse ..................................................................................................... - 17 -
1.99    Statutory Code §415 Compensation ........................................................ - 17 -
1.100   Substantially Equal .................................................................................. - 17 -
1.101   Terminated (or Terminates) Employment ................................................. - 18 -
1.102   Terminated Participant ............................................................................. - 18 -
1.103   Termination of Employment ..................................................................... - 18 -
1.104   Top Heavy ................................................................................................ - 18 -
1.105   Top Heavy Minimum Allocation ............................................................... - 18 -
1.106   Top Heavy Ratio ....................................................................................... - 18 -
1.107   Transfer Contribution ............................................................................... - 19 -
1.108   Transfer Contribution Account ................................................................. - 20 -
1.109   Trustee ..................................................................................................... - 20 -
1.110   Trust (or Trust Fund) ................................................................................ - 20 -
1.111   Valuation Calendar Year .......................................................................... - 20 -
1.112   Valuation Date .......................................................................................... - 20 -
1.113   Vested Aggregate Account ...................................................................... - 20 -
1.114   Vested, Vested Interest or Vesting .......................................................... - 20 -
1.115   Vesting Computation Period ..................................................................... - 20 -
1.116   Voluntary Employee Contribution ............................................................ - 20 -
1.117   Voluntary Employee Contribution Account ............................................... - 20 -
1.118   Year of Service ........................................................................................ - 20 -

Article 2 ....................................................................................................................... - 23 -
Plan Participation ........................................................................................................ - 23 -
2.1     Eligibility and Entry Date Requirements ................................................... - 23 -
2.2     Waiver of Participation .............................................................................. - 23 -
2.3     Reemployment After Termination ............................................................. - 24 -

Article 3 ....................................................................................................................... - 25 -
Contributions and Allocations ..................................................................................... - 25 -
3.1     Determination of Employer Contribution ................................................... - 25 -
3.2     Allocation of Employer Contributions ....................................................... - 26 -
3.3     Rollover Contributions .............................................................................. - 26 -
3.4     Voluntary Employee Contributions ........................................................... - 27 -
3.5     Allocation of Earnings and Losses ........................................................... - 27 -
3.6     Forfeitures and Their Usage ..................................................................... - 27 -
3.7     Top Heavy Minimum Allocation ................................................................ - 27 -

CONFIDENTIAL

AIG_00000437

|       | 3.8 | Failsafe Allocation | - 29 - |
|       | 3.9 | General Non-Discrimination Test Requirements | - 29 - |
|       | 3.10 | Annual Overall and Cumulative Permitted Disparity Limit | - 29 - |
|       | 3.11 | Deemed IRA Contributions | - 31 - |

**Article 4** ............................................................................................................ **- 32 -**
**Plan Benefits** .................................................................................................... **- 32 -**
|       | 4.1 | Benefit Upon Normal Retirement | - 32 - |
|       | 4.2 | Benefit Upon Late Retirement | - 32 - |
|       | 4.3 | Benefit Upon Death | - 32 - |
|       | 4.4 | Benefit Upon Disability | - 32 - |
|       | 4.5 | Benefit Upon Termination of Employment | - 32 - |
|       | 4.6 | Determination of Vested Interest | - 32 - |

**Article 5** ............................................................................................................ **- 34 -**
**Distribution of Benefits** ................................................................................... **- 34 -**
|       | 5.1 | Distribution of Benefit Upon Retirement | - 34 - |
|       | 5.2 | Distribution of Benefit Upon Death | - 34 - |
|       | 5.3 | Distribution of Benefit Upon Disability | - 36 - |
|       | 5.4 | Distribution of Benefit Upon Termination of Employment | - 36 - |
|       | 5.5 | Mandatory Cash-Out of Benefits | - 36 - |
|       | 5.6 | Restrictions on Immediate Distributions | - 37 - |
|       | 5.7 | Accounts of Rehired Participants | - 38 - |
|       | 5.8 | Spousal Consent Requirements | - 40 - |
|       | 5.9 | Required Minimum Distributions | - 41 - |
|       | 5.10 | Statutory Commencement of Benefits | - 43 - |
|       | 5.11 | Earnings Before Benefit Distribution | - 44 - |
|       | 5.12 | Distribution in the Event of Legal Incapacity | - 44 - |
|       | 5.13 | Missing Payees and Unclaimed Benefits | - 44 - |
|       | 5.14 | Direct Rollovers | - 44 - |
|       | 5.15 | Distribution of Property | - 45 - |
|       | 5.16 | Financial Hardship Distributions | - 45 - |
|       | 5.17 | Pre-Retirement Distributions | - 45 - |
|       | 5.18 | Distribution of Rollover Contribution Accounts | - 46 - |
|       | 5.19 | Distribution of Transfer Contributions | - 46 - |
|       | 5.20 | Distribution of Voluntary Employee Contributions | - 47 - |

**Article 6** ............................................................................................................ **- 48 -**
**Code § 415 Limitations** ..................................................................................... **- 48 -**
|       | 6.1 | Maximum Annual Additions | - 48 - |
|       | 6.2 | Adjustments to Maximum Annual Addition | - 48 - |
|       | 6.3 | Multiple Plans and Multiple Employers | - 48 - |
|       | 6.4 | Adjustment for Excessive Annual Additions | - 48 - |

**Article 7** ............................................................................................................ **- 50 -**
**Loans, Insurance and Directed Investments** .................................................. **- 50 -**
|       | 7.1 | Loans to Participants | - 50 - |
|       | 7.2 | Insurance on Participants | - 51 - |
|       | 7.3 | Key Man Insurance | - 52 - |
|       | 7.4 | Directed Investment Accounts | - 52 - |

**Article 8** ............................................................................................................ **- 53 -**
**Duties of the Administrator** ............................................................................. **- 53 -**
|       | 8.1 | Appointment, Resignation, Removal and Succession | - 53 - |
|       | 8.2 | General Powers and Duties | - 53 - |
|       | 8.3 | Functioning of the Committee | - 53 - |
|       | 8.4 | Multiple Administrators | - 53 - |
|       | 8.5 | Correcting Administrative Errors | - 53 - |
|       | 8.6 | Promulgating Notices and Procedures | - 53 - |
|       | 8.7 | Employment of Agents and Counsel | - 54 - |
|       | 8.8 | Compensation and Expenses | - 54 - |
|       | 8.9 | Claims Procedures | - 54 - |
|       | 8.10 | Qualified Domestic Relations Orders | - 54 - |
|       | 8.11 | Appointment of Investment Manager | - 54 - |

**Article 9** ............................................................................................................ **- 55 -**
**Trustee Provisions** ........................................................................................... **- 55 -**
|       | 9.1 | Appointment, Resignation, Removal and Succession | - 55 - |
|       | 9.2 | Investment Alternatives | - 55 - |
|       | 9.3 | Valuation of the Trust | - 56 - |
|       | 9.4 | Compensation and Expenses | - 57 - |
|       | 9.5 | Payments From the Trust Fund | - 57 - |

CONFIDENTIAL

AIG_00000438

9.6    Payment of Taxes ................................................................................ - 57 -
9.7    Accounts, Records and Reports .......................................................... - 57 -
9.8    Employment of Agents and Counsel ................................................... - 57 -
9.9    Division of Duties and Indemnification ................................................ - 57 -
9.10   Investment Manager ............................................................................ - 58 -
9.11   Exclusive Benefit Rule ......................................................................... - 58 -
9.12   Superseding Trust or Custodial Agreement ........................................ - 58 -

**Article 10** ....................................................................................................... **- 59 -**
**Adopting Employer Provisions** ...................................................................... **- 59 -**
10.1   Plan Contributions ............................................................................... - 59 -
10.2   Plan Amendments ................................................................................ - 59 -
10.3   Plan Expenses ..................................................................................... - 59 -
10.4   Employee Transfers ............................................................................. - 59 -
10.5   Multiple Employer Provisions Under Code §413(c) .............................. - 59 -
10.6   Termination of Adoption ....................................................................... - 59 -

**Article 11** ....................................................................................................... **- 60 -**
**Amendment, Termination and Merger** ........................................................... **- 60 -**
11.1   Plan Amendment ................................................................................. - 60 -
11.2   Termination By Sponsoring Employer .................................................. - 62 -
11.3   Merger or Consolidation ...................................................................... - 62 -
11.4   Plan-to-Plan Elective Transfers ........................................................... - 63 -

**Article 12** ....................................................................................................... **- 64 -**
**Miscellaneous Provisions** ............................................................................. **- 64 -**
12.1   No Contract of Employment ................................................................. - 64 -
12.2   Title to Assets ...................................................................................... - 64 -
12.3   Qualified Military Service ..................................................................... - 64 -
12.4   Fiduciaries and Bonding ...................................................................... - 64 -
12.5   Severability of Provisions .................................................................... - 64 -
12.6   Interpretation of the Plan and Trust ..................................................... - 64 -
12.7   Costs of Legal Action ........................................................................... - 65 -
12.8   Qualified Plan Status ........................................................................... - 65 -
12.9   Mailing of Notices to Administrator, Employer or Trustee .................... - 65 -
12.10  Participant Notices and Waivers of Notices ......................................... - 65 -
12.11  No Duplication of Benefits. .................................................................. - 65 -
12.12  Evidence Furnished Conclusive .......................................................... - 65 -
12.13  Release of Claims ............................................................................... - 65 -
12.14  Discontinued Contributions ................................................................. - 65 -
12.15  Multiple Copies of Plan And/or Trust ................................................... - 65 -
12.16  Limitation of Liability and Indemnification ........................................... - 65 -
12.17  Written Elections and Forms ............................................................... - 65 -
12.18  Assignment and Alienation of Benefits ................................................ - 66 -
12.19  Exclusive Benefit Rule ......................................................................... - 66 -
12.20  Prior Provisions of Amended and Restated Plans ............................... - 66 -
12.21  Dual and Multiple Trusts ..................................................................... - 66 -
12.22  Loss of Volume Submitter Status ........................................................ - 66 -

CONFIDENTIAL

AIG_00000439

**American Investment Group of New York, L.P.**
**Pension Plan**

**This Agreement** is made and entered into as of the _22ᴺᴰ_ day of _January_, 20 _10_, between **American Investment Group of New York, L.P.** (hereafter referred to as the "Sponsoring Employer") and **Robert Crema** and **Elaina Crema** (hereafter collectively referred to as the "Trustee").

## Introduction

The Sponsoring Employer previously established a profit sharing plan (hereafter referred to as the "Plan"), effective January 1, 2002, which the Sponsoring Employer wishes to amend. Therefore, effective January 1, 2009 (except for those specific provisions that have an earlier effective date), the Sponsoring Employer hereby amends and restates the Plan. This amended and restated Plan is intended to comply with the requirements of the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code of 1986, as amended by subsequent legislation, including The Economic Growth and Tax Relief Reconciliation Act of 2001 and the Job Creation and Workers Assistance Act of 2002, and it is also intended to comply with all applicable rulings and Regulations promulgated thereunder.

## Article 1
## Definitions

**1.1  Administrator.** The term *Administrator* means the Sponsoring Employer unless the Sponsoring Employer appoints another Administrator under Section 8.1. The term "Administrator" also means a Qualified Termination Administrator ("QTA") charged with the task of holding the assets of an orphan plan as permitted by the Department of Labor. A QTA will be an eligible custodian such as a bank, mutual fund house, or insurance company. Third party record-keepers cannot be QTAs. However, in the case of a one participant-owner only plan, the spouse of a deceased owner can continue to operate the Plan, pursuant to Revenue Procedure 2006-27.

**1.2  Adopting Employer.** The term *Adopting Employer* means any entity which adopts this Plan with the consent of the Sponsoring Employer. In addition to all other terms and conditions in the Plan, Adopting Employers will be, and must comply with, the terms and conditions set forth in Article 10. An Affiliated Employer is not considered an Adopting Employer unless such Affiliated Employer has specifically adopted the Plan.

**1.3  Affiliated Employer.** The term *Affiliated Employer* means any of the following: (1) a controlled group of corporations as defined in Code §414(b); (2) a trade or business (whether or not incorporated) under common control as described in Code §414(c); (3) any organization (whether or not incorporated) which is a member of an affiliated service group as described in Code §414(m); and (4) any other entity required to be aggregated as described in Code §414(o). Any Periods of Service or Years of Service with an Affiliated Employer will only be taken into account as otherwise provided under the Plan.

**1.4  Age.** The term *Age* means actual attained age unless otherwise specified.

**1.5  Aggregate Normal Allocation Rate.** The term *Aggregate Normal Allocation Rate* means the sum of the Employee's Allocation Rate under the defined contribution plan(s) and the equivalent normal allocation rate under the defined benefit plan(s), determined in the following manner:

    (a)  **Aggregate Allocation Rates.** An Employee's Aggregate Normal Allocation Rate is determined by treating all defined contribution plans that are part of the combination of defined benefit plan(s) and defined contribution plan(s) as a single plan, and all defined benefit plans that are part of the combination of defined benefit plan(s) and defined contribution plan(s) as a separate single plan. Furthermore, an equivalent normal allocation rate for the Employee is determined pursuant to Regulation §1.401(a)(4)–8(c)(2).

    (b)  **Options Applied on an Aggregate Basis.** The optional rules in Regulation §1.401(a)(4)–2(c)(2)(iv) (imputation of permitted disparity) and (v) (grouping of rates) may not be used to determine an Employee's allocation or equivalent normal allocation rate, but may be applied to determine an Employee's Aggregate Normal Allocation Rate by substituting the Aggregate Normal Allocation Rate (determined without regard to the option) for the Employee's Allocation Rate in that Regulation section where appropriate.

- 1 -

CONFIDENTIAL

(c) **Consistency Rule.** Aggregate Normal Allocation Rates must be determined in a consistent manner for all employees for the Plan Year. The same measurement periods and interest rates must be used, and any available options must be applied consistently, if at all, for the entire combination of defined benefit and defined contribution plan(s). Options that are not permitted to be used under Regulation §1.401(a)(4)–8 in cross-testing a defined contribution plan or a defined benefit plan (such as measurement periods that include future periods, non-standard interest rates, the option to disregard compensation adjustments described in §1.401(a)(4)–13(d), or the option to disregard Plan provisions providing for actuarial increases after normal retirement age under Regulation §1.401(a)(4)–3(f)(3)) may not be used in testing a combination of defined benefit and defined contribution plan(s) on either a benefits or contributions basis, because their use would inevitably result in inconsistent determinations under the defined contribution and defined benefit plan(s).

**1.6** **Allocation Period.** The term *Allocation Period* means a period of 12 consecutive months or less for which (a) an Employer contribution is made and allocated under the terms of the Plan; (b) Forfeitures are allocated under the terms of the Plan; and/or (c) earnings and losses are allocated under the terms of the Plan.

**1.7** **Allocation Rate.** The term *Allocation Rate* means, for a Participant for a Plan Year, the sum of the allocations to the Participant's Account for the Plan Year, expressed as a percentage of Code §415(s) Compensation, subject to the following: (a) the allocations used to determine an Allocation Rate for a Plan Year include all Employer contributions and forfeitures that are allocated or treated as allocated to the Participant's Account for the Plan Year, other than amounts described in clause (b) below. For this purpose, Employer contributions include Annual Additions described in Regulation §1.415-6(b)(2)(i) (regarding amounts arising from certain transactions between the Plan and the Employer); and (b) allocations of income, expenses, gains, and losses attributable to the balance in a Participant's Account are not used to determine an Allocation Rate.

**1.8** **Anniversary Date.** The term *Anniversary Date* means December 31st.

**1.9** **Annuity Starting Date.** The term *Annuity Starting Date* means the first day of the first period for which a benefit is paid as an annuity, in the case of a benefit not payable as an annuity, the first day all events have occurred which entitle the Participant to the benefit. The first day of the first period for which a benefit is to be paid by reason of Disability will be treated as the Annuity Starting Date only if it is not an auxiliary benefit.

**1.10** **Annual Additions.** The term *Annual Additions* means the sum of the following amounts credited to a Participant's Account for any Limitation Year: (a) Employer contributions; (b) Employee contributions; (c) Forfeitures; (d) amounts allocated to an individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan maintained by the Employer; and (e) amounts derived from contributions paid or accrued that are attributable to post-retirement medical benefits, allocated to the separate account of a Key Employee, as defined in Code §419A(d)(3), under a welfare fund, as defined in Code §419(e), maintained by the Employer. Notwithstanding the foregoing, a Participant's Annual Additions do not include a Participant's rollovers, loan repayments, Catch-up Contributions, repayments of either prior Plan distributions or prior distributions of Mandatory Employee Contributions, direct transfers of contributions from another plan to this Plan, deductible contributions to a simplified employee pension plan, or voluntary deductible contributions.

**1.11** **Beneficiary.** The term *Beneficiary* means the recipient designated by a Participant to receive the benefit payable upon the Participant's death, or the recipient designated by a Beneficiary to receive any benefit which may be payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled. All such Beneficiary designations will be made in accordance with the following provisions:

(a) **Beneficiary Designations by a Participant.** Subject to the provisions of Section 5.8 regarding the rights of a Participant's Spouse, each Participant may designate a Beneficiary in writing with the Administrator. If a Participant designates his or her Spouse and the Participant and his or her Spouse are legally divorced subsequent to the date of the designation, then the designation of such Spouse as a Beneficiary hereunder will be deemed null and void unless the Participant, subsequent to the legal divorce, reaffirms the designation in writing. In the absence of any other designation, the Participant will be deemed to have designated the following Beneficiaries in the following order, provided however, that with respect to clauses (1) and (2) following, such Beneficiaries are then living: (1) the Participant's Spouse, (2) the Participant's issue per stirpes; and (3) the Participant's estate.

- 2 -

AIG_00000441

(b) **Beneficiary Designations by a Beneficiary.** In the absence of a Beneficiary designation or other directive from a Participant to the contrary, any Beneficiary may name his or her own Beneficiary under Section 5.2(d) of the Plan to receive any benefits payable in the event of the Beneficiary's death prior to the receipt of all the Participant's death benefits to which the Beneficiary was entitled.

(c) **Beneficiaries Considered Contingent Until the Death of the Participant.** Notwithstanding any provision in this Section to the contrary, any Beneficiary named hereunder will be considered a contingent Beneficiary until the death of the Participant (or Beneficiary, as the case may be), and until such time will have no rights granted to Beneficiaries under the Plan.

**1.12 Benefiting Participant.** The term *Benefiting Participant* means a Participant who is eligible to receive an allocation of any type of Employer contributions or related Forfeitures as of the last day of an Allocation Period in accordance with the allocation conditions set forth in Article 3 of the Plan.

**1.13 Break in Service.** The term *Break in Service* means (a) in determining eligibility under Section 2.1, an Eligibility Computation Period during which an Employee is not credited with more than 500 Hours of Service; and (b) in determining Vesting under Section 4.6, a Vesting Computation Period during which an Employee is not credited with more than 500 Hours of Service. If any computation period is less than 12 months, then the Hours of Service threshold set forth in the preceding sentence will be proportionately reduced if the Hours of Service threshold is greater than one.

**1.14 Broadly Available Allocation Rates.** The term *Broadly Available Allocation Rates* means, for Plan Years beginning on or after January 1, 2002, that each Allocation Rate is currently available during the Plan Year (within the meaning of Regulation §1.401(a)(4)-4(b)(2)) to a group of Employees that satisfies the requirements of Code §410(b) without regard to the average benefit percentage test of Regulation §1.410(b)-5. If two Allocation Rates could be permissively aggregated under Regulation §1.401(a)(4)-4(d)(4), assuming that the Allocation Rates were treated as benefits, rights, or features, then the Allocation Rates may be aggregated and treated as a single Allocation Rate. However, the disregarding of the age and service conditions as set forth in Regulation §1.401(a)(4)-4(b)(2)(ii)(A) does not apply for purposes of this definition. Furthermore, in determining whether the Plan has Broadly Available Allocation Rates, differences in Allocation Rates attributable solely to the use of permitted disparity as described in Regulation §1.401(1)-2 are disregarded.

**1.15 Broadly Available Separate Plans.** The term *Broadly Available Separate Plans* means, for Plan Years beginning on or after January 1, 2002, a combination of defined benefit and defined contribution plans that satisfy the requirements of Code §410(b) and the nondiscrimination in amount requirement of Regulation §1.401(a)(4)-1(b)(2) if each plan were tested separately and assuming that the average benefit percentage test of Regulation §1.410(b)-5 were satisfied. For this purpose, all defined contribution plans that are part of the combination of defined benefit and defined contribution plans are treated as a single defined contribution plan, and all defined benefit plans that are part of the combination of defined benefit and defined contribution plans are treated as a single defined benefit plan. If permitted disparity under Regulation §1.401(a)(4)-7 is used for a Participant for purposes of satisfying the separate testing requirement for plans of one type, permitted disparity may not be used in satisfying the separate testing requirement for plans of the other type for the Participant.

**1.16 Code.** The term *Code* means the Internal Revenue Code of 1986, as amended, the Regulations, and rulings promulgated thereunder by the Internal Revenue Service. All citations to sections of the Code and Regulations are to such sections as they may from time to time be amended or renumbered.

**1.17 Code §3401 Compensation.** The term *Code §3401 Compensation* means wages within the meaning of Code §3401(a) (for purposes of income tax withholding at the source), but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**1.18 Code §401(a)(17) Compensation Limit.** The term *Code §401(a)(17) Compensation Limit* means, for any Plan Year and/or Limitation Year which begins on or after January 1, 2002, the statutory limit that applies to each Participant's annual Compensation for a specific Compensation Determination Period; such annual Compensation will not exceed $200,000. However, the $200,000 statutory limit on annual Compensation will be adjusted for cost-of-living increases in accordance with Code §401(a)(17)(B). The cost-of-living adjustment in effect for a calendar year applies to annual Compensation for the Compensation Determination Period that begins with or within such calendar year. If a Compensation Determination Period is less than 12 consecutive months, then the

- 3 -

Code §401(a)(17) Compensation Limit will be multiplied by a fraction, the numerator of which is the number of months in the Compensation Determination Period, and the denominator of which is 12. If Compensation for any prior Compensation Determination Period is used in determining a Participant's Plan benefits for the current Plan Year, then the annual Compensation for such prior Compensation Determination Period is subject to the applicable Code §401(a)(17) Compensation Limit as in effect for that prior Compensation Determination Period.

**1.19    Code §414(s) Compensation.** The term *Code §414(s) Compensation* means, for testing purposes (including, but not limited to, the ADP Test and the ACP Test), any compensation that qualifies as a nondiscriminatory definition of compensation under Code §414(s) and the Regulations thereunder. The Administrator is not bound by any other definition of compensation in the Plan in determining Code §414(s) Compensation. The Administrator may determine on an annual basis (and within its discretion) Code §414(s) Compensation, which will be applied consistently to all Participants for a Plan Year; to all applicable tests that are administered for such Plan Year; and to all plans (including this Plan) of the Sponsoring Employer and Adopting Employers for such Plan Year. Code §414(s) Compensation may be determined over the Plan Year for which the applicable test is being performed or the calendar year ending within such Plan Year. In determining Code §414(s) Compensation, the Administrator within its discretion may take into consideration only the Compensation received while the Employee is a Participant under the component of the Plan being tested, and/or only the Compensation for the portion of the Plan Year during which the Plan was a 401(k) Plan.

**1.20    Code §415(c)(3) Compensation.** The term *Code §415(c)(3) Compensation* means the following:

(a)    **Top Heavy Allocations and Key Employee Determinations.** In determining any Top Heavy Minimum Allocation and whether an Employee is a Key Employee, the term Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(b)    **Code §415 Limitations.** In determining a Participant's Code §415 limitation for any Limitation Year, the term "Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(c)    **Highly Compensated Employee Determination.** In determining whether a Participant is a Highly Compensated Employee (or for any other statutory determination not described in paragraphs (a) and (b) above), the term "Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(d)    **Exclusions to Compensation Do Not Apply.** Code §415(c)(3) Compensation includes any amounts that are excluded from Compensation under Section 1.22 of the Plan.

(e)    **Inclusion of Certain Amounts.** Code §415(c)(3) Compensation includes any elective deferral as defined in Code §402(g)(3) and any amount contributed or deferred by the Employer at the election of the Employee which is not includible in gross income by reason of Code §125, Code §132(f)(4), or Code §457.

(f)    **Self-Employed Individuals.** Code §415(c)(3) Compensation of a Self-Employed Individual will be equal to his or her Earned Income, plus amounts deferred at the election of the Self-Employed Individual that would be includible in gross income but for the rules of Code §402(e)(3), §402(h)(1)(B), §402(k), or §457(b).

(g)    **Treatment of Post-Severance Compensation.** Effective January 1, 2005, Code §415(c)(3) Compensation includes Post-Severance Compensation.

**1.21    Committee.** The term *Committee* means the administrative/advisory group that the Sponsoring Employer may establish, to which the Sponsoring Employer may delegate certain of the Sponsoring Employer's responsibilities as Administrator. The Sponsoring Employer is permitted to select another name for such administrative/advisory group. The Sponsoring Employer may appoint one or more members to the Committee. Members of the Committee need not be Participants or Beneficiaries, and officers and directors of the Sponsoring Employer are not precluded from serving as members of the Committee.

- 4 -

CONFIDENTIAL

**1.22    Compensation.** The term *Compensation* means the following with respect to determining the amount of, and the allocation of, the various Employer contributions permitted under the terms of the Plan:

(a)    **General Definition.** Unless otherwise indicated in this Section, the term Compensation means a Participant's Form W-2 Compensation received during a Compensation Determination Period. For purposes of this paragraph, (1) a Compensation Determination Period is the Plan Year; and (2) any elective deferrals as defined under Code §402(g) and any amount contributed or deferred by the Employer at the election of the Employee which is not includible in gross income by reason of Code §125, Code §132(f)(4) or Code §457, will be included in Compensation.

(b)    **Compensation of Self-Employed Individuals.** For purposes of this Plan, the Compensation of a Self-Employed Individual will be equal to his or her Earned Income; however, such Compensation will not exceed the Code §401(a)(17) Compensation Limit.

(c)    **Code §401(a)(17) Compensation Limit.** In determining Compensation for all purposes other than for Elective Deferral purposes under Code §402(g), a Participant's Compensation for any Compensation Determination Period will not exceed the Code §401(a)(17) Compensation Limit.

(d)    **Compensation for Permitted Disparity Purposes.** If an Employer contribution is determined and/or allocated according to the rules of permitted disparity under Code §401(l) and the Regulations thereunder, then Compensation for such purposes must qualify as a nondiscriminatory definition of compensation under Code §414(s) and the Regulations thereunder.

**1.23    Compensation Determination Period.** The term *Compensation Determination Period* means either the Plan Year, the Fiscal Year ending with or within the Plan Year, or the calendar year ending with or within the Plan Year, as specifically set forth in the applicable sections of the Plan. However, for purposes of a specific statutory determination (e.g. whether an Employee is a Highly Compensated Employee), the term "Compensation Determination Period" means the period that is stated in this Plan.

**1.24    Counting of Hours Method.** The term *Counting of Hours Method* means a method for crediting service for eligibility, for Vesting, for determining a Participant's allocation, and/or for applying the allocation conditions for an Employer contribution or Forfeiture. Under the Counting of Hours Method, an Employee is credited with the number of Hours of Service for which the Employee is paid or entitled to payment (or such other circumstances for which Hours of Service are credited), pursuant to the definition of Hour of Service.

**1.25    Deemed Code §125 Compensation.** The term *Deemed Code §125 Compensation* means an amount that is excludable from the gross income of the Employee under Code §106 and that is not available to the Employee in cash in lieu of group health coverage under a Code §125 arrangement solely because that Employee is not able to certify that he or she has other health coverage. Amounts are Deemed Code §125 Compensation only if the Employer does not otherwise request or collect information regarding the Employee's other health coverage as part of the enrollment process for the health plan.

**1.26    Deemed IRA Contribution.** The term *Deemed IRA Contribution* means an Individual Retirement Account contribution made to this Plan.

**1.27    Deemed IRA Account.** The term *Deemed IRA Contribution Account* means the account to which a Participant's Deemed IRA Contributions are allocated.

**1.28    Designated Beneficiary.** The term *Designated Beneficiary* means, for purposes of required minimum distributions under Section 5.9 of the Plan, the individual who is designated as the Beneficiary pursuant to the provisions of the Plan and is the Designated Beneficiary under Code §401(a)(9), the previously final Regulation §1.401(a)(9)-1, Q&A-4, and the final Regulation §1.401(a)(9)-4.

**1.29    Determination Date.** The term *Determination Date* means, for any Plan Year subsequent to the first Plan Year of the Plan, the last day of the preceding Plan Year. For the first Plan Year of the Plan, the term "Determination Date" means the last day of that first Plan Year.

**1.30    Disability.** The term *Disability* means a physical or mental impairment arising after an Employee has become a Participant which, in the opinion of a physician acceptable to the Administrator, totally and permanently prevents

- 5 -

CONFIDENTIAL

AIG_00000444

the Participant from performing his or her customary and usual duties for the Employer. If a difference of opinion arises between the Participant and the Administrator as to whether the Participant has suffered a Disability, it will be settled by a majority decision of three physicians, one to be appointed by the Administrator, one to be appointed by the Participant, and the third to be appointed by the two physicians first appointed herein.

**1.31    Distribution Calendar Year.** The term *Distribution Calendar Year* means, for purposes of required minimum distributions under Section 5.9, a calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date.

**1.32    Early Retirement Age.** There is no Early Retirement Age under the Plan.

**1.33    Earned Income.** The term *Earned Income* means the net earnings from self-employment in the trade or business with respect to which the Plan is established, for which personal services of the individual are a material income-producing factor. Net earnings will be determined without regard to items not included in gross income and the deductions allocable thereto. Net earnings will be reduced by deductible contributions by the Employer to a qualified retirement plan. Net earnings will be determined with regard to the deduction allowed to the Employer by Code §164(f) for taxable years beginning after December 31, 1989.

