# Exhibit 98

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2              CASE NO.  18-MD-2865 (LAK)

 3      _____
                                                 )
 4      IN RE:                                   )
                                                 )
 5      CUSTOMS AND TAX ADMINISTRATION OF        )
        THE KINGDOM OF DENMARK                   )
 6      (SKATTEFORVALTNINGEN) TAX REFUND         )
        SCHEME LITIGATION                        )
 7                                               )
        This document relates to case nos.       )
 8      19-cv-01783; 19-cv-01788; 19-cv-01794;   )
        19-cv-01798; 19-cv-01918                 )
 9      _____)

10

11

12

13

14

15         REMOTE VTC VIDEOTAPED DEPOSITION UNDER ORAL

16                      EXAMINATION OF

17                       ROBERT CREMA

18                  DATE: February 9, 2021

19

20

21

22

23

24

25           REPORTED BY:  MICHAEL FRIEDMAN, CCR
```

Robert Crema - February 9, 2021

Page 26

```
1    trading as well?
2         A    No.
3         Q    Did Acer have specialists in
4    dividend arbitrage trading?
5         A    Well, we were a small firm.  It was
6    always usually one person that traded.
7         Q    And who was that one person?
8         A    What specific year?
9         Q    That's a good question.  Let's do
10   2012 through 2014.
11        A    It would be Stacey Kaminer.
12        Q    Okay.  And prior to that, was
13   someone else responsible for the trading
14   aspects of the dividend arbitrage?
15        A    Yes.  Daniel Kaminer.
16        Q    Okay.  And did Stacey Kaminer take
17   over after Mr. Kaminer passed away?
18        A    That is correct.
19        Q    Okay.  And when was that?  Sometime
20   around 2003?
21        A    Yeah, yes.
22        Q    Okay.  Were you managing partner of
23   Acer at some point?
24        A    Managing partner?  Managing
25   partner?
```

```
1              MR. BLESSINGTON:  Object to the
2         form.  You can answer.
3         A    Correct.
4              THE WITNESS:  I'm sorry.
5              MR. BLESSINGTON:  That's all right.
6         A    Yes, yes.
7         Q    Okay.
8         A    Just wanted to move the whole show
9    over to the new firm.
10        Q    Okay.
11        A    Not reinvent the wheel or anything.
12   Same business.
13        Q    Right.  If it ain't broke, why fix
14   it?
15        A    Yeah, exactly.
16        Q    So you mentioned earlier that ED&F
17   had the "sellers."
18             What did you mean by that?
19        A    Had the -- well, again, to my
20   knowledge, and I would defer to Stacey
21   Kaminer on this, because again, I didn't do
22   the trading.
23             But obviously there was -- they're
24   clearing the trade, so we had to buy the
25   stock from somebody.  And I'm assuming that
```

1       record.
2            MR. OXFORD:  Mark this as 2086.
3            (Whereupon the above mentioned was
4       marked for Identification.)
5       Q    Mr. Crema, you were aware, were you
6    not, that the ultimate goal of conducting a
7    dividend arbitrage strategy, including one in
8    Danish shares, was to submit a refund to the
9    Danish government to get withholding tax
10   paid?
11      A    Correct.
12      Q    And are you aware whether such
13   applications were actually made on behalf of
14   your AIG plan?
15      A    Yes.
16      Q    Okay.  And how is it that you're
17   aware that happened?
18      A    How am I aware that it happened?  I
19   have no reason to think that it didn't
20   happen.
21           We did the trade and the reclaim
22   was processed.
23      Q    Okay.  And when you say "we did the
24   trades," what do you mean by that?
25      A    Stacey bought -- had bought the

1    stock, and we were long over their record
2    date.
3         Q    Okay.  And other than information
4    conveyed to you by Ms. Kaminer, do you have
5    any independent knowledge that your plan did,
6    in fact, own the shares that it represented
7    to the Danish government it owned?
8              MR. BLESSINGTON:  Object as to
9         form.  You may answer.
10        A    Yeah, we owned the shares.
11        Q    Okay.  And what's the basis of your
12   testimony that your plan owned the shares it
13   claimed to have owned?
14        A    I guess it would be on the
15   statement, which I didn't necessarily read.
16   But it should be on the statement that the
17   transaction was done.
18        Q    Okay.  So let's look at one,
19   actually.
20             So do you have Exhibit 2086 up in
21   front of you?
22        A    Yes.
23        Q    Okay.  So the first page of this is
24   a letter from Goal to SKAT.
25             Correct?

Robert Crema - February 9, 2021

Page 174

