# Exhibit 139

**CL-2018-000297, CL-2018-000404, CL-2018-000590 & CL-2019-000487**
**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**
**QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

31 Jul 2020

CL-2018-000297

**The Hon. Mr Justice Andrew Baker**

**(In public, by remote hearing conducted via Microsoft Teams)**

**16 July 2020**

**BETWEEN:**

## SKATTEFORVALTNINGEN

**(the Danish Customs and Tax Administration)**

**Claimant**

**-and-**

**SOLO CAPITAL PARTNERS LLP (in special administration) & OTHERS**

**Defendants**

_____

**JULY 2020 CMC ORDER**

_____

**UPON** there being four Claims, CL-2018-000297 (the "**First Claim**"), CL-2018-000404 (the "**Second Claim**"), CL-2018-000590 (the "**Third Claim**") and CL-2019-000487 (the "**Fourth Claim**"), which were consolidated by (between them) the Orders of Mr Justice Jacobs dated 27 June 2018, Mrs Justice Cockerill dated 12 October 2018 and Mr Justice Andrew Baker dated 11 May 2020 (the "**Consolidated Proceedings**").

**AND UPON** the Claimant's claims being stayed as against the 1st to 4th, 15th to 16th and 33rd Defendants to the First Claim (the "**Stayed Parties**").

1

**AND UPON** default judgment having been entered as to liability against the 4th and 5th Defendants to the Third Claim (the "**Polaris Companies**"), the 17th, 24th, 67th and 68th Defendants to the First Claim, and the 22nd Defendant to the Second Claim.

**AND UPON** the Order of Mr Justice Andrew Baker dated 16 January 2020 setting Case Management Directions upon the January 2020 CMC (the "**January 2020 CMC Order**").

**AND UPON** a Case Management Conference listed for 25 to 27 March 2020 being adjourned by the Order of Mr Justice Andrew Baker dated 25 March 2020 on the terms set out in that order (the "**March 2020 CMC Adjournment Order**").

**AND UPON** a Case Management Conference heard on 14 to 16 July 2020 (the "**July 2020 CMC**").

**AND UPON** the January 2020 CMC Order and the March 2020 CMC Adjournment Order (between them) providing for the determination, if required, of the following matters at the July 2020 CMC: (a) whether a trial of preliminary issues or ways to determine the issues in the First to Fourth Claims other than in a single trial or the two trials proposed at the January 2020 CMC would be feasible; (b) the Claimants' custodians, including the issue whether the Claimant is obliged to give disclosure of documents in the possession of other ministries or authorities of the Kingdom of Denmark; and (c) the terms of Issues for Disclosure 15A-B which concern the Claimant's disclosure.

**AND UPON** a consent order between the Claimant and the 7th and 16th Defendants in the Second Claim ("**Ms Brown and Mr Brown**") pursuant to which it was ordered that the determination of the disclosure-related issues in relation to Ms Brown and Mr Brown be determined at the July 2020 CMC.

**AND UPON** the Court granting permission on 20 April 2020: (a) to the Claimant (in part) to rely on expert evidence of Professor Waage on the issues of Danish law posed by paragraphs 4(a)-(d) and (f) of the Expert Report of Professor Waage dated 9 April 2020; (b) to the Defendants to rely on expert evidence in response; and (c) to the Claimant to rely on expert evidence in reply.

**AND UPON** certain issues of costs being reserved to the July CMC by the orders of Mr Justice Andrew Baker dated 20 April 2020, 2 June 2020 and 24 June 2020.

**AND UPON** the Polaris Companies having stated an intention to make an application to set aside the default judgments obtained against them under CPR r.13.3 and upon the Claimant and the Polaris Companies having agreed the matters set out in paragraphs 22 and 23 of this order.

**AND UPON** reading: (a) the evidence contained in the third witness statement of Mr Falkner dated 12 June 2020, the third witness statement of Mr Fineman dated 3 July 2020 and the first witness statement of Mr Frederiksen dated 3 July 2020; and (b) the third and fourth expert reports of Professor Waage dated 8 April 2020 and 3 July 2020, the first expert report of Professor Petersen dated 12 June 2020 and the first expert report of Professor Pedersen dated 12 June 2020.

