# Exhibit 144

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 19, 2021

Page 1

```
 1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
 2                MASTER DOCKET 18-MD-2865(LAK)
                    CASE NO. 18-CV-09797
 3
     _____
 4                                          )
     IN RE:                                 )
 5                                          )
     CUSTOMS AND TAX ADMINISTRATION OF      )
 6   THE KINGDOM OF DENMARK                 )
     (SKATTEFORVALTNINGEN) TAX REFUND       )
 7   SCHEME LITIGATION                      )
                                            )
 8   _____)

 9

10

11           CONFIDENTIAL - ATTORNEYS' EYES ONLY

12

13

14                      DEPOSITION OF
                        STACEY KAMINER
15                         VOLUME 1

16                  Monday, April 19, 2021
                    8:07 a.m. - 4:46 p.m.
17
                       Remote Location
18                    Via Huseby Connect
                      All Parties Remote
19

20

21

22

23

24            Stenographically Reported By:
                   Erica Field, FPR
25
```

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 19, 2021

Page 38

1     conversations to try and pick out an answer for you that
2     does not involve conversations with -- confidential
3     conversation with our lawyers.  And I -- I think the
4     answer I gave, generally, would be the one I would give
5     again because that would not impact the confidential
6     conversations I had.
7     BY MR. OXFORD:
8              Q.     Back to Acer and your role in 2012 through
9     2015.
10             Did you have any role in the -- the trading
11    side of Acer's business?
12             A.     I was the head trader at Acer.
13             Q.     That's clear.  What was your role as a head
14    trader?
15             A.     If Acer did any proprietary trading, I was
16    in charge of effecting that trading.
17             Q.     And did Acer do any proprietary trading in
18    2012 through 2015?
19             A.     I'm not sure if by then we did any
20    proprietary trading.  Probably toward -- in the beginning
21    of 2012.
22             Q.     Okay.  And separate from the -- withdrawn.
23             What proprietary trading did Acer do in
24    2012?  Would that be the -- the DRIPs trading that
25    Mr. Crema told us about?

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 19, 2021

Page 39

```
1        A.    Yes.
2        Q.    Anything else?
3        A.    There might have been, but not to my
4    recollection, as I'm sitting here right now.
5        Q.    Focusing on the Danish dividend arbitrage
6    trading that was conducted by the Acer plans, what was
7    your role in connection with that trading?
8        A.    I would definitely be the person that ED&F
9    reached out to regarding the trading or someone that I
10   designated, but I was still monitoring all of the
11   transactions.
12       Q.    And as head trader, were you involved in
13   designing the trades that the Acer plans entered into?
14            MR. BLESSINGTON:  Object as to form.
15            You may answer.
16       A.    Could you be more specific?  Is there a
17   particular jurisdiction you're asking about?
18   BY MR. OXFORD:
19       Q.    Okay.  Denmark.
20       A.    No.
21       Q.    Who was involved in designing the trades
22   that the Acer plans conducted in Denmark?
23       A.    Those trades didn't really differ from what
24   had been used in other jurisdictions in the past.  So I
25   don't know that I would characterize anybody as having
```

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 19, 2021

Page 98

1  can't recall a particular document.
2      Q.   Yeah.  I'm talking about in preparation for
3  your deposition, Ms. Kaminer.
4      A.   I don't think I saw anything in preparation
5  for my deposition that I hadn't already seen and given
6  thought to.
7      Q.   Okay.  So back to 2428, you write to
8  Victoria Foster, but at her -- what appears to be a
9  non-ED&F work address.
10          Do you see that?
11     A.   Yes.
12     Q.   Do you know why you were writing to her
13 outside of her ED&F address?
14     A.   I received an e-mail -- to my recollection,
15 I received an e-mail from her that she was having issues
16 or I think it even says it in this e-mail:  Sorry, I had
17 some tech issues, sent this from my outside e-mail to
18 your outside e-mail.
19     Q.   You write:  Vic, I've been over your Danish
20 list with Bob.  I will be tackling the Belgium next.  So
21 just pausing there.
22          Which Bob is this, is this Bob Messina or
23 Bob Crema?
24     A.   This would be Bob Crema.
25     Q.   And then you write to Ms. Foster:  I've

