# Exhibit 71

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND THE GOVERNMENT OF SWEDEN FOR THE AVOIDANCE OF DOUBLE TAXATION
AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

GENERAL EFFECTIVE DATE UNDER ARTICLE 29: 1 JANUARY 1996

## TABLE OF ARTICLES

Article l---------------------------------Personal Scope
Article 2---------------------------------Taxes Covered
Article 3---------------------------------General Definitions
Article 4---------------------------------Residence
Article 5---------------------------------Permanent Establishment
Article 6---------------------------------Income from Real Property
Article 7---------------------------------Business Profits
Article 8---------------------------------Shipping and Air Transport
Article 9---------------------------------Associated Enterprises
Article 10--------------------------------Dividends
Article 11--------------------------------Interest
Article 12--------------------------------Royalties
Article 13--------------------------------Gains
Article 14--------------------------------Independent Personal Services
Article 15--------------------------------Dependent Personal Services
Article 16--------------------------------Directors' Fees
Article 17--------------------------------Limitation on Benefits
Article 18--------------------------------Artistes and Athletes
Article 19--------------------------------Pensions and Annuities
Article 20--------------------------------Government Service
Article 21--------------------------------Students and Trainees
Article 22--------------------------------Other Income
Article 23--------------------------------Relief from Double Taxation
Article 24--------------------------------Non-Discrimination
Article 25--------------------------------Mutual Agreement Procedure
Article 26--------------------------------Exchange of Information
Article 27--------------------------------Administrative Assistance
Article 28--------------------------------Diplomatic Agents and Consular Officers
Article 29--------------------------------Entry into Force
Article 30--------------------------------Termination
Letter of Submittal----------------------of 09 September, 1994
Letter of Transmittal-------------------of 14 September, 1994
Notes of Exchange---------------------of 1 September, 1994
The "Saving Clause"-------------------Paragraph 4 of Article 1

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF
AMERICA AND THE GOVERNMENT OF SWEDEN FOR THE AVOIDANCE OF DOUBLE
TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES
ON INCOME SIGNED AT STOCKHOLM ON SEPTEMBER 1, 1994, TOGETHER
WITH A RELATED EXCHANGE OF NOTES

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, September 9, 1994.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate
for advice and consent to ratification, the Convention Between the Government of the United States of
America and the Government of Sweden for the Avoidance of Double Taxation and the Prevention of
Fiscal Evasion with Respect to Taxes on Income signed at Stockholm on September 1, 1994, together
with a related exchange of notes.

The Convention is based on the 1981 model income tax convention published by the U.S. Treasury
Department and the model income tax convention published by the Organization for Economic
Cooperation and Development (OECD). It takes into account the current tax laws and recent income
tax treaty policies of both countries.

Like other U.S. income tax conventions, this bilateral Convention provides rules specifying when
various categories of income derived by a resident of one country may be taxed by the other country
and limiting, in certain cases, the rate of tax that may be imposed by the country where the income arises
(the "source country"). The Convention also confirms that the residence country will avoid international
double taxation by granting a foreign tax credit, and it provides for administrative cooperation to avoid
double taxation and prevent fiscal evasion of taxes.

The proposed Convention provides for maximum rates of tax at source on payments of dividends,
interest and royalties. It also provides for the imposition of the branch profits tax, and limits the rate at

which the tax may be imposed to 5 percent.

The Convention contains rules found in most U.S. tax treaties regarding the taxation of business profits, personal service income, transportation income, real property income and capital gains, the granting of relief from double taxation and the protection against discriminatory taxation. It also contains provisions similar to those in other recent treaties designed to prevent third country residents from taking unwarranted advantage of the Convention by routing income through an entity established for that purpose in one of the Contracting States.

Also included in the proposed Convention are the rules necessary for its administration, including rules for the resolution of disputes, the interaction of the proposed Convention with other agreements, and the exchange of information. The proposed Convention also retains the provision on assistance in collection currently in force between the United States and Sweden. Finally, it authorizes the General Accounting Office and the Tax Writing Committees of Congress to obtain access to certain tax information exchanged under the Convention for use in their oversight of the administration of U.S. tax laws and treaties.

The proposed Convention is subject to ratification. It enters into force on the exchange of instruments of ratification. Its provisions will have effect for the United States, with respect to taxes payable at the source, for payments made or credited on or after the first day of January following entry into force, and in other cases, with respect to taxable years beginning on or after that date. The treaty will have effect with respect to Swedish income taxes for any income derived on or after the first day of January following entry into force, and with respect to Swedish capital taxes for any taxes which are assessed in or after the second calendar year following entry into force. The treaty remains in force indefinitely unless terminated by one of the Contracting States. Either State may terminate the Convention after 5 years from its entry into force, by giving at least six months prior notice through diplomatic channels.

The related exchange of notes clarifies the application of the shipping and aircraft provisions to the Scandinavian Airlines System. The exchange also makes clear that certain railroad retirement benefits under United States law will be taxable only in the United States.

A technical memorandum explaining the provisions of the Convention in detail is being prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

Respectfully submitted,

WARREN CHRISTOPHER.


LETTER OF TRANSMITTAL

THE WHITE HOUSE, *September 14, 1994.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Convention Between the Government of the United States of America and the Government of Sweden for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income signed at Stockholm on September 1, 1994, together with a related exchange of notes. Also transmitted for the information of the Senate is the report of the Department of State with respect to the Convention.

The proposed Convention with Sweden replaces the present income tax regime between the two countries. In general, the proposed Convention follows the pattern of other recent U.S. income tax treaties and the 1981 U.S. Model Income Tax Convention, as well as the OECD Model Tax Convention on Income and Capital.

I recommend that the Senate give early and favorable consideration to the Convention and the related exchange of notes and give its advice and consent to ratification.

WILLIAM J. CLINTON.

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF SWEDEN FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of Sweden, desiring to conclude a convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, have agreed as follows:

ARTICLE 1
Personal Scope

1. This Convention shall apply to persons who are residents of one or both of the Contracting States, except as otherwise provided in the Convention.

