# Exhibit 72

Nationality of Corporations—Status of Russian Volunteer
Fleet 1918-1922.

See Case No. 64 (*Russian Volunteer Fleet and Another* v.
*The Crown*).

## C. ALIENS

## II.—Position of Aliens

### i.—Subjection to Territorial Sovereignty of the Receiving State

**Case No. 146**    Aliens—Czechoslovakia—Right of Aliens to Use their Own
Language before Courts and Authorities on the same
Condition as Members of a National Minority—Bearing of
the Minorities Treaty on the Municipal Law—Parliamen-
tary Debates—Influence on Interpretation of Statute.

INNSBRUCK FIRM'S CASE.

*Czechoslovakia, Supreme Administrative Court.*
14 *February*, 1923.    (*No.* 2607.)

THE FACTS.—An appeal of the plaintiff, a commercial firm
in Innsbruck (Austria), drafted in German, relating to a
case tried before the Court of Liberec (Reichenberg)—
the jurisdiction of which includes a minority district
—was returned by the Court to the plaintiff to be
drafted in the official (Czechoslovak) language. The
Ministry of Justice upheld this decision, holding that
the law gave this right to the use of a foreign language
only to Czechoslovak citizens. The plaintiff then
applied to the Supreme Administrative Court, claiming
that the decision of the Ministry should be quashed.

*Held :* That the application must be granted. The Opinion
of the Court as stated in the decision of 5 October, 1921,
No. 12.285,[1] must be fully maintained. Even if the Constitu-

[1] In the previous decision of 5 October, 1921, No. 12.285 (Boh. 966 adm.),
it was held by the Supreme Administrative Court that the provision of
paragraph 2 of Law No. 122/1920 applied to aliens as well as to Czechoslovak
nationals as being " persons belonging to the language of this minority " ;
the phrase " Czechoslovak citizens belonging to this minority " used in the
original text of the bill was replaced in the Constitutional Commission by
the phrase " persons belonging to the language of this minority," and this
text was passed by the National Assembly. The law was not a law only
for the protection of linguistic minorities, but a law establishing principles
for the use of languages before the courts and authorities in general, and
consequently fully applies also to aliens for whom no other provisions have
been given. The reference to the Treaty of St. Germain did not limit the
linguistic protection. See also *Annual Digest*, 1925-1926, Case No. 215.

tion (paragraph 129) and Law No. 122/1920 in their originally
proposed text meant to give the linguistic protection only to
Czechoslovak citizens, Law No. 122/1920 in its final text as
passed by the National Assembly exceeded these limits. The
language of the Law cannot be restricted by the consideration
that according to the (Minorities) Treaty the legislator had
not such a far-reaching obligation and was therefore not bound
to determine so widely the persons entitled to the linguistic
protection ; the stipulations of the Treaty are consequently
without any relevance for the interpretation of the Law. The
binding force of the text passed by the National Assembly
could not be altered even if it could be proved that neither
the reporter of the Commission nor the majority of the members
of the Parliament voting for the bill realised the significance of
the proposed provision, as any law, if promulgated, leads a
life of its own independent of the reasons which induced the
members of the legislature to vote for it ; the Constitutional
Commission did not accept the original text limiting the
linguistic protection in accordance with the Treaty and with
paragraph 129 of the Constitution only to Czechoslovak
citizens, but accorded this protection also to aliens whose
language is identical with a minority language. [Report :
Boh. 1968 adm.]

**Case No. 147**    Aliens—Taxation in the Home State—Action to Enforce in
the Country of Residence—Dismissal of.

BERGEN (CORPORATION OF) *v.* OLSEN.

*Denmark, Eastern Provincial Court.* 23 *October*, 1924.

THE FACTS.—Olsen, a Norwegian national, was the director
of a limited company at Bergen (Norway) which went
into liquidation and was wound up in 1922. In the
summer of 1918 he had moved to Denmark, in which
country he had since then been in permanent residence.
The City of Bergen claimed that he had taken over
the assets of the company without paying the taxes
assessed upon the company in the years 1919-1922,
and sued him before the Danish Court for payment
of a sum of about 13,700 Kroner.