**1.34    Eligibility Computation Period.** The term *Eligibility Computation Period* means a period of 12 consecutive months which is used for purposes of eligibility to participate in the Plan (or a component of the Plan). An Employee's initial Eligibility Computation Period will begin on his or her Employment Commencement Date. The second Eligibility Computation Period will begin on the first day of the Plan Year which begins prior to the first anniversary of the Employee's Employment Commencement Date (regardless of whether the Employee is credited with a specific number of Hours of Service during the initial Eligibility Computation Period) and each subsequent Eligibility Computation Period will consist of each subsequent Plan Year.

**1.35    Eligible Employee.** The term *Eligible Employee* means any Employee who is a member of an eligible class of Employees and who is not excluded from participating in the Plan (or a component of the Plan). Furthermore, the Sponsoring Employer may elect at any time to reclassify any Employee who had been excluded from participating in the Plan (or a component of the Plan) to be an Eligible Employee through a Plan amendment that is retroactively applied for one or more prior Plan Years because the Plan (or a component of the Plan) failed to satisfy for such Plan Year one of the tests set forth in Code §410(b)(1)(A), (B) or (C), or for any other reason required to maintain the tax exempt status of the Plan.

**1.36    Employee.** The term *Employee* means (a) any person who is reported on the payroll records of the Employer as an employee and who is deemed by the Employer to be a common law employee; (b) any person who is reported on the payroll records of an Affiliated Employer as an employee and who is deemed by the Affiliated Employer to be a common law employee (even if the Affiliated Employer is not an Adopting Employer), except for purposes of determining eligibility to participate in the Plan; (c) any Self-Employed Individual who derives Earned Income from the Employer; and (d) any person who is considered a Leased Employee but who (1) is not covered by a plan described in Code §414(n)(5), or (2) is covered by a plan described in Code §414(n)(5) but Leased Employees constitute more than 20% of the Employer's non-highly compensated workforce. However, the term "Employee" will not include an Independent Contractor. If an Independent Contractor is later determined by the Employer, a court, or governmental agency to be an Employee or to have been an Employee of the Employer or an Affiliated Employer, and so long as such individual is an Eligible Employee, then such individual will only be eligible to participate in the Plan in accordance with the requirements of the Employee Plans Compliance Resolution System (EPCRS) under Revenue Procedure 2006-27 and subsequent guidance.

**1.37    Employee Contribution.** The term *Employee Contribution* means any contribution made to the Plan by or on behalf of a Participant that is included in the Participant's gross income in the year in which the contribution is made (other than Roth Elective Deferrals) and that is maintained under a separate account to which earnings and losses are allocated. Employee Contributions include Voluntary Employee Contributions.

**1.38    Employer.** The term *Employer* means the Sponsoring Employer and any Adopting Employer.

**1.39    Employment Commencement Date.** The term *Employment Commencement Date* means the first day that an Employee is credited with an Hour of Service for an Employer or an Affiliated Employer.

- 6 -

CONFIDENTIAL

AIG_00000445

**1.40    Equivalent Accrual Rate.** The term *Equivalent Accrual Rate* means the annual benefit that is the result of normalizing the increase in the Participant's Account balance during the measurement period, divided by the number of years in which the Participant benefited under the Plan during the measurement period, and expressed either as a dollar amount or as a percentage of the Participant's average annual Code §414(s) Compensation. A measurement period that includes future years may not be used. For purposes of determining an Equivalent Accrual Rate, the following rules apply:

(a)    **Determination of Account Balance.** The increase in the Participant's Account balance during the measurement period taken into account does not include income, expenses, gains, or losses allocated during the measurement period that are attributable to the Participant's Account balance as of the beginning of the measurement period, but does include any additional amounts that would have been included in the increase in the Participant's Account balance but for the fact that the additional amounts were previously distributed (including a reasonable adjustment for interest). If the measurement period is the current Plan Year, the Sponsoring Employer may also elect to disregard the income, expenses, gains, and losses allocated during the current Plan Year that are attributable to the increase in the Participant's Account balance since the beginning of the Plan Year, and thus determine the increase in Participant's Account balance during the Plan Year taking into account only allocations described in Regulation §1.401(a)(4)-2(c)(2)(ii). In addition, the Sponsoring Employer may disregard distributions to a Non-Highly Compensated Employee as well as distributions to any Employee in Plan Years beginning before a selected date no later than January 1, 1986.

(b)    **Normalization.** The Participant's Account balance determined under paragraph (a) is normalized into a single-sum benefit that is immediately and unconditionally payable to the Employee. A standard interest rate, and a straight life annuity factor that is based on the same or a different standard interest rate and on a standard mortality table, must be used in normalizing this benefit. In addition, no mortality may be assumed prior to the Employee's testing age.

(c)    **Options.** Any of the optional rules in Regulation §1.401(a)(4)-3(d)(3) (e.g., imputation of permitted disparity) may be applied in determining an Employee's Equivalent Accrual Rate by substituting the Employee's Equivalent Accrual Rate (determined without regard to this option) for the Employee's Normal Accrual Rate where appropriate. For this purpose, however, the last sentence of the fresh-start alternative in Regulation §1.401(a)(4)-3(d)(3)(iii)(A) (dealing with Compensation adjustments to the frozen accrued benefit) is not applicable. No other options are available in determining an Employee's Equivalent Accrual Rate except those (e.g., selection of alternative measurement periods) specifically provided in this definition. None of the optional special rules in Regulation §1.401(a)(4)-3(f) (e.g., determination of benefits on other than a Plan Year basis under Regulation §1.401(a)(4)-3(f)(6)) is available.

(d)    **Consistency Rule.** Equivalent Accrual Rates must be determined in a consistent manner for all Employees for the Plan Year. The same measurement periods and standard interest rates must be used, and any available options must be applied consistently if at all.

**1.41    ERISA.** The term *ERISA* means the Employee Retirement Income Security Act of 1974, as amended, the Department of Labor Regulations, and Advisory Opinions and other rulings promulgated by the Department of Labor (or any agency thereunder). All citations to sections of ERISA and the Department of Labor Regulations are to such sections as they may from time to time be amended or renumbered.

**1.42    Excess Annual Additions.** The term *Excess Annual Additions* means an amount of Annual Additions credited to a Participant's Account that exceeds the maximum Annual Additions limitation set forth in Section 6.1 for any Limitation Year. If Excess Annual Additions are treated according to Section 6.4, then such Excess Annual Additions will not be deemed Annual Additions.

**1.43    Fiscal Year.** The term *Fiscal Year* means the Sponsoring Employer's 12 consecutive month accounting year beginning January 1st and ending the following December 31st. If the Fiscal Year is changed, a short Fiscal Year is established beginning the day after the last day of the Fiscal Year in effect before this change and ending on the last day of the new Fiscal Year.

**1.44    Forfeiture.** The term *Forfeiture* means generally the amount by which a Participant's Account balance attributable to Employer contributions exceeds his or her Vested Interest in the Participant's Account balance attributable to Employer contributions as of the date set forth in Section 3.6. Furthermore, the term "Forfeiture" means any amount that is removed from a Participant's Account pursuant to any Employee Plans Compliance

- 7 -

CONFIDENTIAL

AIG_00000446

Resolution System (EPCRS) program or any other correction guidance that is issued by the Internal Revenue Service. No Forfeitures will occur solely because (a) a Participant withdrawals Employee Contributions from the Plan; (b) a Participant transfers employment from the Sponsoring Employer to an Affiliated Employer or Adopting Employer (or vice versa).

**1.45** **Forfeiture Account.** The term *Forfeiture Account* means the notational bookkeeping account into which all Forfeitures are placed pending allocation (or other use) pursuant to Section 3.6(c).

**1.46** **Form W-2 Compensation.** The term *Form W-2 Compensation* means wages within the meaning of Code §3401(a) and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) which is actually paid or made available and is included in the Employee's gross income for which the Employer is required to furnish the Employee a Form W-2 under Code §6041(d), §6051(a)(3) and §6052. Form W-2 Compensation must be determined without regard to any rules under Code §3401(a) that limit remuneration included in wages based on the nature or location of the employment or services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**1.47** **Gradually Increasing Age or Service Schedule.** The term *Gradually Increasing Age or Service Schedule* means, for Plan Years beginning on or after January 1, 2002, that the allocation formula for all Participants under the Plan provides for a single schedule of Allocation Rates under which:

(a) **Series of Bands.** The schedule defines a series of bands based on Age, Years of Service (or Periods of Service), or the number of points representing the sum of Age and Years of Service (or Periods of Service) with respect to age and service points, under which the same Allocation Rate applies to all employees whose Age, Years of Service (or Periods of Service), or Age and service points are within each band; and

(b) **Smoothly Increasing at Regular Intervals.** The Allocation Rates under the schedule increase smoothly at regular intervals, within the following meanings:

(1) **Smoothly Increasing Schedule of Allocation Rates.** A schedule of Allocation Rates increases smoothly if the Allocation Rate for each band within the schedule is greater than the Allocation Rate for the immediately preceding band (i.e., the band with the next lower number of years of Age, Years of Service (or Periods of Service), or Age and service points) by no more than 5 percent (5%). However, a schedule of Allocation Rates will not be treated as increasing smoothly if the ratio of the allocation rate for any band to the rate for the immediately preceding band is more than 2.0 or if it exceeds the ratio of Allocation Rates between the two immediately preceding bands.

(2) **Regular Intervals.** A schedule of Allocation Rates has regular intervals of Age, Years of Service (or Periods of Service), or Age and service points, if each band, other than the band associated with the highest Age, Years of Service (or Periods of Service), or Age and service points, is the same length. For this purpose, if the schedule is based on Age, the first band is deemed to be of the same length as the other bands if it ends at or before age 25. If the first age band ends after Age 25, then, in determining whether the length of the first band is the same as the length of other bands, the starting age for the first age band is permitted to be treated as Age 25 or any Age earlier than 25. For a schedule of allocation rates based on Age and service points, the rules of the preceding two sentences are applied by substituting 25 Age and service points for age 25. For a schedule of allocation rates based on service, the starting service for the first service band is permitted to be treated as one Year of Service (or Period of Service) or any lesser amount of service.

(c) **Minimum Allocation Rates Permitted.** A schedule of Allocation Rates under the Plan is considered to increase smoothly at regular intervals if a minimum uniform Allocation Rate is provided for all Participants or the Top Heavy Minimum Allocation described in Code §416(c)(2) is provided for all Non-Key Employees (either because the Plan is Top Heavy or without regard to whether the Plan is Top Heavy) if the schedule satisfies one of the following conditions:

(1) **Hypothetical Schedule.** The Allocation Rates under the Plan that are greater than the minimum Allocation Rate can be included in a hypothetical schedule of Allocation Rates that increases smoothly at regular intervals, where the hypothetical schedule has a lowest allocation rate no lower than 1% of Code §414(s) Compensation; or

- 8 -

CONFIDENTIAL

AIG_00000447

(2) **Schedule of Allocation Rates Based on Age.** If the Plan is using a schedule of Allocation Rates based on Age, for each Age band in the schedule that provides an Allocation Rate greater than the minimum Allocation Rate, then there could be a Participant in that Age band with an Equivalent Accrual Rate that is less than or equal to the Equivalent Accrual Rate that would apply to a Participant whose Age is the highest Age for which the Allocation Rate equals the minimum Allocation Rate.

**1.48    HCE.** The term *HCE* means a Highly Compensated Employee.

**1.49    Highly Compensated Employee.** The term *Highly Compensated Employee* means any Employee who (a) was a 5% owner as defined in Code §416(i)(1)(B)(i) at any time during the Plan Year or during the look-back year. In determining whether an Employee is a Highly Compensated Employee based on his or her status as a 5% owner, the look-back year will be the 12-month period immediately preceding the Plan Year for which the determination is being made; or (b) for the look-back year, had Code §415(c)(3) Compensation in excess of $80,000 as adjusted under Code §415(d) (except that the base period will be the calendar quarter ending September 30, 1996). In determining if an Employee is a Highly Compensated Employee based on Code §415(c)(3) Compensation, the look-back year will be the 12-month period immediately preceding the Plan Year for which the determination is being made, and the top paid group election in Code §414(q)(3) will not be applied. In determining if an individual is a highly compensated former Employee, the rules for determining which Employees are Highly Compensated Employees for the Plan Year for which the determination is being made (in accordance with Temporary Regulation §1.414(q)-1T, A-4 and Notice 97-45) will be applied. If the Employer maintains more than one qualified retirement plan, this Section will be applied in a uniform, consistent manner to all such plans.

**1.50    Hour of Service.** The term *Hour of Service* means:

(a) **Determination of Hours.** The term Hour of Service means (1) each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer or an Affiliated Employer, which will be credited to the Employee for the computation period in which the duties are performed; (2) each hour for which an Employee is paid, or entitled to payment, by the Employer or an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, except that no more than 501 Hours of Service will be credited under this clause (2) for any single continuous period (regardless of whether such period occurs in a single computation period); and (3) each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or an Affiliated Employer, except that the same Hours of Service will not be credited both under clause (1) or clause (2), as the case may be, and under this clause (3), and these Hours of Service will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made. Hours of Service under this paragraph will be calculated and credited pursuant to Department of Labor Regulation §2530.200b-2, which is incorporated herein by reference. Furthermore, Hours of Service will be credited for any individual who is considered to be an Employee under Code §414(n) for purposes of this Plan.

(b) **Maternity or Paternity Leave.** Solely for purposes of determining whether a Break in Service has occurred in a computation period for purposes of an Employee's eligibility for Plan participation, Vesting, and benefit accrual/allocation, an individual on Maternity or Paternity Leave will receive credit for up to 501 Hours of Service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, eight (8) Hours of Service per day of such absence. The Hours of Service credited for a Maternity or Paternity Leave will be credited in the computation period in which the absence begins if the crediting is necessary to prevent a Break in Service in that computation period, or in all other cases, in the following computation period.

(c) **Use of Equivalencies.** Notwithstanding paragraph (a), the Administrator may elect for all Employees or for one or more different classifications of Employees (provided such classifications are reasonable, are consistently applied, and are nondiscriminatory) to apply one or more of the following equivalency methods in determining an Employee's Hours of Service. Under such equivalency methods, an Employee will be credited with (1) 190 Hours of Service for each month that he or she is credited with at least one Hour of Service during that month; (2) 95 Hours of Service for each semi-monthly period that he or she is credited with at least one Hour of Service during that semi-monthly period; (3) 45 Hours of Service for each week that he or she is credited with at least one Hour of Service during that week; and/or (4) 10 Hours of Service for each day that he or she is credited with at least one Hour of Service during that day.

- 9 -

CONFIDENTIAL

1.51 **Hypothetical Entry Date.** The term *Hypothetical Entry Date* means, with respect to a Plan (or component of a Plan) that provides that Otherwise Excludable Participants are eligible to participate in the Plan (or component of the Plan), the date that an Otherwise Excludable Participant would hypothetically enter the Plan (or component of the Plan) and would no longer be considered an Otherwise Excludable Participant had the Plan (or component of the Plan) used the statutory maximum age and service requirements of Code §410(a)(1)(A) as the eligibility requirements for the Plan (or component of the Plan). The Hypothetical Entry Date for purposes of this Plan is the Employee's entry date under Section 2.1 for the component of the Plan for which the determination relates.

1.52 **Immediately Distributable.** The term *Immediately Distributable* means any part of the Participant's benefit that could be distributed to the Participant (or the Participant's surviving Spouse) before the Participant reaches (or would have reached if not deceased) the later of his or her Normal Retirement Age or Age 62.

1.53 **Independent Contractor.** The term *Independent Contractor* means an individual who is not reported on the payroll records of the Employer or an Affiliated Employer as a common law employee. The determination of whether an individual is an Independent Contractor will be based upon the facts and circumstances and upon the guidance of Revenue Ruling 87-41.

1.54 **Key Employee.** The term *Key Employee* means, in determining whether the Plan is Top Heavy for Plan Years beginning on or after January 1, 2002, any Employee, former Employee or deceased Employee who at any time during the Plan Year that includes the Determination Date is (a) an officer of the Employer having annual Code §415(c)(3) Compensation greater than $130,000 (as adjusted under Code §416(i)(1)(A) for Plan Years beginning after December 31, 2002); (b) a 5% owner as defined in Code §416(i)(1)(B)(i); or (c) a 1% owner as defined in Code §416(i)(1)(B)(ii) whose annual Code §415(c)(3) Compensation is more than $150,000. The determination of who is a Key Employee will be made in accordance with Code §416(i)(1), the applicable Regulations, and other guidance issued thereunder. With respect to Employees who are treated as Key Employees by reason of being officers pursuant to clause (a), the following rules apply:

(a) **Definition of Officer.** The term "officer" means generally an administrative executive who is in regular and continued service (a continuity of service), and excludes an individual who is employed for a special and single transaction. Whether an individual is an officer will be determined upon the basis of all the facts and circumstances, including the source of the individual's authority, the term for which the individual is elected or appointed, and the nature and extent of the individual's duties. An Employee who merely has the title of an officer but not the authority of an officer is not an officer for purposes of determining whether the Employee is a Key Employee. Similarly, an Employee who does not have the title of an officer but has the authority of an officer is an officer for purposes of determining whether the Employee is a Key Employee.

(b) **Number of Officers Taken Into Account.** There is no minimum number of officers that must be taken into account. After aggregating all Employees (including Leased Employees) of the Sponsoring Employer and Affiliated Employers, there is a maximum limit to the number of officers that are to be taken into account as officers for the entire group consisting of the Sponsoring Employer and Affiliated Employers. The number of Employees that the Sponsoring Employer and Affiliated Employers has for the Plan Year containing the Determination Date is the greatest number of Employees the Sponsoring Employer and Affiliated Employers had during that Plan Year, and Employees include only those individuals who perform services for the Sponsoring Employer and Affiliated Employers during that Plan Year. However, in determining the number of officers taken into account, Employees described in Code §414(q)(5) will be excluded. If the number of Employees (including part-time Employees) of the Sponsoring Employer and Affiliated Employers is less than or equal to 30 Employees, then no more than 3 Employees will be treated as Key Employees for the Plan Year containing the Determination Date by reason of being officers. If the number of Employees of the Sponsoring Employer and Affiliated Employers is greater than 30 but less than or equal to 500, then no more than 10% of the number of Employees will be treated as Key Employees by reason of being officers. If 10% of the number of Employees is not an integer, then the maximum number of individuals to be treated as Key Employees by reason of being officers will be increased to the next integer. If the number of Employees of the Sponsoring Employer and Affiliated Employers exceeds 500, then no more than 50 Employees will be treated as Key Employees for the Plan Year containing the Determination Date by reason of being officers. This limited number of officers is comprised of the individual officers, selected from the group of all individuals who are officers in the Plan Year containing the Determination Date, who have annual Code §415(c)(3) Compensation during the Plan Year containing the Determination Date greater than $130,000 (as

- 10 -

AIG_00000449

adjusted under Code §416(i)(1) for Plan Years beginning after December 31, 2002, and who had the largest annual Code §415(c)(3) Compensation during the Plan Year containing the Determination Date.

**1.55** **Leased Employee.** The term *Leased Employee* means any person (other than an Employee of the recipient-Employer) who pursuant to an agreement between the recipient-Employer and other person (known as the "Leasing Organization") has performed services for the recipient-Employer (or for the recipient-Employer and related persons determined in accordance with Code §414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient-Employer. Contributions or benefits provided to a Leased Employee by the Leasing Organization attributable to services performed for the recipient-Employer will be treated as provided by the recipient-Employer. A Leased Employee will not be considered an Employee of the recipient-Employer if (a) the Leased Employee is covered by a money purchase plan providing (1) a non-integrated Employer contribution of at least 10% of the Leased Employee's Code §415(c)(3) Compensation; (2) immediate participation; and (3) full and immediate vesting; and (b) Leased Employees do not constitute more than 20% of the recipient-Employer's non-highly compensated work force.

**1.56** **Life Expectancy.** The term *Life Expectancy* means, for purposes of required minimum distributions under Section 5.9, life expectancy as computed by use of the Single Life Table in Regulation §1.401(a)(9)-9, Q&A 1.

**1.57** **Limitation Year.** The term *Limitation Year* means the Plan Year. If the Limitation Year is amended to a different 12-consecutive month period, then the new Limitation Year must begin on a date within the Limitation Year in which the amendment is made.

**1.58** **Maternity or Paternity Leave.** The term *Maternity or Paternity Leave* means an Employee's absence from work because of (a) the Employee's pregnancy; (b) the birth of the Employee's child; (c) the placement of a child with the Employee in connection with the adoption of such child by the Employee; or (d) the need to care for such child for a period beginning immediately following the child's birth or placement as set forth above.

**1.59** **Minimum Aggregate Allocation Gateway.** The term *Minimum Aggregate Allocation Gateway* means, for Plan Years beginning on or after January 1, 2002, in the case where this Plan (or any other defined contribution plan that is aggregated with this Plan) is aggregated with any defined benefit plan for purposes of applying the general test for non-discrimination based upon Equivalent Accrual Rates for the defined contribution plan(s), a minimum Aggregate Normal Allocation Rate that must be provided to each Non-Highly Compensated Employee. Notwithstanding the above, in determining the Benefiting Participants for purposes of the Minimum Aggregate Allocation Gateway, the permissive disaggregation rules under Regulation §1.410(b)-6(b)(3)(ii) and §1.410(b)-7(c)(3) will be applied. The Minimum Aggregate Allocation Gateway is subject to the following rules:

(a) **Minimum Aggregate Allocation Gateway Amount.** The amount of the Minimum Aggregate Allocation Gateway is equal to the lesser of (1) 7.5% of Code §415(c)(3) Compensation; or (2) an Aggregate Normal Allocation Rate based upon the following formulae:

(1) **One-Third Formula.** If the Aggregate Normal Allocation Rate of the HCE with the highest aggregate allocation rate is less than 15%, then the Aggregate Normal Allocation Rate for each NHCE must be at least one-third (1/3) of the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate.

(2) **5% Formula.** If the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate is between 15% and 25%, then the Aggregate Normal Allocation Rate for each NHCE must be at least 5% of Code §415(c)(3) Compensation.

(3) **5% Plus Formula.** If the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate exceeds 25%, then the Aggregate Normal Allocation Rate for each NHCE must be at least 5% plus one percentage point for each five percentage point increment (or portion thereof) by which the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate exceeds 25% (e.g., if the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate exceeds 25% but not 30%, then the Aggregate Normal Allocation Rate for each NHCE must be at least 6%; if the Aggregate Normal Allocation Rate of the HCE with the highest Aggregate Normal Allocation Rate exceeds 30% but not 35%, then the Aggregate Normal Allocation Rate for each NHCE must be at least 7%).

- 11 -

CONFIDENTIAL

AIG_00000450

(b) **Averaging of Equivalent Allocation Rates for NHCEs.** For purposes of this definition, the Plan is permitted to treat each Non-Highly Compensated Employee who benefits under the defined benefit plan as having an equivalent normal allocation rate equal to the average of the equivalent normal allocation rates under the defined benefit plan for all Non-Highly Compensated Employees benefiting under that plan.

(c) **No Permitted Disparity.** For purposes of this definition, the Aggregate Normal Allocation Rate must not take into account the imputation of permitted disparity under Regulation §1.401(a)(4)-7.

(d) **Compensation Limited to Compensation After Entry Date.** For purposes of determining if the Minimum Aggregate Allocation Gateway of paragraph (a) has been satisfied, Code §415(c)(3) Compensation will be limited to the Participant's Code §415(c)(3) Compensation on and after a Participant's Entry Date of the Plan's component subject to the Minimum Aggregate Allocation Gateway.

(e) **Treatment of Otherwise Excludable Participants.** For purposes of the Minimum Aggregate Allocation Gateway, Otherwise Excludable Participants will not be considered.

1.60 **Minimum Allocation Gateway.** The term *Minimum Allocation Gateway* means, for Plan Years beginning on or after January 1, 2002, a minimum allocation that must be provided to each Non-Highly Compensated Employee who receives an allocation of Employer contributions under this Plan (or under any other defined contribution plan that is aggregated with this Plan) that performs the general test for non-discrimination based upon Equivalent Accrual Rates as set forth in Regulation §1.401(a)(4)-8. Notwithstanding the above, in determining the Benefiting Participants for purposes of the Minimum Allocation Gateway, the permissive disaggregation rules under Regulation §1.410(b)-6(b)(3)(ii) and §1.410(b)-7(c)(3) will be applied. The Minimum Allocation Gateway is subject to the following rules:

(a) **Minimum Allocation Gateway Satisfied So Long As This Plan Is Not Aggregated With Any Defined Benefit Plan.** The Minimum Allocation Gateway can be utilized so long as neither this Plan nor any other defined contribution plan (that is aggregated with this Plan) is aggregated with any defined benefit plan in applying the general test for non-discrimination based upon Equivalent Accrual Rates for the defined contribution plan(s). If this Plan or any other defined contribution plan (that is aggregated with this Plan) is aggregated with any defined benefit plan for purposes of applying the general test for non-discrimination based upon Equivalent Accrual Rates for the defined contribution plan(s), then the Minimum Allocation Gateway pursuant to this definition will not satisfy the requirements of Regulation §1.401(a)(4)-9.

(b) **Minimum Allocation Gateway Amount.** The amount of the Minimum Allocation Gateway is equal to the lesser of (1) five percent (5%) of the Participant's Code §415(c)(3) Compensation; or (2) one-third of the Allocation Rate of the Highly Compensated Employee with the highest Allocation Rate.

(c) **No Permitted Disparity.** For purposes of this definition, allocations and Allocation Rates must not take into account the imputation of permitted disparity under §1.401(a)(4)-7.

(d) **Compensation Limited to Compensation After Entry Date.** For purposes of determining if the Minimum Allocation Gateway of paragraph (b) has been satisfied, Code §415(c)(3) Compensation will be limited to the Participant's Code §415(c)(3) Compensation on and after a Participant's Entry Date of the Plan's component subject to the Minimum Allocation Gateway.

(e) **Treatment of Otherwise Excludable Participants.** For purposes of the Minimum Allocation Gateway, Otherwise Excludable Participants will not be considered.

1.61 **Named Fiduciary.** The term *Named Fiduciary* means the Administrator or other fiduciary named by the Administrator to control and manage the operation and administration of the Plan. To the extent authorized by the Administrator, a Named Fiduciary may delegate its responsibilities to a third party or parties. The Employer is also a Named Fiduciary.

1.62 **NHCE.** The term *NHCE* means a Non-Highly Compensated Employee.

1.63 **Non-Highly Compensated Employee.** The term *Non-Highly Compensated Employee* means any Employee who is not a Highly Compensated Employee.

- 12 -

CONFIDENTIAL

AIG_00000451

**1.64    Non-Key Employee.** The term *Non-Key Employee* means any Employee who is not a Key Employee. A former Key Employee (a Key Employee during any Plan Year prior to the Plan Year that includes the Determination Date) is a Non-Key Employee for purposes of determining whether such former Key Employee is required to receive a Top Heavy Minimum Allocation; however, a former Key Employee is ignored for purposes of determining whether the Plan is Top Heavy.

**1.65    Normal Accrual Rate.** The term *Normal Accrual Rate* means, for a Participant for a Plan Year, the increase in the Participant's accrued benefit (within the meaning of Code §411(a)(7)(A)(i)) during the measurement period, divided by the Participant's testing service during the measurement period, and expressed either as a dollar amount or as a percentage of the Participant's average annual Code §414(s) Compensation.

**1.66    Normal Form of Distribution.** The term *Normal Form of Distribution* means the form in which a Participant's benefit will be distributed absent an election to the contrary, as set forth in Sections 5.1, 5.3 and 5.4.

**1.67    Normal Retirement Age.** The term *Normal Retirement Age* means the later of Age 65 or the fifth anniversary of the date the Participant commenced participation in the Plan. There is no mandatory retirement Age under the terms of the Plan.

**1.68    Normal Retirement Date.** The term *Normal Retirement Date* means the same date a Participant reaches Normal Retirement Age.

**1.69    Otherwise Excludable Participant.** The term *Otherwise Excludable Participant* means a Participant in the Plan (or a component of the Plan) who (a) has not satisfied the statutory maximum age and service requirements set forth in Code §410(a)(1)(A), and (b) has not reached such Participant's Hypothetical Entry Date.

**1.70    Optional Form of Distribution.** The term *Optional Form of Distribution* means a form of distribution other than the Normal Form of Distribution as set forth in Sections 5.1, 5.3 and 5.4.

**1.71    Participant.** The term *Participant* means anyone who has met the eligibility and participation requirements under Article 2 of the Plan. In addition, if the Plan utilizes the failsafe allocation provisions of Section 3.8, then the term Participant means any Employee who receives a failsafe allocation, even if such Employee is not an Eligible Employee and/or has not satisfied the eligibility and participation requirements of the Plan. Furthermore, the Sponsoring Employer may elect at any time to reclassify any Employee who had been excluded from participating in the Plan (or a component of the Plan) to be a Participant through a Plan amendment that is retroactively applied for one or more prior Plan Years because the Plan (or a component of the Plan) failed to satisfy for such Plan Year one of the tests set forth in Code §410(b)(1)(A), (B) or (C), or for any other reason required to maintain the tax exempt status of the Plan. However, an individual who is no longer an Employee will cease to be a Participant if his or her entire Plan benefit (a) is fully guaranteed by an insurance company and legally enforceable at the sole choice of such individual against such insurance company, provided that a contract, Policy, or certificate describing the individual's Plan benefits has been issued to such individual; (b) is paid in a lump sum distribution which represents such individual's entire interest in the Plan; or (c) is paid in some other form of distribution and the final payment thereunder has been made.

**1.72    Participant's Account.** The term *Participant's Account* means the account to which is allocated a Participant's share of Employer contributions; earnings or losses; and, if applicable, Forfeitures. A Participant's Account will also include the proceeds of any Policies purchased on the Participant's life under Section 7.2.

**1.73    Participant's Account Balance.** The term *Participant's Account Balance* means, for purposes of required minimum distributions under Section 5.9, the balance of the Participant's Account as of the last Valuation Date in the Valuation Calendar Year, increased by any contributions made and allocated or forfeitures allocated to the Account as of dates in the Valuation Calendar Year after the Valuation Date and decreased by distributions made in the Valuation Calendar Year after the Valuation Date. The Participant's Account Balance for the Valuation Calendar Year includes any amounts rolled over or transferred to the Plan either in the Valuation Calendar Year or in the Distribution Calendar Year if distributed or transferred in the Valuation Calendar Year.