```
 1        A     From Goal to SKAT, yes.
 2        Q     Okay.  And submitting a tax reclaim
 3    form for your AIG plan?
 4        A     Right.  Hold on.  Let me read it.
 5              (Witness reviewing.)
 6              Okay.
 7        Q     Okay.  Have you seen this document
 8    before, sir, either the cover letter from
 9    Goal or any of the attachments?
10        A     I might have.  I don't have any
11    recollection of this particular.
12        Q     Okay.
13        A     I might have.
14        Q     Did you review these documents
15    before they were submitted to SKAT?
16              MR. BLESSINGTON:  Object as to
17        form.
18        A     No.
19        Q     Okay.  So turning your attention to
20    the third page, which is the ED&F Man tax
21    voucher?
22        A     Okay.  I think I'm there.
23        Q     All right.  Was that the document
24    you were referring to earlier?
25        A     How -- in what context did I refer
```

Robert Crema - February 9, 2021

Page 175

```
1     to this?
2          Q    You referred to a document shortly
3     after our last break.  But we don't need to
4     do it that way.  We can just do it the direct
5     way.
6               So this tax voucher represents that
7     your plan held 1.5 million shares of
8     Coloplast over certain dates in December of
9     2014.
10              Correct?
11         A    Right.
12         Q    And other than what's written here
13    on the page, and reading this document, do
14    you have any independent basis to say, one
15    way or another, that your plan actually held
16    those shares on those dates?
17              MR. BLESSINGTON:  Object as to
18         form.  You can answer.
19         A    No.  Again, I would rely on the
20    statement from ED&F Man.
21         Q    Okay.  Beyond looking at the
22    statement from ED&F Man, do you have any
23    other knowledge, one way or the other, that
24    your plan, in fact, owned the shares that are
25    reflected here?
```

Robert Crema - February 9, 2021

Page 176