**AND UPON** a detailed agenda being produced, at the direction of Mr Justice Andrew Baker, which was approved by the Court on 7 July 2020.

**AND UPON** hearing at the July 2020 CMC (which was heard in public by remote hearing): (a) Counsel for the Claimant; (b) Counsel for the following Defendants (adopting the terms used in their skeleton arguments): Goal, Ms Stratford, the PS/GoC Defendants, the DWF Defendants, Messrs Knott and Hoogewerf, ED&F Man, the Sanjay Shah Defendants; (c) Mr Rosen on behalf of Acupay; and (d) Ms Brown on behalf of herself and Mr Brown.

3

**IT IS ORDERED THAT:**

**Defendants to whom this order applies**

1.    This Order shall apply to all Defendants in the Consolidated Proceedings save for:

   a)    The Stayed Parties; and

   b)    The 23rd Defendant in the Second Claim.

**Trial directions**

Revenue Rule Trial

2.    A trial of Issue 1 in the draft list of preliminary issues in Annex B to this Order ("**Draft List of Preliminary Issues**") shall be listed for Hilary term of 2021 with a time estimate of six days (including two days for pre-reading) to be reserved to Mr Justice Andrew Baker or, in the alternative, Mr Justice Foxton ("**Revenue Rule Trial**").

3.    The following directions shall apply in relation to the Revenue Rule Trial:

   a)    The DWF Defendants and the Sanjay Shah Defendants shall each use their best endeavours to file and serve their respective written submissions for the Revenue Rule Trial ("**Revenue Rule Submissions**") by 4pm on 18 September 2020.

   b)    In any event:

   i)    the DWF Defendants shall file and serve their Revenue Rule Submissions by 4pm on 25 September 2020; and

   ii)    the Sanjay Shah Defendants shall file and serve their Revenue Rule Submissions by 4pm on 2 October 2020.

c) Subject to sub-paragraph (d) below, all others Defendants shall, if so advised, file and serve their Revenue Rule Submissions by 4pm on 16 October 2020.

d) Acupay shall, if so advised, file and serve its Revenue Rule Submissions by 4pm on 30 October 2020.

e) SKAT shall file and serve its Revenue Rule Submissions by 4pm on 27 November 2020.

4. Skeleton arguments shall be exchanged prior to the Revenue Rule Trial in accordance with the following timetable:

a) The Defendants, if so advised, shall file and serve their skeleton arguments not later than 1pm five clear days before the Judge's reading period for the Revenue Rule Trial commences.

b) The Claimant shall file and serve its skeleton argument not later than 1pm on the day before the Judge's reading period for the Revenue Rule Trial commences.

5. The outcome of the Revenue Rule Trial shall be binding on all parties irrespective of whether or not a party filed Revenue Rule Submissions or a skeleton argument or participated in the Revenue Rule Trial, the corollary also being that any party shall be entitled to seek permission to appeal and/or to exercise any appeal rights irrespective of prior participation in the Revenue Rule Trial.

Validity Trial

6. A trial of Issues 2 to 9 in the Draft List of Preliminary Issues, the final terms of which shall be settled in accordance with paragraph 7 below, shall be listed for Michaelmas term of 2021 with a time estimate of 4 to

6 weeks (inclusive of pre-reading) to be reserved to Mr Justice Andrew Baker (the "**Validity Trial**").