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 19, 2021

Page 99

1    been over your Danish list.
2             What does that mean?
3        A.   It means she would have sent me a list of
4    securities that they felt they could provide funding for
5    and, potentially, provide liquidity for.
6        Q.   And what did you and Mr. Crema discuss
7    about that list?
8        A.   I don't recall the exact conversation we
9    had about that list.
10       Q.   Okay.  And generally, your process would be
11   what?
12       A.   In general, we would've discussed what was
13   the dividend on those securities, what was the general
14   market on those securities, what did we think the profit
15   was going to be that the plan would make, stuff akin to
16   that.
17       Q.   Okay.  Let's pause there.
18            How did you calculate what profit the plan
19   would make?
20       A.   It was partially based on, like I said,
21   what the -- so when I say something like, the market,
22   what I'm referring to in this instance is the fact that
23   just even just entering into the transaction at all,
24   buying the security and selling the hedge, has a market
25   cost.  It's usually expressed as an all-in or a

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 20, 2021

Page 245

```
1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
2                MASTER DOCKET 18-MD-2865(LAK)
                    CASE NO. 18-CV-09797
3
     _____
4                                         )
     IN RE:                                )
5                                         )
     CUSTOMS AND TAX ADMINISTRATION OF     )
6    THE KINGDOM OF DENMARK                )
     (SKATTEFORVALTNINGEN) TAX REFUND      )
7    SCHEME LITIGATION                     )
                                           )
8    _____)
9
10
11           CONFIDENTIAL - ATTORNEYS' EYES ONLY
12
13
14                     DEPOSITION OF
                       STACEY KAMINER
15                        VOLUME 2

16                 Tuesday, April 20, 2021
                    8:08 a.m. - 2:35 p.m.
17
                       Remote Location
18                    Via Huseby Connect
                      All Parties Remote
19
20
21
22
23
24           Stenographically Reported By:
                   Erica Field, FPR
25
```

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 20, 2021

Page 291

```
1            Q.    So you want to trade on the 18th on terms
2     T plus 4, correct?
3            A.    Yes.
4            Q.    And that means that the shares would settle
5     on March 24th as opposed to the 20th which was the
6     settlement date on the tranche of 3 million shares for
7     AIG that we just looked at, correct?
8                  MR. BINDER:  Objection to form.
9            A.    Let's see.  March 18th is a Tuesday, so it
10    would settle the following Monday.  If that is the 24th,
11    then yes.
12    BY MR. OXFORD:
13           Q.    What's the significance of doing a -- why
14    did you choose to do the larger tranche of 26.125 million
15    shares of Danske Bank, why did you choose to do them T
16    plus 4 on the 18th as opposed to T plus 3 on the 17th of
17    March as you did for smaller tranche?
18           A.    It would have been based on liquidity that
19    they would have reported to us.  And if that seller
20    wanted T4, and there was no issues with us trading on the
21    18th and doing the T4 settlement, and the trade date in
22    Denmark is the important date with regard to entitlement
23    to the dividend in there for the reclaim.
24           Q.    So the terms on which you're proposing to
25    do these trades for the plans are based on information
```

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 20, 2021

Page 292

```
 1      you received from ED&F?
 2              A.      Yes.
 3              Q.      Are you familiar with a document that's
 4      known in this case as Annex E?
 5              A.      Yes.
 6              Q.      What can you tell me about Annex E?  What
 7      is your understanding?
 8              A.      My understanding is Annex E is a document
 9      that got filed by ED&F that contains tax vouchers that
10      they say have errors on them.
11              Q.      What do you understand to be the nature of
12      those errors?
13              A.      I have no idea what the nature of those
14      errors are.
15              Q.      ED&F never explained to you what the errors
16      were?
17              A.      No.
18              Q.      Have you asked them?
19              A.      Yes.
20              Q.      What did they say?
21                      MR. BLESSINGTON:  Objection.  Have you --
22              A.      You're right.  I apologize.  I have not
23      personally asked ED&F.
24      BY MR. OXFORD:
25              Q.      I take it from Mr. Blessington's objection
```

Confidential - Attorneys' Eyes Only
Stacey Kaminer - April 20, 2021

Page 374

```
1     1:30 p.m.)
2                THE VIDEOGRAPHER:  We are back on the
3         record.  The time is 1:30 p.m.
4     BY MR. BINDER:
5         Q.    Okay.  So, Ms. Kaminer, I think where we
6     left off is you just said you were the plan's authorized
7     agent in connection with its investments with ED&F,
8     correct?
9         A.    Yes.
10        Q.    And it was your practice to enter into
11    trades on behalf of the pension plans with ED&F over the
12    phone, correct?
13        A.    Yes.
14              MR. OXFORD:  Object to the form.
15    BY MR. BINDER:
16        Q.    And after phone calls, it was your general
17    practice to send a confirmatory e-mail to follow up at
18    some point, correct?
19              MR. OXFORD:  Objection.
20        A.    Yes.
21    BY MR. BINDER:
22        Q.    Sometimes it would be the same day,
23    sometimes it may be several days later; is that right?
24              MR. OXFORD:  Object to the form.
25        A.    Yes.
```