2. The Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded
      a) by the laws of either Contracting State; or
      b) by any other agreement between the Contracting States.

3. Notwithstanding the provisions of paragraph 2 b):
      (a) Notwithstanding any other agreement to which the Contracting States may be

parties, a dispute concerning whether a measure is within the scope of this Convention shall be considered only by the competent authorities of the Contracting States, as defined in subparagraph 1 e) of Article 3 (General Definitions) of this Convention, and the procedures under this Convention exclusively shall apply to the dispute.

b) Unless the competent authorities determine that a taxation measure is not within the scope of this Convention, the non-discrimination obligations of this Convention exclusively shall apply with respect to that measure, except for such national treatment or most-favored-nation obligations as may apply to trade in goods under the General Agreement on Tariffs and Trade. No national treatment or most-favored-nation obligation under any other agreement shall apply with respect to that measure.

c) For the purpose of this paragraph, a "measure" is a law, regulation, rule, procedure, decision, administrative action, or any other form of measure.

4. Notwithstanding any provision of the Convention except paragraph 5, the United States may tax its residents (as determined under Article 4 (Residence)), and by reason of citizenship may tax its citizens, as if the Convention had not come into effect. For this purpose, the term "citizen" shall include a former citizen whose loss of citizenship had as one if its principal purposes the avoidance of tax, but only for a period of 10 years following such loss.

5. The provisions of paragraph 4 shall not affect

a) the benefits conferred by the United States under paragraph 2 of Article 9 (Associated Enterprises), under paragraph 2 of Article 19 (Pensions and Annuities), and under Articles 23 (Relief from Double Taxation), 24 (Non-Discrimination) and 25 (Mutual Agreement Procedure); and

b) the benefits conferred by the United States under Articles 20 (Government Service), 21 (Students and Trainees) and 28 (Diplomatic Agents and Consular Officers) upon individuals who are neither citizen of, nor have immigrant status in, the United States.

ARTICLE 2
Taxes Covered

1. The existing taxes to which this Convention shall apply are:

a) in the United States: the Federal income taxes imposed by the Internal Revenue Code (but excluding the accumulated earnings tax, the personal holding company tax, and social security taxes), and the excise taxes imposed on insurance premiums paid to foreign insurers and with respect to private foundations. The Convention shall, however, apply to the excise taxes imposed on insurance premiums paid to foreign insurers only to the extent that the risks covered by such premiums are not reinsured with a person not entitled to the benefits of this or any other convention which exempts these taxes; and

b) in Sweden:

(i) the State income tax, including the sailor's tax and the coupon tax;

(ii) the special income tax on non-residents;

(iii) the special income tax on non-resident entertainers and artistes;

(iv) the communal income tax;

(v) for the purpose of paragraph 3 of this Article, the State capital tax; and

(vi) the excise tax imposed on insurance premiums paid to foreign insurers.

2. The Convention shall apply also to any identical or substantially similar taxes which are imposed after the date of signature of the Convention in addition to, or in place of, the taxes referred to above. The competent authorities of the Contracting States shall notify each other of any significant changes which have been made in their respective taxation laws and of any officially published material of substantial significance concerning the application of the Convention, including explanations, regulations, rulings, or judicial decisions.

3. The following persons shall be subject to the Swedish State capital tax only in respect of real property situated in Sweden and movable property attributable to a permanent establishment of such person in Sweden or to a fixed base available to such person in Sweden for the purpose of performing independent personal service;

a) a resident of the United States, as determined under Article 4 (Residence), who is a citizen of the United States but not a citizen of Sweden;

b) a resident of the United States, as determined under Article 4, whether or not a citizen of the United States, who has been such a resident for three successive years prior to the first taxable year for which the provisions of the Convention have effect, and for each taxable year thereafter;

(c) a citizen of the United States, who is not a citizen of Sweden, who temporarily visits Sweden for a period not exceeding two years, and who is, or immediately prior to such visit was, a resident of the United States, as determined under Article 4;

d) an estate of a person described in subparagraph a), b) or c); or

e) a company that is a resident of the United States, as determined under Article 4.


ARTICLE 3
General Definitions

1. For the purposes of this Convention, unless the context otherwise requires:

a) the term "person" includes an individual, an estate, a trust, a partnership, a company, and any other body of persons;

b) the term "company" means any entity which is treated as a body corporate for income tax purposes;

c) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;

d) the term "international traffic" means any transport by a ship or aircraft, except where such transport is solely between places within a Contracting State;

e) the term "competent authority" means

(i) in the case of the United States, the Secretary of the Treasury or his delegate; and

(ii) in the case of Sweden, the Minister of Finance, his authorized representative or the authority which is designated as a competent authority for the purposes of this convention;

f) the term "United States" means the United States of America, but such term

(i) does not include Puerto Rico, the Virgin Islands, Guam, or other United States possessions or territories, and

(ii) includes

(A) the territorial sea of the United States and

(B) the seabed and subsoil of the submarine areas adjacent to the territorial sea, over which the United States of America exercises sovereign rights, in accordance with international law, for the purpose of exploration for and exploitation of the natural resources of such areas;

g) the term "Sweden" means the Kingdom of Sweden and, when used in a geographical sense, includes the national territory, the territorial sea as well as other maritime areas over which Sweden, in accordance with international law, exercises sovereign rights or jurisdiction.

2. As regards the application of the Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 25 (Mutual Agreement Procedure), have the meaning which it has under the laws of that State concerning the taxes to which the Convention applies.

## ARTICLE 4
### <u>Residence</u>

1. For the purposes of this convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature, provided, however, that

a) this term does not include any person who is liable to tax in that State in respect only of income from sources in that State; and

b) in the case of a partnership, estate, or trust, this term applies only to the extent that the income derived by such partnership, estate, or trust is subject to tax in that State as the income of a resident, either in its hands or in the hands of its partners or beneficiaries.

A United States citizen or an alien lawfully admitted for permanent residence is a resident of the United States, but only if such person has a substantial presence, permanent home, or habitual abode in the United States. If such person is also a resident of Sweden under this paragraph, such person will also be treated as a United States resident under this paragraph and such person's status shall be determined under paragraph 2.