*Held :* That it cannot be regarded as accepted definitely
by general international legal opinion that a State or a muni-
cipality may enforce claims for taxes through the agency of
foreign courts. Particularly in Norway it has been estab-

**Case No. 147 contd.**

lished that foreign Governments cannot claim payment of taxes in Norwegian courts. The case was consequently dismissed as " unsuitable for decision by the Danish courts." [Report : *Ugeskrift for Retsvæsen*, 1925, pp. 176 *et seq.*]

> NOTE.—In the case of *Norwegian Dept. of Finance and Customs* v. *Nielsen* the Supreme Court of Denmark (*Ugeskrift for Retsvæsen*, 1923, pp. 301 *et seq.*) refused, upholding a decision of the Eastern Provincial Court, to enforce a Norwegian tax. But the decision would appear to have been based on the language of the Norwegian law.

**Case No. 148**   Aliens—Taxation in the Home State—Action to Enforce in the Country of Residence—Dismissal of.

### NORWEGIAN STATE *v.* BRUHN.

*Sweden, Supreme Court.* 31 December, 1924.

THE FACTS.—Bruhn, a Norwegian subject, carried on business in Norway until, in December, 1917, he emigrated to Sweden, where he became domiciled. The Norwegian State brought an action against Bruhn before the Court of Luggude in Sweden claiming a certain sum as war-tax for the budget-year 1917-1918. Bruhn objected that the Swedish courts were not competent to deal with the case. The Norwegian State contended that, once the taxation had acquired legal force, it was no longer a question of taxation but of an ordinary claim, and that the Norwegian State was not to be treated differently from an ordinary litigant.

The Court of Luggude overruled this objection.

*Held*, on appeal, by the Court of Appeal for Skåne and Blekinge : That the action was not of such a nature that it could be considered by a Swedish court, and the judgment of the lower Court must be reversed.

The Supreme Court upheld the judgment of the Court of Appeal. [Report : *Nytt Juridiskt Arkiv*, 1924, p. 635.] [1]

**Aliens—Rights of—Treaty Overriding Municipal Law in the United States.**

See Case No. 183 (*In re Romaris*).

[1] See also Case No 81 in this volume.

---

### ii.—Protection by the National State

**Case No. 149**   Aliens—Position of—Right to Own Land—United States— " Equal Protection " Clause of the Fourteenth Amendment —Whether Inconsistent with Disqualification of Aliens to Hold an Interest in Land—Interpretation of Relevant Treaty Provisions—Negotiations Preceding the Treaty.

### TERRACE *ET AL. v.* THOMPSON, ATTORNEY-GENERAL OF THE STATE OF WASHINGTON.

*United States, Supreme Court.* 12 November, 1923.

(TAFT, C.J. ; BUTLER, MCREYNOLDS, BRANDEIS, MCKENNA, HOLMES, VAN DEVANTER, SANFORD, JJ.)

THE FACTS.—A statute of the State of Washington (Laws 1921, c. 50) disqualified aliens who had not declared their intention to become citizens from taking any interest in land for farming or certain other purposes. Heavy penalties were provided. Certain citizens who owned land in Washington State and wished to lease it to a Japanese ineligible for naturalisation brought suit against the Attorney-General of the State to restrain enforcement of the statute. They contended that the law violated the Fourteenth Amendment of the United States Constitution, and that it contravened the Treaty of 1911 between Japan and the United States (37 U.S. Stat. L. 1504), which provided that the citizens of each country might carry on trade within the territories of the other, own or lease warehouses, houses, shops, etc., " lease land for residential and " commercial purposes," and " do anything incidental " to or necessary for trade upon the same terms as " native citizens." The United States District Court dismissed the suit. (274 Fed. 841.) On appeal,

*Held* : That the decree must be affirmed. The regulation of the statute was within the police power of the State. Except as treaties provide otherwise, the State may prohibit entirely the alien ownership of land. There was no violation of the " equal protection " clause [1] of the Fourteenth Amendment, since there was a great difference of interest in the State and

[1] Section 1 of the Fourteenth Amendment provides as follows : " . . . No " State shall make or enforce any law which shall abridge the privileges or " immunities of citizens of the United States ; nor shall any State deprive " any person of life, liberty, or property, without due process of law ; nor " deny to any person within its jurisdiction the equal protection of the laws."