**1.74    Permissive Aggregation Group.** The term *Permissive Aggregation Group* means a group consisting of the Required Aggregation Group plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code §401(a)(4) and §410.

- 13 -

CONFIDENTIAL

AIG_00000452

**1.75    Plan.** The term *Plan* means the American Investment Group of New York, L.P. Pension Plan, as amended from time to time.

**1.76    Plan Year.** The term *Plan Year* means the Plan's 12 consecutive month accounting year beginning January 1st and ending the following December 31st. If the Plan Year is changed, a short Plan Year will be established beginning the day after the last day of the Plan Year in effect before the change and ending on the last day of the new Plan Year.

**1.77    Policy.** The term *Policy* means a life insurance policy or annuity contract purchased by the Plan pursuant to the provisions of Section 7.2 of the Plan.

**1.78    Post-Severance Compensation.** The term *Post-Severance Compensation* means the following amounts that are paid within 2½ months after an Employee's Termination of Employment: (a) payments that, absent a Termination of Employment, would have been paid to the Employee while the Employee continued in employment with the Employer and are regular compensation for services during the Employee's regular working hours, compensation for services outside the employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar compensation; and (b) payments for accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued. Any other payment that is not described in clause (a) above and clause (b) above is not considered Post-Severance Compensation if paid after Termination of Employment, even if it is paid within 2½ months following Termination of Employment; for example, Post-Severance Compensation does not include amounts paid after Termination of Employment that are severance pay, unfunded nonqualified deferred compensation, or parachute payments within the meaning of Code §280G(b)(2). However, the rule of the prior sentence does not apply to payments to an individual who does not currently perform services for the Employer by reason of qualified military service (as that term is used in Code §414(u)(1)) to the extent those payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the Employer rather than entering qualified military service; those payments are considered Compensation.

**1.79    Primarily Defined Benefit in Character.** The term *Primarily Defined Benefit in Character* means, for Plan Years beginning on or after January 1, 2002, a combination of defined benefit plan(s) and defined contribution plan(s) in which, for more than 50% of Non-Highly Compensated Employees benefiting under the combination of defined benefit and defined contribution plans, the Normal Accrual Rate for the Non-Highly Compensated Employees which is attributable to benefits provided by the defined benefit plan(s) that are part of the combination exceeds the Equivalent Accrual Rate for the Non-Highly Compensated Employees which is attributable to contributions under the defined contribution plan(s) that are part of the combination.

**1.80    QJSA.** The term *QJSA* means a Qualified Joint and Survivor Annuity.

**1.81    QPSA.** The term *QPSA* means a Qualified Pre-Retirement Survivor Annuity.

**1.82    Qualified Joint and Survivor Annuity.** The term *Qualified Joint and Survivor Annuity* means, with respect to a Participant who is married on the Annuity Starting Date and has not died before such date, an immediate annuity for the life of the Participant with a survivor benefit for the life of the Participant's surviving Spouse which is not less than 50% nor more than 100% of the annuity that is payable during the joint lives of the Participant and his or her Spouse and which is the amount of benefit which can be purchased with the Participant's Vested Aggregate Account balance. The survivor benefit will be 50% unless a higher percentage is elected by the Participant at the time that the Qualified Joint and Survivor Annuity is to be distributed. With respect to a Participant who is not married on the Annuity Starting Date and has not died before such date, the term "Qualified Joint and Survivor Annuity" means an immediate annuity for his or her life.

**1.83    Qualified Pre-Retirement Survivor Annuity.** The term *Qualified Pre-Retirement Survivor Annuity* means a survivor annuity for the life of a deceased Participant's surviving Spouse which is equal to the amount of benefit which can be purchased by 50% of the deceased Participant's Vested Aggregate Account determined at the date of death. In determining a Participant's Vested Aggregate Account hereunder, any security interest held by the Plan because of a loan outstanding to the Participant will be taken into consideration and, if applicable, the Participant's own deductible contributions made for Plan Years prior to January 1, 1989 will be disregarded.

- 14 -

CONFIDENTIAL

AIG_00000453

**1.84    Reemployment Commencement Date.** The term *Reemployment Commencement Date* means the first day on which an Employee performs an Hour of Service for an Employer or an Affiliated Employer following the Employee's Termination of Employment.

**1.85    Regulation.** The term *Regulation* means any regulation as promulgated by the Secretary of the Treasury or delegates of the Treasury Department, as amended and/or renumbered from time to time. If this Plan references a regulation that is promulgated by any other Department, Agency, Commission, or other federal entity, then the name of such Department, Agency, Commission, or other federal entity will be referenced with such regulation.

**1.86    Representative Contribution Rate.** The term *Representative Contribution Rate* means the lowest Applicable Contribution Rate of any Participant who is a NHCE among a group of Participants who are NHCEs that consists of half of all Participants who are NHCEs for the Plan Year (or, if greater, the lowest Applicable Contribution Rate of any Participant who is a NHCE in the group of all Participants who are NHCEs for the Plan Year and who is employed by the Sponsoring Employer on the last day of the Plan Year).

**1.87    Required Aggregation Group.** The term *Required Aggregation Group* means a group consisting of (a) each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Plan Year containing the Determination Date or any of the four preceding Plan Years (regardless of whether the plan has terminated); and (b) any other qualified plan of the Employer which enables a plan described in clause (a) above to satisfy the requirements of Code §401(a)(4) or §410.

**1.88    Required Beginning Date.** The term *Required Beginning Date* means, with respect to a Participant who is a 5% owner as defined in Code §416(i)(1)(B)(i), April 1st of the calendar year following the calendar year in which the Participant reaches Age 70½. With respect to Participants who are not 5% owners, Required Beginning Date means April 1st of the calendar year following the later of the calendar year in which the Participant reaches Age 70½ or the calendar year in which the Participant actually retires, subject to paragraphs (a), (b) and (c) below:

(a)    **Election to Defer Distribution.** Any Participant (other than a 5% owner) who attains Age 70½ in years after 1995 may elect by April 1 of the calendar year following the year in which the Participant attains Age 70½ (or by December 31, 1997 in the case of a Participant who attains Age 70½ in 1996), to defer distributions until April 1 of the calendar year following the calendar year in which the Participant retires. If no such election is made, the Participant will begin receiving distributions by April 1 of the calendar year following the calendar year in which the Participant attains Age 70½.

(b)    **Election to Suspend Distribution.** Any Participant (other than a 5% owner) who attains age 70½ in years prior to 1997 may elect to stop distributions and then recommence such distributions by April 1 of the calendar year following the calendar year in which the Participant retires. In such an event, the Administrator may, on a uniform non-discriminatory basis, elect that a new Annuity Starting Date will begin upon the Participant's distribution recommencement date.

(c)    **Elimination of Pre-Retirement Age 70½ Distribution Option.** The pre-retirement Age 70½ distribution option will only be eliminated for Employees who reach Age 70½ in or after a calendar year that begins after the later of December 31, 1998, or the adoption date of this amended Plan. The pre-retirement Age 70½ distribution option is an optional form of benefit under which benefits payable in a particular distribution form (including any modifications that may be elected after benefit commencement) begin at a time during the period that begins on or after January 1st of the calendar year in which an Employee reaches Age 70½ and ends April 1 of the immediately following calendar year.

**1.89    Rollover.** The term *Rollover* means a Rollover Contribution.

**1.90    Rollover Contribution.** The term *Rollover Contribution* means an amount which is eligible for tax free rollover treatment and is transferred to this Plan from one or more of the plans the Administrator permits, which plans, effective as of January 1, 2002 (or such later date pursuant to written procedures established and adopted by the Administrator), may include (a) a qualified plan under Code §401(a); (b) a qualified annuity plan under Code §403(a); (c) a qualified annuity under Code §403(b); (d) an individual retirement account under Code §408(a), without regard to whether the individual retirement account is a "conduit individual retirement account"; (d) an individual retirement annuity under Code §408(b), without regard to whether the individual retirement annuity is a "conduit individual retirement annuity"; and (e) an eligible plan under Code §457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

- 15 -

CONFIDENTIAL

AIG_00000454

If this Plan accepts a Rollover Contribution of Roth elective deferrals, it will separately account for the Roth elective deferrals and for any prior (and subsequent) earnings or losses attributable to such Roth elective deferrals. A direct or indirect transfer as defined in Code §401(a)(11) of assets from a defined benefit plan, a money purchase plan, a target benefit plan, a stock bonus plan, or a profit sharing plan that provided for a life annuity form of payment to the Participant will not be considered a Rollover Contribution, but will be considered a Transfer Contribution. Similarly, any elective deferrals (including qualified non-elective contributions, qualified matching contributions, and ADP safe harbor contributions) which are transferred to this Plan in a direct or indirect trustee-to-trustee transfer from another qualified plan and which are subject to the limitations in Regulation §1.401(k)-1(d) will not be considered a Rollover Contribution but a Transfer Contribution.

**1.91 Rollover Contribution Account.** The term *Rollover Contribution Account* means the account to which a Participant's Rollover Contributions, if any, are allocated.

**1.92 Rollover Participant.** The term *Rollover Participant* means an Employee who has made a Rollover Contribution into the Plan but who is not eligible to participate in any other component of the Plan.

**1.93 Safe Harbor Code §415 Compensation.** The term *Safe Harbor Code §415 Compensation* means an Employee's compensation as determined under Regulation §1.415-2(d)(10), to wit: Earned Income, wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Sponsoring Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salespersons, compensation for services based on a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a non-accountable plan as described in Regulation §1.62-2(c)). Safe Harbor Code §415 Compensation includes amounts paid or made available to the Employee. An Employee's Safe Harbor Code §415 Compensation will be determined in accordance with the following provisions:

(a) **Exclusion of Certain Amounts.** Safe Harbor Code §415 Compensation does not include the following: (1) Employer contributions made by the Employer to a plan of deferred compensation to the extent that, before the application of the Code §415 limitations to that plan, the contributions are not includible in the Employee's gross income for the taxable year in which contributed; Employer contributions made on behalf of an Employee to a simplified employee pension described in Code §408(k) for the taxable year in which contributed; and any distributions from a plan of deferred compensation for Code §415 purposes, regardless of whether such amounts are includible in the Employee's gross income when distributed; (2) Amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; (3) Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and (4) Other amounts which receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the gross income of the employee), or contributions made by an Employer (whether or not under a salary deferral agreement) towards the purchase of an annuity described in Code §403(b) (regardless of whether such contributions are excludible from an Employee's gross income).

(b) **Inclusion of Certain Amounts.** Safe Harbor Code §415 Compensation includes any elective deferral as defined in Code §402(g)(3) and any amount which is contributed or deferred by the Employer at the election of the Employee which are not includible in gross income by reason of Code §125 (including Deemed Code §125 Compensation), Code §132(f)(4), or Code §457.

(c) **Treatment of Post-Severance Compensation.** Effective January 1, 2005, Safe Harbor Code §415 Compensation includes Post-Severance Compensation.

**1.94 Self-Employed Individual.** The term *Self-Employed Individual* means an individual who owns an interest in the Employer (other than a stock interest) and has Earned Income for the taxable year from the trade or business for which the Plan is established or would have had Earned Income but for the fact that the trade or business had no net profits for the taxable year.

**1.95 Service.** The term *Service* means Years of Service.

- 16 -

CONFIDENTIAL

AIG_00000455

**1.96  Sponsoring Employer.** The term *Sponsoring Employer* means American Investment Group of New York, L.P. (and any successor thereto that elects to assume sponsorship of this Plan).

**1.97  Spousal.** The term *Spousal* means of, or related to, a Spouse.

**1.98  Spouse.** The term *Spouse* means the person to whom a Participant is legally married. Furthermore, a former Spouse will be treated as the Participant's Spouse or surviving Spouse to the extent provided under a qualified domestic relations order as described in Code §414(p).

**1.99  Statutory Code §415 Compensation.** The term *Statutory Code §415 Compensation* means, in applying the Code §415 limits, an Employee's compensation as determined under Regulation §1.415-2(d)(2) and (3), to wit:

(a)  **Amounts Includable as Statutory Code §415 Compensation.** Statutory Code §415 Compensation includes all of the following: (1) wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Sponsoring Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salespersons, compensation for services based on a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a non-accountable plan as described in Regulation §1.62-2(c)); (2) in the case of a Self-Employed Individual, Earned Income; (3) amounts described in Code §104(a)(3), §105(a) and 105(h), but only to the extent these amounts are includible in the gross income of the Employee; (4) amounts paid or reimbursed by the Employer for moving expenses incurred by the Employee, but only to the extent that at the time of the payment it is reasonable to believe that these amounts are not deductible by the Employee under Code §217; (5) the value of a non-qualified stock option granted to an Employee by the Employer, but only to the extent that the value of the option is includible in the gross income of the Employee for the taxable year in which granted; and (6) the amount includible in the gross income of an Employee upon making the election described in Code §83(b). Clauses (1) and (2) above include foreign earned income (as defined in Code §911(b)), regardless of whether excludible from gross income under Code §911. Compensation determined under clause (1) above is to be determined without regard to the exclusions from gross income in Code §931 and §933. Similar principles are to be applied with respect to income subject to Code §931 and §933 in determining compensation described in clause (2). Statutory Code §415 Compensation includes amounts paid or made available to the Employee.

(b)  **Exclusion of Certain Amounts.** Statutory Code §415 Compensation does not include (1) Employer contributions made by the Employer to a plan of deferred compensation to the extent that, before the application of the Code §415 limitations to that plan, the contributions are not includible in the Employee's gross income for the taxable year in which contributed; Employer contributions made on behalf of an Employee to a simplified employee pension described in Code §408(k) for the taxable year in which contributed; and any distributions from a plan of deferred compensation for Code §415 purposes, regardless of whether such amounts are includible in the Employee's gross income when distributed; (2) amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; (3) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and (4) other amounts which receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the gross income of the employee), or contributions made by an Employer (whether or not under a salary deferral agreement) towards the purchase of an annuity described in Code §403(b) (regardless of whether such the contributions are excludible from an Employee's gross income).

(c)  **Inclusion of Certain Amounts.** Statutory Code §415 Compensation includes any elective deferral as defined in Code §402(g)(3) and any amount which is contributed or deferred by the Employer at the election of the Employee which are not includible in gross income by reason of Code §125 (including Deemed Code §125 Compensation), Code §132(f)(4), or Code §457.

(d)  **Treatment of Post-Severance Compensation.** Effective January 1, 2005, Statutory Code §415 Compensation includes Post-Severance Compensation.

**1.100  Substantially Equal.** The term *Substantially Equal* means a series of installment payments in which a single installment payment is equal to the Participant's Account balance as of the most recent Valuation Date divided by

- 17 -

CONFIDENTIAL

AIG_00000456

the remaining duration of the installment payments; or such other method to determine a series of installment payments that are substantially equal that may be established by the Administrator.

**1.101 Terminated (or Terminates) Employment.** The terms *Terminated Employment* and *Terminates Employment* mean that a person has incurred a Termination of Employment.

**1.102 Terminated Participant.** The term *Terminated Participant* means a Participant who has Terminated Employment for reasons other than retirement, death or Disability.

**1.103 Termination of Employment.** The term *Termination of Employment* means that a person ceases to be an Employee with the Employer or an Affiliated Employer, taking into account the following: (1) the existence of a controlled group; (2) the existence of an affiliated service group; (3) whether the person has gone to work for an Adopting Employer; (4) whether the person's new employer has been substituted as the sponsor of the Plan (or a spun-off portion of the Plan); and (5) whether there has been a transfer of Plan assets and liabilities of the person's benefits from this Plan to a plan sponsored by the person's new employer.

**1.104 Top Heavy.** The term *Top Heavy* means for the Plan Year containing the Determination Date that (a) the Top Heavy Ratio for this Plan exceeds 60% and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group; or (b) this Plan is a part of a Required Aggregation Group but not part of a Permissive Aggregation Group and the Top Heavy Ratio for the Required Aggregation Group exceeds 60%; or (c) this Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group and the Top Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

**1.105 Top Heavy Minimum Allocation.** The term *Top Heavy Minimum Allocation* means an amount of Employer contributions and Forfeitures that is subject to the following rules:

(a) **DB Plan not Part of Required Aggregation Group or Permissive Aggregation Group with This Plan.** If a defined benefit plan is not part of a Required Aggregation Group or a Permissive Aggregation Group with this Plan, then the Top Heavy Minimum Allocation equals an Employee's Code §415(c)(3) Compensation multiplied by the lesser of (1) three percent (3%), or (2) the largest percentage of Employer contributions (including any Elective Deferrals made on behalf of a Key Employee to a 401(k) Plan maintained by the Employer) and Forfeitures that are allocated to the Participant's Account of a Key Employee for that Plan Year, expressed as a percentage of such Key Employee's Code §415(c)(3) Compensation.

(b) **Certain Contributions Cannot Be Used to Satisfy Top Heavy Minimum Allocation.** Elective Deferrals that are made on behalf of a Participant to a 401(k) Plan (and, for Plan Years beginning before 2002, Matching Contributions) cannot be used to satisfy the Top Heavy Minimum Allocation.

(c) **Social Security Contribution Disregarded.** The Top Heavy Minimum Allocation is determined without regard to any Social Security contribution.

(d) **Forfeiture of Top Heavy Minimum Allocation.** The Top Heavy Minimum Allocation (to the extent required to be nonforfeitable under Code §416(b)) may not be forfeited under Code §411(a)(3)(B) or §411(a)(3)(D).

**1.106 Top Heavy Ratio.** The term *Top Heavy Ratio* means for Plan Years beginning on or after January 1, 2002, in determining if this Plan is Top Heavy, a ratio that is calculated in accordance with the following provisions:

(a) **Employer Only Maintains DC Plans.** If the Employer maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and the Employer has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date(s) has or has had accrued benefits, then the Top Heavy Ratio for this Plan alone, for the Required Aggregation Group, or for the Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the Participant's Account balances of all Key Employees as of the Determination Date(s) (including any part of any Participant's Account balance distributed during the 1-year period ending on the Determination Date(s); however, including any part of any Participant's Account balance distributed during the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than Termination of Employment, death, or Disability), and the denominator of which is the sum of all Participant's Account balances (including any part of any Participant's Account balance distributed in the 1-year period ending on the Determination Date(s); however, including any part of any Participant's Account balance distributed

- 18 -

CONFIDENTIAL

AIG_00000457

during the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than Termination of Employment, death, or Disability), both computed in accordance with Code §416 and the Regulations thereunder. Both the numerator and denominator of the Top Heavy Ratio are increased to reflect any contribution that is not actually made as of the Determination Date, but which is required to be taken into account on that Determination Date under Code §416 and the Regulations thereunder.

(b) **Employer Maintains Both DB and DC Plans.** If the Employer maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and the Employer maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date(s) has or has had any accrued benefits, then the Top Heavy Ratio for any Required Aggregation Group or for any Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the Participant's Account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with paragraph (a) above, and the present value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the Participant's Account balances under the aggregated defined contribution plan or plans for all Participants, determined in accordance with paragraph (a) above, and the present value of accrued benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code §416 and the Regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top Heavy Ratio are increased for any distribution of an accrued benefit made in the 1-year period ending on the Determination Date (or the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than Termination of Employment, death, or Disability).

(c) **Value of Participant's Account Balances and the Present Value of Accrued Benefits.** For purposes of paragraphs (a) and (b), the value of the Participant's Account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code §416 and the Regulations for the first and second Plan Years of a defined benefit plan. The Participant's Account balances and accrued benefits will be disregarded for a Participant (1) who is not a Key Employee during the 12-month period ending on the Determination Date but was a Key Employee in a prior year, or (2) who has not been credited with at least one Hour of Service with any Employer maintaining the Plan at any time during the 1-year period ending on the Determination Date. The calculation of the Top Heavy Ratio and the extent to which distributions, Rollover Contributions, and Transfer Contributions are taken into account will be made in accordance with Code §416 and the Regulations thereunder. Deductible employee contributions will not be taken into account in computing the Top Heavy Ratio. When aggregating plans, the value of the Participant's Account balances and accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year. The accrued benefit of a Participant other than a Key Employee will be determined under (1) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or (2) if there is no such method, then as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code §411(b)(1)(C).

(d) **Computing Present Values.** In establishing the present value of accrued benefits to compute the Top Heavy Ratio, benefits not in pay status are handled on the basis that retirement occurs on the automatic vesting date or, if later, the date of reference. Benefits are discounted only for interest and mortality. Unless different actuarial assumptions are elected in an administrative policy that is promulgated under Section 8.6 by the Administrator, the following factors apply: (1) with respect to the interest assumption: (i) pre-retirement: 6% interest, and (ii) post-retirement: 5% interest; and (2) with respect to the mortality assumption: (i) pre-retirement: no mortality assumption, and (ii) post-retirement: the mortality assumption will be the 1994 Group Annuity Reserving Mortality Table projected to 2002 based on a fixed blend of 50% of the unloaded Male mortality rates and 50% of the unloaded Female mortality rates (the 1994 GAR Mortality Table) as set forth in Revenue Ruling 2001-62.

**1.107 Transfer Contribution.** The term *Transfer Contribution* means a non-taxable transfer of a Participant's benefit directly or indirectly from another qualified plan to this Plan. Transfer Contributions include assets transferred to this Plan from another plan as a result of a merger or similar transaction involving this Plan and the other plan. Any direct or indirect transfer as defined in Code §401(a)(11) of assets from a defined benefit plan, a money purchase plan, a target benefit plan, a stock bonus plan, or a profit sharing plan that provided for a life annuity form of payment to the Participant will be considered a Transfer Contribution. Elective Deferrals (including QNECs, QMACs, and ADP Safe Harbor Contributions) which are transferred to this Plan in a direct or indirect

- 19 -

CONFIDENTIAL

AIG_00000458

trustee-to-trustee transfer from another qualified plan and which remain subject to the limitations in Regulation §1.401(k)-1(d) will be considered a Transfer Contribution. The assets that are transferred from another qualified plan in a plan-to-plan elective transfer pursuant to Section 11.4 will also be considered a Transfer Contribution.

**1.108 Transfer Contribution Account.** The term *Transfer Contribution Account* means the account to which a Participant's Transfer Contributions, if any, are allocated.

**1.109 Trustee.** The term *Trustee* means the persons or entity named as trustee or trustees of the Trust.

**1.110 Trust (or Trust Fund).** The term *Trust* or *Trust Fund* means the assets of the Plan.

**1.111 Valuation Calendar Year.** The term *Valuation Calendar Year* means, for purposes of required minimum distributions under Section 5.9, the calendar year immediately preceding a Distribution Calendar Year.

**1.112 Valuation Date.** The term *Valuation Date* means the date when the Trustee determines the value of the Trust Fund. A Valuation Date of the Trust Fund must occur as of the last day of each Plan Year. However, the Administrator can value all or any portion of the assets of the Trust Fund more frequently, including, but not limited to, semi-annually, quarterly, monthly, or daily; the Administrator may implement any additional Valuation Dates for any reason. For purposes of calculating the Top Heavy Ratio, the term "Valuation Date" means the date when the Participant's Account balances or accrued benefits are valued.

**1.113 Vested Aggregate Account.** The term *Vested Aggregate Account* means a Participant's Vested Interest in the aggregate value of his or her Participant's Account and any accounts attributable to the Participant's own Plan contributions (including the Participant's Rollover Contribution Account and Transfer Contribution Account).

**1.114 Vested, Vested Interest or Vesting.** The terms *Vested*, *Vested Interest* and *Vesting* mean a Participant's nonforfeitable percentage in an account maintained on his or her behalf under the Plan. A Participant's Vested Interest in his or her Participant's Account will be determined in accordance with Section 4.6.

**1.115 Vesting Computation Period.** The term *Vesting Computation Period* means a period of twelve consecutive months which is used for purposes of determining a Participant's Vested Interest in the Plan (or a component of the Plan). Each Vesting Computation Period will consist of each Plan Year.

**1.116 Voluntary Employee Contribution.** The term *Voluntary Employee Contribution* means an Employee Contribution which is made voluntarily to the Plan by a Participant.

**1.117 Voluntary Employee Contribution Account.** The term *Voluntary Employee Contribution Account* means the sub-account to which a Participant's Voluntary Employee Contributions, if any, are allocated.

**1.118 Year of Service.** The term *Year of Service* means, with respect to any provision of the Plan in which service is determined by the Counting of Hours Method, a 12-consecutive month computation period during which an Employee is credited with at least a specified number of Hours of Service with the Employer, an Affiliated Employer, or an Adopting Employer, determined in accordance with the following provisions:

(a) **Year of Service for Eligibility.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, a Year of Service is an Eligibility Computation Period during which an Employee is credited with at least 1,000 Hours of Service. An Employee's initial Eligibility Computation Period will begin on his or her Employment Commencement Date. If the Employee is credited with at least 1,000 Hours of Service in both the initial Eligibility Computation Period and the second Eligibility Computation Period, the Employee will be credited with two Years of Service for eligibility purposes. If any Eligibility Computation Period is less than 12 consecutive months, the Hours of Service requirement set forth herein will be proportionately reduced (if it is greater than one) in determining whether an Employee is credited with a Year of Service during such short Eligibility Computation Period. In determining the eligibility requirements and the applicable entry date under Section 2.1, an Employee will be deemed to have completed a Year of Service on the last day of the applicable Eligibility Computation Period during which the Employee is credited with the required Hours of Service.

(b) **Year of Service for Vesting.** For any Plan Year in which a Participant's Vested Interest under Section 4.6 is based on Years of Service, a Year of Service is a Vesting Computation Period during which an Employee is

- 20 -

CONFIDENTIAL

AIG_00000459

credited with at least 1,000 Hours of Service. If a Vesting Computation Period is less than 12 consecutive months, the Hours of Service requirement set forth herein will be proportionately reduced (if it is greater than one) in determining whether an Employee is credited with a Year of Service during such short Vesting Computation Period. Alternatively, with respect to a short Vesting Computation Period, an Employee will be credited with a Year of Service pursuant to Department of Labor Regulation §2530.203 2(c).

(c) **Prior Service Credit.** If the Employer maintains (or has ever maintained) any plan of a predecessor employer, then service during the existence of such predecessor plan with such predecessor employer will be credited as Years of Service with the Employer.

(d) **Reemployment of an Employee Before a Break In Service and Before Eligibility Requirements Are Satisfied.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, if an Employee Terminates Employment with the Employer prior to satisfying the eligibility requirements in Section 2.1 and the Employee is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the Employee's pre-termination Year(s) of Service (and Hours of Service during any computation period) will be counted in determining the satisfaction of such eligibility requirements, and for all other purposes, as applicable, and (2) the Eligibility Computation Period, Vesting Computation Period, and/or benefit accrual computation period, as applicable, will remain unchanged.

(e) **Reemployment of an Employee Before a Break In Service and After Eligibility Requirements Are Satisfied.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, if an Employee Terminates Employment prior to the Employee's Entry Date in Section 2.1, the Employee had satisfied the eligibility requirements in Section 2.1 as of the Employee's Termination of Employment, and the Employee is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the Employee will become a Participant as of the later of (A) the date that the Employee would enter the Plan had he or she not Terminated Employment with the Employer, or (B) the Employee's Reemployment Commencement Date, (2) the Employee's pre-termination Year(s) of Service (and Hours of Service during any computation period) will be counted for all purposes, and (3) the Vesting Computation Period and/or benefit accrual computation period, as applicable, will remain unchanged.

(f) **Reemployment of a Participant Before a Break In Service.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, if an Employee Terminates Employment after becoming a Participant and is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the reemployed Employee will reenter the Plan as of the Employee's Reemployment Commencement Date, (2) the Employee's pre-termination Year(s) of Service (and Hours of Service during any computation period) will be counted for all purposes, as applicable, and (3) the Vesting Computation Period and/or benefit accrual computation period, as applicable, will remain unchanged.

(g) **Reemployment of an Employee After a Break In Service and Before the Entry Date.** For any Plan Year in which the eligibility requirements in Section 2.1 are based on Years of Service, if an Employee Terminates Employment with the Employer either prior to or after satisfying the eligibility requirements in Section 2.1 (but before the Employee's Entry Date in Section 2.1) and the Employee is subsequently reemployed by the Employer after incurring a Break in Service, then the Employee's Years of Service that were completed prior to the Break in Service will be recognized.

(h) **Reemployment of a Participant After a Break In Service.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, if an Employee (1) was a Participant in the Plan, (2) Terminates Employment with the Employer, and (3) is subsequently reemployed by the Employer after incurring a Break in Service, then the Employee's Year(s) of Service that were completed prior to the Break in Service will be recognized.

- 21 -

CONFIDENTIAL

AIG_00000460

(i)  **Ignoring Service for Eligibility If Service Requirement for Eligibility Is More Than 1 Year of Service.** Notwithstanding anything in the Plan to the contrary, if this Plan (or a component of the Plan) provides at any time that an Employee must complete more than one (1) Year of Service for eligibility purposes, and such Employee will have a 100% Vested Interest in the Participant's Account (or the sub-Account that relates to such component) upon becoming a Participant in the Plan, then with respect to an Employee who incurs a Break in Service before satisfying such eligibility requirement (1) the Employee's Year(s) of Service (and Hours of Service) that were completed prior to the Employee's Break(s) in Service will not be counted for eligibility purposes, and (2) the Employee's Eligibility Computation Period will commence on the Employee's Reemployment Commencement Date and subsequent Eligibility Computation Periods will be based upon the provisions of the definition of Eligibility Computation Period (with the Reemployment Commencement Date substituted for the Employment Commencement Date, if applicable).

- 22 -

CONFIDENTIAL

AIG_00000461

**Article 2**
**Plan Participation**

2.1    **Eligibility and Entry Date Requirements.** An Eligible Employee who was a Participant on December 31, 2008 will continue to participate in the Plan. Otherwise, an Eligible Employee will become eligible to enter the Plan as a Participant in accordance with the following provisions:

(a)    **Eligible Employees.** For purposes of this Plan, all Employees are Eligible Employees except for the following ineligible class of Employees: Employees whose employment is governed by a collective bargaining agreement between Employee representatives and the Employer in which retirement benefits were the subject of good faith bargaining unless such collective bargaining agreement expressly provides for the inclusion of such Employees as Participants.