```
 1        A    No.
 2             MR. BLESSINGTON:  I'm going to
 3        object as to form.  I just want to make
 4        it clear.  When you say "statement,"
 5        what are you referring to?
 6             THE WITNESS:  The statement that
 7        ED&F Man would send out addressed to the
 8        pension fund, or to Stacey, to someone.
 9        The paper acknowledgment that that trade
10        was effected and settled.
11        Q    Okay.  And did you review that,
12   sir?
13        A    Did I review it?  No.
14        Q    Yes.
15        A    No.
16        Q    Okay.  So other than -- other than
17   conversations with Ms. Kaminer and reviewing
18   this tax voucher document that is part of
19   Exhibit 2086, do you have any independent
20   knowledge, one way or the other, whether your
21   plan, in fact, owned the shares that are
22   reflected on this voucher?
23             MR. BLESSINGTON:  Object as to
24        form.  You may answer.
25        A    No.
```

# GREGORY EDWARDS LLC
## WORLDWIDE COURT REPORTING
### GLOBAL REACH WITHOUT COMPROMISE

<u>Via US Mail</u>

John McGoey, Esq.
Hughes Hubbard & Reed
One Battery Park Plaza
New York, NY 10004

Re:     IN RE:
CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

CASE NO. 18-MD-2865 (LAK)

Dear Mr. McGoey;

    In connection with the deposition taken on February 9, 2021 in the above mentioned matter; attached please find the notarized page, signature page and errata sheets as executed by Robert Crema.

    If you need any further assistance, please do not hesitate to contact our office.

Sincerely,

Rodney Chappin

cc:
Counsel of Record with Attachments

## DEPOSITION ERRATA SHEET

Page No. 16   Line No. 10
Change: "LLP" to "LLC"
Reason for change: Clarification regarding identification of Acer Investment Group as a limited liability company and not a partnership

Page No. 24   Line No. 11
Change: "Yeah, yes" to "No"
Reason for change: Correcting testimony due to confusion at to use and meaning of the word "proprietary."

Page No. 27   Line No. 6
Change: Change "I believe so" to "No"
Reason for change: Clarification regarding identification of Acer Investment Group as a limited liability company and not a partnership

Page No. 27   Line No. 14
Page No. 28   Line No. 15
Change: "Partner" to "Member"
Reason for change: Clarification regarding identification of Acer Investment Group as a limited liability company and not a partnership

Page No. 28   Line No. 13
Change: "Bryan" to "Brian"
Reason for change: Transcription error

Page No. 29   Line No. 7
Change: "Yes" to "No, PACT Inc. is also a minority owner of Acer Investment Group, LLC"
Reason for change: Clarification regarding ownership of Acer Investment Group, LLC

Page No. 29   Line No. 12
Change: Add to start of answer "Other than PACT Inc.'s minority interest."
Reason for change: Clarification regarding ownership of Acer Investment Group, LLC

Page No. 30   Line No. 15
Page No. 41   Line No. 14
Page No. 113  Line No. 12
Page No. 113  Line No. 15
Page No. 123  Line No. 21
Change: "drip" to "DRIP"
Reason for change: Transcription error/clarification ("DRIP" is an acronym)

2

Page No. 46   Line No. 2
Change: "No, not at all times." to "No."
Reason for change: Clarifying testimony consistent with later testimony at Page No. 46, Line Nos. 7-23.

Page No. 46   Line No. 5
Change: "It's possible. I don't recall, but it's possible." to "No."
Reason for change: Clarifying testimony consistent with later testimony at Page No. 46, Line Nos. 7-23.

Page No. 48   Line Nos. 12–13
Change: Delete "pension funds and"
Reason for change: Clarification that pension plans are not Acer's clients.

Page No. 52   Line No. 17
Change: "That correct." to "That is correct."
Reason for change: Transcription error

Page No. 74   Line No. 6
Change: "a" to "one"
Reason for change: Transcription error

Page No. 74   Line No. 25
Page No. 75   Line No. 7
Page No. 76   Line No. 12
Page No. 77   Line No. 22
Page No. 93   Line No. 11
Page No. 94   Line No. 15
Page No. 94   Line No. 16
Page No. 95   Line No. 9
Page No. 95   Line No. 24
Change: "NewSong" to "Newsong"
Reason for change: Spelling

Page No. 78   Line No. 24
Page No. 93   Line No. 18
Change: "That's correct." to "That's correct as to the church. The plan was not a client."
Reason for change: Clarification that pension plans are not Acer's clients.

Page No. 160  Line No. 22
Change: "unregulated" to "regulated"
Reason for change: Transcription error

Page No. 206  Line No. 17
Change: "1~ o'clock" to "1 o'clock"
Reason for change: Typographical error

3

DATED: MARCH 24, 2021

_____
ROBERT CREMA

STATE OF FLORIDA
COUNTY OF COLLIER

The foregoing instrument was acknowledged before me in my physical presence / via remote live video this 24 day of March, 2021, by ROBERT CREMA, who is personally known to me or provided sufficient identification, License (type of identification).

_____
NOTARY PUBLIC

(Seal)

THERESA A. CRUZ
Notary Public - State of Florida
Commission # GG 103174
My Comm. Expires Sep 4, 2021
Bonded through National Notary Assn.

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Master docket No. 18-MD-2865(LAK)

IN RE:

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION,

## DECLARATION UNDER PENALTY OF PERJURY

I, Robert Crema, declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter on February 9, 2021, or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the 24 day of March, 2021

*/s/ Robert Crema/*
ROBERT CREMA