7.    The following directions shall apply in respect of the Validity Trial:

a)    Any Defendant intending to amend their Response to the Claimant's Further Particulars Regarding the Validity of the WHT Refund Applications ("**Validity Defence**") shall use best endeavours to provide the Claimant with a draft of their proposed amendments by 4pm on 31 July 2020.

b)    Failing agreement, any application for permission to make proposed amendments to any Validity Defence shall be determined by the Court at the CMC listed on 21 September 2020.

c)    The Claimant shall serve Replies to each Validity Defence, or any amended Validity Defence, by 4pm on 16 October 2020.

d)    A further Case Management Conference to consider directions relating to the Validity Trial shall be listed for December 2020 with a time estimate of 1 day to be reserved to Mr Justice Andrew Baker (the "**First Validity Trial CMC**").

e)    In advance of the First Validity Trial CMC:

i)    The Claimant and the Defendants shall use reasonable endeavours to agree any drafting changes to Issues 2 to 9 of the Draft List of Preliminary Issues, any such proposed variation(s) to be submitted to Mr Justice Andrew Baker for approval by 4pm 13 November 2020.

ii)    The Claimant and the Defendants shall use reasonable endeavours to agree: (1) the field(s) in which expert evidence

6

is reasonably required; and (2) the issues in respect of each field of expertise.

iii) The Claimant and ED&F Man shall use reasonable endeavours to agree (1) a draft schedule of agreed facts (the "**ED&F Man Agreed Facts Schedule**") and (2) a draft schedule of the facts in dispute between the Claimant and ED&F Man (the "**ED&F Man Disputed Facts Schedule**") relevant or potentially relevant in each case to the determination of Issues 6.4, 8 and 9 of the Draft List of Preliminary Issues at the Validity Trial in relation to the ED&F Man Applications identified in Issue 9 (the "**Relevant ED&F Man Applications**").

f) A further Case Management Conference shall be listed for the first available week after 31 March 2021 reserved to and before Mr Justice Andrew Baker with a time estimate of 1 day (the "**Second Validity Trial CMC**").

g) Prior to the Second Validity Trial CMC, the Claimant and ED&F Man shall consider and use reasonable endeavours to agree the basis of determination of Issues 6.4, 8 and 9 of the Draft List of Preliminary Issues at the Validity Trial in relation to the Relevant ED&F Man Applications comprising:

i) the ED&F Man Agreed Facts Schedule (to the extent not already agreed and/or determined at the First Validity Trial CMC);

ii) the ED&F Man Disputed Facts Schedule (to the extent not already agreed and/or determined at the First Validity Trial CMC);

7

iii)    the identity and number of sample transactions required to determine Issue 9 (the "**ED&F Man Sample Transactions**");

iv)    a list of the categories of document(s) required to determine Issue 9 by reference to: (1) the ED&F Man Agreed Facts Schedule (2) the ED&F Man Disputed Facts Schedule and (3) the ED&F Man Sample Transactions.

Main Trial

8.    A trial shall be listed to commence on 11 January 2023 with a provisional time estimate of four Commercial Court terms reserved to Mr Justice Andrew Baker or, alternatively, Mr Justice Foxton (or, if Mr Justice Andrew Baker and Mr Justice Foxton are unavailable, another Commercial Court judge) (the "**Main Trial**").

9.    The structure, scope and/or stages of the Main Trial shall be determined by the Court in future CMCs in these proceedings.

Listing of hearings

10.    By 4pm on 31 July 2020, the Claimant and the Defendants shall attend the Commercial Court Listing Office to fix the dates for the Revenue Rule Trial, the Validity Trial, the First Validity Trial CMC and the Second Validity Trial CMC.

**Claimant's Disclosure**

Claimant's request to Relevant Danish Authorities

11.    SKAT shall write to the Danish Ministry of Taxation (Skatteministeriet), Skatteministeriets Interne Revision, the Danish Financial Supervisory