2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows

a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (center of vital interests);

b) if the State in which he has his center of vital interests cannot be determined, or if he does not have a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a citizen;

d) if he is a citizen of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

3. Where by reason of the provisions of paragraph 1 a company is a resident of both Contracting States, then if it is created under the laws of a Contracting State or a political subdivision thereof, it shall be deemed to be a resident only of that State.

4. Where by reason of the provisions of paragraph 1 a person other than an individual or a company is a resident of both Contracting States, the competent authorities of the Contracting States shall settle the question by mutual agreement.

## ARTICLE 5
### Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially:

a) a place of management;

b) a branch;

c) an office;

d) a factory;

e) a workshop; and

f) a mine, an oil or gas well, a quarry or any other place of extraction of natural resources.

3. A building site or construction or installation project constitutes a permanent establishment only if it lasts more than twelve months. The use of an installation or drilling rig or ship in a Contracting State to explore for or exploit natural resources constitutes a permanent establishment only if such use is for more than twelve months.

4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include:

a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;

b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display, or delivery;

c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;

d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise or of collecting information for the enterprise;

e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, any other activity of a preparatory or auxiliary character;

f) the maintenance of a fixed place of business solely for any combination of activities mentioned in subparagraphs a) to e).

5. Notwithstanding the provisions of paragraphs 1 and 2, where a person - other than an agent of an independent status to whom paragraph 6 applies - is acting on behalf of an enterprise and has and habitually exercises in a Contracting State an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. An enterprise shall not be deemed to have a permanent establishment in a Contracting State merely because it carries on business in that State through a broker, general commission agent or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business.

7. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.


ARTICLE 6

Income from Real Property


1. Income derived by a resident of a Contracting State from real property (including income from agriculture or forestry) situated in the other Contracting State may be taxed in that other State.

2. The term "real property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to real property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, buildings, usufruct of real property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits,

sources and other natural resources; ships, boats and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting, or use in any other form of real property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from real property of an enterprise and to income from real property used for the performance of independent personal services.


ARTICLE 7
Business Profits

1. The profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and separate enterprise engaged in the same or similar activities under the same or similar conditions.

3. In determining the profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including a reasonable allocation of executive and general administrative expenses, research and development expenses, interest, and other expenses incurred for the purposes of the enterprise as a whole (or the part thereof which includes the permanent establishment), whether incurred in the State in which the permanent establishment is situated or elsewhere.

4. Profits shall not be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

5. For the purposes of this Convention, the profits to be attributed to the permanent establishment shall include only the profits derived from the assets or activities of the permanent establishment and shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

6. Where profits include items of income which are dealt with separately in other Articles of the Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

7. The term "profits" as used in this Article means income derived from any trade or business whether carried on by an individual, company or any other person, or group of persons, including the

rental of tangible movable property.

8.    a) The United States tax on insurance premiums paid to foreign insurers shall not be imposed on insurance and reinsurance premiums which are the receipts of a business of insurance carried on by a resident of Sweden whether or not that business is carried on through a permanent establishment in the United States (but only to the extent that the relevant risk is not reinsured, directly or indirectly, with a person not entitled to relief from such tax).

    b) The Swedish tax on insurance premiums paid to foreign insurers shall not be imposed on insurance premiums which are the receipts of a business of insurance carried on by a resident of the United States whether or not that business is carried on through a permanent establishment in Sweden.

9. Notwithstanding paragraph 6 of this Article, for the implementation of paragraphs 1 and 2 of this Article, paragraph 3 of Article 13 (Gains), Article 14 (Independent Personal Services) and Article 22 (Other Income) any income, gain, or expense attributable to a permanent establishment or a fixed base during its existence is taxable or deductible in the Contracting State where such a permanent establishment or fixed base is situated even if the payments are deferred until such permanent establishment or fixed base has ceased to exist.

ARTICLE 8
Shipping and Air Transport

1. Profits of an enterprise of a Contracting State from the operation of ships or aircraft in international traffic shall be taxable only in that State.

2. For the purposes of this Article, profits from the operation of ships or aircraft in international traffic include profits derived from the rental of ships or aircraft if such rental profits are incidental to other profits described in paragraph 1.

3. Profits of an enterprise of a Contracting State from the use, maintenance, or rental of containers including trailers, barges, and related equipment for the transport of containers) used in international traffic shall be taxable only in that State.

4. The provisions of paragraphs 1 and 3 shall also apply to profits from participation in a pool, a joint business, or an international operating agency. With respect to profits derived by the air transport consortium Scandinavian Airlines System (SAS) the provisions of paragraphs 1 and 3 shall apply, but only to such part of the profits as corresponds to the participation held in that Consortium by AB Aerotransport (ABA), the Swedish partner of Scandinavian Airlines System (SAS).

ARTICLE 9
Associated Enterprises

1. Where

      a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State; or

      b) the same persons participate directly or indirectly in the management, control, or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but by reason of those conditions have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

2. Where a Contracting State includes in the profits of an enterprise of that State, and taxes accordingly, profits on which an enterprise of the other Contracting State has been charged to tax in that other State, and the profits so included are profits which would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those which would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be paid to the other provisions of this Convention and the competent authorities of the Contracting States shall if necessary consult each other.

3. The provisions of paragraph 1 shall not limit any provisions of the law of either Contracting State which permit the distribution, apportionment, or allocation of income, deductions, credits, or allowances between persons, whether or not residents of a Contracting State, owned or controlled directly or indirectly by the same interests when necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such persons

ARTICLE 10
Dividends

1. Dividends paid by a company which is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other State.

2. However, such dividends may also be taxed in the Contracting State or which the company paying the dividends is a resident, and according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:

      a) 5 percent of the gross amount of the dividends if the beneficial owner is a company which owns at least 10 percent of the voting stock of the company paying the dividends;

      b) 15 percent of the gross amount of the dividends in all other cases.