(b)    **Eligibility Requirements.** An Eligible Employee described in Section 2.1(a) will be eligible to enter the Plan as a Participant on the applicable entry date described in Section 2.1(c) upon reaching Age 21 and upon being credited with 1 Year of Service.

(c)    **Entry Date.** An Eligible Employee described in Section 2.1(a) who has satisfied the eligibility requirements in Section 2.1(b) will enter the Plan as a Participant on the January 1st or the July 1st coincident with or following the date such requirements are satisfied.

(d)    **Participation By Employees Whose Status Changes.** If an Employee who is not an Eligible Employee with respect to a particular type of contribution (or a component of the Plan) becomes an Eligible Employee for such contribution (or component), then the Employee will participate in the Plan immediately with respect to that type of contribution (or component), so long as (1) the Employee has satisfied the minimum age and service requirements for that type of contribution (or component) and (2) the Employee would have previously become a Participant with respect to that type of contribution (or component) had the Employee always been an Eligible Employee for that type of contribution (or component). The participation of a Participant who is no longer an Eligible Employee with respect to a particular type of contribution (or component) will be suspended and such Participant will be entitled to an allocation of that type of contribution (and any applicable Forfeitures) for the Allocation Period only to the extent of any applicable Hours of Service completed while an Eligible Employee for that type of contribution (or component). Upon again becoming an Eligible Employee with respect to that type of contribution (or component), a suspended Participant will immediately resume eligibility with respect to that type of contribution. Years of Service or Periods of Service while an Employee is not an Eligible Employee will be recognized for purposes of determining the Vested Interest of such Employee with respect to a particular type of contribution (or component) in accordance with Section 4.6.

2.2    **Waiver of Participation.** An Employee who has satisfied the eligibility requirements set forth in Section 2.1 may elect to waive participation in the Plan in accordance with the following provisions:

(a)    **Irrevocable Election.** An Employee may make a one-time irrevocable election to waive participation in the Plan. However, the Administrator may in its sole discretion elect not to grant a waiver to one or more Eligible Employees if the Eligible Employee is not an HCE and is not likely to become an HCE and if the Administrator determines that such waiver may cause the Plan for any Plan Year to fail to satisfy one of the tests in Code §410(b)(1)(A) or Code §410(b)(1)(B) and (C). The Employee's election to waive participation in the Plan must be in writing and must be delivered to the Administrator on or before the date the Employee first becomes eligible to participate in the Plan. Notwithstanding the foregoing however, once an Employee has become a Participant in the Plan, no waiver can be made, except as provided in paragraph (b) below.

(b)    **Election to Waive Allocation.** Notwithstanding paragraph (a) to the contrary, and subject to the Top-Heavy Minimum Allocation requirements set forth in Section 3.7, a Participant may agree to forego an allocation of Employer contributions to his or her Participant's Account for all or any Allocation Periods if the Participant is an HCE for the Allocation Period and such waiver does not have a direct or indirect impact on the overall remuneration paid to such Participant.

(c)    **Administrative Requirements.** An Employee's election to waive participation or forego an allocation must be in writing and must be delivered to the Administrator on or before the date the Employee first becomes eligible to participate in the Plan in the case of a waiver under paragraph (a), and before the Participant is

- 23 -

CONFIDENTIAL

AIG_00000462

entitled to an allocation to his or her Participant's Account in the case of foregoing an allocation under paragraph (b). The Administrator will furnish any form required to make an election under this Section, which may include the requirement for consent by the Employee's Spouse.

**2.3**    **Reemployment After Termination.** If an Employee terminates employment and is subsequently reemployed by the Employer or an Affiliated Employer, such Employee's Years of Service for purposes of eligibility (as well as the time such Employee enters or reenters the Plan as a Participant) will be determined in accordance with the rules described in the definition of Year of Service in Section 1.118.

- 24 -

CONFIDENTIAL

AIG_00000463

**Article 3**
**Contributions and Allocations**

3.1    **Determination of Employer Contribution.** The Employer intends to make contributions to the Plan, unless the Plan is a frozen Plan, subject to the following provisions:

(a)    **Amount of Contributions.** The amount of the Employer's contribution for any Allocation Period will be determined in the sole discretion of the Employer, and such determination by the Employer will be binding on the Trustee, Administrator and all Participants and may not be reviewed in any manner.

(b)    **No Guarantee.** The Employer does not guarantee either the making of Employer contributions or the payment of benefits under the Plan. The Employer reserves the right to reduce, suspend or discontinue contributions for any reason at any time; however, if the Plan is deemed to be terminated as a result of such reduction, suspension or discontinuance, then the provisions of Article 11 will become effective.

(c)    **Limitations on Contributions.** Notwithstanding any provision of this Article, (1) no Employer contribution will be made for any Participant who is not a Benefiting Participant for an Allocation Period unless otherwise required by the Top Heavy Minimum Allocation provisions in Section 3.7; and (2) if the Plan provides contributions or benefits for Employees some or all of whom are owner-employees as defined in Code §401(c)(3), such contributions or benefits can only be provided with respect to the Earned Income of such owner-employees derived from the trade or business with respect to which the Plan is established.

(d)    **Frequency of Contributions and Allocations.** Any Employer contribution that is made under the terms of the Plan may, at the election of the Administrator, be contributed (1) each payroll period; (2) each month; (3) each Plan quarter; (4) on an annual basis; or (5) on any Allocation Period as determined by the Employer, provided that such Allocation Period does not discriminate in favor of Highly Compensated Employees. The Employer may elect a different Allocation Period for each type of Employer contribution. Employer contributions will be allocated based on the applicable Allocation Period.

(e)    **Form of Contribution.** If the contribution is not used to reduce an obligation or liability of an Employer to the Plan, and the contribution is unencumbered and discretionary, then the contribution (if any) may consist of (1) cash; (2) cash equivalencies (3) qualifying employer real property and/or qualifying employer securities as defined in ERISA §407(d)(4) and ERISA §407(d)(5), provided the acquisition of such qualifying employer real property and/or qualifying employer securities satisfies the requirements of ERISA §408(e); or (4) any other property that is not prohibited under Code §4975 and is acceptable to the Trustee. If the contribution is used to reduce an obligation or liability of an Employer or the contribution is encumbered and not discretionary, then the contribution will consist of (1) cash; or (2) cash equivalencies; such Employer's contribution will not consist of any non-cash or non-cash equivalency assets to the Trust.

(f)    **Refund of Contributions.** Contributions that are made to the Plan by the Employer can only be returned to the Employer in accordance with the following provisions:

(1)    **Failure of Plan to Initially Qualify.** If the Plan fails to initially satisfy the requirements of Code §401(a) and the Employer declines to amend the Plan to satisfy such requirements, then contributions that were made prior to the date such qualification is denied must be returned to the Employer within one year of the date of such denial, but only if the application for the qualification is made by the time prescribed by law for filing the Employer's tax return for the taxable year in which the Plan is adopted, or by such later date as the Secretary of the Treasury may prescribe.

(2)    **Contributions Made Under a Mistake of Fact.** If a contribution is attributable in whole or in part to a good faith mistake of fact, including a good faith mistake in determining the deductibility of the contribution under Code §404, an amount may be returned to the Employer equal to the excess of the amount that had been contributed over the amount that would have been contributed if that mistake of fact had not occurred (which excess will hereafter be known as a "Mistaken Contribution"). Earnings attributable to a Mistaken Contribution will not be returned, but losses attributable to the Mistaken Contribution will reduce the amount so returned. The Mistaken Contribution will be returned within one year of the date the Mistaken Contribution was made or the deduction disallowed, as the case may be.

- 25 -

CONFIDENTIAL                                                                                AIG_00000464

(3) **Nondeductible Contributions.** Except to the extent that an Employer may intentionally make a nondeductible contribution, for example, to correct an administrative error, or restore a Forfeiture, Employer contributions are conditioned on deductibility and will otherwise be returned to the Employer.

**3.2    Allocation of Employer Contributions.** Employer contributions will be allocated to the Participant's Account of each Benefiting Participant in accordance with the following provisions:

(a) **Allocation Method.** Employer contributions will be allocated to each Benefiting Participant in the ratio that his or her Compensation for the Allocation Period bears to the total Compensation of all Benefiting Participants for the Allocation Period.

(b) **Benefiting Participants.** A Participant will be a Benefiting Participant and be eligible to receive an allocation of Employer contributions for that Allocation Period in accordance with the following provisions:

(1) **Participants Employed on the Last Day of Allocation Period.** Any Participant who is an Employee on the last day of the Allocation Period and who at any time during the Allocation Period is an Eligible Employee under Section 2.1(a) will be a Benefiting Participant for that Allocation Period regardless of the number of Hours of Service with which he or she is credited during the Allocation Period.

(2) **Participants Who Terminate Before the Last Day of Allocation Period.** Any Participant who Terminates Employment with the Employer before the last day of the Allocation Period and who at anytime during the Allocation Period is an Eligible Employee under Section 2.1(a)will only be a Benefiting Participant for that Allocation Period as follows: (A) a Participant who Terminates Employment because of retirement on or after Normal Retirement Age will be a Benefiting Participant only if he or she is credited with at least 500 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); (B) a Participant who Terminates Employment because of his or her death will be a Benefiting Participant only if he or she is credited with at least 500 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); (C) a Participant who Terminates Employment because of his or her Disability will be a Benefiting Participant only if he or she is credited with at least 500 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); and (D) a Participant who Terminates Employment for reasons other than retirement on or after Normal Retirement Age, death or Disability will be a Benefiting Participant only if he or she is credited with at least 500 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months).

(c) **Effect of Top Heavy on Allocation Method.** Notwithstanding anything in this Section to the contrary, if the Plan is Top Heavy for any Plan Year and if the allocation method set forth above, along with any other allocations that are permitted to be used to satisfy the Top Heavy Minimum Allocation requirements of Section 3.7, does not satisfy the Top Heavy Minimum Allocation requirements (because, for example, either a Benefiting Participant's Compensation that is used in the allocation method does not satisfy Code §415(c)(3) Compensation, the Compensation Determination Period is other than the entire Plan Year, or the allocation method is not sufficient to allocate the Top Heavy Minimum Allocation to any Non-Key Employee), then the Top Heavy Minimum Allocation will be allocated before any allocations under the allocation method (or will be allocated simultaneously therewith if no Key Employee has any Employer contributions [including any elective deferrals made on behalf of a Key Employee to a 401(k) Plan maintained by the Employer] or Forfeitures allocated to the Participant's Account for that Plan Year). However, the allocation method may take into account such Top Heavy Minimum Allocation.

**3.3    Rollover Contributions.** Subject to any changes, limitations, or effective dates adopted by written notice and/or procedures established and adopted by the Administrator pursuant to Section 8.6, any Eligible Employee (whether a Participant or not) is permitted to make Rollover Contributions to the Plan. Rollover Contributions will be allocated to an Employee's Rollover Contribution Account in which the Employee will have a 100% Vested Interest. The Administrator may choose for investment purposes either to segregate Rollover Contribution Accounts into separate interest bearing accounts or to invest Rollover Contribution Accounts as part of the general Trust Fund, except for that portion of an Employee's Rollover Contribution Account which an Employee may be permitted to self-direct pursuant to Section 7.4.

- 26 -

**3.4    Voluntary Employee Contributions.**  Voluntary Employee Contributions are not permitted.

**3.5    Allocation of Earnings and Losses.** As of each Valuation Date, amounts in Participants' accounts/sub-accounts which have not been segregated from the general Trust Fund for investment purposes (accounts which have been segregated include any Directed Investment Accounts established under Section 7.4) and which have not been distributed since the prior Valuation Date will have the net income of the Trust Fund that has been earned since the prior Valuation Date allocated in accordance with such rules and procedures that are established by the Administrator and that are applied in a uniform and nondiscriminatory manner based upon the investments of the Trust Fund and the Participants' accounts/sub-accounts to which the net income is allocated. For purposes of this Section, the term "net income" means the net of any interest, dividends, unrealized appreciation and depreciation, capital gains and losses, and investment expenses of the Trust Fund determined on each Valuation Date. However, Participants' accounts and/or sub-accounts which have been segregated from the general Trust Fund for investment purposes (accounts which have been segregated include any Directed Investment Accounts established under Section 7.4) will only have the net income earned thereon allocated thereto. Policy dividends or credits will be allocated to the Participant's Account for whose benefit the Policy is held.

**3.6    Forfeitures and Their Usage.** The following provisions relate to Forfeitures and their usage and allocation:

(a)    **When Forfeitures Occur.** The date upon which a Forfeiture occurs of the amount by which a Participant's Account balance attributable to Employer contributions exceeds his or her Vested Interest in the Participant's Account balance attributable to Employer contributions is the earlier of (1) the date that the Participant who Terminated Employment receives a distribution of his or her Vested Interest under Article 5; or (2) the date that the Participant incurs five consecutive Breaks in Service after Termination of Employment. However, if a Participant's Vested Interest in the entire Participant's Account balance attributable to Employer contributions is zero on the date that the Participant Terminates Employment, then the Participant will be deemed to have received a distribution of such Vested Interest on the date of such Termination of Employment and a Forfeiture of the Participant's Account balance attributable to Employer contributions will occur pursuant to the provisions of this paragraph on the date of such Termination of Employment.

(b)    **Grandfather Provision.** Notwithstanding paragraph (a) to the contrary, with respect to Participants who Terminate Employment prior to the execution date of the pre-approved Plan restatement intended to initially comply with the requirements of the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), the provisions of the Plan in effect prior to such EGTRRA restatement execution date will be applied in determining when Forfeitures occur if such provisions conflict with the preceding paragraph.

(c)    **Usage and Allocation of Forfeitures.** On each annual Valuation Date, the Administrator may elect to use all or any portion of the Forfeiture Account to pay administrative expenses incurred by the Plan. The portion of the Forfeiture Account that is not used to pay administrative expenses will be used first to restore previous Forfeitures of Participants' Accounts pursuant to Section 5.7 and/or to restore Participants' Accounts pursuant to Section 5.13. The portion of the Forfeiture Account that is not used to pay administrative expenses and that is not used to satisfy the provisions of the previous sentence will then be added to Employer contributions.

**3.7    Top Heavy Minimum Allocation.** In any Plan Year in which the Plan is Top Heavy and a Key Employee receives an allocation of Employer contributions or Forfeitures, each Participant who is described in paragraph (a) below will receive a Top Heavy Minimum Allocation determined in accordance with the following:

(a)    **Participants Who Must Receive the Top Heavy Minimum Allocation.** The Top Heavy Minimum Allocation will be made for each Participant who is a Non-Key Employee who is employed by an Employer on the last day of the Plan Year, even if such Participant (1) fails to complete any minimum Hours of Service/Period of Service required to receive an allocation of Employer contributions or Forfeitures for the Plan Year; (2) fails to make Elective Deferrals to the Plan in the case of a 401(k) plan; (3) receives Compensation that is less than a stated amount; or (4) declines to make a mandatory employee contribution to the Plan. The Top Heavy Minimum Allocation is not required for a Participant whose participation is limited to a Rollover Contribution.

(b)    **Participation in Multiple Defined Contribution Plans.** If (1) this Plan is not part of a Required Aggregation Group or a Permissive Aggregation Group with a defined benefit plan, (2) this Plan is part of a Required Aggregation Group or a Permissive Aggregation Group with one or more defined contribution plans, (3) a

- 27 -

CONFIDENTIAL

AIG_00000466

Participant who is described in paragraph (a) participates in this Plan and in one or more defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group, and (4) the allocation of Employer contributions and Forfeitures of each plan that is part of the Required Aggregation Group or the Permissive Aggregation Group (when each plan is considered separately) is insufficient to satisfy the Top Heavy Minimum Allocation requirement with respect to such Participant, the Top Heavy Minimum Allocation requirement will nevertheless be satisfied if the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan and all other defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) is sufficient to satisfy the Top Heavy Minimum Allocation requirement. However, if the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of a Participant under this Plan and all other defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) is not sufficient to satisfy the Top Heavy Minimum Allocation requirement, then the Employer will make an additional contribution on behalf of such Participant to this Plan and/or to one or more defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (or any other defined contribution plan that is sponsored by the Employer) in order that the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan and all defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) satisfies the Top Heavy Minimum Allocation requirement.

(c)  **Required Aggregation Group or Permissive Aggregation Group With a DB Plan.** If this Plan is part of a Required Aggregation Group or a Permissive Aggregation Group with a defined benefit plan, then the Sponsoring Employer may, in the Sponsoring Employer's discretion and in a uniform non-discriminatory manner which is intended to satisfy the requirements of Code §416(f) regarding the preclusion of required duplication and inappropriate omission of Top Heavy minimum benefits or Top Heavy Minimum Allocations, determine to satisfy the requirements of Code §416 with respect to each Participant described in paragraph (a) who participates in this Plan and in the defined benefit plan which is part of the Required Aggregation Group or the Permissive Aggregation Group, by any of the following methods:

(1)  **Defined Benefit Minimum Benefit.** A defined benefit minimum, which is an accrued benefit at any point in time equal to at least the product of (A) an Employee's average annual Code §415(c)(3) Compensation for the period of consecutive years (not exceeding five) when the Employee had the highest aggregate Code §415(c)(3) Compensation from the Employer and (B) the lesser of 2% per Year of Service or 1-Year Period of Service, as applicable, with the Employer or 20%, subject to the rules of Code §416 and the Regulations thereunder.

(2)  **Floor Offset Arrangement.** A floor offset approach, pursuant to Revenue Ruling 76-259, under which the defined benefit minimum of the defined benefit plan that is provided pursuant to paragraph (c)(1) is offset by the benefits provided under the defined contribution plan.

(3)  **Using Comparability.** A demonstration, using a comparability analysis pursuant to Revenue Ruling 81-202, that the plans are providing benefits at least equal to the defined benefit minimum that is provided pursuant to paragraph (c)(1) above.

(4)  **5% Defined Contribution Allocation.** An allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan (or any defined contribution plan that is sponsored by the Employer) equal 5% of an Employee's Code §415(c)(3) Compensation for each Plan Year that the Required Aggregation Group or the Permissive Aggregation Group is Top Heavy.

(d)  **Frozen DB Plan After December 31, 2001.** In determining Top Heavy minimum benefits or Top Heavy Minimum Allocations in any Plan Year which begins after December 31, 2001, a defined benefit plan in which no Key Employee and no former Key Employee benefits (within the meaning of Code §410(b)) in the defined benefit plan during a Plan Year will be disregarded in determining whether the defined benefit plan is part of a Required Aggregation Group or a Permissive Aggregation Group with this Plan.

(e)  **Contributions That Can Be Used to Satisfy Top Heavy Minimum.** All Employer contributions to this Plan will used in determining if the Employer has satisfied the Top Heavy minimum benefit and/or Top Heavy Minimum Allocation requirements of this Section. Furthermore, Employer contributions that are made on

- 28 -

AIG_00000467

behalf of a Participant to a 401(k) plan by the Employer may be used in determining if the Top Heavy minimum benefit and/or Top Heavy Minimum Allocation requirements of this Section have been satisfied.

**3.8    Failsafe Allocation.** If the Plan fails to satisfy the minimum coverage requirements of Code §410(b), no automatic "failsafe" is provided under the Plan. Rather, the Sponsoring Employer must timely execute a corrective amendment pursuant to Section 11.1(f) of the Plan.

**3.9    General Non-Discrimination Test Requirements.** For Plan Years beginning on or after January 1, 2002, if the Sponsoring Employer applies the general test for non-discrimination as set forth in Code §401(a)(4) based upon Equivalent Accrual Rates to demonstrate that an Employer contribution made to this Plan is non-discriminatory, or if an Employer contribution made to this Plan is aggregated with one or more other plans of the Sponsoring Employer so that the Sponsoring Employer can apply the general test for non-discrimination set forth in Code §401(a)(4) based upon Equivalent Accrual Rates for the defined contribution plan(s) (including this Plan) to demonstrate that the plans (including this Plan) are non-discriminatory, then the following rules will apply:

(a)    **Defined Contribution Rule.** If this Plan (or any defined contribution plan(s) which are aggregated with this Plan) is not aggregated with any defined benefit plan of the Sponsoring Employer for purposes of applying the general test for non-discrimination based upon Equivalent Accrual Rates for this Plan (or any defined contribution plan(s) which are aggregated with this Plan), then any NHCE who is a Participant in this Plan (or, if any defined contribution plan(s) are aggregated with this Plan, any NHCE who is a Participant in this Plan or the other defined contribution plan(s)) and who receives an allocation of Employer contributions must receive an allocation of Employer contributions that is at least equal to the Minimum Allocation Gateway for the Plan Year, subject to the following provisions:

(1)    **Circumstances When Minimum Allocation Gateway Not Required.** The Minimum Allocation Gateway requirement need not be satisfied if this Plan (or the group of any defined contribution plan(s) which are aggregated with this Plan) has Broadly Available Allocation Rates or a Gradually Increasing Age or Service Schedule.

(2)    **Treatment of Otherwise Excludable Participants.** For purposes of this paragraph (a), Otherwise Excludable Participants will not be considered.

(b)    **Combination of Defined Benefit/Defined Contribution Rule.** If this Plan (or any defined contribution plan(s) which are aggregated with this Plan) is aggregated with any defined benefit plan for purposes of applying the general test for non-discrimination based upon Equivalent Accrual Rates for this Plan (or any defined contribution plan(s) which are aggregated with this Plan), then the Aggregate Normal Allocation Rate of each Non-Highly Compensated Employee in any plan that is part of the aggregated defined benefit plan(s) and defined contribution plan(s) (including this Plan) must be at least equal to the Minimum Aggregate Allocation Gateway for the Plan Year, subject to the following provisions:

(1)    **Circumstances When Minimum Aggregate Allocation Gateway Not Required.** The Minimum Aggregate Allocation Gateway requirement need not be satisfied if the aggregated combination of defined benefit plan(s) and defined contribution plan(s) (including this Plan) either is Primarily Defined Benefit in Character or consists of Broadly Available Separate Plans.

(2)    **Treatment of Otherwise Excludable Participants.** For purposes of this paragraph (b), Otherwise Excludable Participants will not be considered.

**3.10    Annual Overall and Cumulative Permitted Disparity Limit.** In any Plan Year, if an Employee benefits under more than one plan, then the annual overall permitted disparity limit of this Section is satisfied only if an Employee's Total Annual Disparity Fraction does not exceed one. Furthermore, the cumulative permitted disparity limit for a Participant is 35 Total Cumulative Permitted Disparity Years. The following rules apply in determining compliance with the two prior sentences:

(a)    **Plans Taken into Account.** All plans of the Employer are taken into account. In addition, all plans of any other employer are taken into account for all Service with the other employer for which the Employee receives credit for purposes of allocations/benefit accruals under any plan of the current Employer.

- 29 -

CONFIDENTIAL

AIG_00000468

(b) **Application of the Limit.** The limit of this Section takes into account the disparity provided under a section 401(l) plan as defined in Regulation §1.401(a)(4)-12 and the permitted disparity imputed under a plan that satisfies Code §401(a)(4) by relying on Regulation §1.401(a)(4)-7.

(c) **Total Annual Disparity Fraction.** The term "Total Annual Disparity Fraction" means the sum of the Employee's Annual Disparity Fractions for a Plan Year. An Employee's Total Annual Disparity Fraction is determined as of the end of each Plan Year, based on the Employee's Annual Disparity Fractions under all plans with plan years ending in the current Plan Year. The following subparagraphs determine an Employee's Annual Disparity Fractions:

    (1) **Annual Disparity Fraction for a Defined Contribution Plan.** The Annual Disparity Fraction for an Employee benefiting under a defined contribution plan that is a section 401(l) plan, as defined in Regulation §1.401(a)(4)-12, is a fraction: (A) the numerator of which is the disparity provided under the plan for the Plan Year; and (B) the denominator of which is the maximum excess allowance under Regulation §1.401(l)-2(b)(2) for the Plan Year.

    (2) **Annual Disparity Fraction for a Defined Benefit Excess Plan.** The Annual Disparity Fraction for an Employee benefiting under a defined benefit excess plan that is a section 401(l) plan, as defined in Regulation §1.401(a)(4)-12, is a fraction: (A) the numerator of which is the disparity provided under the plan for the Plan Year; and (B) the denominator of which is the maximum excess allowance under Regulation §1.401(l)-3(b)(2) for the Plan Year.

    (3) **Annual Disparity Fraction for Defined Benefit Offset Plan.** The Annual Disparity Fraction for an Employee benefiting under a defined benefit offset plan that is a section 401(l) plan, as defined in Regulation §1.401(a)(4)-12, is a fraction: (A) the numerator of which is the disparity provided under the plan for the Plan Year; and (B) the denominator of which is the maximum offset allowance under Regulation §1.401(l)-3(b)(3) for the Plan Year. If a defined benefit offset plan applies an offset of a specified percentage of the employee's PIA, as permitted under Regulation §1.401(l)-3(c)(2)(ix), the numerator of the prior sentence is the offset percentage used in the Code §401(l) overlay under the plan.

    (4) **Annual Disparity Fraction for a Plan that Imputes Disparity.** The Annual Disparity Fraction for an Employee benefiting under a plan that imputes permitted disparity with respect to the Employee under Regulation §1.401(a)(4)-7 is one.

    (5) **Annual Disparity Fraction for a Plan That Is Neither a Section 401(l) Plan Nor Imputes Disparity.** The Annual Disparity Fraction for an Employee benefiting under a plan that neither is a section 401(l) plan as defined in Regulation §1.401(a)(4)-12 nor imputes permitted disparity under Regulation §1.401(a)(4)-7 is zero.

    (6) **Determination of Annual Disparity Fractions.** Generally, a separate Annual Disparity Fraction is determined for each plan under which the Employee benefits. If two plans are aggregated and treated as a single plan for purposes of Code §401(a)(4), a single annual disparity fraction applies to the aggregated plan. However, if a plan provides an allocation or benefit equal to the sum of two or more formulas, then each formula is considered a separate plan for purposes of this Section. If a plan provides an allocation or benefit equal to the greater of two or more formulas, then an Annual Disparity Fraction is calculated for the Employee under each formula and the largest of the fractions is the Employee's Annual Disparity Fraction under the plan.

(d) **Adjustment to Plans if the Total Annual Disparity Fraction Exceeds One.** If (1) this Plan utilizes the disparity provided under a section 401(l) plan as defined in Regulation §1.401(a)(4)-12 and/or the permitted disparity imputed under a plan that satisfies Code §401(a)(4) by relying on Regulation §1.401(a)(4)-7, and (2) the Total Annual Disparity Fraction exceeds one, then the following provisions will apply in a uniform manner for all Employees:

    (1) **Other Plan(s) Have Adjustment Method.** If the other plan(s) have a method to adjust Employer-provided contributions or benefits to assure that the Total Annual Disparity Fraction does not exceed one, the adjustment method of the other plan(s) will apply.

- 30 -

CONFIDENTIAL

AIG_00000469

(2) **Other Plan(s) Do Not Have Adjustment Method.** If the other plan(s) do not have a method to adjust employer-provided contributions or benefits to assure that the Total Annual Disparity Fraction does not exceed one, then the Sponsoring Employer will establish a administrative policy that is promulgated under Section 8.6 that adjusts Employer-provided contributions or benefits so that the Total Annual Disparity Fraction does not exceed one.

(3) **Special Rule for Multiple Prototypes Using this Same Basic Plan.** Notwithstanding anything in this Section to the contrary, if multiple prototype plans (including this Plan) utilize this same Prototype Basic Plan, then the Sponsoring Employer will establish a administrative policy that is promulgated under Section 8.6 that adjusts Employer-provided contributions or benefits so that the Total Annual Disparity Fraction does not exceed one.

(e) **Cumulative Permitted Disparity Limit.** Effective for Plan Years beginning on or after January 1, 1995, the cumulative permitted disparity limit for a Participant is 35 Total Cumulative Permitted Disparity Years. The term "Total Cumulative Permitted Disparity Years" means the number of Plan Years credited to the Participant for allocation or accrual purposes under this Plan, and under any other qualified plan or simplified employee pension plan (whether or not terminated) ever maintained by the Employer. For purposes of determining the Participant's cumulative permitted disparity limit, all Plan Years ending in the same calendar year are treated as the same Plan Year. If the Participant has not benefited under a defined benefit or target benefit plan for any year beginning on or after January 1, 1994, then the Participant has no cumulative disparity limit. For purposes of the prior sentence, a Participant is not treated as benefiting under a defined benefit plan for a Plan Year if the defined benefit plan was not a section 401(l) plan within the meaning of Regulation §1.401(a)(4)-12 for that Plan Year and did not impute permitted disparity under Regulation §1.401(a)(4)-7 for that Plan Year.

**3.11**   **Deemed IRA Contributions.** Deemed IRA Contributions are not permitted.

CONFIDENTIAL

AIG_00000470

**Article 4**
**Plan Benefits**

4.1    **Benefit Upon Normal Retirement.** Every Participant who has reached Normal Retirement Age will be entitled upon subsequent Termination of Employment with the Employer to receive his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made under Section 5.1.

4.2    **Benefit Upon Late Retirement.** A Participant who has reached Normal Retirement Age may elect to remain employed by the Employer and retire at a later date. Such Participant will continue to participate in the Plan and his or her Participant's Account will continue to receive allocations under Article 3. Upon actual retirement, the Participant will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. A Participant who elects late retirement may at any time (1) choose to have distributed prior to actual retirement all or part of his or her Vested Aggregate Account determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution; or (2) choose to have such Vested Aggregate Account transferred to another qualified retirement plan maintained by the Employer. Upon actual retirement, the Participant will be entitled to his or her undistributed Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made in accordance with Section 5.1.

4.3    **Benefit Upon Death.** Upon the death of a Participant prior to Termination of Employment with the Employer, or upon the death of a Terminated Participant prior to distribution of his or her Vested Aggregate Account, his or her Beneficiary will be entitled to the Participant's Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. If any Beneficiary who is living on the date of the Participant's death dies prior to receiving his or her entire death benefit, the portion of such death benefit will be paid in a lump sum to the estate of such deceased Beneficiary. The Administrator's determination that a Participant has died and that a particular person has a right to receive a death benefit will be final. Distribution will be made under Section 5.2.