Authority (Finanstilsynet), SØIK, Rigsrevisionen, the Danish Tax Commission (Undersøgelseskommissionen om Skat) and the Intergovernmental Working Group ("**Relevant Danish Authorities**") asking them to assist SKAT by providing it with copies of documents in their possession for disclosure to the Defendants in these proceedings. The letter shall: (a) request that the Relevant Danish Authorities suspend any document deletion policies in place; (b) state that the letter is being written pursuant to this Order in the context of the Consolidated Proceedings; (c) request that the Relevant Danish Authorities provide SKAT in any event with copies of known adverse documents in their possession, if there are any, for disclosure by SKAT in these proceedings, with an explanation as to the nature and extent of any checks or other process undertaken to locate and identify such documents; (d) state what, if any, searches for documents, other than known adverse documents, that would be disclosable by SKAT if they were in SKAT's possession the Relevant Danish Authorities are willing to undertake, with a view to providing copies of such documents to SKAT for disclosure by it in these proceedings.  The form of this letter is to be agreed between the Claimant, the DWF Defendants, the Sanjay Shah Defendants, Messrs Knott and Hoogewerf and Goal (and if not agreed, determined by the Court in the working week commencing 1 September 2020).

12. For the avoidance of doubt, paragraph 11 shall not prejudice the Defendants' right to apply to the Court, at a future stage in these proceedings, for an order that the Kingdom of Denmark as a whole should provide disclosure (including on the basis that the Claimant in these proceedings is the Kingdom of Denmark), or the Claimant's right to oppose such an order (the "**KoD Disclosure Issue**"). Nothing in this Order shall prejudice any consideration of any such issue at a future case management conference or otherwise.

Terms of Issues for Disclosure 15A-B

13.     Issues 15A and 15B in the form expressed in Annex A to this order shall be included in the List of Issues for Disclosure and the Claimant shall give Model D disclosure in relation to them. For the avoidance of doubt, for the purposes of any requests made by the Claimant to the Relevant Danish Authorities for documents by reference to Issues 15A and 15B, references in those issues to "*SKAT and/or the Ministry of Taxation*" shall be read as referring to the Relevant Danish Authority in question.

14.     In respect of any Issue for Disclosure for which Model C or Model D applies, the Claimant shall search for documents in the possession or control of the custodians set out in the list appended to the Claimant's revised DRD dated 31 January 2020, without prejudice to paragraph 12 above and to the Defendants' right to request additional custodians in the event that they in due course seek, and the Court directs, that the Kingdom of Denmark as a whole should provide disclosure.

## Defendants' Disclosure

Acupay Keywords

15.     In respect of any Issue for Disclosure for which Model C or Model D applies, Acupay System LLC shall apply to the data harvested the keywords listed in the Acupay Keywords Spreadsheet filed with this Order (the "**Acupay Keywords Spreadsheet**"), subject to further agreement or order of the Court in the event that the application of any of the keywords proves to be unreasonable or disproportionate.

16.     The Claimant and Acupay shall endeavour to reach agreement in respect of the 17 additional keywords that are in dispute, failing which any outstanding issue(s) shall be referred to Mr Justice Andrew Baker to be

determined on paper in the working week commencing 1 September 2020.

Browns' Disclosure

17. Ms Brown and Mr Brown shall provide disclosure in accordance with the following terms   and their Disclosure Review Documents:

a) Disclosure of documents to be made in accordance with Practice Direction 51U (Disclosure Pilot for the Business and Property Courts).

b) In relation to Ms Brown, the Issues for Disclosure and the Models for Disclosure are those set out in Sheet 1 of the Browns Disclosure Spreadsheet filed with this Order (the "**Browns Disclosure Spreadsheet**").

c) In relation to Mr Brown, the Issues for Disclosure and the Models for Disclosure are those set out in Sheet 2 of the Browns Disclosure Spreadsheet.

d) Model D does not include disclosure of narrative documents.

e) The documents or narrow category of documents to be searched for as part of a Model C Request are those set out in Sheet 3 of the Browns Disclosure Spreadsheet.

f) In respect of any Issue for Disclosure for which Model C or Model D applies, Ms Brown and Mr Brown:

i) shall search for documents within the date ranges of 24 August 2014 to 31 December 2015.

ii) shall apply to the data harvested the keywords listed in the Browns Keywords Spreadsheet filed with this Order (the

11

"**Browns Keywords Spreadsheet**"), subject to: (a) subparagraph (g) below; and (b) further agreement or order of the Court in the event that the application of any of the keywords proves to be unreasonable or disproportionate.

g) If Ms Brown and/or Mr Brown conduct a linear review of documents (or classes of documents) within their control, the keywords set out in the Browns Keywords Spreadsheet need not be applied to those documents.