This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

3. Subparagraph a) of paragraph 2 shall not apply in the case of dividends paid by a U.S. Regulated Investment Company or a Real Estate Investment Trust. Subparagraph b) of paragraph 2 shall apply in the case of such dividends, but in the case of dividends paid by a Real Estate Investment Trust only if the beneficial owner of the dividends is an individual holding less than 10 percent of the Real Estate Investment Trust.

4. The term "dividends" as used in this Article means income from shares or other rights, not being debt-claims, participating in profits, as well as income from other corporate rights which is subjected to the same taxation treatment as income from shares by the laws of the State of which the company making the distribution is a resident, and income from arrangements, including debt obligations, carrying the right to participate in profits, to the extent so characterized under the laws of the Contracting State in which the income arises.

5. The provisions of paragraph 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State, of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the dividends are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services.), as the case may be, shall apply.

6. A Contracting State may not impose any tax on dividends paid by a company which is not a resident of that State, except insofar as
        a) the dividends are paid to a resident of that State; or
        b) the dividends are attributable to a permanent establishment or a fixed base situated in that State.

7. A religious, scientific, literary, educational or charitable organization which is resident in Sweden and which has received substantially all of its support from persons other than citizens or residents of the United States shall be exempt in the United States from the United States excise taxes imposed with respect to private foundations.

8. A company that is a resident of a Contracting State and that has a permanent establishment in the other Contracting State, or that is subject to tax in that other Contracting State on items of income that may be taxed in that other State under Article 6 (Income from Real Property) or under paragraph 1 of Article 13 (Gains), may be subject in that other Contracting State to a tax in addition to the tax allowable under the other provisions of this Convention. Such tax, however, may
        a) in the case of the United States be imposed only on
            (i) the portion of the business profits of the company attributable to the permanent establishment, and
            (ii) the portion of the income referred to in the preceding sentence that is subject to tax under Article 6 or paragraph 1 of Article 13,
that represents the "dividend equivalent amount" of those profits and income; the term "dividend equivalent amount" shall, for the purposes of this subparagraph, have the meaning that it has under the

law of the United States as it may be amended from time to time without changing the
general principle thereof; and

        b) in the case of Sweden be imposed only on that portion of the income described in
subparagraph a) that is comparable to the amount that would be distributed as a dividend by a
locally incorporated subsidiary.

   9. The tax referred to in paragraph 8 a) and b) shall not be imposed at a rate exceeding the rate
specified in paragraph 2 a).

ARTICLE 11
<u>Interest</u>

   1. Interest arising in a Contracting State which is derived and beneficially owned by a resident of the
other Contracting State shall be taxable only in that other State.

   2. The term "interest" as used in this Article means income from debt-claims of every kind, whether
or not secured by mortgage, and whether or not carrying a right to participate in the debtor's profits,
and in particular, income from government securities, and income from bonds or debentures, including
premiums or prizes attaching to such securities, bonds, or debentures and including an excess inclusion
with respect to a residual interest in a real estate mortgage investment conduit. Penalty charges for late
payment shall not be regarded as interest for the purposes of the Convention. However, the term
"interest" does not include income dealt with in Article 10 (Dividends).

   3. The provisions of paragraph 1 shall not apply if the beneficial owner of the interest, being a
resident of a Contracting State, carries on business in the other Contracting State, in which the interest
arises, through a permanent establishment situated therein, or performs in that other State independent
personal services from a fixed base situated therein, and the interest is attributable to such permanent
establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14
(Independent Personal Services), as the case may be, shall apply.

   4. Interest shall he deemed to arise in a Contracting State when the payer is that State itself or a
political subdivision, local authority, or resident of that State. Where, however, the person paying the
interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent
establishment or a fixed base and such interest is borne by such permanent establishment or fixed base,
then such interest shall be deemed to arise in the State in which the permanent establishment or fixed
base is situated.

   5. Where, by reason of a special relationship between the payer and the beneficial owner or
between both of them and some other person, the amount of the interest, having regard to the debt-
claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the
beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the
last-mentioned amount. In such case the excess part of the payments shall remain taxable according to

the laws of each Contracting State, due regard being had to the other provisions of the Convention.

6. A Contracting State may not impose any tax on interest paid by a resident of the other Contracting State, except insofar as:

      a) the interest is paid to a resident of the first-mentioned State;

      b) the interest is attributable to a permanent establishment or a fixed base situated in the first-mentioned State; or

      c) the interest arises in the first-mentioned State and is not paid to a resident of the other State.

7. Notwithstanding the provisions of paragraph 1 of this Article an excess inclusion with respect to a residual interest in a real estate mortgage investment conduit may be taxed in the Contracting State where the excess inclusion arises according to the laws of that State.


ARTICLE 12
Royalties

1. Royalties arising in a Contracting State which are derived and beneficially owned by a resident of the other Contracting State shall be taxable only in that other State.

2. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work (including motion pictures and works on film, tape or other means of reproduction used for radio or television broadcasting), any patent, trade mark, design or model, plan, secret formula or process, or other like right or property, or for information concerning industrial, commercial or scientific experience. The term "royalties" also includes gains derived from the alienation of any such right or property which are contingent on the productivity, use, or disposition thereof.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of a carries on business in the other Contracting State, in which the royalties arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed situated therein, and the royalties are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right, or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

ARTICLE 13
Gains

1. Gains derived by a resident of a Contracting State from the disposition of real property situated in the other Contracting State may be taxed in that other State.

2. For purposes of paragraph 1
    a) the term "real property situated in the other Contracting State", where the United States is the other Contracting State, includes real property referred to in Article 6 which is situated in the United States, a United States real property interest, and an interest in a partnership, trust or estate, to the extent attributable to a United States real property interest situated in the United States;
    b) the term "real property situated in the other Contracting State", where Sweden is the other Contracting State, includes property that is real property under the law of Sweden situated in Sweden, and, without limiting the foregoing, shall include,
        (i) real property referred to in Article 6 which is situated in Sweden; and
        (ii) shares or similar rights in a company the assets of which consist, directly or indirectly, mainly of such real property.