4.4    **Benefit Upon Disability.** If a Participant suffers a Disability prior to Termination of Employment with the Employer, or if a Terminated Participant suffers a Disability prior to distribution of his or her Vested Aggregate Account, he or she will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made under Section 5.3.

4.5    **Benefit Upon Termination of Employment.** A Terminated Participant will be entitled to his or her Vested Aggregate Account balance as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution to a Terminated Participant who does not die prior to distribution or who does not suffer a Disability prior to distribution will be made under Section 5.4.

4.6    **Determination of Vested Interest.** A Participant's Vested Interest in his or her Participant's Account will be determined in accordance with the following provisions:

(a)    **Vesting Upon Retirement, Death or Disability.** A Participant will have a 100% Vested Interest in his or her Participant's Account upon reaching Normal Retirement Age prior to Termination of Employment. A Participant will also have a 100% Vested Interest therein (1) upon his or her Disability prior to Termination of Employment; and (2) upon his or her death prior to Termination of Employment.

(b)    **Vesting Schedule.** A Participant's Vested Interest in his or her Participant's Account will be determined by the vesting schedule immediately following this paragraph. A Participant's Vested Interest under this paragraph will be based on the Participant's credited Years of Service with the Employer, and all such Years of Service will be counted in determining a Participant's Vested Interest under this paragraph

1 Year of Service ........................ 0% Vested
2 Years of Service ................... 20% Vested
3 Years of Service ................... 40% Vested
4 Years of Service ................... 60% Vested
5 Years of Service ................... 80% Vested
6 Years of Service ..................100% Vested

- 32 -

CONFIDENTIAL

AIG_00000471

(c) **Vesting Requirement Upon Complete Termination or Upon Discontinuance of Contributions.** Upon a complete termination of the Plan or upon a complete discontinuance of contributions under the Plan, the following Participants will have a 100% Vested Interest in their Participants' Accounts: (1) Participants who are affected by such complete termination or, if applicable, such complete discontinuance of contributions; (2) Participants who have not Terminated Employment with the Employer; and (3) Participants who have Terminated Employment with the Employer and who (A) have not incurred five consecutive Breaks in Service and (B) have not received a complete distribution of their Vested Aggregate Account balance.

(d) **Vesting Requirement Upon Partial Termination.** Upon partial termination of the Plan, only a Participant who has Terminated Employment because of the event which causes the partial termination but who has not incurred five consecutive Breaks in Service will have a 100% Vested Interest in his or her unpaid Participant's Account as of the date of partial termination.

(e) **Amendments to the Vesting Schedule.** No amendment to the Plan may directly or indirectly reduce a Participant's Vested Interest in his or her Participant's Account. If the Plan is amended in any way that directly or indirectly affects the computation of a Participant's Vested Interest in his or her Participant's Account, or the Plan is deemed amended by an automatic change to or from a Top Heavy Vesting schedule, then the following provisions will apply:

(1) **Participant Election.** Any Participant with at least three Years of Service may, by filing a written request with the Administrator, elect to have the Vested Interest in his or her Participant's Account computed by the Vesting schedule in effect prior to the amendment. A Participant who fails to make an election will have the Vested Interest in his or her Participant's Account computed under the new schedule. The period in which the election may be made will begin on the date the amendment is adopted or is deemed to be made and will end on the latest of (A) 60 days after the amendment is adopted; (B) 60 days after the amendment becomes effective; or (C) 60 days after the Participant is issued written notice of the amendment by the Employer or Administrator.

(2) **Preservation of Vested Interest.** Notwithstanding the foregoing to the contrary, if the vesting schedule is amended, then in the case of an Employee who is a Participant as of the later of the date such amendment is adopted or the date it becomes effective, the Vested Interest in his or her Participant's Account determined as of such date will not be less than his or her Vested Interest computed under the Plan without regard to such amendment.

CONFIDENTIAL

AIG_00000472

**Article 5**
**Distribution of Benefits**

5.1 **Distribution of Benefit Upon Retirement.** Unless a cash-out occurs under Section 5.5, the retirement benefit a Participant is entitled to receive under Section 4.1 or 4.2 will be distributed in the following manner:

(a) **Normal Form of Distribution.** The Normal Form of Distribution is a Qualified Joint and Survivor Annuity.

(b) **Optional Forms of Distribution.** A Participant may waive the Normal Form of Distribution and elect to have his or her benefit distributed in an Optional Form of Distribution. The Optional Forms of Distribution are (1) a lump sum payment; (2) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Participant; the joint lives of the Participant and a designated Beneficiary; or a period certain not extending beyond the life expectancy of the Participant and a designated Beneficiary. The lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; and (3) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan. Optional Forms of Distribution are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(c) **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(d) **Time of Distribution.** Distribution will be made under this Section within a reasonable time after the Participant's actual retirement on or after the Normal Retirement Date; or within a reasonable time after the date a Participant who elects late retirement under Section 4.2 requests payment as permitted thereunder.

5.2 **Distribution of Benefit Upon Death.** Unless a mandatory cash-out occurs under Section 5.5, the death benefit a deceased Participant's Beneficiary is entitled to receive under Section 4.3 will be distributed as follows:

(a) **Surviving Spouse.** If a Participant has a surviving Spouse on the date of the Participant's death, then the deceased Participant's surviving Spouse will be entitled to receive a death benefit determined in accordance with the following provisions:

(1) **Form of Distribution.** If a Participant dies before the Annuity Starting Date, and the Participant has a surviving Spouse on the date of the Participant's death, then notwithstanding any other Beneficiary designation made by the Participant, the deceased Participant's surviving Spouse will receive a minimum death benefit as a QPSA unless such QPSA has been waived in accordance with Section 5.8. If the QPSA has been waived, then the benefit (and any additional death benefit to which the surviving Spouse is entitled) will be distributed, at the election of the surviving Spouse, (A) in a lump sum payment; (B) in Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the surviving Spouse (or beyond the life expectancy of the surviving Spouse), in which case the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; or (C) as a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan. All forms of distribution are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(2) **Time of Distribution.** Any death benefit payable to a surviving Spouse will be distributed within a reasonable time after the death of the Participant, but not later than December 31st of the calendar year which contains the fifth anniversary of the date of the Participant's death pursuant to Section 5.9(b)(2)(A), if required minimum distributions to the Participant have not begun.

- 34 -

AIG_00000473

(3) **Death of Surviving Spouse Before Distribution Begins.** If the surviving Spouse dies before distribution begins, then distribution will be made as if the surviving Spouse were the Participant. If the QPSA has not been waived, then distribution will be considered to have begun when the deceased Participant would have reached Age 70½ even if payments have been made to the surviving Spouse before that date. Furthermore, if distribution to the surviving Spouse commences in the form of an irrevocable annuity over a period permitted under subparagraph (a)(1) above before the deceased Participant would have reached Age 70½, then distribution will be considered to have begun on the actual annuity commencement date.

(b) **Non-Spouse Beneficiary.** Any death benefit payable to a non-Spouse Beneficiary will be distributed to the Beneficiary in accordance with the following provisions:

(1) **Form of Distribution.** Any such death benefit will be distributed, at the election of the Beneficiary, (A) in a lump sum payment; (B) in Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the non-Spouse Beneficiary (or beyond the life expectancy of the non-Spouse Beneficiary), in which case the lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; or (C) as a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan. All forms of distribution are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(2) **Time of Distribution.** Any death benefit payable to a non-Spouse Beneficiary will be distributed within a reasonable time after the death of the Participant, but not later than December 31st of the calendar year which contains the fifth anniversary of the date of the Participant's death pursuant to Section 5.9(b)(2)(A), if required minimum distributions to the Participant have not begun.

(c) **Distribution If the Participant or Other Payee Is In Pay Status.** If a Participant or Beneficiary who has begun receiving distribution of his or her benefit dies before the entire benefit is distributed, then the balance thereof will be distributed to the Participant's Beneficiary (or Beneficiary's Beneficiary) at least as rapidly as under the method of distribution being used on the date of the Participant's or Beneficiary's death.

(d) **Payments to a Beneficiary of a Beneficiary.** In the absence of a Beneficiary designation or other directive from the deceased Participant to the contrary, any Beneficiary may name his or her own Beneficiary to receive any benefits payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled; if a Beneficiary has not named his or her own Beneficiary, then the Beneficiary's estate will be the Beneficiary. If any benefit is payable under this paragraph to a Beneficiary of the deceased Participant's Beneficiary, to the estate of the deceased Participant's Beneficiary, or to any other Beneficiary or the estate thereof, then subject to the limitations regarding the latest dates for benefit payment of this Section and Section 5.9, the Administrator may (1) continue to pay the remaining value of such benefits in the amount and form that has already commenced, (2) pay such benefits in any other manner permitted under the Plan for distribution of benefits upon death, and/or (3) if payments have not already commenced, pay such benefits in any other manner permitted under the Plan for distribution of benefits upon death. Distribution to the Beneficiary of a Beneficiary must begin no later than the date that a distribution would have been made to the Participant's Beneficiary. The Administrator's determination under this paragraph will be final and will be applied in a uniform manner that does not discriminate in favor of Participants who are Highly Compensated Employees.

(e) **Partial Distributions.** If a Participant's Beneficiary receives a distribution of less than 100% of the Participant's Vested Aggregate Account balance, then the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform manner that does not discriminate in favor of Participants who are Highly Compensated Employees.

- 35 -

AIG_00000474

**5.3**   **Distribution of Benefit Upon Disability.** Unless a mandatory cash-out occurs under Section 5.5, the Disability benefit a Participant is entitled to receive under Section 4.4 will be distributed in the following manner:

(a)   **Normal Form of Distribution.** The Normal Form of Distribution is a Qualified Joint and Survivor Annuity.

(b)   **Optional Forms of Distribution.**  A Participant may waive the Normal Form of Distribution and elect to have his or her benefit distributed in an Optional Form of Distribution. The Optional Forms of Distribution are (1) a lump sum payment; (2) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Participant; the joint lives of the Participant and a designated Beneficiary; or a period certain not extending beyond the life expectancy of the Participant and a designated Beneficiary. The lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; and (3) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan. Optional Forms of Distribution are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(c)   **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, then the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(d)   **Time of Distribution.** Distribution will be made under this Section within an administratively reasonable time after the date on which a Participant who suffers a Disability Terminates Employment with the Employer on account of the Disability.

**5.4**   **Distribution of Benefit Upon Termination of Employment.** Unless a mandatory cash-out occurs under Section 5.5 or a distribution occurs under Sections 5.1, 5.2, or 5.3, the benefit that a Terminated Participant is entitled to receive under Section 4.5 will be distributed in the following manner:

(a)   **Normal Form of Distribution.** The Normal Form of Distribution is a Qualified Joint and Survivor Annuity.

(b)   **Optional Forms of Distribution.**  A Participant may waive the Normal Form of Distribution and elect to have his or her benefit distributed in an Optional Form of Distribution. The Optional Forms of Distribution are (1) a lump sum payment; (2) Substantially Equal monthly, quarterly, semi-annual or annual cash installment payments over a period certain which does not extend beyond the life of the Participant; the joint lives of the Participant and a designated Beneficiary; or a period certain not extending beyond the life expectancy of the Participant and a designated Beneficiary. The lump sum value of the Participant's benefit either may be segregated and separately invested and the Substantially Equal installments will be paid from the Plan; may remain invested in the Trust's assets and the Substantially Equal installments will be paid from the Plan; or may be used to purchase a nontransferable immediate or deferred annuity that is selected by the Employer and that complies with the terms of the Plan from an insurance company to provide for such Substantially Equal installments; and (3) a non-transferable annuity which can be purchased from an insurance company and complies with the terms of the Plan. Optional Forms of Distribution are available on a non-discriminatory basis and are not subject to the Administrator's discretion.

(c)   **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, then the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(d)   **Time of Distribution.** Distribution will be made under this Section within an administratively reasonable time after the date the Participant Terminates Employment .

**5.5**   **Mandatory Cash-Out of Benefits.** Mandatory cash-outs prior to January 1, 2009 will be governed by the terms of the Plan (including amendments) as in effect prior to such date. Effective on or after such date, the Vested Aggregate Account of a Participant who has Terminated Employment, who is entitled to a distribution and who

- 36 -

CONFIDENTIAL                                                                          AIG_00000475

satisfies the requirements of this Section will be distributed without the Participant's consent in accordance with the following provisions:

(a) **Cashout Threshold.** Distribution can only be made under this Section if a Participant's Vested Aggregate Account on or after the date of Termination of Employment does not exceed $5,000 (the "cash-out threshold"), which will be determined by including the Participant's Rollover Contribution Account (if any).

(b) **Time of Distribution.** Distribution will be made under this Section as soon as administratively feasible after the Participant Terminates Employment. Notwithstanding the foregoing, if a Participant would have received a distribution under the preceding sentence but for the fact that his or her Vested Aggregate Account exceeded the cash-out threshold, and if at a later time the Participant's Vested Aggregate Account is reduced to an amount not greater than the cash-out threshold, the Administrator will distribute such Vested Aggregate Account in a lump sum without the Participant's consent as soon as administratively feasible after the date the Participant's Vested Aggregate Account no longer exceeds the cash-out threshold.

(c) **Form of Distribution.** Distribution under this Section will, at the election of the Participant, be made as a lump sum cash payment or as a direct rollover under Section 5.14. However, if the Participant does not elect to have the distribution made as a lump sum cash payment or as a direct rollover under Section 5.14, then the following provisions will apply: (1) if the amount of the distribution is $1,000 or less (including the Participant's Rollover Contribution Account), distribution will be made in the form of a lump sum cash payment not less than 30 days and not more than 90 days (or such other time as permitted by law) after the Code §402(f) notice is provided to the Participant; and (2) if the amount of the distribution exceeds $1,000 (including the Participant's Rollover Contribution Account), then the Administrator will pay the distribution in an automatic direct rollover to an individual retirement plan designated by the Administrator. Such individual retirement plan, as defined in Code §7701(a)(37), may be either an individual retirement account within the meaning of Code §408(a) or an individual retirement annuity within the meaning of Code §408(b) (either of which will subsequently be referred to in this paragraph as an IRA). The Administrator will establish the IRA at a qualified financial institution by selecting an IRA trustee, custodian or issuer that is unrelated to the Employer or the Administrator (unless subsequent rules or Regulations permit otherwise), and will make the initial investment choices for the IRA. An automatic direct rollover will occur not less than 30 days and not more than 90 days (or such other time as permitted by law) after the Code §402(f) notice with the explanation of the automatic direct rollover is provided to the Participant.

5.6 **Restrictions on Immediate Distributions.** If a Participant's Vested Aggregate Account balance exceeds the amount set forth in paragraph (a) of this Section and is Immediately Distributable, then such account can only be distributed in accordance with the following provisions:

(a) **General Rule.** If (1) the Vested Aggregate Account balance (effective January 1, 2002, determined before taking into account the Participant's Rollover Contribution Account) of a Participant who has Terminated Employment exceeds $5,000, or if there are remaining payments to be made with respect to a particular distribution option that previously commenced, and (2) such amount is Immediately Distributable, then the Participant (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant's Spouse, if any [or where either the Participant or Spouse has died, the survivor]), must consent to any distribution of such amount. If (1) the Vested Aggregate Account balance (effective January 1, 2002, determined before taking into account the Participant's Rollover Contribution Account) of a Participant who has Terminated Employment does not exceed $5,000, but (if applicable) exceeds the cash-out threshold set forth in Section 5.5(a), and (2) such amount is Immediately Distributable, then only the Participant (or where the Participant has died, the Participant's Spouse or Beneficiary) must consent to any distribution of such amount.

(b) **General Consent Requirement.** The consent of the Participant (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant's Spouse, if any [or where either the Participant or Spouse has died, the survivor]) to any benefit that is Immediately Distributable must be obtained in writing within the 90-day period (or such other period as may be required by law) ending on the Annuity Starting Date. However, (1) with respect to any portion of the Participant's Account which is not subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant will not be required to consent to a distribution that is required by Code §401(a)(9) or §415; and (2) with respect to any portion of the Participant's Account subject to the Qualified Joint and Survivor Annuity requirements of

- 37 -

CONFIDENTIAL

AIG_00000476

Code §401(a)(11) and Code §417, (A) only the Participant must consent to the distribution of a Qualified Joint and Survivor Annuity while the benefit is Immediately Distributable, and (B) neither the Participant (nor the Participant's Spouse) is required to consent to a distribution required by Code §401(a)(9) or §415.

(c) **Notification Requirement.** The Administrator must notify the Participant (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant's Spouse) of the right to defer any distribution until it is no longer Immediately Distributable. Notification will include a general explanation of the material features and relative values of the optional forms of benefit that are available under the Plan in a manner that would satisfy the notice requirements of Code §417(a)(3), and any such notification will be provided no less than 30 days or more than 90 days (or such other period as may be required by law) prior to the Annuity Starting Date. Notwithstanding the other requirements of this Section, the notices prescribed by this Section need not be given to a Participant if (1) the Plan "fully subsidizes" the costs of a Qualified Joint and Survivor Annuity or Qualified Pre-Retirement Survivor Annuity; (2) the Plan does not allow the Participant to waive the Qualified Joint and Survivor Annuity or Qualified Pre-Retirement Survivor Annuity; and (3) the Plan does not allow a Participant who has a Spouse to designate a non-Spouse Beneficiary. For purposes of this Section, a plan fully subsidizes the costs of a benefit if no increases in cost, or decreases in benefits to the Participant may result from the Participant's failure to elect another benefit.

(d) **Waiver of 30-Day Requirement.** Distribution of a Participant's benefit may begin less than 30 days after the notice described in paragraph (c) is given the Participant if (1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving notice to consider the decision of whether or not to elect a distribution; (2) the Participant, after receiving the notice, affirmatively elects a distribution (or a particular distribution option); and (3) with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant does not revoke the election at any time prior to the expiration of the 7-day period that begins on the date the notice is given.

(e) **Consent Not Needed on Plan Termination.** If upon Plan termination neither the Employer nor an Affiliated Employer maintains another defined contribution plan (other than an employee stock ownership plan (ESOP) as defined in Code §4975(e)(7)), then the Participant's benefit will, without the Participant's consent (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, without consent of the Participant's Spouse), be distributed to the Participant. If the Employer or an Affiliated Employer maintains another defined contribution plan (other than an ESOP), then the Participant's benefit will, without the Participant's consent (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, without consent of the Participant's Spouse), be transferred to the other plan if the Participant does not consent to an immediate distribution under this Section. Notwithstanding the foregoing, this paragraph will not apply to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417 if the Plan, upon termination, offers an annuity option purchased from a commercial provider with respect to such portion of the Participant's Account.

**5.7    Accounts of Rehired Participants.** If a Participant who is not 100% Vested in his or her Participant's Account Terminates Employment, a Forfeiture of all or a portion of the Participant's Account of the Participant who has Terminated Employment may have occurred, and the Participant is subsequently reemployed by the Employer, then his or her Participant's Account will be administered in accordance with the following provisions:

(a) **Reemployment of a Participant After 5 Consecutive Breaks in Service.** If the Participant is reemployed by the Employer after incurring five consecutive Breaks in Service, then any previous Forfeiture of the Participant's Account will not be restored under the terms of this Plan.

(b) **Reemployment of a Non-Vested Participant Before 5 Consecutive Breaks in Service.** If a Participant's Vested Interest in the entire Participant's Account attributable to Employer contributions is 0% on the date that the Participant Terminates Employment, the Participant is deemed to have received a distribution of such Vested Interest on the date of such Termination of Employment pursuant to the Section 3.6(a), a Forfeiture of the Participant's Account attributable to Employer contributions occurs on the date of such Termination of Employment pursuant to Section 3.6(a), and the Participant is subsequently reemployed by the Employer before incurring five consecutive Breaks in Service, then the previous Forfeiture of such

- 38 -

AIG_00000477

Participant's Account attributable to Employer contributions will be restored, calculated as of the date that the Forfeiture occurred (unadjusted by subsequent gains and losses. Such restoration of the previous Forfeiture of such Participant's Account attributable to Employer contributions will occur in the Plan Year that such Participant is reemployed by the Employer.

(c) **Reemployment of a Vested Participant Before 5 Consecutive Breaks in Service.** If a Participant's Vested Interest in the Participant's Account balance attributable to Employer contributions is less than 100% (but greater than 0%) on the date that the Participant Terminates Employment, a Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions of the Participant who has Terminated Employment may have occurred, and the Participant is subsequently reemployed by the Employer before incurring five consecutive Breaks in Service, then the following provisions will apply:

    (1) **Distribution Has Occurred But No Forfeiture Has Occurred.** If a Forfeiture of the non-Vested portion of the Participant's Account attributable to Employer contributions has not occurred but a distribution of all or a portion of the Participant's Account of the Participant who has Terminated Employment has occurred, then a separate bookkeeping account will be established for the Participant's Account at the time of distribution; the Participant's Vested Interest in the separate bookkeeping account at any relevant time will be an amount ("X") determined according to the following formula: $X = P(AB + (R \times D)) - (R \times D))$. In applying the formula, "P" is the Vested Interest at the relevant time, "AB" is the respective account balance at the relevant time, "D" is the amount of the distribution, and "R" is the ratio of the respective account balance at the relevant time to the respective account balance after the distribution.

    (2) **Both Distribution and Forfeiture Have Occurred.** If a distribution of all or a portion of the Vested Interest in the Participant's Account of a Participant who has Terminated Employment has occurred and Forfeiture of the non-Vested portion of the Participant's Account attributable to Employer contributions has occurred (which may not necessarily occur at the same time that the distribution occurs), then the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will be restored, calculated as of the date the Forfeiture occurred (unadjusted by subsequent gains and losses) and based upon the Sponsoring Employer's decision whether the Participant is required to repay to the Plan the full amount of all distribution(s) which were attributable to Employer contributions. With respect to any such decision of the Sponsoring Employer whether the Participant is required to repay to the Plan the full amount of all distribution(s) which were attributable to Employer contributions in order for the previous Forfeiture of such Participant's Account balance attributable to Employer contributions to be restored, the following provisions will apply:

        (A) **Precedent Established.** Once such decision by the Sponsoring Employer has been made, such decision will establish precedence for the Plan and cannot be changed, altered or modified.

        (B) **Time of Restoration If Repayment Is Not Required.** If, based upon the Sponsoring Employer's decision, the Participant is not required to repay to the Plan the full amount of all distribution(s) which were attributable to Employer contributions in order to have the previous Forfeiture of such Participant's Account balance attributable to Employer contributions be restored, then such restoration will occur in the Plan Year in which the Participant is reemployed by the Employer.

        (C) **Time of Restoration If Repayment Is Required.** If, based upon the Sponsoring Employer's decision, the Participant is required to repay to the Plan the full amount of all distribution(s) which were attributable to Employer contributions in order to have the previous Forfeiture of such Participant's Account balance attributable to Employer contributions be restored, then such repayment by the Participant must be made before the earlier of (i) five years after the Participant's Reemployment Commencement Date, or (ii) the date on which the Participant incurs five consecutive Breaks in Service following the date of distribution of either the entire or the remaining Vested Interest in the Participant's Account. Such restoration of the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will occur in the Plan Year that the Participant repays to the Plan the full (or any remaining) amount of the distribution which was attributable to Employer contributions.

(d) **Sources of Restoration of Previously Forfeited Amounts.** The sources to restore a previous Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions pursuant to this Section will be made first by using available Forfeitures to restore the previous Forfeiture and, if such

- 39 -

AIG_00000478

available Forfeitures are insufficient to restore the previous Forfeiture, by the Employer making a special Employer contribution to the Plan to the extent necessary to restore the previous Forfeiture.

5.8    **Spousal Consent Requirements.** The following provisions apply to a Participant's (or, where applicable, a Participant's Spouse's) waiver of benefits under the Plan:

(a)    **Normal Form of Distribution Is Not a Qualified Joint and Survivor Annuity.** If the Normal Form of Distribution under the Plan is not a Qualified Joint and Survivor Annuity, all distributions can be made from the Plan to a Participant without the consent of the Participant's Spouse, except for any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417. Subject to the provisions of the next sentence, with regard to a death benefit payable to a Spouse, a Spouse can elect to waive such death benefit under Section 5.2 of the Plan, but the election will not be effective unless (1) the election is in writing; (2) the election designates a specific Beneficiary or form of benefit which may not be changed without Spousal consent (or the Spouse's consent expressly permits designations by the Participant without any requirement of further Spousal consent); and (3) the Spouse's consent acknowledges the effect of the election and is witnessed by the Administrator or a notary public. With regard to a distribution of any portion of a Participant's Account which is subject to the Qualified Joint and Survivor Annuity and/or the Qualified Pre-Retirement Survivor Annuity requirements of Code §401(a)(11) and Code §417, the provisions set forth in paragraph (b) below apply.

(b)    **Normal Form of Distribution Is a Qualified Joint and Survivor Annuity.** If the Normal Form of Distribution under the Plan is a Qualified Joint and Survivor Annuity, or with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, then the following provisions will apply:

(1)    **Election to Waive a QJSA.** A married Participant's election to waive a Qualified Joint and Survivor Annuity, or an unmarried Participant's election to waive a life annuity, must be in writing and must be made during the 90-day period (or such other period as may be required by law) ending on the Annuity Starting Date. The election may be revoked in writing and a new election may be made at any time and any number of times during the election period.

(2)    **Election to Waive a QPSA.** A married Participant's election to waive a Qualified Pre-Retirement Survivor Annuity must be in writing and must be made during an election period beginning on the first day of the Plan Year in which the Participant reaches Age 35 and ending on the date of his or her death. The election may be revoked in writing and a new election made at any time and any number of times during the election period. A Terminated Participant's election period concerning the Vested Aggregate Account before Termination of Employment will not begin later than such date. If the Participant has not completed a designation form specifying the time and/or form of payment of the Qualified Pre-Retirement Survivor Annuity prior to the Participant's death, the surviving Spouse may elect to receive the Qualified Pre-Retirement Survivor Annuity in any optional form permitted in Section 5.2. A Participant who has not yet reached Age 35 as of the end of any current Plan Year may make a special election to waive a Qualified Pre-Retirement Survivor Annuity for the period beginning on the date of such election and ending on the first day of the Plan Year in which such Participant reaches Age 35. This election will not be valid unless the Participant receives the same written explanation of the Qualified Pre-Retirement Survivor Annuity as described in subparagraph (3). Qualified Pre-Retirement Survivor Annuity coverage will be automatically reinstated as of the first day of the Plan Year in which the Participant reaches Age 35. A new election to waive a Qualified Pre-Retirement Survivor Annuity on or after such date is subject to the full requirements of this Section.

(3)    **Required Written Explanation.** In the case of a Qualified Joint and Survivor Annuity, the Administrator will no less than 30 days and no more than 90 days (or such other period as may be required by law) prior to the Annuity Starting Date to each Participant a written explanation of: (A) the terms and conditions of a Qualified Joint and Survivor Annuity; (B) the Participant's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity form of benefit; (C) the rights of a Participant's Spouse; and (D) the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor Annuity. The Annuity Starting Date for a distribution in a form other than a Qualified Joint and Survivor Annuity may be less than 30 days after receipt of the written explanation described in the preceding sentence provided: (A) the Participant has been provided with information that clearly indicates that the Participant has at least 30 days to consider whether to waive

- 40 -

the Qualified Joint and Survivor Annuity and elect (with Spousal consent) to a form of distribution other than a Qualified Joint and Survivor Annuity; (B) the Participant is permitted to revoke any affirmative distribution election at least until the Annuity Starting Date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant; and (C) the Annuity Starting Date is a date after the date that the written explanation was provided to the Participant. In the case of a Qualified Pre-Retirement Survivor Annuity, the Administrator will provide each Participant within the Applicable Period under subparagraph (4) with a written explanation of the Qualified Pre-Retirement Survivor Annuity in such terms and manner as would be comparable to the written explanation applicable to a Qualified Joint and Survivor Annuity.

(4) **Applicable Period.** The term "Applicable Period" means whichever of the following periods ends last: (A) the period beginning with the first day of the Plan Year in which the Participant attains Age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains Age 35; (B) a reasonable period after the individual becomes a Participant in the Plan; (C) a reasonable period ending after the requirements of Code §401(a)(11) apply to the Participant; or (D) a reasonable period ending after the requirements of Code §417(a)(5) cease to apply with respect to the Participant. For purposes of this subparagraph, a reasonable period means the end of the two year period beginning one year prior to the date the applicable event occurs, and ending one year after that date.

(5) **Participants Who Terminate Before Age 35.** If a Participant Terminates Employment before the Plan Year in which he or she reaches Age 35, the notice required under subparagraph (3) will be provided within the two year period beginning one year prior to such Termination of Employment and ending one year after such Termination of Employment. If such Participant thereafter returns to employment with the Employer, the Applicable Period for such Participant will be re-determined.

(6) **Elections Must Have Spousal Consent.** A Participant's election not to receive a Qualified Joint and Survivor Annuity or a Participant's election not to receive a Qualified Pre-Retirement Survivor Annuity will not be effective unless (A) the Participant's Spouse consents in writing to the election; (B) the election designates a specific Beneficiary (or form of benefit) which may not be changed without Spousal consent (or the consent of the Spouse expressly permits designations by the Participant without any requirement of further Spousal consent); and (C) the Spouse's consent acknowledges the effect of the election and is witnessed by the Administrator or a notary public.

(7) **Additional Requirements and Exceptions for Spousal Consent.** Notwithstanding subparagraph (6) above, a Spouse's consent will not be required if there is no Spouse, if the Spouse cannot be located, or if there are other circumstances (as set forth in the Code or Regulations) which preclude the necessity of such Spouse's consent. Any consent by a Participant's Spouse (or establishment that consent cannot be obtained) will be effective only with respect to such Spouse. A consent that permits designations by the Participant without any requirement of further Spousal consent must acknowledge that the Spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that the Spouse voluntarily elects to relinquish either or both of such rights. A revocation of a prior election may be made by a Participant without the Spouse's consent at any time before benefits begin. No Spouse's consent obtained under subparagraph (6) above will be valid unless the Participant has received notice as provided in paragraph (3) above.