18. Ms Brown and Mr Brown shall give disclosure by 1 December 2020.

<u>Koi Disclosure</u>

19. Koi Associates Limited (in liquidation) ("**Koi**") shall provide disclosure in accordance with the following terms:

a) Koi shall provide Model A disclosure on the following Issues for Disclosure (as identified in the Disclosure Spreadsheet filed and approved by the Court in the January 2020 CMC Order): 1, 6, 7, 17(a)-(d), 18(a)-(c), 21-24, 26-28, 31, 32, 57(f), 61-65 and 67-67AA.

b) Koi shall provide Model C disclosure on the following Issues for Disclosure: 36, 39, 66 and 68.

c) The Model C request for those issues shall be "*all statements of accounts in relation to all of its bank accounts and foreign exchange accounts (as well as any known adverse documents) for the period September 2012 to December 2015 and including invoices for fees and internal accounting records*".

d) Koi shall provide disclosure by 2 November 2020, with liberty to apply.

<u>Lui Defendants' Disclosure</u>

20.    The date by which the Lui Defendants shall give disclosure, as provided in paragraph 11(e) of Mr Justice Andrew Baker's Order dated 16 January 2020 and amended by paragraph 3(e) of Mr Justice Andrew Baker's Order dated 24 April 2020, shall be further amended to 2 November 2020.

PS/GoC Defendants' Disclosure

21.    The  date by which the PS/GoC Defendants shall give disclosure, as provided in paragraph 11(e) of Mr Justice Andrew Baker's Order dated 16 January 2020 and amended by paragraph 3(e) of Mr Justice Andrew Baker's Order dated 24 April 2020, shall be further amended to 2 November 2020, and with the PS/GoC Defendants to provide in advance of 2 November 2020 any disclosure that is capable of being disclosed at that point in time on (i) 3 August 2020 and (ii) 14 September 2020.

**Polaris Companies**

22.    The Polaris Companies shall provide disclosure in these proceedings in accordance with the disclosure orders against the Sanjay Shah Defendants as if they were Sanjay Shah Defendants.

23.    In relation to the Polaris Companies' proposed application to set aside the default judgments against them (the "**Application**"):

a)    The Court dispenses with the need to file an application notice for the Application, which shall be deemed to have been made on the date of this order.

b)    The Application, together with directions in relation to the filing of evidence, shall be adjourned pending the outcome of the Main Trial or further order of the Court (in respect of which the Claimant and the Polaris Companies shall have liberty to apply), without prejudice to the parties' positions as to the merits of the Application as at the date of the adjournment.

13

## **Ms Brown's and Mr Brown's participation in the proceedings**

24. Apart from giving disclosure, as ordered in paragraph 18 above, Ms Brown and Mr Brown shall not be obliged to take any further steps in these proceedings, unless otherwise ordered by the Court.

25. For the avoidance of doubt:

   a) Insofar as Ms Brown and Mr Brown wish to attend any hearings in these proceedings and/or make submissions they shall be entitled, but not obliged, to do so.

   b) Notwithstanding Ms Brown's and Mr Brown's non-attendance at any stage in these proceedings, they shall be bound by all Orders made in these proceedings.

26. Save as provided in paragraph 28 below, Ms Brown and Mr Brown shall not be copied on regular inter-solicitor correspondence. Insofar as any Orders made in these proceedings affect Ms Brown and Mr Brown, the Claimant shall serve such Orders on Ms Brown and Mr Brown electronically.

27. The Claimant and Ms Brown and Mr Brown shall have liberty to apply in relation to paragraphs 24-27 above.

**Progress update to designated judge**

28.    In mid-March, mid-June, mid-September and mid-December every year until the conclusion of these proceedings, the Claimant by its solicitors shall provide a concise, neutral report to the designated judge, via his Clerk by email, on procedural progress and developments in these proceedings since the July CMC, for the first such report, and since the previous report, for subsequent reports. The report shall be copied by email to legal representatives of the represented parties and the unrepresented parties personally.