3. Gains from the disposition of movable property which are attributable to a permanent establishment which an enterprise of a Contracting State has in the other Contracting State, or which are attributable to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, and gains from the disposition of such a permanent establishment (alone or with the whole enterprise) or such a fixed base, may be taxed in that other State.

4. Gains derived by an enterprise of a Contracting State from the disposition of ships or aircraft operated by the enterprise in international traffic or movable property attributable to the operation of such ships or aircraft shall be taxable only in that State. The provisions of this paragraph shall apply to gains derived by the air transport consortium Scandinavian Airlines System (SAS), but only to such part of the gains as corresponds to the participation held in that consortium by AB Aerotransport (ABA), the Swedish partner of Scandinavian Airlines System (SAS). Gains derived by an enterprise of a Contracting State from the disposition of containers used in international traffic and movable property attributable to the operation of such containers (including trailers, barges, and related equipment for the transport of containers) shall be taxable only in that State.

5. Gains described in Article 12 (Royalties) shall be taxable only in accordance with the provisions of Article 12.

6. Except as provided in paragraph 7, gains from the disposition of any property other than property referred to in paragraphs 1 through 5 shall be taxable only in the Contracting State of which

the person disposing of the property is resident.

7. In the case of an individual who had been a resident of Sweden and who has become a resident of the United States, the provisions of paragraph 6 shall not affect the right of Sweden to tax gains from the disposition of any property derived by such individual at any time during the ten years following the date on which the individual has ceased to be a resident of Sweden.

ARTICLE 14
<u>Independent Personal Services</u>

Income derived by an individual who is a resident of a Contracting State from the performance of personal services in an independent capacity shall be taxable only in that State. However, such income may also be taxed in the other Contracting State to the extent that such services are or were performed in that other State and the income is attributable to a fixed base regularly available to the individual in that other State for the purpose of performing his activities.

ARTICLE 15
<u>Dependent Personal Services</u>

1. Subject to the provisions of Articles 16 (Directors' Fees), 19 (Pensions and Annuities) and 20 (Government Service), salaries, wages and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if
        a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in any consecutive twelve-month period;
        b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State; and
        c) the remuneration is not borne by a permanent establishment or a fixed base which the employer has in the other State.

3. Notwithstanding the preceding provisions of this Article, remuneration derived by a resident of a Contracting State in respect of an employment as a member of the regular complement of a ship or aircraft operated in international traffic, including an aircraft operated in international traffic by the air transport consortium Scandinavian Airlines System (SAS), shall be taxable only in that State, except that remuneration derived in respect of an employment as a member of the regular complement of a ship operated in international traffic by a Swedish enterprise may be taxed in Sweden.

ARTICLE 16
Directors' Fees

Directors' fees derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other State. However, such fees shall be taxable only in the first-mentioned Contacting State to the extent such fees are derived in respect of services performed in that State.

ARTICLE 17
Limitation on Benefits

1. A person that is a resident of a Contracting State and derives income from the other Contracting State shall be entitled under this Convention to relief from taxation in that other State only if such person is:

a) an individual;

b) a Contracting State or a political subdivision or local authority thereof;

c) engaged in an active conduct of a trade or business in the first-mentioned Contracting State (other than the business of making or managing investments, unless these activities are banking or insurance activities carried on by a bank or insurance company), and the income derived from the other Contracting State is derived in connection with, or is incidental to, that trade or business;

d) a person, other than an individual, if:

(i) more than 50 percent of the beneficial interest in such person (or in the case of a company more than 50 percent of the number of shares of each class of the company's shares) is owned, directly or indirectly, by persons entitled to benefits of this Convention under subparagraph a), b), e) or f) of this paragraph or who are citizens of the United States; and

(ii) not more than 50 percent of the gross income of such person is used, directly or indirectly, to meet liabilities (including liabilities for interest or royalties) to persons who are not entitled to benefits of this Convention under subparagraph a), b), e) or f) of this paragraph and are not citizens of the United States;

e) a company in whose principal class of shares there is substantial and regular trading on a recognized stock exchange; or

f) an entity which is a not-for-profit organization (including pension funds and private foundations), and which, by virtue of that status, is generally exempt from income taxation in the Contracting State of which it is a resident, provided that more than one half of the beneficiaries, members or participants, if any, in such organization are persons that are entitled, under this Article, to the benefits of the Convention.

2. A person that is not entitled to the benefits of the Convention pursuant to the provisions of

paragraph 1 may, nevertheless, be granted the benefits of the Convention if the competent authority of the Contracting State in which the income in question arises so determines.

3. For the purposes of subparagraph e) of paragraph 1, the term. "a recognized stock exchange" means:

a) the NASDAQ System owned by the National Association of Securities Dealers, Inc. and any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for the purposes of the Securities Exchange Act of 1934;

b) the Stockholm Stock Exchange (Stockholms Fondbörs); and

c) any other stock exchange agreed upon by the competent authorities of the Contracting States.

4. The competent authorities of the Contracting States shall consult together with a view to developing a commonly agreed application of the provisions of this Article. The competent authorities shall, in accordance with the provisions of Article 26 (Exchange of Information), exchange such information as is necessary for carrying out the provisions of this Article and safeguarding, in cases envisioned therein, the application of their domestic law.


ARTICLE 18
Artistes and Athletes

1. Notwithstanding the provisions of Articles 14 (Independent Personal Services) and 15 (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer, such as a theater, motion picture, radio, or television artiste, or a musician, or as an athlete, from his personal activities as such exercised in the other Contracting State, may he taxed in that other State, except where the amount of the gross receipts derived by such entertainer or athlete, including expenses reimbursed to him or borne on his behalf, from such activities does not exceed six thousand United States dollars ($6,000) or its equivalent in Swedish kronor for any 12 month period.

2. Where income in respect of activities exercised by an entertainer or an athlete in his capacity as such accrues not to the entertainer or athlete but to another person, that income of that other person may, notwithstanding the provisions of Articles 7 (Business Profits) and 14 (Independent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or athlete are exercised, unless it is established that neither the entertainer or athlete nor persons related thereto participate directly or indirectly in any profits of that other person in any manner, including the receipt of deferred remuneration, bonuses, fees, dividends, partnership distributions or other distributions.