**5.9    Required Minimum Distributions.** All distributions from the Plan will be determined and made in accordance with the final and temporary Regulations under Code §401(a)(9) on April 17, 2002. Pursuant to those Regulations, all distributions will be determined in accordance with the following provisions:

(a) **General Rules.** All distributions under this section will be made in accordance with these general rules:

(1) **Effective Date.** The provisions of this Section will apply for purposes of determining required minimum distributions for calendar years beginning with the 2003 calendar year.

(2) **Precedence.** The requirements of this Section will take precedence over any inconsistent provisions of the Plan and any prior Plan amendments.

(3) **Requirements of Regulations Incorporated.** All distributions required under this Section will be determined and made in accordance with the Regulations under Code §401(a)(9).

- 41 -

CONFIDENTIAL

AIG_00000480

    (4) **TEFRA §242(b)(2) Elections.** Notwithstanding the other provisions of this Section, distributions may be made under a designation made before January 1, 1984, in accordance with Tax Equity and Fiscal Responsibility Act (TEFRA) §242(b)(2) and the provisions of the Plan that relate to TEFRA §242(b)(2).

(b) **Time and Manner of Distribution.** All required minimum distributions will be made from the Plan in the following time and in the following manner:

    (1) **Required Beginning Date.** The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

    (2) **Death of Participant Before Distributions Begin.** If the Participant dies before distribution begins, the Participant's entire interest will be distributed (or begin to be distributed) not later than as follows:

        (A) **5-Year Rule Applies to All Distributions to Designated Beneficiaries.** If the Participant dies before distributions begin and there is a Designated Beneficiary, the Participant's entire interest will be distributed to the Designated Beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant's surviving Spouse is the sole Designated Beneficiary and the surviving Spouse dies after the Participant but before distributions to either the Participant or the surviving Spouse begin, this subparagraph will apply as if the surviving Spouse were the Participant. This subparagraph also applies to all distributions.

        (B) **Date Distributions Are Deemed To Begin.** For purposes of this subparagraph (b)(2) and paragraph (d), distributions are considered to begin on the Participant's Required Beginning Date. If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date, then the date distributions are considered to begin is the date distributions actually commence.

    (3) **Forms of Distribution.** Unless the Participant's interest is distributed as an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first Distribution Calendar Year distributions will be made in accordance with paragraphs (c) and (d). If the Participant's interest is distributed as an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code §401(a)(9) and the Regulations.

(c) **Required Minimum Distributions During the Participant's Lifetime.** The amount of required minimum distributions during a Participant's lifetime will be determined as follows:

    (1) **Amount of Required Distribution for Each Distribution Calendar Year.** During the Participant's lifetime, the minimum amount that will be distributed each Distribution Calendar Year is the lesser of (A) the quotient obtained by dividing the Participant's Account Balance by the distribution period in the Uniform Lifetime Table set forth in Regulation §1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or (B) if the Participant's sole Designated Beneficiary for the Distribution Calendar Year is the Participant's Spouse, then the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in Regulation §1.401(a)(9)-9, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the Distribution Calendar Year.

    (2) **Required Minimum Distributions Continue Through Year of Death.** Required minimum distributions will be determined under this paragraph (c) beginning with the first Distribution Calendar Year and up to and including the Distribution Calendar Year that includes the Participant's date of death.

(d) **Required Minimum Distributions After the Participant's Death.** Required minimum distributions will be made after a Participant's death in accordance with the following provisions:

    (1) **Death On or After Distribution Begins.** If a Participant dies on or after the date distribution begins, then the amount of a required minimum distribution will be determined as follows:

- 42 -

AIG_00000481

(A) **Participant Survived by Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is a Designated Beneficiary, then the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the longer of the remaining Life Expectancy of the Participant or the remaining Life Expectancy of the Designated Beneficiary, determined in accordance with the following provisions:

(i) **Calculation of Remaining Life Expectancy.** The Participant's remaining Life Expectancy is calculated using his or her age in the year of death, reduced by one for each subsequent year.

(ii) **Surviving Spouse Is the Sole Designated Beneficiary.** If the Participant's surviving Spouse is the Participant's sole Designated Beneficiary, then the remaining Life Expectancy of the surviving Spouse is calculated for each Distribution Calendar Year after the year of the Participant's death using the surviving Spouse's age as of the Spouse's birthday in that Distribution Calendar Year. For Distribution Calendar Years after the year of the surviving Spouse's death, the remaining Life Expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one for each subsequent calendar year.

(iii) **Surviving Spouse Is the Not Sole Designated Beneficiary.** If the Participant's surviving Spouse is not the Participant's sole Designated Beneficiary, then the Designated Beneficiary's remaining Life Expectancy is calculated using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent calendar year.

(B) **No Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is no Designated Beneficiary as of September 30 of the year after the year of the Participant's death, then the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the Participant's remaining Life Expectancy calculated using the age of the Participant in the year of death, reduced by one each subsequent year.

(2) **Death Before the Date Distribution Begins.** If a Participant dies before the date distribution begins, then the amount of a required minimum distribution will be determined as follows: If a Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of such death.

(e) **Other Plan Provisions Control.** Notwithstanding any other provision in this Section, to the extent that a Plan provision which is not contained in this Section requires that a Participant or Beneficiary receive a distribution (1) on a date that is earlier than the date required by this Section or (2) in a form of distribution other than the form of distribution provided under this Section, such other Plan provision will control the time and form of distribution to the Participant or Beneficiary so long as the time of the distribution is not later than the date that is required by Code §401(a)(9) and this Section and the amount of the distribution is not less than the required minimum distribution of Code §401(a)(9) and this Section.

**5.10** **Statutory Commencement of Benefits.** Unless the Participant otherwise elects, distribution of a Participant's benefit must begin no later than the 60th day after the latest of the close of the Plan Year in which the Participant (a) reaches the earlier of Age 65 or Normal Retirement Age; (b) reaches the 10th anniversary of the year that the Participant commenced Plan participation; or (c) Terminates Employment with the Employer. However, the failure of a Participant (and, with respect to any portion of the Participant's Account which is subject to the Qualified Joint and Survivor Annuity requirements of Code §401(a)(11) and Code §417, the Participant's Spouse) to consent to a distribution while a benefit is Immediately Distributable will be deemed to be an election to defer the payment (or the commencement of the payment) of any benefit sufficient to satisfy this Section. In addition, if this Plan provides for an Early Retirement Date, then a Participant who satisfied the service requirement (if applicable) for Early Retirement Age prior to Termination of Employment will be entitled to receive his or her Vested Aggregate Account balance, if any, upon (a) the satisfaction of the age requirement (if applicable) for Early Retirement Age, and (b) reaching the Participant's Early Retirement Date.

- 43 -

CONFIDENTIAL

AIG_00000482

5.11  **Earnings Before Benefit Distribution.** As of the Valuation Date coinciding with or next following the date a Participant Terminates Employment with the Employer for any reason, the Administrator will, until a distribution is made to the Participant or the Participant's Beneficiary in accordance with Sections 5.1, 5.2, 5.3, 5.4, or 5.5, direct the Trustee in a uniform nondiscriminatory manner to either (a) invest the Participant's Vested Aggregate Account balance determined as of such Valuation Date in a separate interest bearing account; or (b) leave the Participant's Vested Aggregate Account balance as part of the general Trust Fund. If the Participant's Vested Aggregate Account balance remains as part of the general Trust Fund, then such account will either (a) share in the allocation of net earnings and losses under Section 3.5 as a non-segregated account, or (b) be granted interest at a rate consistent with the interest bearing investments of the Trust Fund.

5.12  **Distribution in the Event of Legal Incapacity.** If any person entitled to benefits (the "Payee") is under any legal incapacity by virtue of age or mental condition, then payments may be made in one or more of the following ways as directed by the Administrator: (a) to a court-appointed guardian of the Payee; (b) to the person or entity having a valid power of attorney of the Payee or the Payee's estate; (c) to any other person or entity authorized under State (or Commonwealth) law to receive benefits on behalf of the Payee; or (d) if the Payee is a minor, to the authorized person or entity of the Payee (e.g., custodian or guardian) under any State's (or Commonwealth's) Uniform Transfers to Minors Act or Uniform Gifts to Minors Act.

5.13  **Missing Payees and Unclaimed Benefits.** With respect to a Participant or Beneficiary who has not claimed any benefit (the "missing payee") to which such missing payee is entitled, and with respect to any Participant or Beneficiary who has not satisfied the administrative requirements for benefit payment, the Administrator may elect to either (a) segregate the benefit into an interest bearing account, in which event an annual maintenance fee as may be set from time to time in a policy established by the Sponsoring Employer may be assessed against the segregated account; (b) subject to a policy established by the Administrator, distribute the benefit at any time in any manner which is sanctioned by the Internal Revenue Service and/or the Department of Labor, which may include (but not be limited to) (1) distribute the benefit in a automatic direct rollover to an individual retirement plan designated by the Administrator; such individual retirement plan, as defined in Code §7701(a)(37), may be either an individual retirement account within the meaning of Code §408(a) or an individual retirement annuity within the meaning of Code §408(b); or (2) distribute the benefit to the Pension Benefit Guarantee Corporation or any other authorized Federal Department or agency; (c) distribute the benefit to any person or entity who is appointed under State (or Commonwealth) law to act as a duly authorized guardian, legal representative, conservator, or power of attorney; or (d) treat the entire benefit as a Forfeiture. If a missing payee whose benefit has been forfeited is located, or if a payee whose benefit has been forfeited for failure to satisfy the administrative requirements for benefit payment subsequently satisfies such administrative requirements and claims his or her benefit, and if the Plan has not terminated (or if the Plan has terminated, all benefits have not yet been paid), then the benefit will be restored. The Administrator, on a case by case basis, may elect to restore the benefit by the use of earnings from non-segregated assets of the Fund, by Employer contributions, by available Forfeitures of the Forfeiture Account, or by any combination thereof. However, if any such payee has not been located (or satisfied the administrative requirements for benefit payment) by the time the Plan terminates and all benefits have been distributed from the Plan, then the Forfeiture of such unpaid benefit will not be restored.

5.14  **Direct Rollovers.** This Section applies to distributions made after December 31, 2001. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election, a distributee may elect, at the time and in the manner prescribed by the Plan, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(a)  **Eligible Rollover Distribution.** The term "eligible rollover distribution" means any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; (2) any distribution to the extent such distribution is required under Code §401(a)(9); (3) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Employer securities); (4) the portion of any distribution which is attributable to a financial hardship distribution; and (5) any other distribution that is reasonably expected to total less than $200 during a year.

(b)  **Voluntary Employee Contributions as Eligible Rollover Distributions.** Notwithstanding anything in the Plan to the contrary, with respect to distributions made after December 31, 2001, an eligible rollover

- 44 -

CONFIDENTIAL

AIG_00000483

distribution may include Voluntary Employee Contributions (if any) which are not includible in gross income; however, the portion of an eligible rollover distribution attributable to Voluntary Employee Contributions can be paid only to an individual retirement account or annuity described in Code §408(a) or (b), or to a qualified defined contribution plan described in Code §401(a) or §403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible. Furthermore, in accordance with the Job Creation and Worker Assistance Act of 2002, when a distribution includes Voluntary Employee Contributions which are not includible in gross income, the amount that is rolled over will first be attributed to amounts includible in gross income.

(c) **Definition of Eligible Retirement Plan.** With respect to distributions made after December 31, 2001, the term "eligible retirement plan" means an individual retirement account described in Code §408(a); an individual retirement annuity described in Code §408(b); an annuity plan described in Code §403(a); an annuity contract described in Code §403(b); a qualified trust described in Code §401(a); or an eligible deferred compensation plan under Code §457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. This definition of eligible retirement plan will also apply in the case of a distribution to a surviving Spouse, or to a Spouse or former Spouse who is the alternate payee under a qualified domestic relation order, as defined in Code §414(p); such distribution will be made in the same manner as if the Spouse was the Employee. If any portion of an eligible rollover distribution is attributable to payments or distributions from a segregated portion of an individual's Rollover Contribution Account that is attributable to Roth Elective Deferrals, then an eligible retirement plan with respect to such portion will only be either another plan's designated Roth account of the individual from whose account the payments or distributions were made, or such individual's Roth IRA.

(d) **Definition of Distributee.** The term "distributee" means an Employee or former Employee. In addition, an Employee's or former Employee's surviving Spouse and an Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order as defined in Code §414(p), are distributees with regard to the interest of the Spouse or former Spouse. With respect to any portion of a distribution that is made after December 31, 2006 from an eligible retirement plan of a deceased Employee, a distributee for purposes of a direct trustee-to trustee transfer will include an individual who is the Designated Beneficiary of the Employee and who is not the surviving Spouse of the Employee.

(e) **Definition of Direct Rollover.** The term "Direct Rollover" means a payment by the Plan to the eligible retirement plan that is specified by the distributee.

5.15 **Distribution of Property.** The determination to pay any distribution in property will be made by the Administrator in its sole discretion applied in a nondiscriminatory manner that does not discriminate in favor of Participants who are HCEs. However, if this is an amended or restated Plan, then the payee will have the right to elect a full or partial distribution in property pursuant to and limited by the provisions of Section 11.1(e).

5.16 **Financial Hardship Distributions.**  Financial hardship distributions are not permitted.

5.17 **Pre-Retirement Distributions.** A Participant who is still an Employee may request in writing to the Administrator that up to 100% of the Participant's Vested Interest in the accounts set forth below be distributed to the Participant prior to Normal Retirement Age, subject to the following provisions:

(a) **Amount and Form of Distribution.** The amount of a Participant's Vested Interest for distribution under this Section will be determined as of the Valuation Date which coincides with or immediately precedes the date of distribution. Any distribution under this Section will be made to the Participant in a single payment (but any distribution under this Section is subject to the Spousal consent requirements of Code §401(a)(11) and §417, pursuant to Section 5.8(b)). When feasible, any such distribution will be paid at the Participant's direction within 60 days of his or her request, but not later than a date as soon as administratively practical following the next Valuation date after the Administrator's receipt of such request.

(b) **Qualification Requirements.** A Participant who satisfies the following requirements can take a distribution of up to 100% of his or her Participant's Account: the Participant must have a 100% Vested Interest in his or her Participant's Account and the Participant must have been a Participant for at least 5 years.

- 45 -

AIG_00000484

(c) **Frequency of Pre-Retirement Distributions.** The frequency of pre-retirement distributions to any Participant under this Section will be determined pursuant to an administrative policy regarding pre-retirement distributions that is promulgated under Section 8.6 by the Administrator.

(d) **Participants Who Are Not 100% Vested.** If a distribution is made under this Section at a time when the Participant has less than a 100% Vested Interest in his or her Participant's Account and such Vested Interest may increase, a separate account will be established for the Participant's Account balance at the time of distribution, and at any relevant time the Participant's Vested Interest in the separate account will be equal to an amount ("X") determined by the following formula: X = P(AB + (R x D)) - (R x D). In applying the formula, "P" is the Vested Interest at the relevant time, "AB" is the respective account balance at the relevant time, "D" is the amount of the distribution, and "R" is the ratio of the respective account balance at the relevant time to the respective account balance after distribution.

(e) **Restriction on Certain Transfer Contributions Account.** Notwithstanding anything in this Section to the contrary, no pre-retirement distribution can be made under this Section with respect to Transfer Contribution Accounts (including post-transfer earnings thereon) that are transferred into this Plan from a money purchase plan or target benefit plan (other than any portion thereof which is attributable to Voluntary Employee Contributions). Furthermore, if the Transfer Contributions are elective deferrals (including qualified non-elective contributions, qualified matching contributions, and ADP safe harbor contributions) transferred to this Plan in a direct or indirect trustee-to-trustee transfer from another qualified plan and which are subject to the limitations in Regulation §1.401(k)-1(d), then the distribution of such Transfer Contributions (including post-transfer earnings thereon) will be subject to the limitations in Regulation §1.401(k)-1(d).

**5.18 Distribution of Rollover Contribution Accounts.** An Employee's Rollover Contribution Account will be distributed from the Plan in accordance with the following provisions:

(a) **Time of Distribution.** An Employee may request in writing a withdrawal of all or any portion of his or her Rollover Contribution Account at any time prior to becoming a Participant, and thereafter upon the earlier of (1) the date the Employee is entitled to a distribution of his or her Participant's benefits under the provisions of Article 5, or (2) the soonest possible administratively practical date after the Participant's Termination of Employment. In addition, the Employee may also withdraw all or any portion of his or her Rollover Contribution Account at any time. The Administrator may require advance notice of a reasonable period not to exceed 60 days prior to the requested date of withdrawal. Any amount withdrawn can only be redeposited to the Employee's Rollover Contribution Account if the withdrawn amount continues to be deemed a Rollover (except for the fact that the amount originated from this Plan). A withdrawal of all or any portion of an Employee's Rollover Contribution Account will not prevent an Employee from accruing any future benefit attributable to Employer contributions. The Administrator may establish rules or procedures regarding withdrawals from an Employee's Rollover Contribution Account.

(b) **Spousal Consent Requirements Upon Withdrawal.** A withdrawal of all or any portion of an Employee's Rollover Contribution Account is subject to the Spousal consent requirements in Section 5.8(b) (pursuant to Revenue Ruling 2004-12) unless the distribution is in the form of a Qualified Joint and Survivor Annuity.

(c) **Form of Distribution.** A distribution of all or any portion of an Employee's Rollover Contribution Account will be subject to the Qualified Joint and Survivor Annuity (QJSA) and Qualified Preretirement Survivor Annuity (QPSA) requirements of this Article 5 (even if the Rollover Contribution was not previously subject to the QJSA and QPSA rules); a distribution of all or any portion of an Employee's Rollover Contribution Account may also be made in a lump sum or in the same manner as the Participant's Account is distributed under other provisions of this Article 5, subject to the Spousal consent requirements of paragraph (b).

**5.19 Distribution of Transfer Contributions.** A Participant's Transfer Contribution Account will be distributed from the Plan at the same time and in the same manner as the Participant's Account is distributed under Section 5.1, 5.2, 5.3, 5.4, subject to the following rules:

(a) **Spousal Consent Requirements Upon Withdrawal.** The following provisions apply to the requirement of consent by the Participant's Spouse with respect to a withdrawal of all or any portion of a Participant's Transfer Contribution Account from the Plan:

- 46 -

(1) **Transfer Was Subject to Code §401(a)(11).** If the Transfer Contribution was a direct or indirect transfer as defined in Code §401(a)(11) from a defined benefit plan, a money purchase plan, a target benefit plan, a stock bonus plan, or a profit sharing plan that provided for a life annuity form of payment to the Participant, then a withdrawal of all or any portion of such Transfer Contribution (and post-transfer earnings thereon) will be subject to the Spousal consent requirements set forth in Section 5.8(b).

(2) **Transfer Was Not Subject to Code §401(a)(11).** If the Transfer Contribution was not a direct or indirect transfer as defined in Code §401(a)(11) from a defined benefit plan; a money purchase plan; a target benefit plan; or a stock bonus plan or a profit sharing plan that provided for a joint and survivor annuity or a life annuity form of payment to the Participant, then all or any portion of such Transfer Contribution (and post-transfer earnings thereon) can be withdrawn by the Participant without the consent of the Participant's Spouse.

(b) **Form of Distribution.** A withdrawal of all or any portion of a Participant's Transfer Contribution Account may also be made in the same manner as the Participant's Account under the other provisions of this Article 5, subject to the Spousal consent requirements set forth in paragraph (a) above and Section 5.8. However, notwithstanding the foregoing sentence to the contrary, if the Transfer Contribution was a direct or indirect transfer as defined in Code §401(a)(11) from a defined benefit plan, a money purchase plan, a target benefit plan, or a stock bonus plan or a profit sharing plan that provided for a joint and survivor annuity or a life annuity form of payment to the Participant, then regardless of the Normal Form of Distribution, a withdrawal of all or any portion of such Transfer Contribution will be subject to the Qualified Joint and Survivor Annuity and Qualified Pre-Retirement Survivor Annuity requirements of Code §401(a)(11) and Code §417, and will be distributed in accordance with following provisions:

(1) **Distributions Other Than Death.** If the Participant is married on the Annuity Starting Date and has not died before such date, then such portion of the Participant's Transfer Contribution Account will be distributed in the form of a Qualified Joint and Survivor Annuity. If the Participant is unmarried on the Annuity Starting Date and has not died before such date, then such portion of the Participant's Transfer Contribution Account will be distributed as a life annuity. If a Participant elects not to receive the annuity form of payment described above, then such portion of the Participant's Transfer Contribution Account will be distributed in the manner described in Sections 5.1 through 5.4, as applicable. Any such election by a Participant not to receive the annuity form of benefit described in this paragraph must be made in accordance with the provisions set forth in Section 5.8(b) of the Plan.

(2) **Distributions Upon Death.** Notwithstanding any other Beneficiary designation made by a Participant to the contrary, if a Participant is married on the date of his or her death and dies before the Annuity Starting Date, then with respect to such portion of a deceased Participant's Transfer Contribution Account, the Participant's surviving Spouse will receive a minimum death benefit as a Qualified Pre-Retirement Survivor Annuity unless such annuity has been waived under Section 5.8(b), in which event such death benefit will be distributed to the surviving Spouse in the manner described in Section 5.2.

(c) **Special Rule for Withdrawal of Elective Deferral Transfers.** Notwithstanding anything in this Section to the contrary, if the Transfer Contributions are Elective Deferrals (including QNECs, QMACs, and ADP Safe Harbor Contributions) which are transferred to this Plan in a direct or indirect trustee-to-trustee transfer from another qualified plan and which are subject to the limitations in Regulation §1.401(k)-1(d), then the distribution of such Transfer Contributions (including post-transfer earnings thereon) will be subject to the limitations in Regulation §1.401(k)-1(d).

**5.20  Distribution of Voluntary Employee Contributions.**  Voluntary Employee Contributions are not permitted.

- 47 -

**Article 6**
**Code § 415 Limitations**

6.1 **Maximum Annual Additions.** Subject to Sections 6.2 and 6.3, the maximum Annual Additions made to a Participant's various accounts maintained under the Plan for any Limitation Year will not exceed the lesser of the Dollar Limitation of paragraph (a) or the Compensation Limitation of paragraph (b) below, as follows:

(a) **Dollar Limitation.** For Limitation Years beginning on or after January 1, 2002, the Dollar Limitation is $40,000 as adjusted in accordance with Code §415(d).

(b) **Compensation Limitation.** For Limitation Years beginning on or after January 1, 2002, the Compensation Limitation is 100% of the Participant's Code §415(c)(3) Compensation, but this limit does not apply to any contribution for medical benefits within the meaning of Code §401(h) or §419A(f)(2) after Termination of Employment which is otherwise treated as an Annual Addition under Code §415(l)(1) or §419A(d)(2).

6.2 **Adjustments to Maximum Annual Addition.** In applying the limitation on Annual Additions set forth in Section 6.1, the following adjustments must be made:

(a) **Short Limitation Year.** If a Limitation Year is less than 12 months, then the Dollar Limitation of Section 6.1(a) will be adjusted by multiplying the Dollar Limitation by a fraction, the numerator of which is the number of months (including any fractional parts of a month) in the short Limitation Year and the denominator of which is 12.

(b) **Multiple Defined Contribution Plans.** If a Participant participates in multiple defined contribution plans sponsored by the Employer which have different Anniversary Dates, the maximum Annual Addition in this Plan for the Limitation Year will be reduced by the Annual Additions credited to the Participant's accounts in the other defined contribution plans during the Limitation Year. If a Participant participates in multiple defined contribution plans sponsored by the Employer which have the same Anniversary Date, then (1) if only one of the plans is subject to Code §412, Annual Additions will first be credited to the Participant's accounts in the plan subject to Code §412; and (2) if none of the plans are subject to Code §412, the maximum Annual Addition in this Plan for a given Limitation Year will either (A) equal the product of (i) the maximum Annual Addition for such Limitation Year minus any other Annual Additions previously credited to the Participant's account(s), multiplied by (ii) a fraction, the numerator of which is the Annual Additions which would be credited to a Participant's accounts hereunder without regard to the Annual Additions limitation of Section 6.1 and the denominator of which is the Annual Additions for all plans described in this paragraph, or (B) be reduced by the Annual Additions credited to the Participant's accounts in the other defined contribution plans for such Limitation Year.

6.3 **Multiple Plans and Multiple Employers.** All defined contribution plans (whether terminated or not) sponsored by the Employer will be treated as one defined contribution plan. In addition, all Affiliated Employers will be considered a single Employer.

6.4 **Adjustment for Excessive Annual Additions.** For any Limitation Year, if the Annual Additions allocated to a Participant's Account exceed the Annual Additions limitation of Section 6.1 because of an allocation of Forfeitures, a reasonable error in estimating a Participant's Compensation, a reasonable error in determining the amount of elective contributions (within the meaning of Code §402(g)(3)), or because of other limited facts and circumstances that the Commissioner finds justify the availability of the rules set forth in this Section, then such Participant's Account will be adjusted as follows in order to reduce the Excess Annual Additions:

(a) **Return of Employee Contributions.** First, Voluntary Employee Contributions, if any, to the extent that they would reduce the Excess Annual Additions, will be calculated. Such Voluntary Employee Contributions, plus attributable gains, will then be distributed to the Participant.

(b) **Excess Used To Reduce Employer Contributions If Participant Is Still Covered By The Plan.** If, after the application of paragraph (a) above, Excess Annual Additions still exist and the Participant is covered by the Plan at the end of the Limitation Year, the Excess Annual Additions in the Participant's Account will be used to reduce Employer contributions (including any allocation of Forfeitures) for such Participant in the next Limitation Year, and in each succeeding Limitation Year if necessary.

- 48 -

(c) **Excess Used To Reduce Employer Contributions If Participant Is Not Covered By The Plan.** If, after the application of paragraph (a) above, Excess Annual Additions still exist and the Participant is not covered by the Plan at the end of a Limitation Year, the Excess Annual Additions will be held unallocated in a suspense account. The suspense account will be applied to reduce future Employer contributions (including the allocation of any Forfeitures) for all remaining Participants in the next Limitation Year, and in each succeeding Limitation Year if necessary.

(d) **Suspense Account.** If a suspense account is in existence at any time during a Limitation Year pursuant to this Section, then such suspense account will not participate in the allocation of the Trust's investment gains and losses. If a suspense account is in existence at any time during a particular Limitation Year, then all amounts in the suspense account must be allocated and reallocated to Participants' Accounts before any Employer Contributions or any Employee contributions may be made to the Plan for that Limitation Year. A suspense account may not be distributed to Participants or former Participants.

**- 49 -**

CONFIDENTIAL

AIG_00000488

**Article 7**
**Loans, Insurance and Directed Investments**

7.1    **Loans to Participants.** Loans may be made from the Trust Fund to Participants and Beneficiaries who make application to the Administrator requesting a loan. The Administrator has the sole right to approve or disapprove the application. All loans must be evidenced by a legally enforceable agreement (which may include more than one document) set forth in writing or in such other form as may be approved by the Internal Revenue Service, and the terms of such agreement must specify the amount and term of the loan, and the repayment schedule. Loans will only be made in accordance with a separate written loan program which satisfies the requirements of Code §72(p) and the Regulations promulgated thereunder, and the following provisions:

(a)    **General Rules.** Loans (1) will be made available to all Participants and Beneficiaries on a reasonably equivalent, non-discriminatory basis; (2) will not be made available to HCEs in an amount greater than the amount made available to other Employees; (3) must be adequately secured and bear a reasonable interest rate; and (4) cannot exceed the present value of the Participant's Vested Aggregate Account balance.

(b)    **Spousal Consent.** A Participant must obtain the consent of his or her Spouse, if any, as set forth in Section 5.8 or Section 5.19 of the Plan in order to use the remaining Vested Interest of the Participant's Account balance as security for a loan taken from the portion of the Participant's Account which is subject to Code §401(a)(11) and Code §417 at the time the loan is made, if any. Any such Spousal consent will be obtained no earlier than the beginning of the 90-day period that ends on the date on which the loan is to be so secured. The consent must be in writing, must acknowledge the effect of the loan, and must be witnessed by a Plan representative or notary public. Such consent will thereafter be binding upon the consenting Spouse or any subsequent Spouse with respect to that loan. A new consent will be required if the remaining Participant's Account balance is used for renegotiation, extension, renewal, or other revision of the loan. If valid Spousal consent has been obtained in accordance with this paragraph, then, notwithstanding any other provision of this Plan to the contrary, the Vested portion of the Participant's Account balance that is used as a security interest held by the Plan by reason of a loan that is outstanding to the Participant will be taken into account in determining the amount of the Vested portion of the Participant's Account balance payable at the time of death or distribution, but only if the reduction is used as repayment of the loan. If less than 100% of the Participant's Account (determined without regard to the preceding sentence) is payable to the surviving Spouse, then the death benefit will be adjusted by first reducing the Vested portion of the Participant's Account balance by the amount of the security that is used for the loan.

(c)    **Maximum Loan.** No loan to a Participant or Beneficiary can be made to the extent such loan, when added to the outstanding balance of all other loans to the Participant or Beneficiary, would exceed the lesser of (1) $50,000 reduced by the excess (if any) of the highest outstanding balance of loans during the one-year period ending on the day before the loan is made, over the outstanding balance of loans from the Plan on the date the loan is made; or (2) one-half the present value of the Vested Portion of the Participant's Vested Aggregate Account. However, notwithstanding the limitation in clause (2) of the preceding sentence, the written loan policy may permit a Participant whose Vested Aggregate Account balance is $20,000 or less to borrow an amount that does not exceed the lesser of $10,000 or 100% of the Participant's Vested Aggregate Account balance if adequate security is provided on the loan amount in excess of that determined under clause (2). For the purpose of the limitations set forth in this paragraph, all loans from the plans (including this Plan) of the Sponsoring Employer and other Affiliated Employers are aggregated.

(d)    **Minimum Loan.** The written loan policy may provide for a minimum loan not to exceed $1,000.

(e)    **Loan Repayments.** Any loan by its terms will require that repayment (of both principal and interest) be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan, unless such loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant. In the event of default, then foreclosure on the note and attachment of security will not occur until a distributable event occurs in the Plan. However, notwithstanding the foregoing to the contrary, loan repayments will be suspended as permitted under Code §414(u)(4)).