**Sanjay Shah Defendants**

29.    In the event that the Sanjay Shah Defendants do not secure further funding at the hearing listed for 31 July 2020, they shall have liberty to apply to vary the dates set out in this Order.

**Costs**

30.    All costs of the KoD Disclosure Issue shall be reserved**.**

31.    The costs of the July 2020 CMC shall otherwise be costs in the case.

32.    The costs of the matters referred to in the orders of Mr Justice Andrew Baker dated 20 April 2020, 2 June 2020 and 24 June 2020 shall continue to be reserved.

**Annex A**

**Issue 15A**

(1) What information did SKAT and/or the Ministry of Taxation have between August 2012 and July 2015 in relation to:

    (a)    Any changes in the number of applications for refunds of WHT?

    (b)    Any changes in the amounts (including both totals and average amounts) being paid out by SKAT in response to such applications?

    (c)    Any changes in the percentage of WHT being ultimately refunded?

    (d)    Any changes in the types of applicants for refunds of WHT, such as their nationality, corporate structure or capitalisation?

    (e)    The percentages of shares in the OMX Copenhagen 20 Index companies which applicants for WHT refunds would have had to own in connection with their claimed WHT liabilities and/or refunds ?

    (f)  Any known or suspected duplicate applications made for refunds of WHT?

    (g) The percentages of dividend tax for particular Danish companies which were the subject of applications for refunds?

    (h) Any WHT Applications which were based on fictitious, circular or sham transactions?

(2) What consideration or analysis did SKAT and/or the Ministry of Taxation carry out in relation to any of the information listed at 1 (a) to (h) above?

(3) What recommendations for action did SKAT and/or the Ministry of Taxation make or receive from third parties in connection with WHT refund policy in general and/or any of the information listed at 1 (a) to (h) above?

(4) What action did SKAT and/or the Ministry of Taxation take as a result of either the information at 1 (a) to (h) above or any consideration or analysis mentioned at (2) above or any recommendations for action mentioned at (3) above?

**Issue 15B**

(1) What information did SKAT and/or the Ministry of Taxation have between August 2012 and July 2015 in relation to:

(a) The businesses and commercial activities of the Alleged Fraud Defendants including Solo Group Companies and Elysium Companies (including any legitimate or apparently legitimate activities)?

(b) The WHT Applicants and their representatives?

(c) ED&F Man, the ED&F Man Applicants and their representatives?

(d) Links between any of the WHT Applicants or their representatives and the Alleged Fraud Defendants including Solo Group Companies or Elysium Companies?

(e) Trading strategies and trading behaviour of (i) the Alleged Fraud Defendants including Solo Group Companies, Elysium Companies and related entities (including but not limited to dividend arbitrage trading) and (ii) ED&F Man and the ED&F Man Applicants?

(f) The means by which WHT refund applications were prepared by or for (i) the WHT Applicants and (ii) the ED&F Man Applicants, including how and from whom Credit Advice Notes (and similar documents) were obtained?

(g) The role and activities of reclaim agents in preparing and submitting (i) the WHT Applications and (ii) the ED&F Man Applications (including their contractual arrangements with applicants, fees they charged and their due diligence on applicants)?

(h) The alleged falsity of (i) the Agent Representations (ii) the Custodian Representations and (iii) the ED&F Man Representations?

(i) What happened to the proceeds of (i) the WHT Applications and (ii) the ED&F Man Applications?

(j) Any evidence of error, inaccuracy or invalidity in (i) the WHT Applications and (ii) the ED&F Man Applications?

17

**Annex B**

[Save where otherwise stated, footnoted references below are to the relevant paragraphs of (1) SKAT's Further Particulars regarding the Validity of WHT Refund Applications dated 28 February 2020 ("SKAT") and (2) the Defendants' responsive statements of case (comprising "Godson, Fletcher and Jain"; "DWF Defendants"; "Sanjay Shah Defendants"; "PS/GOC Defendants"; "ED&F Man"). Footnoted references to "4APOC", "5T" and "5T Defence" are to, respectively, SKAT's Fourth Amended Particulars of Claim, SKAT's Re-Amended Schedule 5T and ED&F Man's Defence to Re-Amended Schedule 5T.]