ARTICLE 19
Pensions and Annuities

1. Subject to the provisions of Article 20 (Government Service) and of paragraph 2 of this Article,

pensions and other similar remuneration in consideration of past employment and annuities derived and beneficially owned by a resident of a Contracting State shall be taxable only in that Contracting State.

2. Notwithstanding the provisions of paragraph 2 of Article 20, pensions (including the Swedish "allmän tilläggspension") and other benefits paid out under provisions of the social security or similar legislation of a Contracting State to a resident of the other Contracting State or a citizen of the United States shall be taxable only in the first-mentioned State.

3. The term "annuities" as used in this Article means a stated sum paid periodically at stated times during life or during a specified or ascertainable number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered or to be rendered).

4.       a) In determining the taxable income of an individual who renders personal services and who is a resident of a Contracting State but not a national of that State, contributions paid by, or on behalf of, such individual to a pension or other retirement arrangement that is established and maintained and recognized for tax first-mentioned State as a contribution paid to a pension or other retirement arrangement that is established and maintained and recognized for tax purposes in that first-mentioned State, provided that:

(i) contributions were paid by, or on behalf of, such individual to such arrangement before he became a resident of the first-mentioned State; and

(ii) the competent authority of the first-mentioned State agrees that the pension or other retirement arrangement generally corresponds to a pension or other retirement arrangement recognized for tax purposes by that State.

b) A pension or other retirement arrangement is recognized for tax purposes in a State if the contributions to the arrangement would qualify for tax relief in that State.

ARTICLE 20
Government Service

1.       a) Remuneration, other than a pension, paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.

b) However, such remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of that State who

(i) is a citizen of that State; or

(ii) did not become a resident of that State solely for the purpose of rendering the services.

2.       a) Any pension paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.

b) However, such pension shall be taxable only in the other Contracting State if the

individual is a resident of, and a citizen of, that State.

3. The provisions of Articles 14 (Independent Personal Services), 15 (Dependent Personal Services), 16 (Directors' Fees), 18 (Artistes and Athletes) and 19 (Pensions and Annuities) shall apply to remuneration and pensions in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof.


ARTICLE 21
Students and Trainees

Payments received for the purpose of maintenance, education, or training by a student, apprentice, or business trainee who is or was immediately before visiting a Contracting State a resident of the other Contracting State and who is present in the first-mentioned State for the purpose of his full-time education or training shall not be taxed in that State, provided that such payments arise from sources outside that State.


ARTICLE 22
Other Income

1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income, other than income from real property as defined in paragraph 2 of Article 6 (Income from Real Property), if the beneficial owner of the income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the income is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.


ARTICLE 23
Relief from Double Taxation

1. In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a resident or citizen of the United States as a credit against the United States tax on income

        a) the income tax paid to Sweden by or on behalf of such citizen or resident; and

        b) in the case of a United States company owning at least 10 percent of the voting stock of a company which is a resident of Sweden and from which the United States company

receives dividends, the income tax paid to Sweden by or on behalf of the distributing company with respect to the profits out which the dividends are paid.

For the purposes of this paragraph and paragraphs 3 and 4, the taxes referred to in paragraphs 1 b) and 2 of Article 2 (Taxes Covered) shall be considered income taxes except for the taxes referred to in paragraphs 1(b) (v) and (vi).

2.         a) Where a resident of Sweden derives income which may be taxed in the United States in accordance with the provisions of this Convention (except when income is taxed only in accordance with the provisions of paragraph 4 of Article 1 (Personal Scope)), Sweden shall allow - subject to the provisions of the law of Sweden (as it may be amended from time to time without changing the general principle hereof) - as a deduction from Swedish tax on the income of that resident an amount equal to the income tax paid in the United States.

The provisions of this subparagraph shall apply equally to the computation of tax on income of an individual resident of the United States from gains taxed in Sweden in accordance with paragraph 7 of Article 13 (Gains).

b) Where a resident of Sweden derives income which shall be taxable only in the United States in accordance with the provisions of paragraph 2 of Article 19 (Pensions and Annuities) Article 20 (Government Service) Sweden may, when determining the graduated rate of Swedish tax, take into account the income which shall be taxable only in the United States.

c) Dividends paid by a company being a resident of the United States to a company which is a resident of Sweden shall be exempt from Swedish tax to the extent that the dividends would have been exempt under Swedish law if both companies had been Swedish companies. This provision shall not apply unless the profits out of which the dividends are paid have been subjected to the normal corporate tax in the United States.

3. Where a United States citizen is a resident of Sweden, the following rules shall apply

a) Sweden shall allow, subject to the provisions of the law of Sweden (as it may be amended from time to time without changing the general principle thereof), as a deduction from Swedish tax the income tax paid to the United States in respect of profits, income or gains which arise in the United States, except that such deduction shall not exceed the amount of the tax that would be paid to the United States according to this Convention if the resident were not a United States citizen;

b) for the purpose of computing the United States tax, the United States shall allow, subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), as a credit against United States income tax the income tax paid or accrued to Sweden after the deduction referred to in subparagraph a), provided that the credit so allowed shall not reduce that portion of the United States tax that is deductible from Swedish tax in accordance with subparagraph a); and

c) for the purposes of subparagraph b) profits, income or gains shall be deemed to arise in Sweden to the extent necessary to avoid double taxation of such income.

4. For the purposes of allowing relief from double taxation pursuant to this Article and subject to such source rules in the domestic laws of the Contracting States as apply for the purpose of limiting the

foreign tax credit, income shall be deemed to arise exclusively as follows

        a) income derived by a resident of a Contracting State shall be deemed to arise in the other Contracting State if it may be taxed in that other State in accordance with this Convention unless it is taxable in that other State solely by reason of (i) citizenship in accordance with paragraph 4 of Article 1 (Personal Scope) or (ii) former residency in accordance with paragraph 7 of Article 13;

        b) income derived by a resident of a Contracting State which may not be taxed in the other Contracting State in accordance with the Convention shall be deemed to arise in the first-mentioned State.