(f)    **Assignments and Pledges Treated as Loans.** An assignment or pledge of any portion of the Participant's interest in the Plan and a loan, pledge, or assignment with respect to any insurance contract purchased under the Plan, will be treated as a loan under this Section.

- 50 -

CONFIDENTIAL

(g) **Restrictions Eliminated.** Effective for Plan loans made after December 31, 2001, any prior Plan provisions that prohibited or otherwise restricted loans to any owner-employee (as defined in Code §401(c)(3)) or shareholder-employee (as defined in Code §4975(f)(6)(C)) will cease to apply. For this purpose, a shareholder-employee means an Employee or officer of an electing small business (Subchapter S) corporation who owns (or is considered as owning within the meaning of Code §318(a)(1)), on any day during the taxable year of such corporation, more than 5% of the outstanding stock of the corporation.

**7.2    Insurance on Participants.** Pursuant to any rules or procedures that are promulgated under Section 8.6 by the Administrator, the Trustee may purchase life insurance Policies on the life of a Participant and/or the Participant's Spouse in accordance with the following provisions:

(a) **Ownership of Policies.** All life insurance Policies will be vested exclusively in the Trustee and will be payable to the Trustee, subject to the rights of the Beneficiaries hereunder unless the Trustee permits the designation of a named beneficiary other than the Trustee. Notwithstanding the foregoing, no Trustee who is also a Participant may, except in a fiduciary capacity, exercise any ownership rights with respect to any Policy insuring the life of such Trustee in his or her capacity as a Participant.

(b) **Primary Limit on Premiums.** At the direction of the Administrator and/or the Participant, the Trustee will purchase Policies on the life of the Participant, provided that the aggregate premiums on ordinary life Policies must be less than 50% of the Participant's Account balance; (2) the aggregate premiums on term Policies, universal Policies and all other Policies which are not ordinary life insurance Policies must be less than 25% of the Participant's Account balance; and (3) the sum of one-half of the premiums on ordinary life insurance Policies and the total of all other life insurance premiums cannot exceed 25% of the Participant's Account balance. For purposes of this Section, an ordinary life insurance Policy is an insurance policy that has a non-decreasing death benefit and also has a non-increasing premium.

(c) **Alternate Limit.** Notwithstanding paragraph (b) above, a Participant may elect that up to 100% of his or her Rollover Contribution Account and Voluntary Employee Contribution Account, and up to 100% of the portion of his or her Vested Participant's Account that has accumulated in the Plan for at least 2 years and is no longer subject to the distribution restrictions set forth in Code §401(k)(2)(B), be used to purchase Policies on the life of the Participant, the life of the Participant's Spouse, and/or the joint lives of the Participant and the Participant's Spouse. Likewise, a Participant who has participated in the Plan for at least 5 years may elect that up to 100% of his or her Rollover Contribution Account and Voluntary Employee Contribution Account, and up to 100% of his or her Vested Participant's Account balance that is no longer subject to the distribution restrictions set forth in Code §401(k)(2)(B), be used to purchase Policies on the life of the Participant, the life of the Participant's Spouse, and/or the joint lives of the Participant and his or her Spouse.

(d) **Payment of Premiums.** If Employer contributions are inadequate to pay premiums on Policies, the Trustees may, at the direction of the Administrator, utilize other amounts remaining in the Trust Fund to pay the premiums, allow the Policies to lapse, reduce the Policies to a level at which they may be maintained, or borrow against the Policies on a prorated basis if borrowing does not discriminate in favor of Policies issued on the lives of Highly Compensated Employees. The Trustees may also pay premiums from the loan values of the Policies themselves if (1) any loan is made against all of the Policies in proportion to their respective cash surrender values, and (2) all loans are repaid in proportion to the cash surrender value of such Policies.

(e) **Policy Dividends.** Any insurer payments which are paid to the Trustee on account of experience credits, dividends, or surrender or cancellation credits, will be applied by the Employer within the current or next succeeding Plan Year toward premiums due.

(f) **Disposition of Policies Upon Retirement.** When a Participant retires, the Trustee, at the direction of the Administrator, must, with respect to any Policies that have been purchased on the life of such Participant under this Section, either (1) transfer them to the Participant, (2) with the Participant's consent, borrow their cash surrender values and transfer them to the Participant subject to the loan, or (3) surrender them for their cash surrender values. If options (2) or (3) are elected, the cash surrender values will be added to the Participant's Account for distribution in accordance with Section 5.1.

(g) **Disposition of Policies Upon Termination of Employment.** If a Terminated Participant's Vested Interest equals or exceeds the cash surrender value of any Policies issued on the Terminated Participant's life, then the Trustee, with the consent of both the Administrator and the Terminated Participant, will transfer such

- 51 -

AIG_00000490

Policies to the Terminated Participant, together with any restrictions the Administrator may impose concerning the Terminated Participant's right to surrender, assign, or otherwise realize cash on such Policies prior to the Terminated Participant's Normal Retirement Date. If the Terminated Participant's Vested Interest is less than the cash surrender values of such Policies, the Administrator may permit the Terminated Participant to pay the Trustee the sum required to make distribution equal to the value of the Policies being assigned or transferred, or the Trustee may borrow the cash surrender values of the Policies from the insurer and then assign the Policies to the Terminated Participant. Under no circumstances will the Trust (or custodial account) retain any part of the insurance Policy proceeds. If applicable to this Plan, then the provisions of this paragraph also apply to a Participant who Terminates Employment because of Disability.

(h) **Protection of Fiduciaries and Insurers.** Neither the Trustee, the Employer, the Administrator, nor any fiduciary (including any Named Fiduciary) will be responsible for the validity of any Policy or the failure of any insurer to make payments thereunder, or for the action of any person which may delay payment or render a Policy void in whole or in part. No insurer will be deemed a party to this Plan for any purpose or to be responsible for its validity; nor will it be required to look into the terms of the Plan nor to question any action of the Trustee. The obligations of the insurer will be determined solely by the Policy's terms and any other written agreements between it and the Trustee. The insurer will act only at the written direction of the Trustee, and will be discharged from all liability with respect to any amount paid to the Trustee. The insurer will not be obligated to see that any money paid by it to the Trustee or any other person is properly applied.

(i) **Non-Trusteed Plan.** If the Plan is a non-trusteed Plan (a Plan designated only with Policies), then this paragraph applies to the Plan. No Policy will be purchased under the Plan unless such Policy or a separate definite written agreement between the Employer and the insurer provides that no value under Policies providing benefits under the Plan or credits determined by the insurer (on account of dividends, earnings, or other experience rating credits; or surrender or cancellation credits) with respect to such Policies may be paid or returned to the Employer or diverted to or used for other than the exclusive benefit of the Participants or their Beneficiaries. However, any contribution made by the Employer because of a mistake of fact must be returned to the Employer within one year of the contribution. If the Plan is funded by Policies that provide a Participant's benefit under the Plan, such Policies will constitute the Participant's Account balance. If the Plan is funded by group Policies, under a group annuity or group insurance Policy, then premiums or other consideration received by the insurance company must be allocated to Participants' Accounts under the Plan.

(j) **Conflict With Plan.** If the provisions of any Policy purchased hereunder conflict with the terms of this Plan, the Plan provisions will control.

7.3 **Key Man Insurance.** The Administrator may instruct the Trustee to purchase insurance Policies on the life of any Participant whose employment is deemed to be key to the Employer's financial success. Such key man Policies will be deemed to be an investment of the Trust Fund and will be payable to the Trust Fund as the beneficiary thereof. The Trustee may exercise any and all rights granted under such Policies. Neither the Trustee, Employer, Administrator, nor any fiduciary (including any Named Fiduciary) will be responsible for the validity of any Policy or the failure of any insurer to make payments thereunder, or for the action of any person which delays payment or renders a Policy void in whole or in part. No insurer which issues a Policy will be deemed to be a party to this Plan for any purpose or to be responsible for its validity; nor will any such insurer be required to look into the terms of the Plan nor to question any action of the Trustee. The obligations of the insurer will be determined solely by the Policy's terms and any other written agreements between it and the Trustee. The insurer will act only at the written direction of the Trustee, and will be discharged from all liability with respect to any amount paid to the Trustee. The insurer will not be obligated to see that any money paid by it to the Trustee or any other person is properly distributed or applied.

7.4 **Directed Investment Accounts.** Pursuant to any rules or procedures promulgated under Section 8.6 by the Administrator, Participants can direct the investment of a portion of (or all of) one or more of their accounts (hereafter called Directed Investment Accounts) established under the terms of the Plan. Investment directives will only be given in accordance with an administrative policy regarding Directed Investment Accounts that is promulgated under Section 8.6 by the Administrator. With respect to any Participant who fails to exercise the right to direct the investment of his or her Directed Investment Accounts, such Directed Investment Accounts will be invested by the Trustee at the direction of the Administrator in a "default investment" which has been selected by the Administrator and which is expected to produce a favorable rate of return and that minimizes the overall risk of losing money. With respect to Directed Investment Accounts, fiduciaries will only be protected by ERISA §404(c) for a Plan Year if all of the requirements of ERISA §404(c) and the Department of Labor Regulations promulgated thereunder are complied with on each day of the Plan Year.

- 52 -

CONFIDENTIAL

AIG_00000491

**Article 8**
**Duties of the Administrator**

8.1 **Appointment, Resignation, Removal and Succession.** The Sponsoring Employer will serve as the Administrator unless the Sponsoring Employer elects to appoint another Administrator. Each Administrator that is appointed will continue until his death, resignation, or removal, and any Administrator may resign by giving 30 days written notice to the Sponsoring Employer. If an Administrator dies, resigns, or is removed, his successor will be appointed as promptly as possible and such appointment will become effective upon its acceptance in writing by such successor. Pending the appointment and acceptance of any successor Administrator, any then acting or remaining Administrator will have full power to act.

8.2 **General Powers and Duties.** The powers and duties of the Administrator include (a) appointing the Plan's attorney, accountant, actuary, or any other party needed to administer the Plan; (b) directing the Trustees with respect to payments from the Trust Fund; (c) deciding if a Participant is entitled to a benefit; (d) communicating with Employees regarding their participation and benefits under the Plan, including the administration of all claims procedures; (e) filing any returns and reports with the Internal Revenue Service, Department of Labor, or any other governmental agency; (f) reviewing and approving any financial reports, investment reviews, or other reports prepared by any party under clause (a) above; (g) establishing a funding policy and investment objectives consistent with the purposes of the Plan and ERISA; (h) construing and resolving any question of Plan interpretation; and (i) making any findings of fact the Administrator deems necessary to proper Plan administration. Notwithstanding any contrary provision of this Plan, benefits under this Plan will be paid only if the Administrator decides in its discretion that the applicant is entitled to them. The Administrator's interpretation of Plan provisions, and any findings of fact, including eligibility to participate and eligibility for benefits, are final and will not be subject to "de novo" review unless shown to be arbitrary and capricious.

8.3 **Functioning of the Committee.** If a Committee is established, a member of the Committee will serve until his or her death, disability, removal by the Sponsoring Employer, or resignation. In the event of any vacancy arising from the death, disability, removal, or resignation of a member of the Committee, the Sponsoring Employer may, but is not required to, appoint a successor to serve in his or her place. The Committee will select a chairman and secretary from among its members. Members of the Committee will serve without compensation. The Committee will act by majority vote. The proper expenses of the Committee, and the compensation of its agents, if any, that are appointed pursuant to Section 8.7, will be paid directly by the Employer.

8.4 **Multiple Administrators.** If more than one Administrator has been appointed by the Sponsoring Employer, the Administrators may delegate specific responsibilities among themselves, including the authority to execute documents unless the Sponsoring Employer revokes such delegation. The Sponsoring Employer and Trustee will be notified in writing of any such delegation of responsibilities, and the Trustee thereafter may rely upon any documents executed by the appropriate Administrator.

8.5 **Correcting Administrative Errors.** The Administrator will take such steps as the Administrator considers necessary and appropriate to remedy administrative or operational errors, including, but not be limited to, the following: (a) any action pursuant to (1) any Employee Plans Compliance Resolution System (EPCRS) that is issued by the Internal Revenue Service, (2) any asset management or fiduciary conduct error correction program that is issued by the Department of Labor, or (3) any other correction program issued by any Department or governmental agency; (b) a reallocation of Plan assets; (c) an adjustment in the amount of future payments to any Participant, Beneficiary or Alternate Payee; and (d) the institution, prosecution, and/or settlement of legal actions to recover benefit payments made in error or on the basis of incorrect or incomplete information.

8.6 **Promulgating Notices and Procedures.** The Sponsoring Employer and Administrator are given the power and responsibility to promulgate certain written notices, policies and/or procedures under the terms of the Plan and disseminate them to Participants, and the Administrator may satisfy such responsibility by the preparation of any such notice, policy and/or procedure in a written form which can be published and communicated to a Participant in one or more of the following ways: (a) by distribution in hard copy; (b) through distribution of a summary plan description or summary of material modifications thereto which sets forth the policy or procedure with respect to a right, benefit or feature offered under the Plan; (c) by e-mail, either to a Participant's personal e-mail address or his or her Employer-maintained e-mail address; and (d) by publication on a web-site accessible by the Participant, provided the Participant is notified of said web-site publication. Any notice, policy and/or procedure provided through an electronic medium will only be valid if the electronic medium which is used is reasonably

- 53 -

AIG_00000492

designed to provide the notice, policy and/or procedure in a manner no less understandable to the Participant than a written document, and under such medium, at the time the notice, policy and/or procedure is provided, the Employee may request and receive the notice, policy and/or procedure on a written paper document at no charge.

**8.7    Employment of Agents and Counsel.** The Administrator may appoint such actuaries, accountants, custodians, counsel, agents, consultants, service companies and other persons deemed necessary or desirable in connection with the administration and operation of the Plan. Any person or company so appointed will exercise no discretionary authority over investments or the disposition of Trust assets, and their services and duties will be ministerial only and will be to provide the Plan with those things required by law or by the terms of the Plan without in any way exercising any fiduciary authority or responsibility under the Plan. The duties of a third party Administrator will be to safe-keep the individual records for all Participants and to prepare all required actuarial services and disclosure forms under the supervision of the Administrator and any fiduciaries of the Plan. It is expressly stated that the third party Administrator's services are only ministerial in nature and that under no circumstances will such third party Administrator (a) exercise any discretionary authority whatsoever over Plan Participants, Plan investments, or Plan benefits; or (b) be given any authority or discretion concerning the management and operation of the Plan that would cause them to become fiduciaries of the Plan.

**8.8    Compensation and Expenses.** The Administrator may receive such compensation as agreed upon between the Sponsoring Employer and the Administrator, provided that any person who already receives full-time pay from the Employer may not receive any fees from the Plan for services to the Plan as Administrator or in any other capacity, except for reimbursement for expenses actually and properly incurred. The Sponsoring Employer will pay all "settlor" expenses (as described in Department of Labor Advisory Opinion 2001-01-A) incurred by the Administrator, the Committee or any party that is appointed under Section 8.7 in the performance of their duties. The Sponsoring Employer may pay, but is not required to pay, all "non-settlor" expenses incurred by the Administrator, the Committee, or any party that is appointed under Section 8.7 in the performance of their duties. Any "non-settlor" expenses incurred by the Administrator, the Committee or any party that is appointed under Section 8.7 that the Sponsoring Employer elects not to pay will be reimbursed from Trust Fund assets. Any expenses paid from the Trust Fund will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

**8.9    Claims Procedures.** The claims procedure required under ERISA §503 and Department of Labor Regulations thereunder is set forth in an administrative policy regarding claims procedures that is promulgated under Section 8.6 by the Administrator. Such administrative policy will be the sole and exclusive remedy for an Employee, Participant or Beneficiary ("Claimant") to make a claim for benefits under the Plan.

**8.10    Qualified Domestic Relations Orders.** A Qualified Domestic Relations Order, or QDRO, is a signed domestic relations order issued by a State or a Commonwealth court which creates, recognizes or assigns to an alternate payee(s) the right to receive all or part of a Participant's Plan benefit. An alternate payee is a Spouse, former Spouse, child, or other dependent of a Participant who is treated as a Beneficiary under the Plan as a result of the QDRO. The Administrator will determine if a domestic relations order received by the Plan is a Qualified Domestic Relations Order based on an administrative policy regarding Qualified Domestic Relations Orders that is promulgated under Section 8.6 by the Administrator.

**8.11    Appointment of Investment Manager.** The Administrator, with the consent of the Sponsoring Employer, may appoint an Investment Manager to manage and control the investment of all or any portion of the assets of the Trust. Each Investment Manager must be a person (other than the Trustee) who (a) has the power to manage, acquire, or dispose of Plan assets, (b) is an investment adviser, a bank, or an insurance company as described in ERISA §3(38)(B), and (c) acknowledges fiduciary responsibility to the Plan in writing. The Administrator will enter into an agreement with an Investment Manager that specifies the duties and compensation of the Investment Manager and specifies any other terms and conditions under which the Investment Manager will be retained. The Trustee is not liable for any act or omission of an Investment Manager and is not liable for following an Investment Manager's advice with respect to duties delegated by the Administrator to the Investment Manager. The Administrator can determine the portion of the Plan's assets to be invested by a designated Investment Manager and can establish investment objectives and guidelines for the Investment Manager to follow.

- 54 -

AIG_00000493

**Article 9**
**Trustee Provisions**

9.1    **Appointment, Resignation, Removal and Succession.** The Trust established under the Plan will have one or more individual Trustees, a corporate Trustee, or any combination thereof, appointed as follows:

(a)    **Appointment.** Each Trustee will be appointed and will serve until a successor has been named or until such Trustee's resignation, death, incapacity, or removal, in which event the Sponsoring Employer will name a successor Trustee. The term Trustee will include the original and any successor Trustees.

(b)    **Resignation.** A Trustee may resign at any time by giving written notice to the Sponsoring Employer, unless such notice is waived by the Sponsoring Employer. The Sponsoring Employer may remove a Trustee at any time by giving such Trustee written notice. Such removal may be with or without cause. Unless waived in writing by the Sponsor, if any Trustee who is an Employee or an elected or appointed official resigns or terminates employment with the Sponsoring Employer or an Adopting Employer, such termination will constitute an immediate resignation as a Trustee of the Plan.

(c)    **Successor Trustee.** Each successor Trustee will succeed to the title to the Trust by accepting the appointment in writing and by filing such written acceptance with the former Trustee and the Sponsoring Employer. The former Trustee, upon receipt of such acceptance, will execute all documents and perform all acts necessary to vest the Trust Fund's title of record in any successor Trustee. No successor Trustee will be personally liable for any act or failure to act of any predecessor Trustee.

(d)    **Merger.** If any corporate Trustee, before or after qualification, changes its name, consolidates or merges with another corporation, or otherwise reorganizes, any resulting corporation that succeeds to the retirement plan trustee business of such Trustee will become a Trustee hereunder in lieu of such corporate Trustee.

9.2    **Investment Alternatives.** The Trustee will implement an investment program based on the Sponsoring Employer's investment objectives. In addition to powers given by law, the Trustee may do the following:

(a)    **Property.** The Trustee may invest in any form of property, including common and preferred stocks, exchange covered call options, bonds, money market instruments, mutual funds, savings accounts, certificates of deposit, Treasury bills, insurance policies and contracts, or in any other property, real or personal, foreign or domestic, having a ready market including securities issued by an institutional Trustee and/or affiliate of such Trustee. An institutional Trustee may invest in its own deposits if they bear a reasonable interest rate. The Trustee may retain, manage, operate, repair, improve and mortgage or lease for any period on such terms as it deems proper any real estate or personal property held by the Trustee, including the power to demolish any building or other improvements in whole or part. The Trustee may erect buildings or other improvements, make leases that extend beyond the term of this Trust, and foreclose, extend, renew, assign, release or partially release and discharge mortgages or other liens.

(b)    **Registration of Securities.** The Trustee may cause any property of the Trust to be issued, held, or registered in its own name or in the name of a nominee, provided, however, that the nominee is (a) a bank or trust company that is subject to supervision by the United States or a State, or a nominee of such bank or trust company; (b) a broker or dealer registered under the Securities Exchange Act of 1934, or a nominee or such broker or dealer; or (c) a clearing agency as defined in section 3(a)(23) of the Securities Exchange Act of 1934, or its nominee. The Trustee may also hold any investments in bearer form if the Trustee at all times shows such investments as part of the Trust.

(c)    **Other Investments.** The Trustee may accept and retain for such time as the Trustee deems advisable any securities or other property received or acquired as Trustee, whether or not such securities or property would normally be purchased as investments hereunder.

(d)    **Pooled Funds.** The Trustee may transfer Trust assets to a collective trust established for the pooling of funds of separate pension and profit-sharing trusts or to any other common, collective, or commingled trust which has been or may hereafter be established and maintained by the Trustee and/or affiliates of an institutional Trustee. Such commingling of Trust assets with assets of other qualified trusts is specifically authorized, and to the extent of the investment of the Trust in such a group or collective trust, the terms of the instrument establishing the group or collective trust will be a part hereof as though set forth herein.

- 55 -

CONFIDENTIAL                                                                    AIG_00000494

(e) **Cash Reserves.** The Trustee may retain in cash as much of the Trust Fund as the Trustee may deem advisable to satisfy the liquidity needs of the Plan and to deposit any cash held in the Trust Fund in a bank account without liability for the highest rate of interest available. If a bank is acting as Trustee, such Trustee is specifically given authority to invest in deposits of such Trustee. The Trustee may also hold cash un-invested at any time and from time to time and in such amount or to such extent as the Trustee deems prudent, and the Trustee will not be liable for any losses which may be incurred as the result of the failure to invest same, except to the extent that may otherwise be provided herein.

(f) **Reorganizations.** The Trustee may join in or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties, upon such terms as the Trustee deems wise.

(g) **Proxies.** The Trustee may vote proxies and if appropriate pass them on to any investment manager which may have directed the investment in the equity giving rise to the proxy.

(h) **Ownership.** The Trustee may exercise all ownership rights with respect to any assets held in the Trust.

(i) **Loans to the Trust.** The Trustee may borrow or raise money for purposes of the Plan in such amounts, and upon such terms and conditions, as the Trustee deems advisable; and for any sum so borrowed, the Trustee may issue a promissory note as Trustee, and secure repayment of the loan by pledging all, or any part, of the Trust Fund as collateral. No person lending money to the Trustee will be bound to see to the application of the money lent or to inquire into the validity or propriety of any borrowing.

(j) **Agreements With Banks.** The Trustee may with the consent of the Sponsoring Employer and upon such terms as they in their discretion deem necessary, enter into an agreement with a bank or trust company providing for (1) the deposit of all or part of the funds and property of the Trust with such bank or trust company, and (2) the appointment of such bank or trust company as the agent or custodian of the Trustees for investment purposes, with such discretion in investing and reinvesting the funds of the Trust as the Trustees deem it necessary or desirable to delegate.

(k) **Litigation.** The Trustee may begin, maintain, or defend any litigation necessary to the administration of the Plan, but the Trustee is not obliged or required to do so unless indemnified to its satisfaction.

(l) **Claims, Debts and Damages.** The Trustee may bring, defend, settle, compromise, or submit to arbitration actions, suits, controversies, or proceedings of any kind arising out of the administration of the Trust, and to satisfy or collect judgments, decrees, or awards of any kind in connection therewith; provided, however, that the Trustee may not submit to arbitration any action, suit, controversy or proceeding between the Trustee and a Participant unless the Participant has consented in writing to such arbitration.

(m) **Margin Accounts, Options and Commodities.** The Trustee may borrow on margin, buy options, write covered options, options spreads/straddles, and engage in future/commodities trading.

(n) **Miscellaneous.** The Trustee may do all such acts and exercise all such rights, although not specifically mentioned herein, as the Trustee deems necessary to carry out the purposes of the Plan. The Trustee is not restricted to securities or other property of the character expressly authorized by applicable law for trust investments or that would normally be purchased as trust investments, subject to the requirement that the Trustee discharge his or her duties with the care, skill, prudence, and diligence, under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of similar character and with similar aims by diversifying investments in order to minimize the risks of large losses, unless under the circumstances it is clearly prudent not to do so.

9.3 **Valuation of the Trust.** On each Valuation Date, the Trustee will determine the net worth of the Trust Fund. The fair market value of securities that are listed on a registered stock exchange will be the prices at which they were last traded on such exchange preceding the close of business on the Valuation Date. If the securities were not traded on the Valuation Date, or if the exchange on which they are traded was not open for business on the Valuation Date, then the securities will be valued at the prices at which they were last traded prior to the Valuation Date. Any unlisted security will be valued at its bid price next preceding the close of business on the Valuation Date, which bid price will be obtained from a registered broker or an investment banker. To determine the fair market value of assets other than securities for which trading or bid prices can be obtained, the Trustee may use any reasonable method to determine the value of such assets, or may elect to employ one or more appraisers for that purpose and rely on the values established by such appraiser or appraisers.

- 56 -

CONFIDENTIAL

AIG_00000495

**9.4** **Compensation and Expenses.** The Trustee, either from the Trust Fund or from the Employer, will be reimbursed for all of its expenses and will be paid reasonable compensation as agreed upon from time to time with the Employer; but no person who receives full-time pay from the Employer will receive any fees for services to the Plan as Trustee or in any other capacity. Expenses will be paid by each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all Participants' Accounts maintained under the terms of the Plan.

**9.5** **Payments From the Trust Fund.** The Trustee will pay Plan benefits and other payments as the Administrator directs, and the Trustee will not be responsible for the propriety of such payments. Any payment made to a Participant, or a Participant's legal representative or Beneficiary in accordance with the terms of the Plan will, to the extent of such payment, be in full satisfaction of all claims arising against the Trust, the Trustee, the Employer, and the Plan Administrator. Any payment or distribution made from the Trust is contingent on the recipient executing a receipt and release acceptable to the Trustee, Administrator, or Employer.

**9.6** **Payment of Taxes.** The Trustee will pay all taxes of the Trust Fund, including property, income, transfer and other taxes which may be levied or assessed upon or in respect of the Trust Fund or any money, property or securities forming a part of the Trust Fund. The Trustee may withhold from distributions to any payee such sum as the Trustee may reasonably estimate as necessary to cover federal and state taxes for which the Trustee may be liable, which are, or may be, assessed with regard to the amount distributable to such payee. Prior to making any payment, the Trustee may require such releases or other documents from any lawful taxing authority and may require such indemnity from a payee or distributee as the Trustee deems necessary.

**9.7** **Accounts, Records and Reports.** The Trustee will keep accurate records reflecting its administration of the Trust and will make them available to the Administrator for review and audit. At the request of the Administrator, the Trustee will, within 90 days of such request, file with the Administrator an accounting of its administration during such period or periods as the Administrator determines. The Administrator will review the accounting and notify the Trustee within 90 days if the report is disapproved, providing the Trustee with a written description of the items in question. The Trustees will have 60 days to provide the Administrator with a written explanation of the items in question. If the Administrator again disapproves of the report, the Trustee will file its accounting in a court of competent jurisdiction for audit and adjudication.

**9.8** **Employment of Agents and Counsel.** The Trustee may employ such agents, counsel, consultants, or service companies as it deems necessary and may pay their reasonable expenses and compensation. The Trustee will not be liable for any action taken or omitted by the Trustee in good faith pursuant to the advice of such agents and counsel. Any agent, counsel, consultant, service company and/or its successors will exercise no discretionary authority over investments or the disposition of Trust assets, and their services and duties will be ministerial only and will be to provide the Plan with those things required by law or by the terms of the Plan without in any way exercising any fiduciary authority or responsibility under the Plan.

**9.9** **Division of Duties and Indemnification.** The division of duties and the indemnification of the Trustees of this Plan will be governed by the following provisions:

(a) **No Guarantee Against Loss.** The Trustees have the authority and discretion to manage and control the Trust Fund to the extent provided in this instrument, but they do not guarantee the Fund against investment loss or depreciation in asset value, or guarantee the adequacy of the Fund to meet and discharge all or any liabilities of the Plan. Furthermore, the Trustees will not be liable for the making, retention or sale of any investment or reinvestment made by it, as herein provided, or for any loss to or diminution of the Trust Fund, or for any other loss or damage which may result from the discharge of its duties hereunder, except to the extent it is judicially determined that the Trustees have failed to exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims.

(b) **Representations of the Sponsoring Employer.** The Sponsoring Employer warrants that all directions issued to the Trustees by it or the Plan Administrator will be in accordance with the terms of the Plan.

- 57 -

AIG_00000496

(c) **Directions By Others.** The Trustees are not answerable for an action taken pursuant to any direction, consent, certificate, or other paper or document on the belief that the same is genuine and signed by the proper person. All directions by the Sponsoring Employer, a Participant or Administrator must be in writing. The Administrator will deliver to the Trustee (1) certificates evidencing the individual or individuals authorized to act as the Administrator and (2) specimens of their signatures.

(d) **Duties and Obligations Limited by the Plan.** The duties and obligations of the Trustee are limited to those expressly imposed upon it by the Plan or subsequently agreed upon by the parties. Responsibility for administrative duties required under the Plan or applicable law not expressly imposed upon or agreed to by the Trustee, will rest solely with the Sponsoring Employer and Administrator.

(e) **Indemnification of the Trustees.** The Trustees will be indemnified and saved harmless from and against any and all liability to which the Trustees may be subjected, including all expenses reasonably incurred in its defense, for any action or failure to act resulting from compliance with the instructions of the Sponsoring Employer, the employees or agents of the Sponsoring Employer, the Plan Administrator, or any other fiduciary to the Plan, and for any liability arising from the actions or non-actions of any predecessor Trustees or other fiduciary of the Plan.

(f) **Trustees Not Responsible for Application of Payments.** The Trustees will not be responsible in any way for the application of any payments it is directed to make or for the adequacy of the Fund to meet and discharge any and all liabilities under the Plan.

(g) **Multiple Trustees.** If more than one Trustee is appointed, any single Trustee may act independently in undertaking any act and/or transaction on behalf of the Trustees, including signing documents or checks, unless the Sponsoring Employer requires that all acts and/or transactions taken on behalf of the Trust, including signing documents or checks, must have the consent of a majority of the Trustees. The Sponsoring Employer may from time to time also place other restrictions on the Trustees.