## The 'Revenue Rule'

1. Are any of SKAT's claims, as alleged, inadmissible in this court under the rule of law stated, e.g., as *Dicey Rule 3* (*Dicey, Morris & Collins on the Conflict of Laws*, 15th Ed., para 15R-019). If so, which claims are inadmissible and why?

## WHT Reclaim Principles

2. Did the Double Tax Treaties become part of Danish domestic law upon ratification and, if so, (a) did they give rights to private persons to receive refunds of WHT, (b) did they entitle private persons to apply for a refund of WHT independently of section 69B(1) of the WHT Act?[1]

3. Is the answer to any of questions 4 to 8 below affected by:

   3.1 The existence of a market practice during the Relevant Period as alleged by the DWF Defendants?[2] If so, was there a well-established market practice during the Relevant Period as alleged by the DWF Defendants, the Godson, Fletcher and Jain Defendants and the Sanjay Shah Defendants?[3]

   3.2 Whether such market practice was expressly permitted and/or mandated at European and global levels?[4] If so, was such a

---

[1]    Godson, Fletcher and Jain/7, 38, 86.1.
[2]    DWF Defendants/8, 10, 13, 19.
[3]    DWF Defendants/8, 10, 13. Godson, Fletcher, Jain/9-24; Sanjay Shah Defendants/15.
[4]    DWF Defendants/9, 19.

market practice expressly permitted and/or mandated at European and global levels?

3.3    The responses evident to private parties operating in this field of European and Danish legislators, tax authorities and regulators to such market practice?[5] If so, what (if any) were the relevant responses evident to private parties operating in this field of European and Danish legislators, tax authorities and regulators to such market practice?

3.4    Whether and if so to what extent SKAT was aware of such market practice?[6]

3.5    How SKAT understood the requirements for a valid WHT reclaim application and why it implemented them as it did by the Forms Scheme?[7]

4.    What were the requirements of a valid application for the refund of WHT from SKAT between August 2012 and July 2015 (the "**Relevant Period**")?[8] In particular, was it necessary that:

4.1    the applicant had been liable to taxation pursuant to section 2 of the WHT Act or section 2 of the WHT Act or section 2 of the Danish Corporation Tax Act;

4.2    the applicant had received the dividends;

4.3    tax had been withheld from the dividends received by the applicant pursuant to sections 65-65D of the WHT Act;[9] and

---

[5]    DWF Defendants/10-11, 16-17, 19.
[6]    DWF Defendants/12, 18, 19.
[7]    DWF Defendants/12, 18, 19.
[8]    SKAT/7; PS/GOC Defendants/15.1, 15.2.
[9]    SKAT/7.3, 34; DWF Defendants/22, 67. Godson, Fletcher, Jain/44, 91.2; Sanjay Shah Defendants/8.

4.4     the tax withheld exceeded the tax due under an applicable double tax treaty?

5.     What constituted a "*dividend*" for the purposes of section 69B(1) of the WHT Act during the Relevant Period? In particular:

5.1     In order for a payment to be a "*dividend*", was it necessary for its recipient to have owned shares in the company which made the payment?[10] If so, what is the relevant time at which the recipient must have owned the shares?