The rules of this paragraph shall not apply in determining credits against United States tax for foreign taxes other than the taxes referred to in paragraphs 1 b) and 2 of Article 2 (Taxes Covered)


ARTICLE 24
Non-Discrimination

1. A citizen of a Contracting State or a legal person, partnership or association deriving its status as such from the laws in force in a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which a citizen of that other State or a legal person, partnership or association deriving its status as such from the laws in force in that other State in the same circumstances is or may be subjected. This provision shall, notwithstanding the provisions of Article 1 (Personal Scope), also apply to persons who are not residents of one or both of the Contracting States. However, for the purposes of United States tax, a United States citizen who is not a resident of the United States and a Swedish citizen who is not a resident of the United States are not in the same circumstances.

2. The taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs, and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

3. Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 5 of Article 11 (Interest), or paragraph 4 of Article 12 (Royalties) apply, interest, royalties, and other disbursements paid by a resident of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable profits of the first-mentioned resident, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of a resident of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable capital of the first-mentioned resident, be deductible under the same conditions as if they had been contracted to a resident of the first-mentioned State.

4. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. Nothing in this Article shall be construed as preventing imposition of a tax described in paragraph 8 of Article 10 (Dividends).

6. The provisions of this Article shall, notwithstanding the provisions of Article 2 (Taxes Covered), apply to taxes of every kind and description imposed by a Contracting State or a political subdivision or local authority thereof.


ARTICLE 25
Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or citizen.

2. The competent authority shall endeavor, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with the Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the Contracting States.

3. The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. In particular the competent authorities of the Contracting States may agree on
a) the attribution of income, deductions, credits, or allowances of an enterprise of a Contracting State to its permanent establishment situated in the other Contracting State;
b) the allocation of income, deductions, credits, or allowances between persons;
c) the characterization of particular items of income;
d) the application of source rules with respect to particular items of income; and
e) a common meaning of a term
They may also consult together for the elimination of double taxation in cases not provided for in the Convention.

4. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs.

ARTICLE 26
Exchange of Information

1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention. The exchange of information is not restricted by Article 1 (Personal Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions.

2. In no case shall the provisions of paragraph 1 be construed so as to impose on a Contracting State the obligation
a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other contracting State;
b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;
c) to supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information the disclosure of which would be contrary to public policy (ordre public).

3. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and to the same extent as if the tax of the first-mentioned State were the tax of that other State and were being imposed by that other State. If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this Article in the form of depositions of witnesses and authenticated copies of unedited original documents (including books, papers, statements, records, accounts, and writings), to the same extent such depositions and documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.

4. The competent authorities may by mutual agreement settle the mode of application of the preceding paragraphs of this Article. Such agreements may include but need not be limited to procedures for implementing routine, spontaneous and industry-wide exchanges of information, information exchanges on request, simultaneous tax examinations and such other methods of exchanging information as may be necessary or appropriate to carry out the purposes of paragraph 1.

5. For the purposes of this Article, the Convention shall apply, notwithstanding the provisions of Article 2 (Taxes Covered), to taxes of every kind imposed by a Contracting State.

ARTICLE 27
Administrative Assistance

1. The Contracting States undertake to lend assistance and support to each other in the collection of the taxes to which this Convention applies, together with interest, costs, and additions to such taxes.

2. In the case of applications for enforcement of taxes, revenue claims of each of the Contracting States which have bean finally determined may be accepted for enforcement by the other Contracting State and may be collected in that State in accordance with the laws applicable to the enforcement and collection of its own taxes.

3. Any application shall include a certification that under the laws of the State making the application the taxes have bean finally determined.

4. The assistance provided for in this Article shall not be accorded with respect to the citizens, companies, or other entities of the State to which the application is made, except as is necessary to insure that the exemption or reduced rate of tax granted under this Convention to such citizens, companies, or other entities shall not be enjoyed by persons not entitled to such benefits.

5. This Article shall not impose upon either of the Contracting States the obligation to carry out administrative measures which are of a different nature from those used in the collection of its own taxes, or which would be contrary to its sovereignty, security, or public policy.

ARTICLE 28
Diplomatic Agents and Consular Officers

Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements.

ARTICLE 29
Entry into Force

1. This Convention shall be subject to ratification in accordance with the applicable procedures of each Contracting State and instruments of ratification shall be exchanged at Washington as soon as possible.

2. The Convention shall enter into force upon the exchange of instruments of ratification and its provisions shall have effect
              a) in the case of the United States

(i) in respect of taxes withheld at source, for amounts paid or credited on or after the first day of January next following the date on which the Convention enters into force;

(ii) in respect of other taxes, for taxable years beginning on or after the first day of January next following the date on which the Convention enters into force; and

b) in the case of Sweden

(i) in respect of taxes on income, for income derived on or after the first day of January next following the date on which the Convention enters into force;

(ii) in respect of the State capital tax, for tax which is assessed in or after the second calendar year following that in which the Convention enters into force;

(iii) in respect of the excise tax imposed on insurance premiums paid to foreign insurers, for premiums paid on or after the first day of January next following the date on which the Convention enters into force.

3. Upon the coming into effect of this Convention, the Convention and accompanying Protocol between the Government of the United States of America and the Kingdom of Sweden for the avoidance of double taxation and the establishment of rules of reciprocal administrative assistance in the case of income and other taxes, signed at Washington on March 23, 1939, as modified by a Supplementary Convention signed at Stockholm on October 22, 1963, shall terminate. The provisions of the 1939 Convention, as modified, shall cease to have effect with respect to the United States and Sweden from the date on which the corresponding provisions of this Convention shall, for the first time, have effect according to the provisions of paragraph 2 of this Article. With regard to the Swedish State capital tax, the 1939 Convention shall be applied for the last time for tax assessed the first year after the year in which this Convention enters into force.