(h) **Trustees as Participants or Beneficiaries.** Trustees will not be prevented from receiving any benefits to which they may be entitled as Participants or Beneficiaries as long as the benefits are computed and paid on a basis consistent with the terms of the Plan as applied to other Participants and Beneficiaries.

(i) **Limitation of Liability.** No Trustee will be liable for the act of any other Trustee or fiduciary unless the Trustee has knowledge of such act.

(j) **No Self-Dealing.** The Trustees will not (1) deal with the assets of the Trust in their own interest or for their own account; (2) in their individual or in any other capacity, act in any transaction involving the Trust on behalf of a party (or represent a party) whose interests are adverse to the interests of the Plan, or its Participants or Beneficiaries; or (3) receive any consideration for their own personal accounts from any party dealing with the Plan in connection with a transaction involving assets of the Trust.

**9.10    Investment Manager.** The Trustee is not liable for acts or omissions of an Investment Manager appointed by the Administrator under Section 8.11, and the Trustee is not liable for following the advice of an Investment Manager with respect to any duties delegated by the Administrator to the Investment Manager.

**9.11    Exclusive Benefit Rule.** All contributions made by the Employer to the Trust Fund will be used for the exclusive benefit of the Participants and their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining the Plan.

**9.12    Superseding Trust or Custodial Agreement.** If any Trust assets are invested in a separate trust or custodial account maintained by a Trustee or custodian, the provisions of the separate trust or custodial agreement will supersede all provisions of this Article with respect such assets except, in the absence of a specific provision in such separate trust or custodial agreement regarding the valuation of securities held by the Trust, Section 9.4. If such separate trust or custodial account should for any reason fail, be found invalid or terminate prior to the termination of this Plan and the distribution of all the assets hereof, this Article 9 will be deemed to have again become effective immediately prior to such failure, invalidity or termination.

- 58 -

CONFIDENTIAL

**Article 10**
**Adopting Employer Provisions**

10.1  **Plan Contributions.** Unless otherwise agreed to by the parties, or unless otherwise required by law, no Employer will have any obligation to make contributions to this Plan for or on behalf of the Employees of any other Employer. If an Employee is employed by more than one Employer, any contributions made on his or her behalf will be prorated between those Employers on the basis of the Compensation that the Employee received from each Employer. If any Employer is unable to make a contribution for any Plan Year, any Employer which is an Affiliated Employer of such Employer may make an additional contribution to the Plan on behalf of any Employee of the non-contributing Employer.

10.2  **Plan Amendments.** Any amendment to this Plan that is adopted by the Sponsoring Employer, at any time, will be deemed to be accepted by any Adopting Employer, unless such Adopting Employer is not an Affiliated Employer and elects not to adopt a discretionary Plan amendment.

10.3  **Plan Expenses**. Any expenses paid from the Trust will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

10.4  **Employee Transfers.** An Employee's transfer to or from an Employer or Adopting Employer will not affect his or her Participant's Account balance and total Service.

10.5  **Multiple Employer Provisions Under Code §413(c).** Notwithstanding any other provision in the Plan, unless the Plan is a collectively bargained plan under Regulation §1.413-1(a), the following provisions apply to any Adopting Employer that is not also an Affiliated Employer:

(a)  **Instances of Separate Employer Testing.** Employees of any such Adopting Employer will be treated separately for testing under Code §401(a)(4), §401(k), §401(m) and, if the Sponsoring Employer and the Adopting Employer do not share Employees, Code §416. Furthermore, the terms of Code §410(b) will be applied separately on an employer-by-employer basis by the Sponsoring Employer (and the Adopting Employers which are part of the Affiliated Group which includes the Sponsoring Employer) and each Adopting Employer that is not an Affiliated Employer of the Sponsoring Employer, taking into account the generally applicable rules described in Code §401(a)(5), §414(b) and §414(c).

(b)  **Instances of Single Employer Testing.** Employees of the Adopting Employer will be treated as part of a single Employer plan for purposes of eligibility to participate under Article 2 and under the provisions of Code §410(a). Furthermore, the terms of Code §411 relating to Vesting will be applied as if all Employees of all such Adopting Employers and the Sponsoring Employer were employed by a single Employer, except that the rules regarding Breaks in Service will be applied under the Department of Labor Regulations.

(c)  **Common Provisions.** Contributions made by any Adopting Employer will be held in a common Trust Fund with contributions made by the Sponsoring Employer, and all such contributions will be available to pay the benefits of any Participant (or Beneficiary thereof) who is an Employee of the Sponsoring Employer or any such Adopting Employer. The failure of the Sponsoring Employer or an Adopting Employer to satisfy the qualification requirements under the provisions of Code §401(a), as modified by the provisions of Code §413(c), will result in the disqualification of the Plan for all such Employers maintaining the Plan.

10.6  **Termination of Adoption.** An Adopting Employer may terminate its adoption of the Plan by delivering written notice to the Sponsoring Employer, to the Administrator and to the Trustee. Upon termination of adoption by an Adopting Employer, the Adopting Employer may request a transfer of Trust Fund assets attributable to its Employees to a successor qualified retirement plan maintained by the Adopting Employer or its successor. If such request is not made by the Adopting Employer, or if the Administrator refuses to make the transfer because in its opinion a transfer would operate to the detriment of any Participant, would jeopardize the continued qualification of the Plan, or would not comply with any requirements of the Code, Regulations, or rules promulgated by the Department of Treasury or Internal Revenue Service, then termination of adoption by an Adopting Employer as described herein will not be considered a distributable event; distribution of a Participant's Account of an Employee of the Adopting Employer will be made in accordance with the provisions of Article 5 upon the death, retirement, Disability, or the Termination of Employment from the Adopting Employer or former Adopting Employer, as if termination of adoption by the Adopting Employer had not occurred.

- 59 -

CONFIDENTIAL

AIG_00000498

**Article 11**
**Amendment, Termination and Merger**

11.1   **Plan Amendment.** The Plan can be amended at any time in accordance with the following provisions:

(a)   **Amendment by the Volume Submitter Sponsor.** Subject to the requirements and limitations set forth in subparagraphs (1), (2) and (3) below, and in paragraphs (d) and (e) below, the Volume Submitter Sponsor can amend any part of the Plan without the consent of the Sponsoring Employer or any Adopting Employer, nor does the Sponsoring Employer have to reexecute the Plan. The Volume Submitter Sponsor will provide each Sponsoring Employer a copy of the amended Plan (either by providing an amendment, substitute or additional pages, or by providing a restated Plan). For purposes of amendments made by the Volume Submitter Employer, the Sponsoring Employer can override any such amendment by executing another amendment by the end of the applicable remedial amendment period that applies to such amendment.

(1)   **Scope of Amendments.** Any such amendments by the Volume Submitter Sponsor will amend the plan on behalf of all adopting Employers, including those Employers who have adopted the plan prior to this amendment, for changes in the Code, regulations, revenue rulings, other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments, but only if their adoption will not cause the Plan to be individually designed, and for corrections of prior approved plans. These amendments will be applied to all Employers who have adopted the Plan.

(2)   **Cessation of Amendment Authority.** The Volume Submitter Sponsor will no longer have the authority to amend the Plan on behalf of any adopting Employer as of either (1) the date the Internal Revenue Service requires the Employer to file Form 5300 as an individually designed plan as a result of an Employer amendment to the Plan to incorporate a type of plan not allowable in the Volume Submitter program, as described in Revenue Procedure 2005-16, or (2) as of the date the Plan is otherwise considered an individually designed plan due to the nature and extent of the amendments. If the Employer is required to obtain a determination letter for any reason in order to maintain reliance on the advisory letter, the Volume Submitter Sponsor's authority to amend the Plan on behalf of the adopting Employer is conditioned on the Plan receiving a favorable determination letter.

(3)   **Recordkeeping.** The Volume Submitter Sponsor will maintain, or have maintained on its behalf, a record of the Employers that have adopted the Plan, and will make reasonable and diligent efforts to ensure that adopting Employers have actually received and are aware of all Plan amendments and that such Employers adopt new documents when necessary. This amendment supersedes other provisions of the Plan to the extent those other provisions are inconsistent with this amendment.

(b)   **Amendment by the Sponsoring Employer.** Subject to the requirements and limitations set forth in paragraphs (c) and (d) below, the Sponsoring Employer will have the right at any time to amend the Plan in the following manner without affecting the Plan's status as a Volume Submitter Plan: (1) the Sponsoring Employer may change any optional selections under the Plan; (2) the Sponsoring Employer may add additional language where authorized under the Plan including language necessary to satisfy Code §415 or Code §416 due to the aggregation of multiple plans; (3) the Sponsoring Employer may change the addendums to the Plan from time to time without having to reexecute of the Plan; (4) the Sponsoring Employer may adopt any model, sample and/or "good faith" amendments promulgated/suggested by the IRS, for which the IRS has provided guidance that their adoption will not cause the Plan to be treated as an individually designed plan; (5) the Sponsoring Employer may adopt any amendments that it deems necessary to resolve qualification failures under any Employee Plans Compliance Resolution System (EPCRS) that is promulgated by the Internal Revenue Service; and (6) the Sponsoring Employer may adopt an amendment to cure a coverage or nondiscrimination testing failure, as permitted under applicable Regulations. The Sponsoring Employer may also amend the Plan at any time for any other reason. The ability to amend the Plan as authorized under this Section applies only to the Sponsoring Employer that executes the signature page of the Plan. Any amendment to the Plan by the Sponsoring Employer under this Section applies to any Affiliated Employer that participates under the Plan as an Adopting Employer. The Sponsoring Employer's amendment of the Plan from one type of defined contribution plan (e.g., a money purchase plan) into another type of defined contribution plan (e.g., a profit sharing plan) will not result in a partial termination or any other event that would require full Vesting of some or all Plan Participants.

- 60 -

(c) **Manner of Amendment.** Any amendments by the Volume Submitter Sponsor or Sponsoring Employer can be made by (1) substituting pages with the new elections (or new addendum) and executing an "Amendment By Page Substitution" and attaching it as part of the Plan; (2) executing an "Amendment By Section Replication" in which the section or sections (or addendum or addendums) to be changed are reproduced with the new elections indicated, and attaching it as part of the Plan; or (3) executing a properly worded corporate resolution and attaching it as part of the Plan.

(d) **General Requirements.** An amendment by the Volume Submitter Sponsor or the Sponsoring Employer must be in writing. However, no such amendment or modification (1) can increase the responsibilities of the Trustee or the Administrator without their written consent; (2) can deprive any Participant or Beneficiary of the benefits to which he or she is entitled from the Plan; (3) can result in a decrease in the amount of any Participant's Account except as may be permitted under the terms of Code §412(c)(8) if applicable; or (4) can, except as otherwise provided, permit any part of the Trust Fund (other than as required to pay taxes and administration expenses) to be used for or diverted to purposes other than the exclusive benefit of the Participants or their Beneficiaries, or cause or permit any portion of the Trust Fund to revert to or become the property of the Employer. In addition, unless the provisions of paragraph (e) below are satisfied, no amendment to the Plan will have the effect of eliminating or restricting the ability of a Participant or other payee to receive payment of his or her Account balance or benefit entitlement from the Plan under a particular optional form of benefit provided under the Plan.

(e) **Elimination of Optional Forms of Benefit.** No Plan amendment will be effective to eliminate or restrict an optional form of benefit. The preceding sentence will not apply to a Plan amendment that eliminates or restricts the ability of a Participant to receive payment of the Participant's Account balance under a particular optional form of benefit (including annuities and installments) if the amendment provides a single-sum distribution form that is otherwise identical to the optional form of benefit being eliminated or restricted. For this purpose, a single-sum distribution form is otherwise identical only if the single-sum distribution form is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provides greater rights to the Participant) except with respect to the timing of payments after commencement. With respect to the modification or elimination of an optional form of benefit under which benefits are distributable to a Participant in a medium other than cash, the following provisions will apply:

(1) **Eliminating Distributions Payable in Marketable Securities (Other Than Employer Securities).** If the Plan includes an optional form of benefit under which benefits are distributed in the form of Marketable Securities (other than Securities of the Employer), then that optional form of benefit may be eliminated by a Plan amendment (or the Plan's amendment and restatement) by substituting cash for the Marketable Securities as the medium of distribution.

(2) **Amendments to Specify Medium of Distribution.** If the Plan includes an optional form of benefit under which benefits are distributable to a Participant in a medium other than cash, then the Plan may be amended (or may be amended and restated) to limit the types of property in which distributions may be made to the Participant to the types of property specified in the amendment (or the amendment and restatement). For this purpose, the types of property specified in the amendment (or the amendment and restatement) must include all types of property (other than marketable securities that are not securities of the Employer) that are allocated to the Participant's Account on the effective date of the amendment (or the amendment and restatement) and in which the Participant would be able to receive a distribution immediately before the effective date of the amendment (or the amendment and restatement) if a distributable event occurred. In addition, a Plan amendment (or the Plan's amendment and restatement) may provide that the Participant's right to receive a distribution in the form of specified types of property is limited to the property allocated to the Participant's Account at the time of distribution that consists of property of those specified types.

(3) **In-Kind Distributions After Plan Termination.** If the Plan includes an optional form of benefit under which benefits are distributed in specified property, then that optional form of benefit may be modified for distributions after Plan termination by substituting cash for the specified property as the medium of distribution to the extent that, on Plan termination, an Employee has the opportunity to receive the optional form of benefit in the form of the specified property. However, if the Employer that maintains the terminating Plan also maintains another plan that provides an optional form of benefit under which benefits are distributed in the specified property, then this exception is not available.

- 61 -

AIG_00000500

(4) **Definitions of Marketable Securities and Securities of the Employer.** For purposes of this paragraph, the term "Marketable Securities" means marketable securities as defined in Code §731(c)(2). The term "Securities of the Employer" means securities of the Employer as defined in Code §402(e)(4)(E)(ii).

(f) **Certain Corrective Amendments.** To satisfy the minimum coverage requirements of Code §410(b), the nondiscriminatory amount requirement of Regulation §1.401(a)(4)-1(b)(2), or the nondiscriminatory plan amendment requirement of Regulation §1.401(a)(4)-1(b)(4), a corrective amendment may retroactively increase allocations for Employees who benefited under the Plan during the Plan Year being corrected, or may grant allocations to Employees who did not benefit under the Plan during the Plan Year being corrected. To satisfy the nondiscriminatory current availability requirement of Regulation §1.401(a)(4)-4(b) for benefits, rights or features, a corrective amendment may make a benefit, right or feature available to Employees to whom it was previously not available. A corrective amendment will not be effective prior to the date of adoption unless it satisfies the applicable requirements of Regulation §1.401(a)(4)-11(g)(3)(ii) through (vii), including the requirement that, in order to be effective for the preceding Plan Year, such amendment must be adopted by the 15th day of the 10th month after the close of the preceding Plan Year.

**11.2  Termination By Sponsoring Employer.** The Sponsoring Employer at any time can terminate the Plan and Trust in whole or in part in accordance with the following provisions:

(a) **Termination of Plan.** The Sponsoring Employer can terminate the Plan and Trust by filing written notice thereof with the Administrator and Trustee and by completely discontinuing contributions to the Plan. Upon any such termination, the Trust Fund will continue to be administered until complete distribution has been made to the Participants and other payees, which distribution must occur as soon as administratively feasible after the termination of the Plan, and must be made in accordance with the provisions of Article 5 of the Plan, including Section 5.6 where applicable. However, the Administrator may elect not to distribute the Accounts of Participants and other payees upon termination of the Plan but instead to transfer the entire Trust Fund assets and liabilities attributable to this terminated Plan to another qualified plan maintained by the Employer or its successor.

(b) **Vesting Requirement Upon Complete Termination or Upon Discontinuance of Contributions.** Upon a complete termination of the Plan or upon a complete discontinuance of contributions under the Plan, the following Participants will have a 100% Vested Interest in their Participants' Accounts: (1) Participants who are affected by such complete termination or, if applicable, such complete discontinuance of contributions; (2) Participants who have not Terminated Employment with the Employer; and (3) Participants who have Terminated Employment with the Employer and who (A) have not incurred five consecutive Breaks in Service and (B) have not received a complete distribution of their Vested Aggregate Account balance.

(c) **Vesting Requirement on Partial Termination.** Upon partial termination of the Plan, only a Participant who has Terminated Employment because of the event which causes the partial termination but who has not incurred five consecutive Breaks in Service will have a 100% Vested Interest in his or her unpaid Participant's Account as of the date of partial termination.

(d) **Discontinuance of Contributions.** The Sponsoring Employer may at any time completely discontinue contributions to the Plan but continue the Plan in operation in all other respects, in which event the Trust Fund will continue to be administered until eventual full distribution of all benefits has been made to the Participants and other payees in accordance with Article 5 after their Termination of Employment for any reason. Discontinuance of contributions without an additional notice of termination from the Sponsoring Employer to the Administrator and Trustee will not constitute a termination of the Plan.

**11.3  Merger or Consolidation.** This Plan may not be merged or consolidated with, nor may any of its assets or liabilities be transferred to, any other plan, unless the benefits payable to each Participant if the Plan was terminated immediately after such action would be equal to or greater than the benefits to which such Participant would have been entitled if this Plan had been terminated immediately before such action. For purposes of this Section, the term "Code §410(b)(6)(C) Transaction" means an asset or stock acquisition, merger, or similar transaction involving a change in the employer of the employees of a business. If the Employer acquires another company in a Code §410(b)(6)(C) Transaction, employees of the acquired company may be excluded from this Plan regardless of the provisions of Section 2.1 during the period beginning on the date of the transaction and ending on the last day of the Plan Year that begins after the date of the Code §410(b)(6)(C) Transaction.

- 62 -

CONFIDENTIAL

AIG_00000501

11.4  **Plan-to-Plan Elective Transfers.** To permit Participants to consolidate all qualified defined contribution accounts into a single plan for investments, distributions, loans and other administrative purposes, the Sponsoring Employer may permit Participants to transfer amounts to and from this Plan under the following rules:

(a)  **Transfers to This Plan.** If permitted by the Sponsoring Employer and subject to the provisions of this Section, then a Participant may request that such Participant's entire account balance (both the vested interest and the non-vested interest) in another qualified defined contribution plan maintained by the Sponsoring Employer (or an Adopting Employer) be transferred in cash or in property into this Plan. Such transferred amount into this Plan will be considered a Transfer Contribution.

(b)  **Transfers from This Plan.** If permitted by the Sponsoring Employer, then a Participant may request that such Participant's Account balance (both the Vested Interest and the Non-Vested Interest) in this Plan be transferred in cash or in property into another qualified defined contribution plan of the Sponsoring Employer (or an Adopting Employer).

(c)  **Limitation on Transfers.** A transfer into or from this Plan pursuant to this Section is only permitted if the Participant is ineligible to actively participate at the same time in the Sponsoring Employer's (or an Adopting Employer's) plan from which the transfer is being made (the transferor plan) and the Sponsoring Employer's (or an Adopting Employer's) plan into which the transfer is being made (the transferee plan).

(d)  **Plan Accounts.** Transfer Contributions from another qualified defined contribution plan into this Plan will maintain all attributes with which such contributions were imbued in the other defined contribution plan (including the distribution limitations described in Regulation §1.401(k)-1(d)). Such Transfer Contributions will be accounted for separately in this Plan.

(e)  **Protected Benefits.** Any Transfer Contributions into this Plan that have benefits, rights and features (including, but not limited to, certain optional forms of benefit payments, such as annuities) required to be preserved by Code §411(d)(6) will continue to be preserved and protected in this Plan to the extent required by Code §411(d)(6). The Sponsoring Employer (or an Adopting Employer) reserves the right to eliminate any benefits, rights and features (including, but not limited to, certain optional forms of benefit payments) of any Transfer Contributions into this Plan, to the extent permitted under Code §411(d)(6).

(f)  **Vesting.** Transfer Contributions into this Plan must Vest at least as rapidly under this Plan (the transferee plan) as they would Vest under the plan from which the transfer is being made (the transferor plan), as if the transfer had not occurred. If this Plan is the transferee plan and the Vesting schedule under the transferor plan for a specific source of transferred amounts is less favorable than the Vesting schedule that applies in this Plan, the Administrator may apply, in a non-discriminatory manner, the Vesting schedule of this Plan to that portion of the Transfer Contributions.

(g)  **Transfer Requests Subject to Administrative Approval.** Any transfer into or from this Plan must be made in cash or property acceptable to the Trustee. Any benefits, rights and features of a Transfer Contribution required to be protected by Code §411(d)(6) must be acceptable to and approved by the Administrator.

(h)  **Application of this Section.** The provisions of this Section will apply to all Transfer Contributions, regardless of whether a Transfer Contribution was an elective transfer initiated by the Participant.

- 63 -

CONFIDENTIAL

AIG_00000502

**Article 12**
**Miscellaneous Provisions**

**12.1    No Contract of Employment.** Except as otherwise provided by law, neither the establishment of this Plan, any modification hereto, the creation of any fund or account, nor the payment of any benefits, will be construed as giving any Participant or other person any legal or equitable rights against the Employer, any officer or Employee thereof, or the Trustee, except as herein provided. Further, under no circumstances will the terms of employment of any Participant be modified or otherwise affected by this Plan.

**12.2    Title to Assets.** No Participant or Beneficiary will have any right to, or any interest in, any assets of the Trust upon separation from service with the Employer, Affiliated Employer, or Adopting Employer, except as otherwise provided by the terms of the Plan.

**12.3    Qualified Military Service.** Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code §414(u).

**12.4    Fiduciaries and Bonding.** Fiduciaries (including Named Fiduciaries) of the Plan will have only those powers and duties specifically given to them under the terms of this Plan. Every fiduciary other than a bank, an insurance company, or a fiduciary of an Employer which has no common-law employees, will be bonded in an amount not less than 10% of the amount of funds under the fiduciary's supervision, but the bond will not be less than $1,000 or more than $500,000 or such other amount that may be required by law. The bond will provide protection to the Plan against any loss for acts of fraud or dishonesty by a fiduciary acting alone or in concert with others. The cost of such bond will be an expense of either the Employer or the Trust, at the election of the Sponsoring Employer.

**12.5    Severability of Provisions.** If any Plan provision is held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of this Plan, and this Plan will be construed and enforced as if such provision had not been included.

**12.6    Interpretation of the Plan and Trust.** The following provisions apply to the interpretation of the Plan and Trust:

(a)    **Names.** Names that are used in this Plan should be used consistently in any appendixes, policies, procedures, and/or any other documents which are legally binding upon the Plan. However, in documents that are not considered to be part of this Plan, appendixes, policies or procedures that are not legally binding upon the Plan; and that may be are distributed to individuals (such as the SPDs, SMMs, notices, and election forms), names may use plain English terms.

(b)    **Gender.** Words that are used in the masculine gender may be construed as though they are also used in the feminine or neuter gender, where applicable (and vice versa).

(c)    **Number.** Words that are used in the singular form may be construed as though they are also used in the plural form, where applicable (and vice versa).

(d)    **Headings and Subheadings.** Headings and subheadings are inserted for convenience of reference. Headings and subheadings constitute no part of this Plan and/or Trust and are not to be considered in its construction or interpretation.

(e)    **Single Subparagraphs.** This Plan and/or Trust may have Sections and/or paragraphs that contain a single subparagraph; such document construction will not constitute a Scrivener's error.

(f)    **Application of Law.** This Plan and/or Trust will be construed and interpreted in accordance with the Code and ERISA. However, if the Plan and/or Trust needs to be construed and interpreted according to a State's or Commonwealth's laws (to the extent that such laws are not preempted by the provisions of the Code and ERISA), then this Plan and/or Trust will be construed and interpreted according to the laws of the State and Commonwealth in which the Sponsoring Employer maintains its principal place of business.

(g)    **Effective Dates.** This Plan and/or Trust contains various effective dates, which include, but are not limited to: (1) the effective date of the Plan and, if applicable, the effective date of the amended and restated Plan; and (2) the effective dates of legally required or permitted provisions.

- 64 -

CONFIDENTIAL

**12.7    Costs of Legal Action.** Unless otherwise prohibited by law, either the Sponsoring Employer or the Trust, in the sole discretion of the Sponsoring Employer, will reimburse the Trustee and/or the Administrator for all costs, attorneys fees and other expenses associated with any claim, suit or proceeding.

**12.8    Qualified Plan Status.** This Plan and Trust are intended to be a qualified retirement plan under the provisions of Code §401(a) and §501(a).

**12.9    Mailing of Notices to Administrator, Employer or Trustee.** Notices, documents or forms required to be given to or filed with the Administrator, the Employer or the Committee will be either hand delivered or mailed by first class mail, postage prepaid, to the Committee or the Employer, at the Employer's principal place of business. Any notices, documents or forms required to be given to or filed with the Trustee will be either be hand delivered or mailed by first class mail, postage prepaid, to the Trustee at its principal place of business.

**12.10    Participant Notices and Waivers of Notices.** Whenever written notice is required to be given under the terms of this Plan, such notice will be deemed to be given on the date that such written notice is either hand delivered to the recipient or deposited at a United States Postal Service Station, first class mail, postage paid. Notice may be waived by any party entitled to receive written notice concerning any matter under the terms of this Plan.

**12.11    No Duplication of Benefits.** There will be no duplication of benefits under the Plan because of employment by more than one participating Employer.

**12.12    Evidence Furnished Conclusive.** Anyone required to give evidence under the terms of the Plan may do so by certificate, affidavit, document or other information that the person to act in reliance may consider pertinent, reliable and genuine, and to have been signed, made or presented by the proper party or parties. The fiduciaries of the Plan will be fully protected in acting and relying upon any evidence described under this Section.

**12.13    Release of Claims.** Any payment to a Participant or Beneficiary, his or her legal representative, or to a guardian or committee appointed for such Participant or Beneficiary, will, to the extent thereof, be in full satisfaction of all claims hereunder against the Administrator and the Trustee, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as determined by the Administrator or the Trustee.

**12.14    Discontinued Contributions.** Any Participants' Accounts that were established for specific contributions to the Plan which are (or were) subsequently discontinued will continue to be administered in accordance with the Vesting and Forfeiture provisions of the Plan in effect on the date such contributions are (or were) discontinued.

**12.15    Multiple Copies of Plan And/or Trust.** This Plan may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same Agreement and will be binding on the respective successors and assigns of the Employer and all other parties.

**12.16    Limitation of Liability and Indemnification.** In addition to and in furtherance of any other limitations provided in the Plan, and to the extent permitted by applicable law, the Employer will indemnify and hold harmless its board of directors (collectively and individually), if any, the Administrative/Advisory Committee (collectively and individually), if any, and its officers, Employees, and agents against and with respect to any and all expenses, losses, liabilities, costs, and claims, including legal fees to defend against such liabilities and claims, arising out of their good-faith discharge of responsibilities under or incident to the Plan, excepting only expenses and liabilities resulting from willful misconduct. This indemnity will not preclude such further indemnities as may be available under insurance purchased by the Employer or as may be provided by the Employer under any by-law, agreement, vote of shareholders or disinterested directors, or otherwise, as such indemnities are permitted under state law. Payments with respect to any indemnity and payment of expenses or fees under this Section will be made only from assets of the Employer, and will not be made directly or indirectly from assets of the Trust.

**12.17    Written Elections and Forms.** Whenever the word "written" or the words "in writing" are used, such words will include any method of communication permitted by the DOL with respect to such documentation. In a similar manner, the word "form" will include any other method of election permitted under current law. Such alternative methods will include, but not be limited to, electronic modes to the extent permitted by law.

- 65 -

CONFIDENTIAL

AIG_00000504

**12.18  Assignment and Alienation of Benefits.** Except as may otherwise be permitted under Code §401(a)(13)(C), as may otherwise be permitted under a Qualified Domestic Relations Order as provided in Section 8.10, or as may otherwise be permitted under Section 7.1 relating to loans to Participants, no right or claim to, or interest in, any part of the Trust Fund, or any payment therefrom, will be assignable, transferable, or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment, attachment, execution, or levy of any kind, and the Trustees will not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute, or anticipate the same, except to the extent required by law.

**12.19  Exclusive Benefit Rule.** All contributions made by the Employer or an Affiliated Employer to the Trust Fund will be used for the exclusive benefit of the Participants who are Employees of the Employer or Affiliated Employer and for their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining the Plan. All contributions made by an Adopting Employer who is not an Affiliated Employer will be used for the exclusive benefit of the Participants who are Employees of the Adopting Employer and for their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the Adopting Employers' proportionate costs of maintaining the Plan.

**12.20  Prior Provisions of Amended and Restated Plans.** If the Plan's effective date is prior to the first day of the first Plan Year beginning on or after January 1, 2002 and this is an amendment and restatement of the Plan, then the provisions of the prior Plan document in effect prior to the first day of the first Plan Year beginning on or after January 1, 2002 will apply to this Plan; however, if any provisions of the prior Plan document contradict any provisions of this Plan, then the provisions of this Plan will apply.

**12.21  Dual and Multiple Trusts.** Plan assets may be held in two or more separate trusts, or in trust and by an insurance company or by a trust and under a custodial agreement. Plan assets may also be held in a common trust.

**12.22  Loss of Volume Submitter Status.** Notwithstanding any provision in this Plan to the contrary, if this Plan is provided to the Sponsoring Employer by a third party (e.g., a law firm, an actuarial firm, an insurance company, an accounting firm, a third party administration firm, etc.) rather than by the Volume Submitter Sponsor directly, and (a) such third party subsequently terminates its business relationship with the Volume Submitter Sponsor for any reason, (b) the Volume Submitter Sponsor subsequently terminates its business relationship with such third party for any reason, or (c) the Sponsoring Employer subsequently terminates its business relationship with such third party, then this Plan will no longer be considered a pre-approved volume submitter plan, but rather will be considered an individually designed plan, and the Volume Submitter Sponsor will have no further responsibilities or obligations with respect to the Plan or the Sponsoring Employer.

- 66 -

CONFIDENTIAL

AIG_00000505

**This Plan and Trust have** been executed by the Sponsoring Employer and the Trustees as of the day, month and year set forth on page 1 of this Agreement.

**American Investment Group of New York, L.P.**

By _____

Robert Crema, Partner

**Trustees**

_____

Robert Crema, as Trustee

_____

Elaina Crema, as Trustee

- 67 -

AIG_00000506

CONFIDENTIAL

AIG_00000507