5.2     If the answer to the first question in issue 5.1 is in the affirmative, what constituted "*ownership*" for these purposes? In particular:

(a)     did a right against a Sub-Custodian[11], in and of itself, constitute ownership of the share?[12];

(b)     could there be more shares in circulation at any given point than the number of shares issued by a company?[13]

(c)     did the principle "*nemo dat quod non habet*" apply to transactions involving shares?[14] If so, is there a "*Good Faith Purchaser*" exception to the rule as alleged by the Godson, Fletcher and Jain Defendants?[15]

5.3     In order for a payment to be a "*dividend*", was it necessary for its recipient to have received the payment from the company or in a manner that is traceable to the company?[16]

---

[10]     SKAT/13.1, 14-19, 20-27; DWF Defendants/26, 72.1. Godson, Fletcher, Jain/26, 48; Sanjay Shah Defendants/55.
[11]     As defined in Sanjay Shah Defendants/18.
[12]     Sanjay Shah Defendants/18-19; SKAT/15.1, 15.2.
[13]     Godson, Fletcher, Jain/101.2; SKAT/14.1; Sanjay Shah Defendants/24-25.
[14]     SKAT/15; Sanjay Shah Defendants/26-27.
[15]     Godson, Fletcher, Jain/102.2.
[16]     SKAT/13.2, 30; DWF Defendants/8.4, 8.5, 11, 13.3, 13.6, 17.1, 31.2, 72.2. Sanjay Shah Defendants/55.

5.4 During the Relevant Period, did Danish law recognise a principle that if the parties to an agreement did not intend to perform it, the agreement would not be effective to convey ownership of property?[17]

6. What were the requirements for relief under the Double Tax Treaties during the Relevant Period? In particular, was it a necessary requirement that:

6.1 the applicant was resident in a Contracting State;

6.2 the applicant was the "*beneficial owner*" of dividends paid by a resident of another Contracting State; in particular, was this a requirement under the Denmark-Malaysia Treaty?[18]

6.3 the dividends had been taxed by the Contracting State at a rate that exceeded the rate permitted under the relevant Double Tax Treaty;[19]

6.4 the transactions giving rise to an application for a WHT refund were not created for the sole or main purpose of securing favourable tax treatment under the double tax treaty;[20]

6.5 if the WHT refund applicant was a US pension fund, the pension fund satisfied the requirements of the Denmark-US Treaty?

7. What constituted a "*dividend*" for the purposes of the Double Tax Treaties during the Relevant Period?[21] In particular:

7.1 In order for a payment to be a "*dividend*", was it necessary for its recipient to have owned shares in the company which made the

---

[17] SKAT/15.5, Sanjay Shah Defendants/31.
[18] SKAT/footnote 28; PS/GOC Defendants/11.2, 15.4.2. Godson, Fletcher, Jain/82, 83.
[19] 4RAPOC 9; Godson, Fletcher, Jain/60, 83.
[20] SKAT/39.3; DWF Defendants/101.3; PS/GOC Defendants/15.4.3; ED&F Man/23.3. Sanjay Shah Defendants/66.
[21] SKAT/41; DWF Defendants/29-34.

payment?[22] If so, what is the relevant time at which the recipient must have owned the shares?

7.2     In order for a payment to be a "*dividend*", was it necessary for its recipient to have received the payment from the company or in a manner that is traceable to the company?[23]

8.      During the Relevant Period, was there a general principle against abusive reliance on double tax treaties and/or a principle that the benefit of Double Tax Treaties was not available to a WHT refund applicant if the sole or main purpose of their participation in the relevant transactions (or the sole or main purpose of the transactions) was to secure a favourable tax position?[24] If so, how was the purpose of their participation or of the transactions to be identified?

**ED&F Man Applications**

9.      In respect of the ED&F Man Applications other than the ED&F Man Applications that were supported by Annex E Tax Vouchers, were ED&F Man rather than the ED&F Man Applicants beneficial owners of the dividends they received?[25]

---

[22]     SKAT/42.1; DWF Defendants/31, 32.
[23]     SKAT/42.3, 42.4; DWF Defendants/31, 32.
[24]     SKAT/39.3, 45.7, 46.8, 47.6, 48-50; DWF Defendants/20, 110-112; PS/GOC Defendants/15.4.3, 15.6; ED&F Man/28.2, 31-32. Godson, Fletcher, Jain/145; Sanjay Shah Defendants/75.
[25]     SKAT/47; ED&F Man/30.3-30.4, 33.2; 5T/3-8, 18(e); 5T Defence/4-9, 19.3.3.