ARTICLE 30
Termination


This Convention shall remain in force until terminated by a Contracting State. Either Contracting State may terminate the Convention at any time after 5 years from the date on which the Convention enters into force, provided that at least 6 months prior notice of termination has been given through diplomatic channels. In such event, the Convention shall cease to have effect

a) in the case of the United States

(i) in respect of taxes withheld at source, for amounts paid or credited on or after the first day of January next following the expiration of the 6 months period;

(ii) in respect of other taxes, for taxable years beginning on or after the first day of January next following the expiration of the 6 months period; and

b) in the case of Sweden

(i) in respect of taxes on income, for income derived on or after the first day of January next following the expiration of the 6 months period;

(ii) in respect of the State capital tax, for tax which is assessed in or after the second calendar year following the expiration of the 6 months period;

(iii) in respect of the excise tax imposed on insurance premiums paid to foreign insurers, for premiums paid on or after the first day of January next following the expiration of the 6 months period.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective governments, have signed the Convention.

DONE at Stockholm, in duplicate, in the English language, this *first* day of *September* 1994.

(s) Thomas L. Siebert                               (s) Bo Lundgren
FOR THE GOVERNMENT OF                   FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:      SWEDEN:


## NOTES OF EXCHANGE

Embassy of the United States of America
Stockholm

Mr. Bo Lundgren
Minister for Fiscal and Financial Affairs
Kingdom of Sweden

Excellency:

I have the honor to refer to the Convention between the Government of the United States of America and the Government of Sweden for the Avoidance or Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, which was signed today, and to confirm, on behalf of the Government of the United States of America, the following understandings reached between our two Governments.

1. Scandinavian Airlines System (SAS) is a consortium within the meaning of Article 8 (Shipping and Air Transport), its participating members being Det Danske Luftfartsselskab A/S (DDL), Det Norske Luftfartsselskap A/S (DNL), and AB Aerotransport (ABA). In order to avoid the problems inherent in operating in the United States through a consortium, the members of the consortium in 1946 established a New York corporation, Scandinavian Airlines of North America Inc. (SANA Inc.) - originally under the name Scandinavian Airlines System, Inc. to act on their behalf in the United States pursuant to an agency agreement dated September 18, 1946. A similar agreement was entered into by SAS directly and SANA Inc. on March 14, 1951 and revised on August 4, 1970.

Pursuant to the agency agreement, SANA Inc. is authorized to perform only such functions as SAS assigns to it, all in connection with international air traffic. Under that agreement, all revenues collected by SANA Inc. are automatically credited to SAS. Operating expenses incurred by SANA Inc. are

debited to SAS in accordance with the terms of the agency agreement. SAS is obligated under the terms of the agency agreement to reimburse SANA Inc. for all of its expenses irrespective of the revenues of SANA Inc. SANA Inc. does not perform any functions except those connected with or incidental to the business of SAS as an operator of aircraft in international traffic.

In view of the special nature of the SAS consortium and in view of the agency agreement as described above, the United States for purposes of Article 8 (Shipping and Air Transport) of the Convention signed today shall treat all of the income earned by SANA Inc. which is derived from the operation in international traffic of aircraft as the income of the SAS consortium.

2. It is understood that the reference in paragraph 2 of Article 19 (Pensions and Annuities) to legislation similar to social security legislation of a Contracting State is intended, in the case of the United States, to refer to tier 1 Railroad Retirement benefits.

If this is in accordance with your understanding, I would appreciate an acknowledgment from you to that effect.

Accept, Excellency, the renewed assurances of my highest consideration.

Ambassador Thomas L. Siebert

Ministry of Finance
*Minister for Fiscal And Financial Affairs*
*Bo Lundgren*
Stockholm, 1 September, 1994

His Excellency
Mr. Thomas Siebert
*Ambassador Extraordinary and Plenipotentiary*
*of the United States of America*

Excellency:

I have the honor to acknowledge the receipt of your letter of 1 September, 1994 which reads as follows:

"I have the honor to refer to the Convention between the Government of the United States of America and the Government of Sweden for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, which was signed today, and to confirm, on behalf of the Government of the United States of America, the following understandings reached between our two Governments.

1. Scandinavian Airlines System (SAS) is a consortium within the meaning of Article 8 (Shipping and Air Transport), its participating members being Det Danske Luftfartsselskab A/S (DDL), Det Norske Luftfartsselskap A/S (DNL), and AB Aerotransport (ABA). In order to avoid the problems inherent in operating in the United States through a consortium, the members of the consortium in 1946 established a New York corporation, Scandinavian Airlines of North America Inc. (SANA Inc.) - originally under the name Scandinavian Airlines System, Inc. to act on their behalf in the United States pursuant to an agency agreement dated September 18, 1946. A similar agreement was entered into by SAS directly and SANA Inc. on March 14, 1951 and revised on August 4, 1970.

Pursuant to the agency agreement, SANA Inc. is authorized to perform only such functions as SAS assigns to it, all in connection with international air traffic. Under that agreement, all revenues collected by SANA Inc. are automatically credited to SAS. Operating expenses incurred by SANA Inc. are debited to SAS in accordance with the terms of the agency agreement. SAS is obligated under the terms of the agency agreement to reimburse SANA Inc. for all of its expenses irrespective of the revenues of SANA Inc. SANA Inc. does not perform any functions except those connected with or incidental to the business of SAS an operator of aircraft In international traffic.

In view of the special nature of the SAS consortium and in view of the agency agreement as described above, the United States for purposes of Article 8 (Shipping and Air Transport) of the Convention signed today shall treat all of the income earned by SANA Inc. which is derived from the operation in international traffic of aircraft as the income of the SAS consortium.

2. It is understood that the reference in paragraph 2 of Article 19 (Pensions and Annuities) to legislation similar to the social security legislation of a Contracting State is intended, in the case of the United States, to refer to tier 1 Railroad Retirement benefits.

If this is in accordance with your understanding, I would appreciate an acknowledgment from you to that effect.

Accept, Excellency, the renewed assurances of my highest consideration."

I have the honor to confirm, on behalf of the Government of Sweden, that the treatment of Scandinavian Airlines of North America Inc. and of tier 1 Railroad Retirement benefits as specified by you, is in accordance with our understanding.

Accept, Excellency, the renewed assurances of my highest consideration.

(s) Bo Lundgren